**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

**R. CATHY REARDON,**

|                                                      |     |                                          |
| ---------------------------------------------------- | --- | ---------------------------------------- |
|                                                      | )   |                                          |
| On behalf of herself and all                         | )   |                                          |
| similarly situated individuals                       | )   |                                          |
| .                                                    | )   | **CIVIL ACTION NO.: 2:08-cv-01730**      |
| **Plaintiffs**                                       | )   |                                          |
| **v.**                                               | )   | **Judge Gary L. Lancaster**              |
|                                                      | )   |                                          |
| **CLOSETMAID CORPORATION**                           | )   |                                          |
| **And EMERSON ELECTRIC CO.,**                        | )   | **Class Action**                         |
|                                                      | )   |                                          |
|                                                      | )   | **TRIAL BY JURY IS DEMANDED**.           |
|                                                      | )   |                                          |
| **Defendants.**                                      | )   | **Electronically Filed**                 |

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Summary Of The Case**

1.      This class action alleges that certain policies and practices followed by Defendants ClosetMaid Corporation ("ClosetMaid") and Emerson Electric Company ("Emerson") in procuring and using consumer reports pertaining to prospective or current employees violate the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. 1681, *et. seq.* Specifically, Defendants violate § 1681b(b)(2)(A) of the FCRA by procuring consumer reports about prospective or current employees: 1)  without making the "clear and conspicuous" disclosures required by this section; 2) by using multiple documents and other provisions including a  "waivers of rights" provision where such additional documents and provisions are prohibited; and 3) by procuring consumer reports without authorization based upon improper disclosure.  Additionally, Defendants violate § 1681b(b)(3)(A) by using a consumer report to make an "adverse" employment decision without providing the person who is the subject of the

report a copy of the report and a summary of rights under the FCRA a sufficient amount of time before the adverse action is taken.

## JURISDICTION/VENUE

2.      The Court has jurisdiction under the FCRA, 15 U.S.C. §1681n and 1681p.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants regularly do business in the district and division.

4.      Defendants maintain the offices of their registered agents for service of process in Pittsburgh, which offices are located in this district and division.

5.      Plaintiff lives just outside of Pittsburgh in this district and division in Glenshaw, Pa. and Plaintiff applied for a job with Defendants in Pittsburgh.

6.      ClosetMaid and Emerson maintain local operations in Pittsburgh.

## PARTIES

7.      R. Cathy Reardon (hereinafter "Reardon" or "Plaintiff") is a citizen of Glenshaw, Pennsylvania and a "consumer" as protected and governed by the FCRA.

8.      ClosetMaid Corporation (hereinafter "ClosetMaid") is a Florida corporation.  At all times relevant hereto, it was a "user" of the consumer report of Plaintiff, as governed by the FCRA.

9.      Emerson Electric Co. (hereinafter "Emerson") is a Missouri corporation.  At all times relevant hereto, it was a "user" of the consumer report of Plaintiff, as governed by the FCRA.

## FACTUAL ALLEGATIONS

### The FCRA Imposes Duties On Persons Who Obtain Consumer Reports About Employees Or Prospective Employees

10.    The FCRA defines a "person" as ". . . any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental sub-division, or other entity."

11.    ClosetMaid and Emerson are related by common ownership or affiliated by corporate control.  ClosetMaid is controlled and operated by Emerson. ClosetMaid is a division or subsidiary of Emerson.  ClosetMaid and Emerson are managed by some of the same officers, managers and directors. Emerson participated in, controlled and benefitted by the employment practices alleged herein.

12.    Emerson has access to the consumer reports obtained by ClosetMaid and ClosetMaid has access to consumer reports obtained by Emerson and its controlled group of companies under provisions of the FCRA. 15 U.S.C. § 1681a(d)(2)(ii).

13.    When ClosetMaid obtains consumer reports about prospective or current employees it is acting as an agent on behalf of and for Emerson.  When ClosetMaid seeks authority from prospective or current employees to obtain a consumer report, ClosetMaid seeks to obtain a "waiver and release of rights" that includes Emerson within its scope. Likewise, upon information and belief, when  Emerson or its related entities seek authority from a prospective or current employee to obtain a consumer report, Emerson is acting as an agent for its related companies and obtains a "waiver and release of rights" that includes ClosetMaid and other related companies within its scope.

14.    ClosetMaid, Emerson and their related companies and affiliates constitute a "person" as defined by the FCRA.

3

15.    Alternatively, ClosetMaid and Emerson constitute separate "persons" within the meaning of the FCRA.

16.    ClosetMaid and Emerson, as standard practice, routinely obtain "consumer reports" about their employees or prospective employees.

