**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| R. CATHY REARDON | ) | |
| On behalf of herself and all | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 2:08cv1730GLL |
| v. | ) | |
| CLOSETMAID CORPORATION | ) | Hon. Chief Judge Gary Lancaster |
| | ) | |
| | ) | **Class Action** |
| Defendant**.** | **)** | |
| | | **Electronically Filed** |

**REPRESENTATIVE PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE MOTION**
**FOR CLASS CERTIFICATION**

James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
Mitchell Building
304 Ross Street, Suite 700
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010

*Counsel For Representative And Class Plaintiffs*

.

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................... 1

**II. STATEMENT OF THE CASE AND FACTUAL BACKGROUND** ................................. 2

   A.  THE APPLICABLE FCRA REQUIREMENTS GOVERNING AN EMPLOYER'S  ACCESS TO AND USE OF CONSUMER REPORTS ........................................................ 2

      *1.*  *The FCRA Requirement For Obtaining Consent To Procure A Consumer Report For Employment Purposes* ..................................................... 3

      *2.*  *The FCRA Requirement For Providing Pre-Adverse Action Notice* ............................. 5

   B.  CLOSETMAID WILLFULY EVADES USE OF THE FCRA MANDATED PROCEDURES ............. 7

      *1.*  *ClosetMaid's Systemic Violations Of The FCRA Disclosure Procedure [§1681b(b)(2)(A)(i) and (ii)]* ........................................ 8

      *2.*  *ClosetMaid's Systemic Violations Of The FCRA Pre-Adverse Action Procedure [§ 1681b(b)(3)]* ........................................... 11

   C.  THE REPRESENTATIVE PLAINTIFF WAS SUBJECT TO CLOSETMAID'S ILLEGAL PROCEDURES 14

   D.  THE CLASS CLAIMS AND THE PROPOSED CLASSES…………………………………….16

**II.  LEGAL ARGUMENT REGARDING CLASS CERTIFICATION** ............................. 17

   A.  THE REQUIREMENTS OF FED.R.CIV.P. 23(A) ARE SATISFIED ........................... 19

      *1.*  *The Defined Class is Sufficiently Numerous* ................................................. 19

      *2.*  *The Commonality Requirement is Satisfied Because the Claims Arise From the Application of Identical Statutory Provisions to Standardized Forms and Conduct....* 21

      *3.*  *The Typicality Requirement is Satisfied Because the Representative And Class Claims Arise From The Same Course of Conduct* ................................................. 23

i

      4.    *Adequacy of Representation is Satisfied Because No Conflicts Exist And Class Counsel Are Experienced* ........................................................................................... 25

  B.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ...................................................... 26

      1.    *Common Questions Predominate Because The Class Claims Arise from A Common Nucleus of Fact and Involve Overriding Common Questions* ...................................... 26

      a)    *The Disclosure Class Claims Are Subject To Common Proof* ..................................... 26

      b) *The Pre-Adverse Action Notice Claims Are Subject To Common Proof* .......................... 29

      2.    *A Class Action is The Superior Method Of Adjudication Because Individual Litigation Is Not Feasible And The Claims Are Manageable* ......................................................... 30

**IV.**    **CONCLUSION** ............................................................................................................ **31**

# TABLE OF AUTHORITIES

## Cases

*Allapattah Services, Incorp. v. Exxon Corporation*, 333 F.3d 1248 (11th Cir. 2003). . . . 9, 24, 29

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ................................................... 18, 29, 34

*Arkansas Educ. Ass'n v. Bd. of Educ., Portland Ark. Sch. Dist.,* 446 F.2d 763 (8th Cir. 197*1) ...* 22

*Baby Neal by and For Kantor v. Casey,* 43 F.3d 48 (3rd Cir. 1994) ...................................... 23, 27

*Beverly v. Wal-Mart Stores, Inc.* No. 3:07 CV 469 (E.D.Va. 2008) ............................................. 7

*Chakejian v. Equifax Information Services*, LLC, 256 F.R.D. 492 (E.D Pa. 2009) .................... 20

*Chiang v. Veneman,* 385 F.3d 256 (3rd Cir. 2004) ....................................................................... 23

*Colston v. Maryland Cup Corp.,* 18 FEP Cases 83 (D.Md.1978*) ................................................* 22

*Crenshaw v. Maloney*, 13 FEP Cases 154 (D.Conn.1976) .......................................................... 22

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) ..................................................... 31

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir. 1967*) ......* 22

*Deposit Guaranty v. Roper,* 445 U.S. 326  (1980) ...................................................................... 35

*Gillespie v . Equifax Info . Services, LLC*, 05 C 138, 2008 WL 4614327 (N.D. Ill.  2008)….20, 24

*Grasty v. Amalgamated Clothing and Textile Wkrs. Union, etc.* 828 F.2d. 123 (3d Cir. 1987) ... 26

*Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270 (10th Cir. 1977) ............................. 22

*Hoxworth v. Blinder, Robinson,* 980 F.2d 912 (3d Cir. 1992) .................................................... 28

*In re Chambers Dev. Co. Sec. Litig.* 912 F. Supp. 822  (W.D.Pa. 1995) ..................................... 27

*In Re Community Bank of Northern Virginia,* 418 F.3d 277 (3d Cir. 2005) ............................... 19

*In Re Gen. Motors Corp., Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) .......................................................................................................................... 28

*In re IGI Sec. Litig.,* 122 F.R.D. 451 (D.N.J. 1988) ...................................................................... 27

*In re Vitamins Antitrust Litigation, 209 F.R.D. 251 (D. D.C. 2002)* ............................................ 29

*In re: Prudential Insurance Company of America Sales Practice Litigation,* 148 F.3d 283,  (3rd Cir. 1998) ......................................................................................................................... 18

*Johns v. DeLeonardis,* 145 F.R.D. 480 (N.D. Ill. 1992) ................................................................ 22

*Jordan v. Commonwealth Financial Systems,* 237 F.R.D. 132 (E.D. Pa. 2006). ......................... 19

*Kelchner v. Sycamor Manor Health Center,* 305 F.Supp.2d 429 (M.D. Pa. 2004) .................... 5, 7

*Kliener v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983) ................................. 20

*O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266 (E.D.Pa. 2003) ....................................... 24

*Obabueki v. International Business Machines, Corp.,* 145 F.Supp.2d 371 (S.D. NY 2001) ......... 8

*Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D.Pa. 2005) ....................................... 20

*In Re Phar-Mor,* 875 F.Supp. 277,  279 (W.D. Pa. 1994) ............................................................ 27

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.,* 43 F.R.D. 452 (E.D. Pa. 1968) ................. 21

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797  (1985) ............................................................... 35

*Riordan v. Smith Barney,* 113 F.R.D. 60,  7 Fed. R. Serv. 3d 1325 (N.D. Ill. 1986*)* .................. 22

*Safeco Ins. Co. v. Burr,* 551 U.S. 47 ( 2007) .............................................................................. 31

*Safran v. United Steelworkers of Am.,* 13F.R.D. 397 (W.D.Pa. 1989) ........................................ 27

*See EEOC v. Video Only, Inc.,* 2008 WL 2433841 (D. Or. 2008) ................................................. 4

