# Exhibit A



# Federal Trade Commission
## Protecting America's Consumers

## UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
## WASHINGTON, D.C. 20580

Bureau of Consumer Protection

### June 12, 1998

Richard W. Hauxwell, CEO
Accufax Div., Southwest
P.O. Box 35563
Tulsa, OK 74153-0563

Dear Mr. Hauxwell:

### Re: Sections 604 and 606 of the Fair Credit Reporting Act

This is in response to your letter asking for clarification of sections 604 and 606 of the Fair Credit Reporting Act ("FCRA"). You note that your company is a consumer reporting agency and that you are asking these questions on behalf of your clients. Your questions are addressed below in the order in which you presented them.

*1. Is it safe for us to assume, based on your opinion letter to Mr. Richard Steer, that we can combine the disclosure and release form, which includes applicant identifiers, in one form such as the enclosed sample?*

Section 604(b) of the FCRA requires any employer who intends to obtain a consumer report for employment purposes to disclose this to the applicant or employee (in a document that consists solely of the disclosure) and to obtain the applicant or employee's written permission. As noted in the letter you cited (Steer, 10/21/97), it is our position that the disclosure notice and the authorization may be combined. If they are combined, identifying information (such as date of birth, Social Security number, driver's license number, and current and former addresses) may be included in the form. However, the form should not contain any extraneous information.

While we believe that you may combine the disclosure and authorization (and include identifying information) as you have in the draft form that you included with your letter, we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). We note that no authorization for a waiver is contained in the FCRA; nor does the legislative history show that Congress intended that consumers should be able to sign away their legal rights under the Act.(1) Accordingly, employers and other users of information covered by the FCRA may not require consumers to waive their rights under the law.

*2. Our members would also like further clarification with regard to Section 606 as to when a Summary of Rights should be provided to the applicant. The language of the law is confusing.*

Section 606 of the FCRA mandates that specific procedures be followed when an investi-gative consumer report is requested by an employer or other user who has a permissible purpose to obtain the report. First, Section 606(a)(1)(A) requires any person procuring an investigative consumer report to disclose this fact to the affected consumer not later than three days after the date on which the report was first requested. Second, Section 606(a)(1)(B) requires that the dis-closure include a statement of the consumer's right to obtain additional information and a copy of the summary of consumer rights prescribed by the Commission. Finally, Section 606(b) sets out the information that must be disclosed when the consumer requests a disclosure pursuant to Section 606(a)(1)(B).

The issue that you raise concerns exactly at what point the Commission's summary of rights must be sent. The language of Section 606(a)(1)(B) is not entirely clear in mandating that the disclosure "includes a statement informing the consumer of his

right to request the additional disclosures provided for under subsection (b) of this section [the nature and scope of the investigation] and the written summary of the rights of the consumer prepared pursuant to section 609(c)." As you can see, the reference to the summary of rights comes after a reference to sub-part 606(b), but in a general discussion of the content of the sub-part 606(a)(1)(A) notice.

There are two possible interpretations of this ambiguous language: (1) that Congress in-tended for the summary to be sent with the initial Section 606(a)(1)(A) notice (that an investiga-tive consumer report has been or may be procured); or (2) that Congress intended that the sum-mary be provided with the subsequent Section 606(b) disclosure of the "nature and scope" of the investigation. The Commission's "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA,"(2) states that the summary of rights should be provided with the Section 606(a) notice that an investigative consumer report has been or may be obtained. However, because the statutory language may be interpreted to require that the summary be sent with the subsequent Section 606(b) disclosure, it is unlikely that the Commission's staff would recommend any en-forcement action if the notice is sent with the Section 606(b) notice instead of the Section 606(a) notice.

*3. We would like your opinion regarding end-user organizations which procure criminal and other public record information for employment purposes directly from a federal, state, or county record repository. Would the government repository (agency) providing the information directly to the end-user organization ... requesting the information be considered a consumer reporting agency and subject to the same laws as a privately held consumer reporting agency?*

In general, information that is obtained by an employer directly from a federal, state or county record repository is not a "consumer report" because the repository (such as a courthouse or a state law enforcement agency) is not normally a "consumer reporting agency" and is itself not covered by the FCRA. The attached staff letters (Copple, 6/10/98; Goeke, 6/9/98) discuss this issue in more detail. Therefore, an employer who obtains information directly from a public record source is not subject to the FCRA as to that information. However, because of the fact that information in public record sources may be inaccurate or incomplete, we believe that em-ployers who use this type of information should voluntarily disclose to consumers the nature and substance of any public record information that they rely upon in taking any adverse action. If the information is, in fact, inaccurate or incomplete, the consumer may then take steps to correct the problem.

I hope that this information is helpful to you. The views that are expressed above are those of the Commission's staff and not the views of the Commission itself.

Sincerely,

William Haynes
Attorney
Division of Credit Practices

1 The FCRA is part of the Consumer Credit Protection Act, 15 U.S.C. § 1601. We note that the Truth In Lending Act, which is Subchapter I of the Consumer Credit Protection Act, does permit consumers to waive certain rights.

2 The Commission's notice may be found at 16 C.F.R. § 601, Appendix C (1997).

Last Modified: Wednesday, 28-Nov-2007 17:52:17 EST