# Exhibit C



**Federal Trade Commission**
Protecting America's Consumers

# UNITED STATES OF AMERICA
# FEDERAL TRADE COMMISSION
# WASHINGTON, D.C. 20580

Division of Credit Practices

William Haynes
Attorney

**December 18, 1997**

Harold R. Hawkey, Esq.
Employers Association of New Jersey
799 Bloomfield Avenue
Verona, New Jersey 07044-1399

## Re: Sections 604(b)(2), 604(b)(3), 606, and 615(a) of the Fair Credit Reporting Act

Dear Mr. Hawkey:

This responds to your letters of June 27, 1997, and July 11, 1997, concerning the obligations of employers to consumers (applicants for jobs or current employees) under a number of the provisions of the Fair Credit Reporting Act (FCRA) as recently amended by Congress. The amendments went into effect on September 30, 1997.

## 1. Disclosure Requirements Of Section 604(b)(2) And Section 606

The first issues that you raise in your June 27 letter concern the relationship of Section 604(b)(2), which sets out disclosures required of parties who procure consumer reports for employment purposes, to Section 606, which provides special procedures that must be followed when "investigative consumer reports" are requested. Section 604(b) is a general provision that applies to all employers who use consumer reports. Section 606 applies only to employers who obtain a special type of consumer report called an "investigative consumer report." An "investigative consumer report" is defined by Section 603(e) as a consumer report in which information is gathered by interviews with a consumer's neighbors, friends, or others who have knowledge of the consumer. The information gathered must involve a consumer's character, general reputation, personal characteristics, or mode of living.

Concerning the timing of the disclosures, you note that Sections 604(b)(2)(A) and 606(a)(1) set forth different time frames, the former being "any time before the report is procured" and the latter being "not later than three days after the date on which the (investigative) report was first requested." You state your belief that the terminology used (the report "may be obtained" in Section 604(b)(2)(A) or "may be made" in Section 606(a)(1)) is clumsy, especially in the case of an investigative consumer report disclosure already ordered within the prior three days. You ask, "What is the latest point at which disclosure may be made?"

In our view, the Section 604(b) disclosure must be made before any consumer report -- including an investigative consumer report -- is requested for employment purposes. The Section 606 disclosure may be made up to three days after the request. (1) The "may be made" terminology is designed to allow the report user to make either or both of those disclosures at any time prior to the required date.

Concerning the <u>form</u> of the disclosures, you quote Section 604(b)(2)(A)'s requirement that the disclosure mandated by this section be made in a "document that consists solely of the disclosure" and ask whether the practice that is currently common in the industry -- including in the employment application a provision in which the employer discloses that a consumer report may be requested and obtains the consumer's written consent -- may continue now that the amendments have gone into effect. In our view, an employer may continue to include in the employment application a disclosure that a consumer report may be procured and provide a place for the consumer's written consent.(2) <u>However</u>, an employer that follows this procedure must also clearly and conspicuously disclose in a completely <u>separate</u> document that a consumer report may be obtained for

employment purposes, as required by Section 604(b)(2)(A).(3)

## 2. Actions Required By Section 604(b)(3) Before Adverse Action Is Taken, And By Section 615(a) After Adverse Action Is Taken

The other issues raised in your letters concern (1) Section 604(b)(3), which requires an employer, before taking "any adverse action based in whole or in part on [a consumer] report," to provide to the affected consumer a copy of the report and a description in writing of the consumer's rights under the FCRA; and (2) Section 615(a), which requires certain disclosures to be made after adverse action is taken by any report user.

Your June 27 letter asks how the process of making disclosures before taking adverse action will work in the real world, since employment decisions often involve nothing more than a "yes/no" mental process. In this regard, Section 604(b)(3) must be read in connection with Section 615(a), which requires all those who use consumer reports to provide consumers with an adverse action notice that contains specific information whenever an adverse action is taken based in whole or in part on a consumer report. Employers must comply with both Section 604(b)(3) and Section 615(a), which require disclosures at different times in the hiring process. Section 604(b)(3) requires a disclosure that can be thought of as a "pre-adverse action disclosure." It must be made before the adverse action is taken.(4) The Section 615(a) notice, which is the actual "adverse action notice," must be provided after the adverse employment decision is made.

The wording of Section 604(b) and its relation to Section 615(a) mandate that some period of time elapse between the pre-adverse action disclosure and the employment action that triggers the Section 615(a) adverse action notice. The law, however, does not set forth what specific procedures must be followed by employers. For example, the law is silent as to how long the employer must wait after making the Section 604(b) pre-adverse action disclosure before actually taking adverse action. Employers may wish to consult with their counsel so that they develop procedures that are appropriate, keeping in mind the clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.

Finally, your July 11 letter raises two issues relating to ministerial provisions of Section 604(b) and 615(a). First, you point to the requirement in Section 615(a) that the consumer be informed of his or her right to obtain a copy of the consumer report from the reporting agency when any adverse action is taken. You question whether this makes any sense in light of the fact that the consumer has already received, as required by Section 604(b)(3), a copy of the actual report relied upon in any employment decision. As we have stated in the attached staff opinion letter (Weisberg, 6/27/97),(5) an employer must comply with all the requirements but, in order to minimize confusion on the part of consumers, may note in the Section 615(a) notice that the consumer has already received a copy of his or her report and the summary of consumer rights.

Second, you ask why Section 604(b) requires employers to distribute the FTC-prescribed summary of consumer rights under the FCRA as part of the pre-adverse action disclosure when Section 609(c) requires CRAs to provide the summary to consumers. We believe that Congress required employers to include the summary of rights in the pre-adverse action disclosure along with a copy of the consumer report so that consumers would be fully informed of their rights. Some consumers who receive this disclosure will not request a copy of their report from the CRA. Without the Section 604(b) disclosure, these consumers might never receive the summary of rights.

The above views constitute informal staff opinions and are advisory in nature and not binding upon the Commission. We hope that the foregoing discussion will be helpful.

Sincerely,

William Haynes
Attorney
Division of Credit Practices

## Endnotes:

1. In the case of employment, the investigative consumer report disclosure may only be made after the report is requested if a Section 604(b) disclosure that a consumer report may be obtained has been made before the investigative report is requested and the consumer has provided authorization.

2. This is one way of complying with the separate requirement of Section 604(b)(2)(B) that the consumer authorize the procedure in writing.

3. Nothing else may appear on the document that detracts from the disclosure required by Section 604(b)(2)(A). An employer may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the "separate document" provision of this section. See attached staff opinion letter (Steer, 10/21/97).

4. It must include (1) the consumer report used by the employer, and (2) a description of consumer rights under the FCRA as prescribed by the Commission (to be provided to the employer by the consumer reporting agency that provides the consumer report).

5. As discussed in that letter, the duplication may have some logical basis. Congress intended for consumers to be able to obtain a second copy of their reports when adverse actions are taken in employment situations. Section 615(a)(3)(A) gives each consumer the right to a free report for 60 days after an adverse action. The fact that a rejected applicant receives a copy of the report before the adverse action is taken (as required by Section 604(b)) does not negate his or her right to another free disclosure for a full two-month period. This is a significant benefit because credit files routinely change over time.

Last Modified: Monday, June 25, 2007