17.    The FCRA defines a "consumer report"  as "*any* written, oral, or other communication of *any information* by a consumer reporting agency bearing on a  consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living which is used or expected to be used for. . ., " *inter alia,* "(B) employment purposes.) ("emphasis added").

18.    Section 1681b(b)(2)(A) of the FCRA regulates the conduct of "persons" who obtain a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a *person* may not procure a *consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –*
>
>   (i)    a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes*; and*
>
>   (ii)     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (i) and (ii). (emphasis added).

19.    Section 1681b(b)(2)(A) therefore imposes the duty on ClosetMaid and Emerson and its affiliated companies to provide a "clear and conspicuous" disclosure to prospective or current employees that a consumer report about them will be procured.    Further,

§1681b(b)(2)(A) mandates that the disclosure must be limited only to a disclosure that a consumer report may be obtained for employment purposes and to the written authorization of the prospective or current employee; no other documents or provisions are allowed. Section 1681b(b)(2)(A) thus prohibits ClosetMaid and/or Emerson from including or obtaining other information as part of the disclosure such as a release or waiver of rights or by using multiple conflicting documents to obtain the authorization.

20.     Additionally, § 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i)      a copy of the report; and
>
> (ii)     a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission undersection 1681g(c)(3) of this title.

21.     The purpose of  § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report,  correct any inaccuracies and to notify the prospective or current employer of these inaccuracies before an adverse action is taken.

## ClosetMaid And Emerson Violated The Duties Imposed By Section 1681b(b)(2)(A)

22.     Plaintiff applied to work with the Defendants, and Defendants jointly acted and

failed to act as alleged herein.

23.     At all times relevant hereto LexisNexis, Express Screening and its related companies constituted  a "consumer reporting agency" as governed by the FCRA. During the relevant time LexisNexis and its related companies were regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

24.     Reardon applied for a job with Defendants in Pittsburgh, Pennsylvania in December 2006.As part of the application process, Reardon completed standard form documents entitled "Application For Employment with CLOSETMAID".  ("The Application").  A true and correct copy of the documents associated with The Application are attached hereto as Exhibit 1 and are incorporated as if fully set forth.  (addresses and other personal identifying information have been redacted pursuant to WD Pa. Local Rule 5.1.1 D).

25.     The Application contains two different pages for obtaining a prospective or current employee's authorization to procure a consumer report.

26.     One page of the application is entitled "CLOSETMAID Fair Credit Reporting Act Authorization Form".  Exhibit 1, page 2.  This page misrepresents a prospective or current employee's rights under the FCRA in stating, "I understand that, pursuant to the Fair Credit Reporting Act, if any adverse action is to be taken upon this consumer report, a copy of the report and a summary of the consumer's rights will be provided to me *if requested.*"  Exhibit 1, page 2. (emphasis added).  The FCRA requires any person taking an adverse action based upon a consumer report to automatically provide that consumer report and a summary of FCRA rights to the prospective or current employee, the consumer is not required to request it.

27.     Another   page   of   The   Application   is   entitled   "CLOSETMAID AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT AND RELEASE OF INFORMATION FOR EMPLOYMENT PURPOSES". See Ex. 1, Fourth Page. This authorization page provides for and requests a comprehensive list of information from the employee or prospective employee including a provision waiving or releasing rights as follows:

> I hereby release ClosetMaid, and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release.  You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

28.     This page also misrepresents a prospective or current employee's rights under the FCRA stating, "I understand that, in (sic) pursuant to the Fair Credit Reporting Act, if any adverse action is to be taken upon this consumer report, a copy of the report and a summary of the consumer's rights will be provided to me *if requested."*  Ex. 1, Fourth Page.  The FCRA requires any person procuring a consumer report to automatically provide that consumer report and a summary of FCRA rights to the prospective or current employee, a consumer is not required to request it.

29.     Defendants   violated   §   1681b(b)(2)(A)(i)   by   failing   to   make   a   "clear   and conspicuous" disclosure as follows:

> A)     Using two different authorization forms for procuring a consumer report;

> B)     Including the required § 1681b(b)(2)(A) disclosure within the application for employment rather than as a stand alone document;

C)   Misrepresenting a prospective or current employee's rights under the FCRA.