*Seidman v. American Mobile Systems, Inc.,* 157 F.R.D. at 360 ................................................... 24

*Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32 (1st Cir. 2003) ................................. 20

*Steinberg v. Nationwide Mutual Insurance Company*, 324 F.R.D. 67 (E.D. N.Y. 2004)............. 20

*United States v. Ramsey,* 785 F.2d 184 (7th Cir. 1986). ............................................................... 32

*Wetzel v. Liberty Mutual Insurance CO.,* 508 F.2d 239  (3rd Cir. 1975) ..................................... 28

*Williams, et al v. Telespectrum, Inc.* Civ. No. 3:05cv853 (E.D. Va. 2006)................................... 8

*Winkler v. DTE, Inc.* 205 F.R.D. 235 (D. Az. 2001) .................................................................... 20

*Zeno v. Ford Motor Company,* 238 F.R.D. 173 (W.D. Pa. 2006) ................................................ 19

*Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397 (D.N.J. 1990) ........................................ 27

## Statutes

15 U.S.C. § 1681a(b). ................................................................................................................. 26

15 U.S.C. § 1681a(d) (1).…………………………………………………………………………2

15 U.S.C. § 1681a(k).…………………………………………………………………………5

15 U.S.C. § 1681b(a)(3)(B) ................................................................................................. *passim*

15 U.S.C. § 1681b(b)(2) ...................................................................................................... *passim*

15 U.S.C. § 1681b(b)(2)(A) ................................................................................................ *passim*

15 U.S.C. § 1681b(b)(3) ...................................................................................................... *passim*

15 U.S.C. § 1681n(1)(A).................................................................................................... 3, 5

## Other Authorities

1 Newberg on Class Actions, § 3:6 (4th Ed.):............................................................................. 19

Hauxwell FTC Informal Staff Letter (June 12, 1998) ................................................................. 5

Hawkey FTC Informal Staff Letter (December 18, 1997). ............................................................ 5

Leathers FTC Informal Staff Opinion Letter (September 9, 1998) ................................................ 5

Weisberg FTC Informal Staff Letter (June 27, 1997).................................................................... 7

**Rules**

Fed.R.Civ.P. 23(a) .................................................................................................................... 17

Fed.R.Civ.P. 23(b)(3)................................................................................................................ 17

**INTRODUCTION**

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to use certain standard form documents and to follow specified policies and practices where they may use "consumer reports" to assess the qualifications of prospective and current employees.

The record evidence conclusively establishes that the Defendant ClosetMaid Corporation ("ClosetMaid") disregards these mandates. ClosetMaid adopted its own set of standard forms and practices that are repugnant to the FCRA requirements. These illegal practices violate the privacy rights of thousands of individuals ("consumers or prospective employees") who ClosetMaid has considered hiring over the past five or more years. As a result, ClosetMaid has illegally gained access to many of these consumers' private and personal information. Even more, the "consumer reports" obtained by ClosetMaid about many of these consumers contain potentially derogatory information that may be inaccurate or false. Yet, ClosetMaid failed to timely notify such consumers about these reports so that the information could be verified or corrected with ClosetMaid or with the consumer reporting agency that issued the report.

Given that the claims of Representative and putative Class Plaintiffs arise from ClosetMaid's adoption of policies and practices that are contrary to FCRA requirements, the classic case for class treatment is presented here. It has been repeatedly recognized that class certification is particularly appropriate where the class claims arise from standardized forms or policies and procedures that are common to all proposed class members. Here, the proposed Class and Sub-Classes have FCRA claims that arise from the same illegal standardized forms

1

and procedures that have been implemented by ClosetMaid.  As fully demonstrated below, the requirements of Fed.R.Civ.P. Rule 23(a) and (b)(3) are fully satisfied.

It is therefore respectfully submitted that this Court grant Plaintiff's Motion For Class Certification.

## II.  STATEMENT OF THE CASE AND FACTUAL BACKGROUND

### A.  The Applicable FCRA Requirements Governing An Employer's  Access To And Use Of Consumer Reports

The FCRA establishes the "permissible purposes" for accessing a "consumer report" about a consumer. 15 U.S.C. § 1681b(a). [1]   Section 1681b(a) authorizes the release of a consumer report by a consumer reporting agency to a person it has reason to believe "intends to use the information for employment purposes".  15 U.S.C. § 1681b(a)(3)(B).  However, an employer is not automatically entitled to access and then use the consumer report.  The FCRA further requires the employer to first get the consumer's "consent" to the release of the report

---

[1]   The FCRA defines a "consumer report" in 15 U.S.C. § 1681a(d(1) as:

(d) Consumer Report

(1)     In general. The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for

(A) subject to section 624, credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 604 [§ 1681b].

2

and, then, if the report is found to have negative information, the employer must properly notify

the consumer about that information if it is used as a factor in the employment decision. *See* 15

U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

The Plaintiff's First Amended Complaint ("FAC") asserts 4 causes of action based upon

these requirements of the FCRA. FAC ¶¶ 51-70.  The FAC alleges that ClosetMaid is subject to

liability pursuant to 15 U.S.C. § 1681n(1)(A) entitled "Civil Liability For Willful

Noncompliance". This FCRA civil liability provision provides:

> (a) In general. "Any person who *willfully fails to comply with any requirement imposed under this title with respect to any consumer* is liable to that consumer in an amount equal to the sum of
> (1)
>> (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .

(emphasis added).  The FAC elects to seek statutory damages of up to $1000 per class member.

FAC ¶¶ 53, 58, 63, 68.  Under this provision, a person is liable to any consumer for violating any

requirement with respect to that consumer for up to $1,000 if the violation is determined to be

"willful." The FCRA requirements that Plaintiff contends that ClosetMaid "willfully" violated

with respect to the proposed Class and Sub-classes are described below.

    **1.**      **The FCRA Requirement For Obtaining Consent To Procure A Consumer Report For Employment Purposes**

Initially, the FCRA establishes a two-step procedure by which an employer must first

obtain the *written consent* of the prospective or current employee authorizing the employer to

procure a consumer report about that person. See 15 U.S.C. § 1681b(b)(2). (hereinafter "The

Disclosure Provision").  The Disclosure Provision requires that the employer must first make a

"clear and conspicuous disclosure" in a *single* document that "consists solely of the disclosure

that a consumer report may be obtained for employment purposes". 15 U.S.C. §

1681b(b)(2)(A)(i).  Once this disclosure is made, the prospective or current employee must

authorize the access in writing. 15 U.S.C. § 1681b(b)(2)(A)(ii).  The full text of the Discosure

Provision thus provides:

> Except as provided in subparagraph (B) . . . a *person* may not procure a *consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless -*
>
> (i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and
>
> (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) and (ii).  (emphasis added).