30.   Defendants violated  §  1681b(b)(2)(A)(i) by failing to make the required disclosure  "*in a document that consists solely of the disclosure*" in at least the following ways:

A)   Using two different, conflicting disclosure and authorization forms;

B)   Using the FCRA disclosure and authorization form to obtain a Release and Waiver Of Rights;

C)   Including the requisite disclosure form as part of The Application; and

D)   Using the requisite disclosure form to misrepresent a prospective or current employee's rights under the FCRA.

31.   Defendants violated  §  1681b(b)(2)(A) by obtaining a consumer report without the proper authorization since the legally mandated disclosures were not made.

**ClosetMaid And Emerson Violated The Duties Imposed By Section 1681b(b)(3)(A)**

32.   Defendants hired Reardon subject to the review of her application and consumer report.

33.   Defendants obtained a consumer report on Reardon from LexisNexis, Express Screening or one of their related companies.

34.   The consumer report listed certain incorrect information about  Reardon.

35.   The incorrect information was erroneous and should not have been included in the consumer report.

36.   Based upon the consumer report, Defendants decided not to hire Reardon.  Upon

reaching the conclusion not to hire Ms. Reardon, Defendants failed to provide to Reardon a copy of the consumer report a sufficient amount of time before they actually executed the decision to take the adverse action against Reardon. This deprived her of sufficient time to allow her to discuss the report with Defendants or otherwise respond before the adverse action was implemented.

37.     Defendants decided not to hire Plaintiff based on the erroneous consumer report without providing Reardon with any advance notice that they were going to take that adverse action, without providing her with a copy of the consumer report, and without providing her with a written summary of her rights under the FCRA.

38.     After Defendants took the adverse action against Ms. Reardon, she successfully disputed the inaccuracies in her consumer file at LexisNexis or any of its affilates.

39.     Upon information and belief, it is Defendants' standard hiring practice to rely on consumer reports. When the results are unsatisfactory, Defendants reach a determination to fire or not hire the subject employee or prospective employee based upon the consumer report.  Then Defendants fail to providing a pre-adverse action notice in writing at least five business days before taking the adverse action, fail to provide a copy of the consumer report at least five business days before taking the adverse action, and fail to provide a written summary of their rights under the FCRA at least five business days before taking the adverse action, even though they told each applicant/employee that they would wait five business days to make a decision about whether to hire or not.

**Defendants Acted Willfully**

40.     Defendants knew or should have known about their legal obligations under the

FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.  Defendants obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

41.    Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and depriving Ms. Reardon and other members of the classes of their rights under the FCRA.

42.    As a result of these FCRA violations, the Defendants are liable to Plaintiff and to each  Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2), and for attorneys fees and costs pursuant to §1681n and §1681o.

43.    Plaintiff and Class Members are entitled to equitable relief against Defendants requiring their compliance with the FCRA in all future instances and/or re-employment of Plaintiff, and enjoining their future violations of the FCRA.

## CLASS ACTION ALLEGATIONS

44.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class and  sub-classes initially defined as follows:

### The Class

All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was procured by Defendants  within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action.

### The Sub-classes

All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an adverse employment decision regarding such employee or prospective employee within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action and for whom Defendants did fail to provide that applicant a copy of their consumer report at least five business days before it took such adverse action.

All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an adverse employment decision regarding such employee or prospective employee within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action and for whom Defendants did fail to provide that applicant a copy of the FCRA summary of rights at least five business days before it took such adverse action.

45. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Classes are so numerous that joinder of all members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Classes' members may be notified of the pendency of this action by published and/or mailed notice.

46. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

    A) Whether Defendants violated § 1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure?

    B) Whether the Defendants' use of two different authorization forms for procuring a consumer report violates § 1681b(b)(2)(A)?

    C) Whether including the required §1681b(b)(2)(A) disclosure within the

application for employment rather than as a stand alone document violates § 1681b(b)(2)(A )?

D)     Whether misrepresenting a prospective or current employee's rights under the FCRA in the §1681b(b)(2)(A) disclosure violates §1681b(b)(2)(A)?

E)     Whether Defendants violated § 1681b(b)(2)(A) by failing to make the required disclosure  "*in a document that consists solely of the disclosure*"?

F)     Whether Defendants violated  §1681b(b)(2)(A) by using two different, conflicting disclosure and authorization forms?

G)     Whether Defendants violated § 1681b(b)(2)(A) by using the FCRA disclosure and authorization form to obtain a Release and Waiver Of Rights?

H)     Whether Defendants violated §1681b(b)(2)(A) by including the requisite disclosure form as part of the Application for employment?

I)     Whether Defendants violated §1681b(b)(2)(A) by procuring a consumer report in the absence of providing the legally mandated disclosure to consumers?