By using the plain and unambiguous language,  "in a document that consists solely of the

disclosure", the Disclosure Provision clearly prohibits both the use of multiple authorization

forms and the use of a waiver or release of rights. *See* e.g. *EEOC v. Video Only, Inc.,* 2008 WL

2433841 (D. Or. 2008)("This section provides that at any time before the report is procured, a

disclosure is made in a document that consists solely of the disclosure that a consumer report

may be obtained for employment purposes. Video Only disclosed this possibility as part of its

job application, which is not a document consisting solely of the disclosure."). If there was any

question, the Federal Trade Commission has issued a number of staff opinion letters that explain

the prohibition against the use of multiple forms or waiver clauses.  The FTC opined in 1998 that

a disclosure that includes a waiver by the consumer of his or her legal rights under the FCRA

4

would violate § §1681b(b)(2)(A)(i). *See* Hauxwell FTC Informal Staff Letter (June 12, 1998), (App.Ex. A);[2]  *See also* Leathers FTC Informal Staff Opinion Letter (September 9, 1998) App.Ex B.  Another FTC opinion states "nothing else may appear on the document that detracts from the disclosure."  Hawkey FTC Informal Staff Letter (December 18, 1997). App.Ex.C

Once the employer has obtained this written authorization, the employer is then authorized to access that person's private and personal information *at any time* thereafter. *See Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004)("Based on our reading of the plain language of this subsection, "any time" prior to procurement can only mean that the required disclosure could take place not only in close proximity to the employer's seeking of the report, but also months or even years prior to taking such action.").

### 2.        The FCRA Requirement For Providing Pre-Adverse Action Notice

Once consent is obtained and a consumer report is procured, §1681b(b) establishes procedures that an employer must follow in *using* a consumer report that contains potentially derogatory information. Section 1681b(b)(3) requires that if the employer is "intending to take" an "adverse action" based *in whole or in part on information in the consumer report* then the employer must provide the applicant a copy of the report and a copy of a description of a consumer's rights under the FCRA *before* the "adverse action" is taken:[3]

---

[2]        References to App.Ex ___ mean the Plaintiff's Appendix Of Exhibits In Support Of The Motion For Class Certification which is being filed along with this memorandum and the motion for class certification.

[3] The FCRA defines "adverse action" in the employment context in 15 U.S.C. § 1681a(k) as follows:

(k)    Adverse Action

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, *before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates* –
>
> > (i)   a copy of the report; and
> >
> > (ii)   a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3).  ("The Pre-Adverse Action Notice"). The purpose for requiring this "Pre-Adverse Action Notice" is to provide the prospective or current employee a meaningful period of time to meet with the employer and the consumer reporting agency to explain or correct the accuracy or veracity of information in that report. *See Kelchner* 305 F.Supp.2d 429, 435-36  where the court explains this purpose:

> . . . it is equally clear that Congress did not intend to make this an unfettered right, and thus it also sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers. In addition, an employer must follow special procedures if it intends to take adverse action based on these reports:
>
> > Specifically, before taking adverse action regarding the consumer's current or prospective employment, an employer must provide to the consumer a copy of the report and a written description of the consumers rights under the FCRA. The employer must also provide the consumer with a reasonable period to respond to any information in the report that the consumer disputes and with written notice and the opportunity and time period to respond. A reasonable period for the employee to respond to disputed information is not required to exceed 5 business days

---

(1) Actions included. The term "adverse action"

(B) means . . .  (ii) a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee;

6

> following the consumers receipt of the consumer report from the
> employer.

> H.R.Rep. No. 103-486, at 30 (1994) (discussing 15 U.S.C. 1681b(b)(3)). Thus,
> the Act provides strong protections against misuse of employees' personal
> information.

The employer must provide a copy of the report "a sufficient amount of time before it

takes adverse action so that the consumer may rectify the inaccuracies in the report. *Beverly v.*

*Wal-Mart Stores, Inc.* No. 3:07 CV 469 (E.D.Va. 2008) (App.Ex. D); *Williams, et al v.*

*Telespectrum, Inc.* Civ. No. 3:05cv853 (E.D. Va. 2006) (adopted by Judge R. Payne January 8,

2007) App.Ex E.  The opportunity to discuss and dispute the report is exactly the scenario

envisioned by the FCRA. *Obabueki v. International Business Machines, Corp.,* 145 F.Supp.2d

371, 392 (S.D. NY 2001).  Five business days after receipt of notice appears reasonable.  *See*

Weisberg FTC Informal Staff Letter (June 27, 1997) App.Ex F. [4]  Accordingly, the purpose of

the Pre-Adverse Action provision is to allow consumers to discuss reports with employers and

the consumer reporting agency and to otherwise respond before adverse action is taken.

### B.  ClosetMaid Willfuly Evades Use Of The FCRA Mandated Procedures

The Vice President of Human Resources for ClosetMaid, Catherine Beal, testified as a

Fed.R.Civ.P. 30(b)(6) witness to describe to policies and practices followed by ClosetMaid in

obtaining consent to use and in using consumer reports for employment purposes. App.Ex. G.[5]

(hereinafter "Beal Dep."). Ms. Beal oversees ClosetMaid's process for recruiting and reviewing

---

[4]  The FTC provides official staff commentary as well as informal staff opinion letters
guiding interpretation of the FCRA. Congress has granted the FTC the authority to prescribe
trade regulation rules and other rules in relation to the FCRA. *See* Pub. L. No. 106-102-113 Stat.
1338 (November 12, 1999).

potential employees. Beal Dep. p.27:16- 29-21.  Based upon her testimony, a description of

ClosetMaid's Disclosure and Pre-Adverse Action procedures is set forth below.

     1.     **ClosetMaid's Systemic Violation Of The FCRA Disclosure  Procedure [§1681b(b)(2)(A)(i) and (ii)]**

As part of its hiring process, ClosetMaid seeks to obtain consumer reports or background

checks on prospective employees from outside the company or so-called "internals", i.e.

employees from within the company being considered for promotion or transfer. Beal Dep., p

29:1-30:25. A consumer report is ordered for virtually all prospective employees. Beal Dep. p.

39:11-14.  Once a prospective employee or "internal" is deemed qualified, then they are given

certain "form" documents that are used to allow ClosetMaid to seek a background check. Beal

Dep., p. 30:3-30:25.   ClosetMaid required prospective employees to complete an "Application

For Employment" (Beal Dep. p.49:10-52:25 and Dep.Ex 6 pp.174-177); a Fair Credit Reporting

Act Authorization Form, " (Beal Dep., p.49:10-52:25, Dep.Ex 6 pp.178); and a "Authorization

To Obtain a Consumer Credit Report And Release Of Information For Employment Purposes".

Beal Dep., p. 49:10-52:25,  Beal Dep. Ex 6 pp.179.

An analysis of these form documents demonstrates the following: 1) ClosetMaid used

multiple forms, rather than a simple, single page form to disclose that a consumer report may be

obtained, (Compare Beal Dep.Ex 6 pp.178 and 179); 2) One of the authorization forms also

incorporates a "Release" that would immunize ClosetMaid for any liability in connection with

accessing that consumer report. Beal Dep.Ex 6,  p179.  That release provides as follows:

I hereby release ClosetMaid, and its agents, officials, representatives, or assigned

---

[5] The deposition which is  attached as App.Ex. G also contains certain excerpted exhibits from the deposition.

agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release. You may contact me as indicated below. I understand that a copy of this authorization may be given at any time, provided I do so in writing.