J)     Whether Defendants failed to provide each employee/applicant a copy of their consumer report at least five business days before it took an adverse action based upon the consumer report?

K)     Whether Defendants failed to provide each employee/applicant a copy of their written notice of FCRA rights at least five business days before it took an adverse action based upon the consumer report ? and

L)     Whether Defendants acted willfully in disregard of the rights of the

47.     **Typicality. FED. R. CIV. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of  members of the Classes.  Plaintiff for class certification purposes seeks only statutory and punitive damages.  Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

48.     **Adequacy. FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because her interests coincide with, and are not antagonistic to, the interests of the members of the Classes she seeks to represent; she has retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously.   The interests of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

49.     **Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Classes' members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties

and to the court system presented by the complex legal and factual issues raised by Defendants'

conduct.  By contrast, the class action device will result in substantial benefits to the litigants

and the Court by allowing the Court to resolve numerous individual claims based upon a single

set of proof in a case.

50.     **Injunctive Relief Appropriate for the Class. FED. R. CIV. P. 23(b)(2).**  Class

certification is appropriate because Defendants have acted on grounds generally applicable to the

Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the Class

members.

## COUNT ONE
## VIOLATION OF THE FCRA § 1681b(b)(2)(A)
### Failure To Make Required Disclosure Before Procuring A Consumer Report

51.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

52.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A) because they

failed to make the required "clear and conspicuous" disclosure and because the disclosure was

not made *in a document that consists solely of the disclosure*".

53.     Plaintiff seeks statutory damages for herself and all others similarly situated for

this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

54.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to

15 U.S.C. § 1681n(a)(2).

55.     In the alternative to the Plaintiff's allegations that these violations were willful,

she alleges that the violations were negligent and seeks appropriate remedy, if any, under 15

U.S.C. §1681o.

## COUNT TWO
## VIOLATION OF THE FCRA § 1681b(b)(2)(A)
### Impermissible Procurement of A Consumer Report

56.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

57.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A) by obtaining a consumer report without the proper authorization since the legally mandated disclosures were not made.

58.      Plaintiff seeks statutory damages for herself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

59.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

60.     In the alternative to the Plaintiff's allegations that these violations were willful, she alleges that the violations were negligent and seeks appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT THREE
## VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)
### Failure To Provide Copy Of Consumer Report

61.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

62.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i),, because they failed to provide a copy of the consumer report used to make an employment decision to Plaintiff and all others similarly situated at least five business days before taking an adverse action that was based in whole or in part on that report.

15

63.     Plaintiff seeks statutory damages for herself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

64.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

65.     In the alternative to the Plaintiff's allegations that these violations were willful, she alleges that the violations were negligent and seeks appropriate remedy, if any, under 15 U.S.C. §1681o.

**COUNT FOUR**
**VIOLATION OF THE FCRA § 1681b(b)(3)(A)**
**Failure To Provide A Summary Of Rights**

66.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

67.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because they failed to provide Plaintiff and all others similarly situated the written summary of rights required by this section of the FCRA at least five business days before taking an adverse action that was based in whole or in part on a consumer report.

68.     Plaintiff seeks statutory damages for herself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

69.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

70.     In the alternative to the Plaintiff's allegations that these violations were willful, she alleges that the violations were negligent and seeks appropriate remedy, if any, under 15 U.S.C. §1681o.

71.     If and when appropriate, Plaintiff on behalf of herself and those similarly situated, seeks issue certification of the issue whether Defendants' violations of FCRA, 15 U.S.C. §1681b were negligent.

72.     Every paragraph in this Complaint is hereby incorporated into every other paragraph.

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

1.     an order certifying the proposed FCRA classes herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

2.     the creation of a common fund available to provide notice of and remedy Defendants' FCRA violations;

3.     statutory and punitive damages;

4.     injunctive relief as pled;

5.     attorneys fees, expenses and costs;

6.     pre-judgment and post-judgment interest as provided by law; and

7.     such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

By: Dated: April 16 , 2009          Respectfully Submitted:

                                              By:     /s/ James M. Pietz _____

                                                      James M. Pietz
                                                      Pa I.D. No. 55406
                                                      Pietz Law Office LLC
                                                      Mitchell Building
                                                      304 Ross Street, Suite 700
                                                      412-288-4333
                                                      jpietz@jpietzlaw.com

                                                      Leonard A. Bennett, Esq.
                                                      Consumer Litigation Associates

17

12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010
*Counsel for the Representative And ClassPlaintiffs*