(Id.); 3) One page of the application is entitled "CLOSETMAID Fair Credit Reporting Act Authorization Form." Beal Dep.Ex 6, p.178. This page misrepresents a prospective or current employee's rights under the FCRA in stating, "I understand that, pursuant to the Fair Credit Reporting Act, if any adverse action is to be taken upon this consumer report, a copy of the report and a summary of the consumer's rights will be provided to me *if requested." Id*. (emphasis added). The FCRA requires any person procuring a consumer report to *automatically* provide that consumer report and a summary of FCRA rights to the prospective or current employee if adverse action would be taken based in part on the report, consumers are not required to request it. 15 U.S.C. § 1681b(b)(3).

These application and authorization forms were standardized throughout the company. Beal Dep. 113:19-121:1; Dep Ex. 6, p 171-18-; Ex. 7 and Ex.10-15. As part of the discovery process, the Parties agreed that ClosetMaid would produce exemplars of its application forms from its business locations around the country. Beal Dep. 13:19-114:4.[6] Ms. Beal identified 5 exemplar files that had been gathered from its different locations. Beal Dep. 115:6-121:3; Dep. Ex. 10-14. These exemplar files are substantially identical to the forms set forth as part of ClosetMaid's Hiring Procedural Manual. As Ms. Beal testified, these forms included an FCRA

---

[6]        In an effort to reduce the burden of producing all relevant personnel hiring files, the Parties agreed that in lieu of producing files at this juncture, that ClosetMaid would produce exemplar files and would undertake to calculate the number of persons within certain categories.

9

authorization form, but she said other FCRA forms are still in the files and were not produced as part of the exemplars. Beal Dep. pp. 114:15-22. The FCRA authorization forms that were included with the exemplars included a waiver and release which purports to release not only ClosetMaid from all purported liability, but also its parent company Emerson Electric and its agents, etc. Beal Dep. Ex. 10, p.285; Ex. 11,p.291; Ex.12, p. 309; Ex.13; p.424 and Ex. 14, p. 8.

Ms. Beal testified that as part of the discovery in this action, she and her staff conducted an examination to determine the number of persons who applied to ClosetMaid going back to the year December 1, 2006.  Beal Dep. App.Ex. 6, pp. 96:1- 113:11 and Dep.Ex.9.  This study confirmed that at least 4,141 persons filled ClosetMaid's application and authorization forms by which they purportedly consented to ClosetMaid's accessing a consumer report about them. Beal Dep. pp.  96:16-110:19;  Dep. Ex. 9, [Col. 1] 1494 + [Col. 2] 299 + [Col.3] 2348 = 4,141). However, the number of such persons may well be more than 2348 because ClosetMaid has records indicating that that they had 6769 persons they classified as Candidates and 4679 classified as Applicants for positions. Beal Dep. pp. 101:22-102-5;  Ex.  9.[7]  Many of these persons may also have completed ClosetMaid's forms and provided a purported authorization that ClosetMaid could procure a consumer report about them. Beal Dep. pp. 102:14-103:23.   As Ms. Beal explained, whether these persons actually executed ClosetMaid's purported FCRA forms could be determined by reviewing their files.  Beal Dep, p. 103:18-23.

---

See App. Ex.  H Stipulation.  In the event a class is certified, the Parties have agreed to undertake specific class identification at that time.

[7] A Candidate was considered someone who may not be qualified for the position, but who nevertheless applied. Beal Dep. pp. 101:22-103:23.  By comparison, an Applicant would be

**2.      ClosetMaid's Systemic Violations Of The FCRA Pre-Adverse Action Procedure [§ 1681b(b)(3)]**

Ms. Beal testified to ClosetMaid's policies with respect to using consumer reports once they were procured.  Beal Dep. p. 63:4-67:12.  She stated that, ". . . the recruiter reviews the document and determines if there are any issues." Beal Dep. p. 63:7-13.

ClosetMaid created a written standard procedure for recruiting employees.  Beal Dep. p. 40:1-6.  According to ClosetMaid's policies, once ClosetMaid has received all application forms including the two separate FCRA disclosure forms, its human resources personnel begin review of the information. Beal Dep. pp 61:6-84:4; Ex. 6 pp. 167-168. They base hiring decisions on the following criteria: 1) references; 2) past employment history; 3) education; and 4) background check results. Beal Dep.Ex.6, pp. 168.  Thus, all hiring decisions are "based whole or in part" on the results of the consumer report obtained by the company.

Ms. Beal further testified that a prospective employee would be subject to disqualification if, for example, the report indicated a bad driving record and the persons was seeking a truck driver job; if the report indicated a criminal background and the person was seeking an office job; or if the report indicated a potentially poor credit history and the person was seeking a sales person's position. Beal Dep. p. 63:4-64:22.

Similarly, ClosetMaid's application forms demonstrate that ClosetMaid was concerned about prospective employees' criminal histories.  The standard form application asked the following question:

---

a person who was qualified and applied. *Id.*  Whether either a Candidate or an Applicant

> "Have you ever been convicted of or pleaded guilty or Nolo Contendre (no contest or an Alford plea) to any felony?"   ___yes ___no (The fact you have been convicted of a crime will not automatically disqualify you from further consideration for employment.) If "yes" please describe in detail and attach to application.

These policies and practices, therefore, indicate that ClosetMaid was intending to consider disqualifying employees with criminal histories and other credit or otherwise derogatory information in their file.

Despite ClosetMaid's concerns about criminal histories, credit histories and driving records of prospective employees, ClosetMaid did not follow the FCRA mandated procedure of sending a Pre-Adverse Action Notice to numerous consumers with derogatory information in their reports who ClosetMaid ultimately determined not to hire.  In her deposition, Ms. Beal explained that approximately 300 persons had been identified by her and her staff as having completed ClosetMaid's application and consent forms as to whom background checks were procured and who were not hired. Beal Dep. p. 107,  Ex 9 .  Plaintiff obtained the files of these 300 or so persons. Based upon an examination of these files, it was determined ClosetMaid had obtained consumer reports containing potentially adverse information, i.e. negative credit, criminal or driving record histories with respect to at least 60 of these persons.  These same files demonstrate ClosetMaid did *not* send any FCRA "pre-adverse action" notice to these 60 persons as required by 1681b(b)(3) of the FCRA.  App.Ex. I, Declaration of Christopher North.

Indeed, ClosetMaid's Human Resource Recruiting procedure instructs ClosetMaid employment recruiters to immediately send a "Thanks But No Thanks" letter if a background check uncovers disqualifying information:

---

exececuted and FCRA form could be determined by that person's file. *Id.*

> If any of the Reference Processing results in the disqualification* of a candidate, notify the Hiring Manager immediately. Remove the candidate from the Red Folder status and send a TBNT letter. File in the front TBNT files.
>
> *If the disqualification of the candidate is the result of information received from a third party (i.e. Accurate Background Check), the Human Resources Representative must personally send a TBNT in accordance with the (FCRA) Fair Credit Reporting Act. *(See attachment 5.7.3).*

Beal Dep., Ex.6 p.168. The term "TBNT" is defined to mean "Thanks But No Thanks". Beal Dep., Ex.6 p.164. Beal did describe a policy whereby once disqualifying information is received from a consumer reporting agency, ClosetMaid first sends them a copy of the report with a letter. Beal Dep. p. 67:13-20. The letter purportedly tells the prospective employee that he or she has 5 days *from the date of the letter* to understand information in the report and to address it with the company. Beal Dep. p. 6:13-70-10. Once 5 days from the date of the letter has expired, the company, according to its policy, is to then send a second letter notifying the prospective employee that they have been rejected. Beal Dep. p. 6:13-70-10. However, as explained above, 5 days from the date of the letter is insufficient time to address disputes with the company or the consumer reporting agency before the adverse action is taken.

ClosetMaid has identified only three (3) persons who ever received these so-called "TBNT" letters. App.Ex. J, ClosetMaid's Response To First Set Of Interrogatories, No 1. In truth, the course of action taken by ClosetMaid in most instances where derogatory information was evident in a report was more pernicious. As stated, at least 60 persons had disqualifying information in their consumer report, yet ClosetMaid based its hiring decision on these reports, but never even sent these persons any pre-adverse action notice so that these persons would be aware of potentially harmful information in their consumer file maintained by the consumer reporting companies used by ClosetMaid.

13

### C.  The Representative Plaintiff Was Subject To ClosetMaid's Illegal Procedures

Regina C. Reardon applied for a job with ClosetMaid on December 13, 2006.  Beal Dep. p.122-123.  As part of the application process, she was required to execute *two different* forms which purport to authorize ClosetMaid to procure a consumer report about her. Beal Dep. 122:12-125:8, Ex. 15 pp. 209 and p.227.  Initially, she was required, as a condition of being considered, to sign a form entitled "Authorization To Obtain A Consumer Credit Report And Release Of Information For Employment Purposes". Beal Dep. 122:12-125:8, Ex. 15 pp. 209. The fourth paragraph of the one page authorization provides:

> "I hereby release ClosetMaid, and its agents, officials, representatives or assigned agencies, including officers, employees or related personnel, both individually and collectively, from any and all liability for damages of whatever kind, which may at any time result to me, my heirs, family or associates, because of compliance with this authorization and request to release."

She was also required to execute a form entitled "Notice Of Intent To Obtain A Consumer Credit Report." Beal Dep. 122:12-125:8, Ex. 15 pp. 227.  This document misrepresented Ms. Reardon's rights under the FCRA in telling her "I understand that, pursuant to the federal Fair Credit Reporting Act, if any adverse action is to be taken based upon this consumer report, a copy of the report and a summary of the consumer's rights will be provided to me *if requested."* (emphasis added). As explained above, if adverse action would be intended based in whole or in part on information in a consumer report, the company must automatically provide the applicant a copy of the report and a notice of FCRA rights in a "pre-adverse action" letter. Ms. Beal knew about this requirement, but nevertheless instituted this form requiring the consumer to make the request. Beal Dep. 126:6-127:20.

14

After obtaining the completed application packet, ClosetMaid procured a consumer report from a credit reporting agency about Ms. Reardon. Beal Dep. 128:6-8. The report contained potentially disqualifying information about Ms. Reardon. Beal Dep. 128:6-8. ClosetMaid prepared a letter to Plaintiff dated December 18, 2006 which enclosed a copy of the report and further stated:

> the company may decide not to offer you the position you applied for based on (sic) whole or in part upon the information in this (enclosed) report. Enclosed is a summary of your rights under the Fair Credit Reporting Act. The company will *wait five business days from the date of this letter before it makes a decision on your application.*

Beal Dep. Ex.15, p. 216. The company did not even wait 5 business days from the date of the letter, let alone the 5 business days from the receipt of the letter by the consumer that is minimally required by the FCRA. December 18, 2006 was a Monday. App.Ex  K; a December 2006 calendar. Subsequently, ClosetMaid composed a letter to Plaintiff dated December 22, 2006 stating that the company "has now decided not to offer you the position you applied for based in whole or in part upon this consumer report." Beal Dep. Ex. 15, p. 217. ClosetMaid composed the letter on Friday, the <u>fourth</u> business day after Monday December 18, 2006. Plaintiff did not receive the December 18, 2006 letter from ClosetMaid until Friday December 22, 2006.  Beal Dep. Ex. 15, p. 229.  By the time Ms. Reardon received this purported pre-adverse action notice, ClosetMaid had already decided not to hire her and reduced the decision to writing in its second form letter.  Beal Dep. 128:6-8; Dep.Ex 15 p. 217.  As evidence of the day Ms. Reardon received the first  letter, see her email to ClosetMaid dated Friday December 22, 2006 at 7:30pm. Beal Dep.Ex. 15, p. 229.

As with other class members who did not receive a required "pre-adverse action",
likewise Ms. Reardon was not provided sufficient notice to address the consumer report with
ClosetMaid or with the consumer reporting agency who reported it.   As it turned out,
information in the consumer report was inaccurate and should not have been reported by the
credit reporting agency.   Upon dispute by Ms. Reardon, the credit reporting agency
immediately removed the inaccurate, derogatory information.   This fact was irrelevant to
ClosetMaid since they had determined not to hire her based upon her consumer report well
before she was notified of the derogatory information.

### D.      The Class Claims And The Proposed Classes

The FAC asserts four causes of action under the FCRA.  FAC at ¶¶ 51-70. Counts I and
II allege separate and distinct violation of under 15 U.S.C. §1681b(b)(2)(A).  Count I alleges that
§1681b(b)(2)(A) was violated because ClosetMaid failed to make the required clear and
conspicuous disclosure in a document that consist solely of the disclosure. FAC at ¶¶ 51-70.
Count II alleges that §1681b(b)(2)(A) was violated because ClosetMaid impermissibly procured
a consumer report without the proper authorization.

Counts III and IV allege  violations of  §1681b(b)(3)(A)(i) and  §1681b(b)(3)(A)(ii) in
that ClosetMaid failed to provide a copy of a consumer report (Count III) and a Summary Of
Rights (Count IV) at least 5 days before taking an adverse action. FAC ¶¶ 61-70.

Based upon these allegations and the record evidence garnered from discovery, the
Representative Plaintiff seeks certification of the following Class and Sub-Classes pursuant to
Fed.R.Civ.P23(a) and (b)(3) on behalf of:

### The Disclosure Class (Count I)

16

All employees or prospective employees, applicants or candidates of ClosetMaid residing in the United States (including all territories and other political subdivisions of the United States) who within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action, executed ClosetMaid's forms purporting to authorize CloseMaid to procure a consumer report about them.

### The  Disclosure Sub-class (re: Count II)

All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants and who executed ClosetMaid's forms purporting to authorize ClosetMaid to procure a consumer report about them, within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action.

### The Pre-Adverse Action Sub-Class (re: Counts III and IV)

 All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report obtained by ClosetMaid which contained any negative (derogatory) credit history, driving record, public record criminal arrest, charge or conviction, civil judgment, bankruptcy or tax liens, regarding such employee or prospective employee within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action and for whom Defendants did fail to provide that applicant a copy of their consumer report and/or FCRA summary of rights at least five business days before the employee or prospective employee was notified that ClosetMaid may take adverse action.

## II.    LEGAL ARGUMENT REGARDING CLASS CERTIFICATION

Class certification requires a representative plaintiff to establish the four requirements of Fed.R.Civ.P. 23(a) and two of the requirements of Rule 23(b).  *See e.g. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997); *In re: Prudential Insurance Company of America Sales Practice Litigation,* 148 F.3d 283, 308-309 (3rd Cir. 1998); *In Re Community Bank of Northern Virginia,* 418 F.3d 277, 302 (3d Cir. 2005); *Zeno v. Ford Motor Company,* 238 F.R.D. 173, 183 (W.D. Pa. 2006) and *Jordan v. Commonwealth Financial Systems,* 237 F.R.D. 132 (E.D. Pa.

17

2006). (certifying FDCPA claims).

Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class.  *See* Fed.R.Civ.P. 23(a).  Rule 23(b)(3) further requires that: (5) questions of law or fact common to all class members predominate over individual issues, and (6) that the class action mechanism be superior to other available means of adjudicating the controversy. *See* Fed.R.Civ.P. 23(b)(3).

Federal courts routinely certify claims that arise from standard form contracts, documents and standardized conduct.[8]  This principle of class action law applies equally as well in the realm of FCRA class actions.[9]  As fully developed below, this case fits within this genre of cases.  The

---

[8]   *See Allapattah Services, Incorporated v. Exxon Corporation*, 333 F.3d 1248, 1261 (11th Cir. 2003) (certifying breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers"); *Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32, 39-42 (1st Cir. 2003) (certifying breach of contract claim based on standard form mobile phone contract and alleged breach thereof in charging for incoming calls); *Zeno v. Ford Motor Company*, 238 F.R.D. at 183; *Steinberg v. Nationwide Mutual Insurance Company*, 324 F.R.D. 67, 79 (E.D. N.Y. 2004) (certifying breach of contract claim involving materially similar automobile insurance contract and a Nationwide's common practice of taking "betterment" deductions on claims under those insurance contracts); *Winkler v. DTE, Inc.* 205 F.R.D. 235, 243 (D. Az. 2001) (certifying breach of contract claim based on standard purchase contracts of used car dealer and overcharges of official registration fees); *Kliener v. First National Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (citations omitted).

[9]   *Summerfield v. Equifax Info. Services LLC*, 264 F.R.D. 133, 136 (D.N.J. 2009); *Chakejian v. Equifax Information Services*, LLC, 256 F.R.D. 492 (E.D Pa. 2009); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa. 2005); *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008).

Rule 23 requirements are satisfied.

### A.       The Requirements of Fed.R.Civ.P. 23(a) Are Satisfied

### 1.       The Defined Class is Sufficiently Numerous

"The Court must find that the class is 'so numerous that joinder of all members is impracticable.'" *Prudential,* 148 F.3d at 309, citing Fed.R.Civ.P. 23(a).  "'Impracticable' in this context, is not to be confused with impossible.  Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be 'difficult' or 'inconvenient.'" *Steinberg*, 224 F.R.D. at 72 (citation omitted).

The determination as to whether joinder is impracticable focuses on several factors as explained in 1 Newberg on Class Actions, § 3:6 (4th Ed.):

> . . . number is only one of several considerations. Apart from class size, factors relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. (footnotes omitted)

Thus, citing and relying on *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.,* 43 F.R.D. 452, 463 (E.D. Pa. 1968), Newberg further explains:

> In the final analysis, the court should take the kind of common sense approach that was surely contemplated by the drafters of the rule. This approach is typified by the court in Philadelphia Electric Co. v. Anaconda American Brass Co. in which the court rejected the defendants' contention that one of the plaintiff classes which had 25 members failed to meet the Rule 23(a)(1) prerequisite: "While 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits if one will do."

*Id.* (footnote omitted). Courts, therefore, have found that a class with less than 60 members meets the Rule 23(a)(1) requirement. *Johns v. DeLeonardis,* 145 F.R.D. 480, 483 (N.D. Ill. 1992*)*(A class of Gypsies and subclass of 25 female Gypsies were certified in an action against police officers alleging unlawful searches and invasions of privacy during a raid of a Chicago Gypsy council meeting.); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62, 7 Fed. R. Serv. 3d 1325 (N.D. Ill. 1986*)*(29 members in securities class).[10]  Here, the size of the class member's individual claim is small and the class members are geographically dispersed across the United States.

Representative Plaintiff has submitted evidence with respect to the Class and Sub-classes which conclusively establishes numerosity: 1) the Disclosure Class encompasses at a minimum 4,141 consumers ( See Beal Dep. Ex. 9, [Col. 1] 1494 + [Col. 2] 299 + [Col.3] 2348 = 4,141) , and as many as many as 6769 consumers; 2)  the Disclosure Sub-class includes at least 1,793 persons (Beal Dep. Ex. 9, [Col. 1] 1494 + [Col. 2] 299= 1793; and  3) The Pre-Adverse Action Sub-class includes at least  60 persons. App.Ex. I North Declaration.[11]

---

[10]     *See also Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275-76 (10th Cir. 1977) (41-46 class members sufficiently numerous); *Arkansas Educ. Ass'n v. Bd. of Educ., Portland Ark. Sch. Dist.,* 446 F.2d 763, 765-766 (8th Cir. 197*1)* (20 class members); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967*)* (18 class members); *Colston v. Maryland Cup Corp.,* 18 FEP Cases 83, 85 (D.Md.1978*)* (25 members); *Crenshaw v. Maloney*, 13 FEP Cases 154, 155 (D.Conn.1976) (16 class members)*.*

[11]     These numbers are derived from the aforementioned chart (Beal Dep.Ex. 9). Column 1 indicates the number of employees who were hired and had a consumer report pulled resulting in 1494 persons. Column 2 indicates the number of persons who were not hired but as to whom a background check was performed resulting in a total of 299. Added together these columns result in a total of 1793 persons. Column 3 represents the number of persons who completed and application and the FCRA Disclosure forms, but as to whom no consumer report was pulled. These persons are properly included in the Disclosure Class because ClosetMaid violated the Disclosure Provision "requirement" as to these persons.  As explained, the FCRA allows the requestor to procure a "consumer report" at any time, provided they have the requisite written consent. Since  a complete and final review of all of ClosetMaid's files was not

2.     **The Commonality Requirement is Satisfied Because the Claims Arise From the Application of Identical Statutory Provisions to Standardized Forms and Conduct**

The commonality requirement set forth in Rule 23(a) is satisfied if the named Plaintiff shares at least one question of fact or law with the grievances of the prospective class. *Baby Neal by and For Kantor v. Casey,* 43 F.3d 48, 56 (3rd Cir. 1994) (citations omitted). The commonality requirement "is not a high bar." *Chiang v. Veneman,* 385 F.3d 256, 265 (3rd Cir. 2004); *see also Baby Neal,* 43 F.3d at 56 ("Because the requirement may be satisfied by a single common issue, it is easily met ....."). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Common nuclei of fact exist where the defendant has engage in standardized conduct towards members of the proposed class.

Commonality is "easily met" here.  *See e.g. Allapattah Services,* 333 F.3d at 1261 (commonality met in breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers"); *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 288-289 (E.D.Pa. 2003) (commonality met in breach of express warranty claim where Mercedes equipped vehicles with Flexible Service Systems but did not warn against use of conventional motor oil); *Seidman v. American Mobile Systems, Inc.,* 157 F.R.D. at 360 (allegations of common course of conduct by Defendant satisfied commonality and predominance).

This commonality principle applies under the FCRA. *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 at *4:

---

undertaken pursuant to a Stipulation of the Parties ( App.Ex. H) it is believed that additional potential class members could be identified as part of the class identification process if the

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a) (2)." *Keele*, 149 F.3d at 594. A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct towards members of the proposed class." *Id* **\*4** Plaintiffs allege that the form of Equifax's standard file disclosures to class members, all of whom had delinquent Sherman accounts, violated the FCRA. Equifax's uniform use of the "Date of Last Activity" field to convey dates of first delinquency constitutes a common nucleus of operative fact giving rise to the class claims. The proposed class thus satisfies the commonality requirement of Rule 23(a)(2).

*See also Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. at 498.

Here, the questions of law and fact common to the Classes include, but are not necessarily limited to the following:

(A)     Whether Defendant violated §1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure;

(B)     Whether the Defendant's use of two different authorization forms for procuring a consumer report violates §1681b(b)(2)(A);

(C)     Whether misrepresenting a prospective or current employee's rights under the FCRA in the  disclosure violates  §1681b(b)(2)(A);

(D)     Whether Defendant violated  §1681b(b)(2)(A) by failing to make the required disclosure "*in a document that consists solely of the disclosure*";

(E)     Whether Defendants violated  §1681b(b)(2)(A) by using the FCRA disclosure and authorization form to obtain a Release and Waiver of Rights;

(F)     Whether Defendant violated  §1681b(b)(2)(A) by procuring a consumer report in the absence of providing the legally mandated disclosure to consumers;

(G)     Whether Defendant failed to provide each employee/applicant with potentially

proposed Class and Sub-classes are granted class certification.

derogatory information in a consumer report, a copy of their consumer report at

least five business days before it took an adverse action based upon the consumer

report;

(H)     Whether Defendant failed to provide each employee/applicant a copy of their

written notice of FCRA rights at least five business days before it took an adverse

action based upon the consumer report; and

(I)      Whether Defendants acted willfully in disregard of the rights of the consumer

Crucially, these common questions can be resolved with reference to standardized

conduct and documents.  The claims of all class members derive from the same standard form

disclosure/authorization and the same procedures implemented by ClosetMaid. The commonality

requirement is satisfied as more fully developed in the demonstration of "predominance" below.

*See Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. at 497.

> **3.     The Typicality Requirement is Satisfied Because the Representative
> And Class Claims Arise From The Same Course of Conduct**

Rule 23(a) requires that the claims of the representative parties be "'typical' of those of

the class. The question of typicality in Rule 23(a)(3) is closely related to the preceding question

of commonality.  Even when there are actual differences between the representative parties and

the rest of the class, a proposed class will meet Rule 23(a)(3) requirements if "the claim arises

from the same events or practice or course of conduct that gives rise to the claims of the class

members, and if it is based on the same legal theory." *Grasty v. Amalgamated Clothing and

Textile Wkrs. Union, etc.* 828 F.2d. 123, 130 (3d Cir. 1987) (citing Newberg, Class Actions,

§3.15), *cert.denied,* 484 U.S. 1042 (1988); *see also Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.

1988). As the Third Circuit has indicated: "Rule 23 does not require that the representative

23

Plaintiffs have endured precisely the same injuries that have been sustained by class members, only that the harm complained of be common to the class." *"Hassine,* 846 F.2d at 177 (emphasis omitted).

Typical, however, does not mean identical, and factual homogeneity between representative Plaintiff and all Class members is not required. *Baby Neal,* 43 F.3d at 57, *In re Chambers Dev. Co. Sec. Litig.* 912 F. Supp. 822, 834 (W.D.Pa. 1995) ("'typical' does not mean identical"); *In Re Phar-Mor,* 875 F.Supp. 277, 279 (W.D. Pa. 1994)(interests of Plaintiffs and proposed class need not be identical). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58. *Safran v. United Steelworkers of Am.,* 13F.R.D. 397, 402 (W.D.Pa. 1989) (Cohill, J.).   *See also Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 401 (D.N.J. 1990) ("focus is on the Defendant's behavior . . .and on whether the class can point to the same general, over-all course of conduct" in determining typicality); *In re IGI Sec. Litig.,* 122 F.R.D. 451, 456 (D.N.J. 1988) ("[I]t is the Defendant's course of conduct, in this case the release to the press of the allegedly fraudulent and misleading statements, upon which the court must focus in determining typicality."). Typicality is usually present in "cases challenging the same unlawful conduct which affects both the named Plaintiffs and the putative class ...." *Baby Neal,* 48F.3d at 58.  Once again, "the threshold for establishing typicality is low." *Seidman,* 157 F.R.D. at 360.

Here again, the Representative Plaintiff asserts claims arising from the same forms, practice and course of conduct that gives rise to the claims of all class members.  The Representative and the putative class were subject to the same course of conduct of ClosetMaid.

24

Typicality has been found in other similar FCRA actions. *Gillespie*, 2008 WL 4614327 at *4; *Chakejian,* 256 F.R.D. at 498.

> **4.      Adequacy of Representation is Satisfied Because No Conflicts Exist And Class Counsel Are Experienced**

The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named Plaintiffs' interests are sufficiently aligned with the absentees,' and it tests the qualifications of the counsel to represent the class." *In re Community Bank,* 418 F.3d at 303 (quoting *In Re Gen. Motors Corp., Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 800 (3d Cir. 1995) ("G.M. Trucks")). *Hoxworth,* 980 F.2d at 923 (citation omitted). *See also Wetzel v. Liberty Mutual Insurance CO.,* 508 F.2d 239, 247 (3rd Cir. 1975); *Chambers,* 912 F.Supp. at 834-35. Counsel for the named Plaintiff must be experienced and qualified and generally be able to conduct the litigation. *See, e.g. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d. 154, 185 (3d Cir. 2001). *Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. at 498.

Counsel for the named Plaintiff in this case are experienced in handling class action lawsuits and have competently handled many cases in this court and elsewhere. *See* Declarations of James M. Pietz, Christopher Colt North and Leonard A. Bennett, filed to be filed in support of the Motion for Class Certification. App.Ex. L, M and N respectively. Moreover, there is no known conflict between the Representative and members of the putative class. The claims of the Representative and Class Plaintiffs are adequate.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied**

**1.      Common Questions Predominate Because The Class Claims Arise from A Common Nucleus of Fact and Involve Overriding Common Questions**

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997), the Supreme Court noted that .  "[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Id.*, 521 U.S. at 625. *Allapattah Services*, 333 F.3d at 1260-1261, *quoting In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 262 (D. D.C. 2002); *Chakejian, LLC,* 256 F.R.D. at 500.

The elements of Plaintiffs's substantive claims are subject to proof by generalized, common evidence.

**a)      The Disclosure Class Claims Are Subject To Common Proof**

Counts I and II of the FAC which allege violations of the requirements in the Disclosure Provision includes the following elements of proof:

(1) Is ClosetMaid a "person" within the meaning of the FCRA who was seeking consent to obtain a consumer report for employment purposes?

(2) If so, did ClosetMaid provide a clear and conspicuous disclosure in a document consisting solely of the disclosure?

(3) Based upon the disclosure, did ClosetMaid receive a written consent from the class member such that ClosetMaid maintains an illegal right of access to the class member's consumer report in its files?

(4) If (1) to (3) above are satisfied, did ClosetMaid act "willfully" within the meaning of 15 U.S.C. § 1681n(a)(1)?

As demonstrated above in Section II.B.1., these elements are subject to common, generalized proof. *First,* ClosetMaid is a "person" within the meaning of the FCRA who sought a right of procurement to Class Member's private information in a consumer report. The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. 15 U.S.C. § 1681a(b). ClosetMaid concedes it is a corporation and, therefore, a "person". Moreover, there is no dispute that the reports were to be sought for employment purposes. *Second,* ClosetMaid's standardized forms demonstrate on their face that they violate the FCRA. By using these illegal forms, ClosetMaid obtained illegitimate rights of access to Plaintiff's personal information. *Third,* based upon these illegal disclosures, ClosetMaid obtained written consents from the consumer. These written consents are maintained in ClosetMaid's files.

Finally, common evidence can be adduced at trial demonstrating that ClosetMaid acted willfully within the meaning of the FCRA. The Supreme Court decision in *Safeco Ins. Co. v. Burr,* 551 U.S. 47 ( 2007) demonstrates that element of willfulness is subject to common, generalized evidence. *Safeco* construed the meaning of "willfully" in 15 U.S.C. § 1681n. 551 U.S. at 52. The Court stated that, "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well". *Id. at* 68. Therefore, willfulness can be established either by proof that the defendant actually knew that his conduct violated federal law or by reckless disregard of that fact. In other words, *Safeco* followed those circuit courts of appeal who had applied the"knowingly/recklessness" standard under the FCRA. *See Id* at 58, fn. 8 citing *Cushman v. Trans Union Corp*., 115 F.3d 220, 227 (3d Cir. 1997) as adopting the "reckless disregard"

27

standard. Courts, prior to *Safeco,* who applied a "knew or should have known" standard found that such proof may be made by demonstrating that the defendant adopted a policy that was in contravention of a person's rights under the Act. *Cushman,* 115 F.3d at 227. ("If . . . TUC adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights, she may be awarded punitive damages.)  To act "knowingly" differs from acting "recklessly". To act "knowingly" has been defined to mean that the act (or omission) was done voluntarily and purposefully, not because of  mistake or accident." *See e.g. United States v. Ramsey,* 785 F.2d 184 (7th Cir. 1986). It is  commonly understood meaning is "an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *In Re Lee Memory Gardens, Inc.,* 333 B.R. 76 (M.D.N.C. 2005) citing *Black's Law Dictionary (*8th Ed.  2004). The *Safeco* Court did not apply the "knowing" prong of "willfulness", but instead determined that the "recklessness" component of "willfulness" comports with the common law understanding, stating that, "the term recklessness is not self-defining," the common law has  generally understood it in the sphere of civil liability *as conduct violating an objective standard*:  action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." 551 U.S. at 68. Therefore, the applicable standard is whether ClosetMaid knew or a reasonable person in the defendant's position should have known that the conduct at issue was in violation of rights under the FCRA.

Here, the evidence demonstrates that ClosetMaid adopted its procedures either knowing, or being reckless in not knowing, that the procedures violated Plaintiffs rights under the FCRA.

Evidence of ClosetMaid's knowledge or recklessness is generalized and can be adduced on a common basis on behalf of the alleged class. This further demonstrates predominance.

### b) The Pre-Adverse Action Notice Claims Are Subject To Common Proof

The claims asserted in Counts III and IV based the Pre-Adverse Action provision provide for the following elements of proof :

(1)  Is ClosetMaid a "person" within the meaning of the FCRA ?

(2)  If so, did ClosetMaid intend to take an adverse action where derogatory information appeared in a consumer report about a prospective or current employee?

(3)  If (2) is decided in the affirmative, did ClosetMaid provide the consumer a copy of the consumer report at least 5 days after notice that any adverse action might be taken?

(4) If (2) is decided in the affirmative, did ClosetMaid provide the consumer a Summary Of Rights report at least 5 days after notice that any adverse action might be taken ? and

(5) Did ClosetMaid act willfully

The evidence set forth in Section II.B.2 above demonstrates that these elements can be established by generalized evidence. *First,* ClosetMaid is obviously a "person" within the meaning of the FCRA. Whether ClosetMaid is "intending to take an adverse action" when derogatory information is identified in a consumer report is demonstrated by ClosetMaid's policies and procedures. See Section  II.B.2 above. Whether ClosetMaid provided the consumer a copy of the report and a summary of rights can be determined by the consumer's file maintained by ClosetMaid. Finally, as demonstrated above, whether ClosetMaid acted willfully is demonstrated by generalized evidence.

As the court in *Gillespie* observed:

> In sum, the outcome of this suit, whatever it may be, will turn on common evidence regarding Equifax's standard file disclosure practice, the legality of that practice, and if illegal whether Equifax's adoption of that standard practice amounted to a willful violation of the FCRA as *Safeco* defines willfulness. It is hard to imagine a case in which the predominance of common over individual issues has been more clearly shown.

*Gillespie*, 2008 WL 4614327 *7.  The same holds true here.  The outcome of this case turns on common evidence regarding ClosetMaid's adoption of its FCRA disclosure and pre-adverse action practices and whether the adoption of those practices amount to a willful violation. This case readily meets the predominance standard

**2.      A Class Action is The Superior Method Of Adjudication Because Individual Litigation Is Not Feasible And The Claims Are Manageable**

As explained by the Third Circuit most recently in *In re Community Bank,* "[t]he superiority requirement asks a district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of "alternative methods" of adjudication.' " 418 F.3d at 277 (quoting *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632 (3d Cir.1996), *aff'd,* 521 U.S. 591 (1997)).  Rule 23(b)(3) also requires that four factors be analyzed to determine whether a class action is superior to other methods of adjudication:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  (D) the difficulties likely to be encountered in the management of a class action.

In this case, all four factors dictate that the only feasible method for adjudication of this case is in the context of a class action.

30

*First*, there is no interest by class members to *individually* litigate. Indeed, a consumer may be economically deterred from seeking redress in an individual action because any potential recovery  would be exceeded by the litigation costs. *See Deposit Guaranty v. Roper,* 445 U.S. 326, 339 (1980). The very purpose of the class action procedure is to allow plaintiffs to pool claims which would be uneconomical to litigate individually. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809  (1985). *Second*, there is no other class litigation against on the claims presented. *Third*, this is a desirable forum for litigating this class action since the Representative Plaintiff resides here and ClosetMaid does business within this forum. *Fourth*, this case presents far less manageability problems than many class actions. It would be unfair and inefficient for each class members to individually appear before a court and prove virtually identical claims. A class action would also foster important public policies. A class action is a benefit to claimants who can share the cost of litigation when their individual recovery is relatively small, as it is in this case.  Here, likewise, absent a class action, most class members could not otherwise enforce their rights.

## IV.    Conclusion

Wherefore it is respectfully requested that this Honorable Court grant Plaintiff's Motion For Class Certification.  A proposed order of Court is attached.

By: Dated: September 13, 2010          Respectfully Submitted:

By:    /s/ James M. Pietz _____

James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
Mitchell Building
304 Ross Street, Suite 700
412-288-4333

31

jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010
*Counsel for the Representative And Class Paintiffs*