# Exhibit
# J



**Ogletree Deakins**

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

Four Gateway Center
444 Liberty Avenue, Suite 400
Pittsburgh, PA 15222-1237
Telephone: 412.394.3333
Facsimile: 412.232.1799
www.ogletreedeakins.com

Phyllis M. Taranto
412.394.3341
phyllis.taranto@ogletreedeakins.com

July 1, 2009

***Hand Delivery***

James M. Pietz, Esquire
Pietz Law Office LLC
Mitchell Building, Suite 700
304 Ross Street
Pittsburgh, PA 15219

> **RE:** *R. Cathy Reardon v. ClosetMaid Corporation, et al*
> *No. 2:08-cv-01730 (U.S. District Court for Western District of PA)*

Dear Mr. Pietz:

Relative to the above-captioned matter, please find enclosed Defendants Emerson Electric Co. and ClosetMaid Corporation's original Answers and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents.

Thank you for your attention to this matter. Should you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Phyllis M. Taranto
Paralegal to Maria Greco Danaher

MGD:pmt

Enclosures

cc:    Maria Greco Danaher, Esquire (w/out encs.)

Atlanta • Austin • Birmingham • Bloomfield Hills • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Greensboro • Greenville • Houston • Indianapolis • Jackson • Kansas City
Los Angeles • Memphis • Miami • Morristown • Nashville • New Orleans • Philadelphia • Phoenix • Pittsburgh • Raleigh • St. Louis • St. Thomas • San Antonio • San Francisco • Tampa • Torrance • Tucson • Washington

7474890.1 (OGLETREE)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. CATHY REARDON, *on behalf of herself and all similarly situated individuals,* | ) ) ) ) | Civil Division |
| | ) | No. 2:08-cv-01730 |
| Plaintiff, | ) ) | Judge Gary L. Lancaster |
| v. | ) ) | |
| CLOSETMAID CORPORATION and EMERSON ELECTRIC CO., | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT CLOSETMAID CORPORATION'S
### ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET
### OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

AND NOW, comes the Defendant, ClosetMaid Corporation (hereinafter "Defendant," "ClosetMaid," or "CMC"), and serves **DEFENDANT CLOSETMAID CORPORATION'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**, as follows:

### GENERAL OBJECTIONS

Defendant makes the following general objections to the Plaintiff's Interrogatories and Requests for Production of Documents. Defendant incorporates by reference these general objections into the Defendant's Answers and Responses to each individual Interrogatory and Request, to the extent applicable, whether or not specifically stated in any individual Answer or Response.

1.    Defendant objects to these Interrogatories and Requests or any specific Interrogatory and Request to the extent that the information sought is not relevant to the issues raised in this action and/or is not reasonably calculated to lead to the discovery of admissible evidence, or that the Interrogatories and Requests are beyond the scope of permitted discovery and/or require Defendants to exceed its obligation under state or federal law.

2.      Defendant objects to any Interrogatory or Request to the extent it seeks discovery of privileged information, including confidential attorney-client communications and/or non-discoverable attorney and/or other work product.

3.      Defendant objects to these Interrogatories and Requests to the extent they seek information that is already in possession of the Plaintiff, or is more readily available to Plaintiff.

4.      Defendant objects generally to any and all Interrogatories and Requests to the extent they seek information concerning the substance of each and every communication or statement concerning general subject matters, date of such communications and/or the names of all participants to such communications, on the grounds that such Interrogatories and Requests are overly broad and unduly burdensome, taking into the account the needs of this case and that the information sought by way of these Interrogatories and Requests could be obtained more easily through other means of discovery.   Without waiving said objection, Defendant will answer these Interrogatories and Requests generally to the extent that its representatives currently can recollect such communications/statements and to the extent the Interrogatories and Requests seek information reasonably calculated to lead to the discovery of admissible evidence.

5.      Defendant objects to these Interrogatories and Requests to the extent that they seek information that is commercially confidential, propriety in nature, constitutes trade secrets or which is protected by the confidentiality and privacy rights of others.

6.      Defendant objects to these Interrogatories and Requests to the extent a full and complete response would subject Defendant to undue burden and expense.

7.      Defendant objects to these Interrogatories and Requests to the extent the general provisions, instructions and definitions set out in the Interrogatories and Requests exceed the scope of, or impose burdens not required by, applicable law.

8.      Defendant objects to these Interrogatories and Requests to the extent that they seek information beyond the relevant time period of this matter.

9.      Answers and Responses to Plaintiff's Interrogatories and Requests are qualified by the objections, whether general or specific, asserted herein.   Answers to Interrogatories and Responses to Requests do not waive objections asserted.

10.      Defendant objects to the Definitions included in Plaintiff's discovery requests to that extent that those Definitions purport to impose duties and obligations beyond those set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, the attorney-client privilege, the work-product privilege, and any other applicable privilege or doctrine, including documents prepared in anticipation of litigation, or otherwise outside the scope of Rule 26 of the Federal Rules of Civil Procedure. Defendant therefore objects to producing any such documents in response to the requests. In the event any privileged document is produced by Defendant, its production is inadvertent and does not constitute a knowing waiver of any privilege.

11.      Defendant provides these Responses to the Request for Production of Documents, and shall produce documents responsive to all non-objectionable Requests, without waiver of or prejudice to its right, at any later time, to raise objections to: (1) the relevance, materiality, or admissibility of the Requests (or any part thereof), or of statements made in this response to the Requests, or of any documents produced pursuant to this response; or (2) any further demand for discovery involving or relating to the matters raised in the Requests.

12.      Defendant objects to divulging any information falling within one of the General Objections set forth above or Specific Objections set forth below.   To the extent any such information is or may be divulged in these discovery responses, the divulging of such information is inadvertent and is not to be deemed a waiver of the objection in question (or any other objection) with respect to the divulged information.

13.      The specific responses set forth below and the production that Defendant undertakes to make pursuant thereto are based upon information now available to Defendant after having searched the files in their possession, custody, or control that reasonably relate to one or more of the specific document requests. Defendant objects to the Requests to the extent they purport to demand production of documents not in Defendant's possession, custody, or control, or require a search of files that do not reasonably relate to one or more of the specific document Requests.   Defendant

- 3 -

reserves the right at any time to revise, correct, add to, supplement, modify, or clarify the specific responses set forth below or the production made pursuant thereto, pursuant to the applicable rules.

## INTERROGATORIES

1.    State the number of and identify all persons who either applied for employment with Defendant or who were existing employees of Defendant and from whom Defendant obtained written consent to obtain a consumer report and as to whom Defendant then procured a consumer report.

ANSWER:
    **Defendant CMC objects to this Interrogatory on the basis that the question is vague, ambiguous, overly broad and unduly burdensome. Subject to and without waiving said objections, all available relevant, responsive records (comprising three applicant files – the only ones to have occurred over the period going back to December 2006) will be provided as Exhibit A, upon execution of a mutually acceptable Confidentiality Agreement.**

2.    State the number of and identify all persons who either applied for employment with Defendant or who were existing employees of Defendant and from whom Defendant obtained written consent to obtain a consumer report, procured a consumer report about them, sent a Pre-Adverse Action Notice to them and then took an adverse action against them.

ANSWER:
    **Please see CMC's Answer to Interrogatory No. 1.**

3.    State how Defendant located the individuals identified in response Nos. 1 and 2 above.

ANSWER:
    **Defendant objects to Interrogatory No. 3 as being vague and ambiguous. Subject to and without waiving said objection, CMC reviewed each and every available applicant file to determine whether credit/consumer reports were requested, obtained, and/or acted upon in each and every case. Exhibit A comprises all relevant responsive documents.**

4.    Identify the person or persons responsible for recommending, determining and overseeing Defendant's compliance with the Fair Credit Reporting Act with respect to the policies, practices and procedures used by Defendant to obtain written consent to obtain a consumer report about employees and to send Pre-Adverse Action Notices.

ANSWER:
    **Jennifer Boring, Human Resource Manager for ClosetMaid.**

5.     With respect to the persons or persons identified above in No. 3 *[sic]*, identify all persons to whom that individual or individuals reports to at Defendant with respect to the policies, practices and procedures used by Defendant to obtain written consent to obtain a consumer report about employees and to send Pre-Adverse Action Notices.

ANSWER:
   **Jennifer Boring reports to Cathy Beal, VP Human Resources, ClosetMaid Corporation.**

6.     State in full detail Defendant's procedure for hiring or screening employees it proposes to hire or retain as employees, including the application process, the interview process, all background checks that are completed, the communication to the applicant of the hiring decision, and all paperwork or documentation that changes hands between Defendant and the applicant from the beginning of the process until the applicant is either hired or rejected for employment?

ANSWER:
   **Defendant objects to Interrogatory No. 6 as being vague, ambiguous, overly broad and unduly burdensome.  Subject to and without waiving said objection, the process for hiring and screening employees generally begins with a job posting.  Company recruiters then screen applicants for minimum criteria based upon the open position. Should applicants possess the minimum qualifications for the position, the most qualified candidates next undergo a phone interview.  Applicants also have an in-person interview prior to being offered a position.  Generally, consumer credit reports are requested prior to the in-person interview.  This process is summarized in a written policy, provided with these responses as Exhibit B, upon execution of a mutually acceptable Confidentiality Agreement.**

7.     If Defendant endeavors to provide five business days advance notice to applicants or employees that the results of their consumer report might disqualify them for employment with Defendant, state why Defendant selected that time period.

ANSWER:
   **The five day notice period was instituted by ClosetMaid as a reasonable time period to provide an opportunity to the applicant to discuss/dispute the report.**

8.     Explain the method or procedure Defendant used to verify that an applicant who was rejected because of information on the applicant's consumer report received a copy of the consumer report and a description in writing of the FCRA rights of the consumer as required by FCRA § 1681 b(b)(3)(A)(i).

ANSWER:
   **Individual CMC Human Resources Recruiters are responsible for providing the required notice to applicants.  Jennifer Boring oversaw this compliance.**

9.      Identify the department(s) or function(s) responsible for determining and overseeing Defendant's compliance with the Fair Credit Reporting Act with respect to the policies, practices and procedures used by Defendant to obtain written consent to obtain a consumer report about employees and to send Pre-Adverse Action Notices, including any procedures required or recommended by related or affiliated companies or entities, such as Emerson.

ANSWER:

The CMC Human Resources Department oversees the Company's compliance with the FCRA.

10.     Identify all policies, practices and procedures that are required or recommended by Emerson for Defendant to follow to disclose that a consumer report might be obtained, to obtain written consent from prospective or current employees to obtain a consumer report, and to send Pre-Adverse Action Notices?

ANSWER:

Emerson does not require or recommend policies for Defendant CMC. To the contrary, Defendant CMC has developed and implemented policies and procedures related to consumer reports, based upon the applicable laws.

11.     Identify Defendant's policies, practices and procedures related to the sharing of consumer reports obtained for employment purposes from a consumer reporting agency with or among affiliates or subsidiaries of Defendant?

ANSWER:
Defendant ClosetMaid does not share consumer reports.

12.     State whether Defendant or any affiliate or subsidiary of Defendant has ever shared a copy of a consumer report that was obtained for employment purposes from a consumer reporting agency with another affiliate or subsidiary of Defendant.

ANSWER:
Defendant ClosetMaid does not share consumer reports.

13.     Identify every consumer reporting agency, including but not limited to LexisNexis, Securint, Express Screening, from whom Defendant obtained consumer reports for employment purposes. Attach a copy of all contracts between Defendant and any such consumer reporting agency.

ANSWER:
LexisNexis; Accurate Background Check; Securint.   Agreements will be attached as Exhibit C, upon execution of a mutually acceptable Confidentiality Agreement.

14.   Identify all persons involved in any way with the application of R. Cathy Reardon for employment with ClosetMaid that is at issue in this matter?

**ANSWER:**
   **Melissa Martell, CMC HR Representative Recruiter; Jennifer Boring.**

15.   With respect to any oral communications received from or sent by ClosetMaid to the Plaintiff, state the date of the communication, describe all actions you took to evaluate, investigate, or otherwise address the matter described in the communication, and identify all persons with knowledge of the communications.

**ANSWER:**
   **Defendant objects to Interrogatory No. 15 as being vague and ambiguous.  Subject to and without waiving said objection, and after reasonable investigation, Defendant does not recall any oral communication with the Plaintiff aside from the interview.**

16.   Identify all information on an applicant's consumer report (e.g., a felony conviction, credit problems, etc.) that would disqualify that applicant from employment with Defendant. Attach a copy of any written rules or protocols which govern the decision to hire or not by Defendant.

**ANSWER:**
   **Defendant objects to Interrogatory No. 16 as being vague and ambiguous, overly broad, and burdensome.  Subject to and without waiving said objection, Defendant reviews the requirements of the open position and determines if the results of the consumer report may adversely affect the applicant's ability to perform the job or create potential liability for Defendant; *i.e.,* credit issues regarding an applicant who will be responsible for a company credit card.**

17.   For Plaintiff and each employee you terminated or denied employment because of, in part, information in a consumer report which you obtained for employment purposes concerning them, separately state the dates, on which you:

   a.      provided the employee or applicant with a copy of his or her consumer report;

   b.      discharged or denied employment to the employee or applicant; and

   c.      provided the employee or applicant with a written summary of FCRA rights.

   Attach copies of all the aforesaid correspondence.

**ANSWER:**
   **Please see Answer to Interrogatory No. 1.**

18.    Identify the organizational structure of the human resources department or function of
       Defendant and its reporting relationships, including but not limited to its reporting
       relationship to Emerson or related companies, if any?

**ANSWER:**

   **CMC Human Resource Recruiters report to Jennifer Boring. Boring reports to CMC
   Human Resources Vice President Cathy Beal. Beal reports to the President of CMC,
   Robert Clements.**

19.    Identify the services that Emerson provides for ClosetMaid, including but not limited to
       management, accounting, purchasing, legal or administrative services?

**ANSWER:**

   **Emerson'S Human Resource function provides ClosetMaid with limited services, as
   outlined in Emerson's responses to discovery.**

20.    What, if any, offices/locations do Emerson and Defendant share?

**ANSWER:**

   **None.**

21.    Identify all documents or other evidence and all witnesses you intend to proffer in connection
       with any determination by summary judgment or at trial with respect to whether Emerson is a
       proper party to this action?

**ANSWER:**

   **Defendant objects to Interrogatory No. 21, as it has not yet been decided which exhibits
   will be used or which witnesses will be called at the time of trial in this matter.
   Generally, some or all of the individuals already identified by Plaintiff and Defendant in
   this matter could be called as trial witnesses. As investigation and discovery are
   continuing, the Defendant reserves the right to supplement this Answer.**

22.    Identify the role, if any, that Emerson has in the selection and assignment of ClosetMaid
       Corporation's officers and executive personnel?

**ANSWER:**

   **Emerson was involved in the selection of Closetmaid's officers and executives to the
   extent that Emerson assisted in interviewing candidates and providing input to
   ClosetMaid for the  final selection process. The ultimate decision on ClosetMaid
   officers was made by ClosetMaid, and the final selection of the President was made by
   Emerson.**

23.     Identify all persons who participated in preparing or providing the answers to these interrogatories?

**ANSWER:**
        **Jennifer Boring.**

# REQUESTS FOR PRODUCTION

1.      All applications for employment forms used by Defendant and consent forms used by Defendant to obtain written consent from prospective or current employees to obtain a consumer report.

**RESPONSE:**

        **Defendant objects to Request No. 1 as the information sought is already in the possession of the Plaintiff.  Subject to and without waiving said objection, see the Application documents attached as part of Exhibit B to these responses.**

2.      All forms used by Defendant for making Pre-Adverse action notices.

**RESPONSE:**
        **Please see CMC's Response to Request No. 1.**

3.      All documents, files and any other information maintained by Defendant referring or relating to R. Cathy Reardon including the entire applicant file.

**RESPONSE:**
        **Please see the applicant file of R. Cathy Reardon attached as Exhibit D.**

4.      The entire applicant file for all persons identified with respect to the First Set Of interrogatories Nos. 1 and 2.

**RESPONSE:**
        **Please see Exhibit A.**

5.      All documents evidencing the employee recruitment policies, practice and procedures of Defendant.

**RESPONSE:**
        **Please see Exhibit B.**

6.     All internal communications, memoranda, policies, or training materials describing Defendant's hiring or placement procedures during the applicable time period concerning individuals who applied to be placed with Defendant, including those who were rejected because of the contents of their consumer report.

**RESPONSE:**

**Defendant objects to Request No. 6 as being vague, overly broad, and unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Further, CMC objects to the extent that the request calls for the production of privileged documents. Subject to and without waiving said objection, see documents attached as Exhibit B.**

7.     All documents, including internal memos, bulletins, policies, training materials or the like, evidencing Defendant's practices to provide that its hiring or placement process complied with the FCRA during the applicable time period.

**RESPONSE:**

**See Response to Request No. 6.**

8.     All Pre-Adverse Action and Post-Adverse Action letters sent by Defendant within the applicable time period.

**RESPONSE:**

**Defendant objects to Request No. 8 as being vague, overly broad, and unduly burdensome. Subject to and without waiving said objections, this Defendant has retained applications for a two year period. The Pre-Adverse Action and Post-Adverse Action letters located are attached as part of Exhibit A.**

9.     All documents referring or related to the policies, practices and procedures used to obtain written consent to obtain a consumer report about employees.

**RESPONSE:**

**Defendant objects to Request No. 9 as being vague and ambiguous. Subject to and without waiving said objection, see Exhibit B.**

10.    All communications, memoranda, policies, or training materials in place during the applicable time period concerning obtaining and using consumer reports in connection with the employment decisions Defendant or Emerson made with regard to R. Cathy Reardon.

**RESPONSE:**

 Defendant objects to Request No. 10 as being overly broad, vague and ambiguous. Defendant further objects to this Request on the basis that Emerson took no part in the application process for the Plaintiff, in procuring the Plaintiff's credit or consumer report, or in making any employment decision regarding Plaintiff. Therefore, the information sought in Request No. 10 is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, see Exhibit B.

11. Documents evidencing Defendant's policies, practices and procedures related to the sharing of consumer reports obtained from a consumer reporting agency with or among affiliates or subsidiaries of Defendant.

**RESPONSE:**

 Defendant objects to Request No. 11 as being over broad, vague and ambiguous. Subject to and without waiving said objection, Defendant CMC does not share consumer reports with or among affiliates or subsidiaries.

12. The Annual Reports of Defendant.

**RESPONSE:**

 ClosetMaid does not prepare or issue Annual Reports.

13. All documents sent to or received from other subsidiaries or affiliated entities of Defendant discussing or referring to policies, practices and/or procedures related to consumer reports about employees.

**RESPONSE:**

 Defendant objects to Request No. 13 as being vague and ambiguous. Subject to and without waiving said objection, Defendant CMC does not share consumer reports, or information related to consumer reports, with or among affiliates or subsidiaries.

14. Documents sufficient to identify the source of the policy, procedures and practices of Defendant related to consumer reports about employees.

**RESPONSE:**

 Defendant objects to Request No. 14 as being vague and ambiguous. Subject to and without waiving said objection, CMC has developed the policies, procedures, and practices currently in place relating to consumer reports about its applicants and employees, and has provided its policy with these responses.

15.     Documents setting forth the organizational structure of Defendant's human resources
        department or function and the company and other departments of Emerson that it reports to
        and that oversees it.

RESPONSE:

        **Defendant objects to Request No. 15 as being vague and ambiguous. Subject to and
        without waiving said objection, CMC's human resources department is a separate
        entity that does not "report to" Emerson. An organizational chart of ClosetMaid's
        "President's Office, and its HR organization will be provided as Exhibit E upon
        execution of a mutually acceptable Confidentially Agreement.**

16.     The employee manuals of Defendant.

RESPONSE:

        **Defendant objects to Request No. 16 as being vague and ambiguous, and not calculated
        to lead to the discovery of admissible evidence, as such manuals do not apply to
        company applicants. Subject to and without waiving said objection, see Exhibit F.**

17.     Documents related or referring to the employee hiring practices, policies and procedures that
        Emerson requires, recommends or disseminates to Defendant.

RESPONSE:

        **Defendant objects to Request No. 17 on the basis that Defendant Emerson took no part
        in the application process for the Plaintiff, in procuring the Plaintiff's credit report, or
        in making any employment-related decision regarding Plaintiff. Notwithstanding these
        objections, and subject to them, please see the "Developing an Employee Handbook"
        Manual, produced by Emerson in this matter.**

18.     Documents evidencing or governing the legal relationship between Emerson and Defendant
        (parent/subsidiary, holding company and related entity, etc.)?

RESPONSE:

        **Defendant objects to Request No. 18 on the basis that Defendant Emerson took no part
        in the application process for the Plaintiff or in procuring the Plaintiff's credit report.
        As such, Request No. 18 is not reasonably calculated to lead to the discovery of
        admissible evidence. Defendant further objects to Request No. 18 as being overly
        broad, vague and ambiguous. Subject to and without waiving said objections,
        ClosetMaid is a wholly-owned subsidiary of Emerson.**

19.     Court decisions discussing or relating to the legal relationship between Emerson and
        Defendant?

**RESPONSE:**
Defendant objects to Request No. 19 on the basis that Defendant Emerson took no part in the application process for the Plaintiff or in procuring the Plaintiff's credit report. As such, Request No. 19 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Request No. 19 as being vague and ambiguous. Subject to and without waiving said objection, Defendant is unaware of any Court decisions addressing this point.

20.     Copies of all contracts between Defendant and LNRM or any other consumer reporting agency used for employment.

**RESPONSE:**
Please see Exhibit C

21.     Documents evidencing the organizational structure of Defendant and its affiliates, divisions, subdivisions and subsidiaries and the officers and Board of Directors of each such entity.

**RESPONSE:**
Defendant objects to Request No. 21 as being vague and ambiguous. Subject to and without waiving said objection, please see Exhibit E.

22.     Documents evidencing the services that Emerson provides for Defendant such as management, accounting, purchasing, legal and administrative services.

**RESPONSE:**
Defendant objects to Request No. 22 on the basis that Emerson took no part in the application process for the Plaintiff, in procuring the Plaintiff's credit report, or in making any employment-related decisions regarding Plaintiff. As such, the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, and subject to them, please see Emerson's discovery responses on this issue.

23.     Case citations for all cases where someone has successfully argued in court that Emerson is subject to liability for Defendant's conduct, including but not limited to, that Defendant is an alias or alter ego for Emerson or that Emerson operates and controls Defendant? Please provide case citations.

**RESPONSE:**
Defendant objects to Request No. 23 as being vague and ambiguous. Defendant further objects to this Request on the basis that Emerson took no part in the application process for the Plaintiff, in procuring the Plaintiff's credit report, or in making any employment-related decisions regarding Plaintiff. Subject to and without waiving said objection, Defendant is unaware of any Court decisions addressing this point.

24.    The corporate financial statements produced for Defendant.

RESPONSE:
        Defendant objects to Request No. 24 as being vague and overly broad.  Furthermore,
        Defendant objects to Request No. 24 as it is not reasonably calculated to lead to the
        discovery of admissible evidence.

25.    Documents evidencing the entity providing accounting services for Emerson, Emerson
        Storage Solutions, Defendant, Metro, Flo-Healthcare and Lionville.

RESPONSE:
        Defendant objects to Request No. 25 on the basis that Emerson, Storage Solutions
        Metro, Flo-Healthcare and Lionville took no part in the application process for the
        Plaintiff or in procuring the Plaintiff's credit report.  As such, the information sought in
        Request No. 25 is not reasonably calculated to lead to the discovery of admissible
        evidence.

26.    The annual reports of Defendant, Emerson Storage Solutions, ClosetMaid, Metro, Flo-
        Healthcare and Lionville.

RESPONSE:
        Defendant objects to Request No. 26 as being overly broad and not reasonably
        calculated to lead to the discovery of admissible evidence.  Further, Defendant objects
        to this Request on the basis that Emerson, Storage Solutions, Metro, Flo-Healthcare
        and Lionville took no part in the application process for the Plaintiff or in procuring the
        Plaintiff's credit report.  As such, the information sought in Request No. 26 is not
        reasonably calculated to lead to the discovery of admissible evidence.

27.    The corporate bylaws for Emerson, Emerson Storage Solutions, Defendant, Metro, Flo-
        Healthcare and Lionville.

RESPONSE:
        Defendant objects to Request No. 27 as being overly broad and not reasonably
        calculated to lead to the discovery of admissible evidence.  Further, Defendant objects
        to this Request on the basis that Emerson, Storage Solutions, Metro, Flo-Healthcare
        and Lionville took no part in the application process for the Plaintiff or in procuring the
        Plaintiff's credit report.  As such, the information sought in Request No. 27 is not
        reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding
        those objections, and subject to them, the corporate bylaws for CMC have been
        produced with Emerson's discovery responses.

28.    A copy of the profiles of Defendant produced by Dun and Bradstreet.

**RESPONSE:**

     Defendant objects to Request No. 28 as it is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objection, ClosetMaid is not a publically traded company.

29.     A copy of the profiles of Emerson Storage Solutions, Defendant, Metro, Flo-Healthcare and Lionville.

**RESPONSE:**

     Defendant objects to Request No. 29 as being vague and ambiguous. Further, Defendant objects to this Request on the basis that Emerson, Storage Solutions, Metro, Flo-Healthcare and Lionville took no part in the application process for the Plaintiff or in procuring the Plaintiff's credit report. As such, the information sought in Request No. 29 is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objection, the companies named are not publically traded.

30.     A copy of the LexisNexis corporate affiliations descriptions of Defendant.

**RESPONSE:**

     Defendant objects to Request No. 29 as being vague and ambiguous. The information sought in Request No. 30 is as accessible to Plaintiff as it is to Defendant.

31.     All documents you relied upon in responding to or providing answers to Plaintiffs' First Set of Interrogatories.

**RESPONSE:**

     Defendant objects to Request No. 30 to the extent that the request calls for the production of documents protected by the attorney-client or work product privilege. Subject to and without waiving said objection, see documents attached to these Responses.

32.     Defendant's form "Summary of Rights Under the Fair Credit Reporting Act."

**RESPONSE:**

     Defendant objects to Request No. 32 as the information sought is already in the possession of the Plaintiff. Subject to and without waiving said objection, see the "Summary of Rights Under the Fair Credit Reporting Act" attached with Exhibit B.

33.     All documents evidencing that any applicant who is disqualified from employment due to information on the applicant's consumer report received a written copy of his or her consumer report and a written copy of the applicant's Summary of Rights Under the Fair Credit Reporting Act.

**RESPONSE:**
      **Defendant objects to Request No. 33 as being vague and ambiguous.  Subject to and without waiving said objection, see Exhibit B.**

34.     All communications, memoranda, policies, or training materials in place during the applicable time period governing Defendant's use of consumer reports for employment purposes during the applicable time period which relate to applicants who were denied employment by Defendant as a result of a consumer report Defendant procured.

**RESPONSE:**
      **Defendant objects to Request No. 34 as being vague and ambiguous, overly broad, and burdensome.  Subject to and without waiving said objection, see Exhibit B.**

35.     Please produce all communications between Plaintiff and Defendant.

**RESPONSE:**
      **Please see Exhibit D.**

36.     All communications, memoranda, policies, or training materials in place during the applicable time period governing the hiring or discharge of employees who have a consumer report that renders them not employable by with the result that they were turned down for employment based on the results of their consumer report that CMC obtained.

**RESPONSE:**
      **Defendant objects to Request No. 36 as being vague and ambiguous.  Subject to and without waiving said objection, see Exhibit B.**

37.     A document that demonstrates your assets and liabilities as of a date certain in 2006, 2007 and 2008.

**RESPONSE:**
      **Defendant objects to Request No. 37 as being vague, overly broad, and unduly burdensome.  Furthermore, the Defendant objects to Request No. 37 as it is not reasonably calculated to lead to the discovery of admissible evidence.**

38.     A copy of the corporate bylaws for Defendant.

**RESPONSE:**
      **Defendant objects to Request No. 38 as it is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objection, these by-laws were provided with Emerson's discovery responses.**

39.    A copy of the 10K form filed with the SEC for Defendant.

RESPONSE:
     **Defendant objects to Request No. 39 as it is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objection, this Defendant does not file a form 10K with the SEC.**

40.    A copy of the current website information for Defendant.

RESPONSE:
     **Defendant objects to Request No. 40 as being vague, ambiguous and overly broad. Defendant further objects to Request No. 40 as Plaintiff has equal access to the Defendant's website.**

41.    A copy of the annual report for Defendant.

RESPONSE:
     **Defendant objects to Request No. 41 as it is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objection, this Defendant does not file an annual report.**

42.    A copy of the corporate financial statements for Defendant.

RESPONSE:
     **Defendant objects to Request No. 42 as it is vague and ambiguous, and is not calculated to lead to the discovery of admissible evidence.**

43.    A copy of the documents governing the relationship between Defendant and Emerson including documents of purchase, if any, of Defendant by Emerson.

RESPONSE:
     **Defendant objects to Request No. 43 on the basis that Emerson took no part in the application process for the Plaintiff or in procuring the Plaintiff's credit report. As such, Request No. 43 as it is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Request No. 43 as being overly broad, vague and ambiguous. Subject to and without waiving said objections, ClosetMaid is a wholly-owned subsidiary of Emerson. By-laws were provided with Emerson's discovery responses.**

44.    All written disclosures to applicants for employment at Defendant that Defendant might obtain a consumer report for employment purposes or them as part of the application process.

**RESPONSE:**

Defendant objects to Request No. 44 as the information sought is already in the possession of the Plaintiff.  Subject to and without waiving said objection, see Exhibits A, B, and D.

Defendant ClosetMaid will supplement these responses to the extent necessary and in accordance with the applicable Rules of Civil Procedure.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.

Maria Greco Danaher, Esquire
PA ID No. 47036
Four Gateway Center, Suite 400
444 Liberty Avenue
Pittsburgh, PA 15222
412-394-3390
412-232-1799 (fax)
maria.danaher@ogletreedeakins.com
Attorney for Defendants

## VERIFICATION

I, _Jennifer Boring_, Authorized Representative of Closetmaid Corporation, hereby declare and affirm that **DEFENDANT CLOSETMAID CORPORATION'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** are true and correct to the best of my knowledge, information and belief.

Date: _7-1-09_

_____, Authorized
Representative of Closetmaid Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2009, I delivered the forgoing **DEFENDANT CLOSETMAID CORPORATION'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** to the following via hand delivery, at the following address:

James M. Pietz, Esquire
Pietz Law Office LLC
Mitchell Building, Suite 700
304 Ross Street
Pittsburgh, PA 15219
(*Attorneys for Plaintiff*)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Maria Greco Danaher, Esquire

## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. CATHY REARDON, *on behalf of herself and all similarly situated individuals*, | ) ) ) | Civil Division |
| | ) | No. 2:08-cv-01730 |
| Plaintiff, | ) ) | Judge Gary L. Lancaster |
| v. | ) ) ) | |
| CLOSETMAID CORPORATION and EMERSON ELECTRIC CO., | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT EMERSON ELECTRIC CO.'S
## ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET
## OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

AND NOW, comes the Defendant, Emerson Electric Co. (hereinafter "Defendant" or "Emerson"), and serves **DEFENDANT EMERSON ELECTRIC CO.'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS,** as follows:

## GENERAL OBJECTIONS

Defendant makes the following general objections to the Plaintiff's Interrogatories and Requests for Production of Documents. Defendant incorporates by reference these general objections into the Defendant's Answers and Responses to each individual Interrogatory and Request, to the extent applicable, whether or not specifically stated in any individual Answer or Response.

1.     Defendant objects to these Interrogatories and Requests or any specific Interrogatory and Request to the extent that the information sought is not relevant to the issues raised in this action and/or is not reasonably calculated to lead to the discovery of admissible evidence, or that the Interrogatories and Requests are beyond the scope of permitted discovery and/or require Defendants to exceed its obligation under state or federal law.

2.      Defendant objects to any Interrogatory or Request to the extent it seeks discovery of privileged information, including confidential attorney-client communications and/or non-discoverable attorney and/or other work product.

3.      Defendant objects to these Interrogatories and Requests to the extent they seek information that is already in possession of the Plaintiff, or is more readily available to Plaintiff.

4.      Defendant objects generally to any and all Interrogatories and Requests to the extent they seek information concerning the substance of each and every communication or statement concerning general subject matters, date of such communications and/or the names of all participants to such communications, on the grounds that such Interrogatories and Requests are overly broad and unduly burdensome, taking into the account the needs of this case and that the information sought by way of these Interrogatories and Requests could be obtained more easily through other means of discovery.  Without waiving said objection, Defendant will answer these Interrogatories and Requests generally to the extent that its representatives currently can recollect such communications/statements and to the extent the Interrogatories and Requests seek information reasonably calculated to lead to the discovery of admissible evidence.

5.      Defendant objects to these Interrogatories and Requests to the extent that they seek information that is commercially confidential, propriety in nature, constitutes trade secrets or which is protected by the confidentiality and privacy rights of others.

6.      Defendant objects to these Interrogatories and Requests to the extent a full and complete response would subject Defendant to undue burden and expense.

7.      Defendant objects to these Interrogatories and Requests to the extent the general provisions, instructions and definitions set out in the Interrogatories and Requests exceed the scope of, or impose burdens not required by, applicable law.

8.     Defendant objects to these Interrogatories and Requests to the extent that they seek information beyond the relevant time period of this matter.

9.     Answers and Responses to Plaintiff's Interrogatories and Requests are qualified by the objections, whether general or specific, asserted herein.  Answers to Interrogatories and Responses to Requests do not waive objections asserted.

10.     Defendant objects to the Definitions included in Plaintiff's discovery requests to that extent that those Definitions purport to impose duties and obligations beyond those set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, the attorney-client privilege, the work-product privilege, and any other applicable privilege or doctrine, including documents prepared in anticipation of litigation, or otherwise outside the scope of Rule 26 of the Federal Rules of Civil Procedure.  Defendant therefore objects to producing any such documents in response to the requests.  In the event any privileged document is produced by Defendant, its production is inadvertent and does not constitute a knowing waiver of any privilege.

11.     Defendant provides these Responses to the Request for Production of Documents, and shall produce documents responsive to all non-objectionable Requests, without waiver of or prejudice to its right, at any later time, to raise objections to: (1) the relevance, materiality, or admissibility of the Requests (or any part thereof), or of statements made in this response to the Requests, or of any documents produced pursuant to this response; or (2) any further demand for discovery involving or relating to the matters raised in the Requests.

12.     Defendant objects to divulging any information falling within one of the General Objections set forth above or Specific Objections set forth below.  To the extent any such information is or may be divulged in these discovery responses, the divulging of such information is inadvertent and is not to be deemed a waiver of the objection in question (or any other objection) with respect to the divulged information.

13.    The specific responses set forth below and the production that Defendant undertakes to make pursuant thereto are based upon information now available to Defendant after having searched the files in their possession, custody, or control that reasonably relate to one or more of the specific document requests.  Defendant objects to the Requests to the extent they purport to demand production of documents not in Defendant's possession, custody, or control, or require a search of files that do not reasonably relate to one or more of the specific document Requests.  Defendant reserves the right at any time to revise, correct, add to, supplement, modify, or clarify the specific responses set forth below or the production made pursuant thereto, pursuant to the applicable rules.

## INTERROGATORIES

1.    State the number of and identify all persons who either applied for employment with Defendant or who were existing employees of Defendant and from whom Defendant obtained written consent to obtain a consumer report during the applicable time period.

**ANSWER:**
   **Defendant objects to Interrogatory No. 1 on the basis that it is overly broad and unduly burdensome.  Further, Defendant Emerson objects to this Interrogatory on the basis that Emerson took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff.  As such, the information sought in this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.**

2.    State the number of and identify all persons who either applied for employment with Defendant or who were existing employees of Defendant and from whom Defendant obtained written consent to obtain a consumer report, sent a Pre-Adverse Action Notice and then took Adverse Action during the applicable time period.

**ANSWER:**
   **Please see Defendant's response to Interrogatory No. 1.  Notwithstanding those objections, and subject to them, Defendant did not request or obtain any credit reports during the applicable time period.**

- 4 -

3.      Identify the person or persons responsible for determining and overseeing Defendant's
        compliance with the Fair Credit Reporting Act with respect to the policies, practices and
        procedures used by Defendant to obtain written consent to obtain a consumer report
        about applicants and existing employees, if applicable, and to send them Pre-Adverse
        Action Notices, if applicable, during the applicable time period.

ANSWER:
        **Defendant Emerson objects to this Interrogatory on the basis that Emerson took no
        part in the application process for Plaintiff, in formulating or implementing
        ClosetMaid policies, in procuring Plaintiff's credit report, or in making any
        employment decision with respect to Plaintiff.  As such, the information sought in
        this Interrogatory is not reasonably calculated to lead to the discovery of admissible
        evidence.  Notwithstanding these objections, and subject to them, Emerson has no
        person or persons responsible for "overseeing Defendant's compliance" with FCRA.**

4.      Identify the department(s) or function(s) within Defendant responsible for determining
        and overseeing Defendant's compliance with the Fair Credit Reporting Act with respect
        to the policies, practices and procedures used by Defendant to obtain written consent to
        obtain a consumer report about applicants and existing employees, if applicable, and to
        send them Pre-Adverse Action Notices, if applicable, during the applicable time period.

ANSWER:
        **Please see Defendant's response to Interrogatory No. 3.**

5.      Identify each subsidiary and any related or affiliated corporate entity of Defendant and
        explain how each such entity determines or derives the policies, practices and procedures
        that are recommended to be used or used to obtain written consent to obtain a consumer
        report about applicants and existing employees, if applicable, and to send them Pre-
        Adverse Action Notices, if applicable, during the applicable time period.

ANSWER:
        **Please see Defendant's response to Interrogatory No. 1.   Notwithstanding these
        objections, and subject to them, Emerson acts similarly to a holding company with
        respect to its wholly-owned subsidiaries and, as such, defers to those subsidiaries,
        which develop, implement, and enforce their own policies and procedures, including
        those related to FCRA compliance.   Emerson itself has no separate written policy
        related to FCRA.**

6.      Identify the policies, practices and procedures required by, followed by, or recommended
        by Defendant to obtain written consent from applicants and existing employees, if
        applicable, to obtain a consumer report during the applicable time period.

**ANSWER:**
> **Please see Defendant's response to Interrogatory No. 5.**

7.      Identify Defendant's policies, practices and procedures related to the sharing of consumer reports for employment purposes obtained from a consumer reporting agency with or among affiliates or subsidiaries of Defendant during the applicable time period.

**ANSWER:**
> **Please see Defendant's response to Interrogatory No. 5. Notwithstanding those objections, and subject to them, Defendant does not share consumer reports "with or among affiliates or subsidiaries of Defendant," and therefore has no written policy regarding process for the same.**

8.      State whether any affiliate or subsidiary of Defendant has ever shared a copy of a consumer report that was obtained for employment purposes from a consumer reporting agency with another affiliate or subsidiary of Defendant during the applicable time period.

**ANSWER:**
> **Please see Defendant's response to Interrogatory No. 7.**

9.      Identify all persons employed by Defendant who were involved in any way with the application of R. Cathy Reardon for employment with ClosetMaid that is at issue in this matter.

**ANSWER:**
> **Please see Defendant's response to Interrogatory No. 1. Notwithstanding those objections, and subject to them, Emerson had no involvement with the application of R. Cathy Reardon for employment with ClosetMaid.**

10.     Identify and describe the organizational structure of the Human Resources department or function of Defendant during the applicable time period.

**ANSWER:**
> **Please see Defendant's response to Interrogatory No. 5. Notwithstanding these objections, and subject to them, Defendant's "HR function" includes assistance with safety issues and with employee benefits and pension plans, and provides certain specific legal advice, when requested.**

11.  For each department or affiliated entity of Defendant identified in Number 4 above, identify the method by which each such department or affiliated company accounts for their financial performance whether on a consolidated basis, individually or otherwise, and identify the department or affiliated entity that provides or performs its accounting services during the applicable time period?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 1.**


12.  For each department or affiliated entity of Defendant identified in Interrogatory No.4 above, identify how and from whom each such department or affiliated company finances their operations and identify method of financing and the department or affiliated entity that provides or assists in the financing during the applicable time period?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 1.**


13.  For each department or affiliated entity of Defendant identified in the Interrogatory No. 4 above, identify each person(s) and corporate entities with oversight responsibility for any such department or the officers and directors and members of the board for each such affiliated company during the applicable time period?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 1.**


14.  Identify all documents or other evidence and all witnesses supporting your contention that that Emerson is not a proper party to this action?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 3. Further, Defendant objects to Interrogatory No. 14, as it has not yet been decided which exhibits will be used or which witnesses will be called at the time of trial in this matter. Notwithstanding these objections, and subject them, Emerson refers to the documents produced in response to these requests, and to those documents produced by ClosetMaid. As investigation and discovery are continuing, Emerson reserves the right to supplement this Answer.**

15.   What amount of shares and what percentage of the stock of ClosetMaid Corporation is owned by Defendant, if any?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 3.   Without waiving said objections, Emerson owns 100% of ClosetMaid stock.**

16.   Identify the corporate attorneys for Defendant and ClosetMaid Corporation during the applicable time period?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 3.   Notwithstanding these objections, Jeff Carius acts as the corporate attorney for Emerson.**

17.   Identify the role, if any, that Defendant had in the selection and assignment of ClosetMaid Corporation's officers and executive personnel during the applicable time period?

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 3.   Notwithstanding those objections, and subject to them, Emerson was involved in the selection of Closetmaid's officers and executives to the extent that Emerson assisted in interviewing candidates and in providing input to ClosetMaid during the selection process.   Emerson had no role in the "assignment" of these individuals, as the ultimate decision on ClosetMaid officers and executives, other than the President (into which Emerson had input) was made by ClosetMaid.**

18.   For each department or affiliated entity of Defendant identified in Interrogatory No. 4 above, identify or explain how that department or affiliated entity markets it services and identify the department, affiliated entity or outside service that provided marketing services during the applicable time period.

**ANSWER:**
       **Please see Defendant's response to Interrogatory No. 1.**

19.   Identify the date and location of the board meetings for Defendant and ClosetMaid Corporation conducted during the applicable time period?

**ANSWER:**
> Defendant objects to Interrogatory No. 19 as being vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding those objections, and subject to them, ClosetMaid and Emerson had no joint board meetings during the applicable time period; further, Emerson and ClosetMaid do not have interlocking directorships.

20. Identify any staff that Defendant and ClosetMaid Corporation shared during the applicable time period?

**ANSWER:**
> Defendant objects to Interrogatory No. 20 as being vague, ambiguous, overly broad and unduly burdensome. Notwithstanding those objections, and subject to them, ClosetMaid and Emerson have no shared "staff" as Defendant understands that term to be defined. However, certain advisory services exist, as outlined in Answer to Interrogatory No. 10.

21. With regard to Defendant's ranking in the Fortune Global 500 list of the world's largest companies, as ranked by revenues, when, if ever, during the applicable time period, have the revenues of ClosetMaid Corporation been included in the Defendant's revenues?

**ANSWER:**
> Please see Defendant's response to Interrogatory No. 3. Notwithstanding those objections, and subject to them, ClosetMaid revenues are included in the calculations of revenues for Emerson's Fortune Global 500 listing.

22. With respect to the approximately 486 patents which Defendant claims were awarded to it in 2005, state how many, if any, were awarded to its subsidiaries and how many were awarded specifically to or in connection with ClosetMaid Corporation.

**ANSWER:**
> Please see Defendant's response to Interrogatory No. 3.

23. State whether any of the approximately 270 manufacturing locations of Defendant include the manufacture of ClosetMaid products. If the answer is yes, identify those manufacturing locations.

**ANSWER:**
   Please see Defendant's response to Interrogatory No. 3. Notwithstanding those objections, and subject to them, ClosetMaid and Emerson, or any of its other subsidiaries/operating divisions, do not share manufacturing locations or operations.

24.   What is the name, title (or relationship to you) and business address of all persons who participated in preparing or providing the answers to these interrogatories?

**ANSWER:**
   Jennifer Boring, ClosetMaid Employee Relations Manager, and Jeff Carius, Emerson VP/Chief Employment Counsel.

## REQUESTS FOR PRODUCTION

1.   All applications for employment forms used by Defendant and consent forms used by Defendant to obtain written consent from prospective or current employees to obtain a consumer report during the applicable time period.

**RESPONSE:**
   Defendant objects to Request No. 1 on the basis that Emerson took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff. As such, the information sought in this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding those objections, and subject to them, Defendant did not request or obtain any credit reports during the applicable time period.

2.   All forms used by Defendant for making Pre-Adverse action notices during the applicable time period.

**RESPONSE:**
   Please see Defendant's response to Request No. 1.

3.   All documents evidencing the employee recruitment policies, practice and procedures of the Human Resources department of Defendant in force or recommended during the applicable time period.

**RESPONSE:**

      **Please see Defendant's response to Request No. 1.**

4.     All Pre-Adverse Action and Post-Adverse Action letters sent by Defendant during the applicable time period.

**RESPONSE:**

      **Please see Defendant's response to Request No. 1.**

5.     All documents disseminated by Defendant to its affiliates or subsidiaries that refer or relate to the policies, practices and procedures used to obtain written consent to obtain a consumer report about employees during the applicable time period.

**RESPONSE:**

      **Please see Defendant's response to Request No. 1.**

6.     All documents, files and any other information maintained by Defendant referring or relating to R. Cathy Reardon.

**RESPONSE:**

      **Please see Defendant's response to Request No. 1. Notwithstanding these objections, and subject to them, Emerson has no such information or documentation.**

7.     Documents evidencing Defendant's policies, practices and procedures related to the sharing of consumer reports obtained from a consumer reporting agency with or among affiliates or subsidiaries of Defendant during the applicable time period.

**RESPONSE:**

      **Please see Defendant's response to Request No. 1. Notwithstanding these objections, and subject to them, Emerson does not "share" consumer reports with or among affiliates or subsidiaries.**

8.     The Annual Report of Defendant for each of the last 5 years.

**RESPONSE:**

      **Please see Defendant's response to Request No. 1.**

9.    The Annual Report of Defendant states that the Operating Management of the Defendant includes a department or function known as Human Relations. With respect to this department or function produce all documents sent to subsidiaries or affiliates discussing or referring to employee recruitment policies, practices and procedures and procedures to obtain written consent to obtain a consumer report about employees and to send Pre-Adverse Action Notices during the applicable time period.

**RESPONSE:**

**Please see Defendant's response to Request No. 1. Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and to the extent that the request might call for the production of privileged documents. Notwithstanding these objections, and subject to them, Emerson states that it has provided to subsidiaries no documents regarding recruitment policies, practices, and procedures, or procedures to obtain written consent to obtain a consumer report. In further response, Emerson will provide its "Developing an Employee Handbook Manual" as Exhibit A to these responses, upon execution of a mutually acceptable Confidentiality Agreement.   This manual provides guidelines to subsidiaries regarding certain basic personnel policies and procedures, but does not include information or guidance related to FCRA compliance. Instead, subsidiaries are responsible for developing such policies and procedures.**

10.   All documents referring to relating to practices and/or procedures of the Employee Relations department or function of Defendant as overseen by the Vice President of Employee Relations of Defendant related to consumer reports about employees during the applicable time period.

**RESPONSE:**

**Please see Defendant's response to Request No. 9. Further, Emerson objects to this Request to the extent that the request might call for the production of privileged documents.**

11.   All documents sent to or received from the Employee Relations department of Defendant or by Defendant to other subsidiaries or affiliated entities of Defendant discussing or referring to policies, practices and/or procedures related to consumer reports about employees during the applicable time period.

**RESPONSE:**

Please see Defendant's response to Request No. 1. Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and to the extent that the request might call for the production of privileged documents.

12.   Documents setting forth the procedures and practices of Emerson Storage Solutions, ClosetMaid. Metro, Flo-Healthcare and Lionville related to consumer reports about employees during the applicable time period.

**RESPONSE:**

Please see Defendant's response to Request No. 1. In addition, Metro, Flo-Healthcare, and Lionville took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff. As such, the documents sought in this Request are not reasonably calculated to lead to the discovery of admissible evidence. Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and to the extent that the request might call for the production of privileged documents. Notwithstanding these objections, and subject to them, please refer to ClosetMaid's responses to Requests for Production made directly to that Defendant.

13.   Documents sufficient to identify the source of the policy, procedures and practices of Emerson Storage Solutions, ClosetMaid, Metro, Flo-Healthcare and Lionville related to consumer reports to be used for employment purposes during the applicable time period.

**RESPONSE:**

Please see Defendant's response to Request No. 12.

14.   Documents evidencing the policies, practices and procedures followed by Defendant its affiliates or subsidiaries with respect to the use of consumer reports for employment purposes during the applicable time period.

**RESPONSE:**

Please see Defendant's response to Request No. 1. Further, Defendant objects to this Request on the basis that the request is unduly broad and burdensome.

15.   Documents setting forth the organizational structure of Defendant's Human Relations department or function and the companies that report to it and that it oversees during the applicable time period.

**RESPONSE:**

   **Please see Defendant's response to Request No. 1.  Notwithstanding these objections, and subject to them, no companies report to Emerson's Human Relations department.**

16.   The employee manuals for the last 5 years of Defendant disseminated to related or affiliated companies during the applicable time period.

**RESPONSE:**

   **Please see Defendant's response to Request No. 9.  Notwithstanding these objections, and subject to them, ClosetMaid has developed and implemented its own employee manual, provided with its responses to discovery.**

17.   Documents related or referring to the employee hiring practices, policies and procedures that Defendant requires, recommends or disseminates to its affiliates or subsidiaries to follow during the applicable time period.

**RESPONSE:**

   **Please see Defendant's response to Request No. 9.  Notwithstanding these objections, and subject to them, ClosetMaid has developed and implemented its own relevant policies and procedures, provided with its responses to discovery.**

18.   Documents evidencing the legal relationship between Emerson Electric and ClosetMaid (parent/subsidiary, holding company and related entity, etc.)?

**RESPONSE:**

   **Please see Defendant's response to Request No. 1.   Notwithstanding these objections, and subject to them, Emerson will provide, upon execution of a mutually acceptable Confidentiality Agreement, copies of the Articles of Incorporation and Bylaws of ClosetMaid (originally Clairson Corporation), as Exhibit B.**

- 14 -

19.   Court decisions discussing or relating to the legal relationship between Emerson and ClosetMaid or Emerson, Emerson Storage Solutions and other subsidiaries or affiliated companies?

**RESPONSE:**

> **Please see Defendant's response to Request No. 1.   In addition, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and to the extent that the request might call for the production of privileged documents. Further, public information on this issue is as available to Plaintiff as to Defendant. Notwithstanding these objections, and subject to them, Emerson is not aware of such decisions.**

20.   Copies of all contracts between Emerson or any of its affiliates or subsidiaries and LNRM, or any other consumer reporting agency used for employment purposes during the applicable time period.

**RESPONSE:**

> **Please see Defendant's response to Request No. 1.     Notwithstanding these objections, and subject to them, Emerson has no such contracts.**

21.   Documents evidencing the organizational structure of Defendant and its affiliates, divisions, subdivisions and subsidiaries and the officers and Board of Directors of each such entity during the applicable time period.

**RESPONSE:**

> **Please see Defendant's response to Request No. 1.   In addition, Emerson objects to this Request as overly broad and burdensome.**

22.   Documents evidencing the services that Defendant provides for its affiliates, divisions, subdivisions and subsidiaries such as management, accounting, purchasing or administrative services during the applicable time period.

**RESPONSE:**

> **Please see Defendant's response to Request No. 1. Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and to the extent that the request might call for the production of privileged documents. Notwithstanding these objections, and subject to them, please see Answer to Interrogatory No. 10.**

23.    Copies of legal cases where anyone has successfully argued in court that ClosetMaid is merely an alias or alter ego for Emerson Electric?

**RESPONSE:**

**Please see Defendant's response to Request No. 19.**

24.    The corporate financial statements produced for Emerson and ClosetMaid for the last 5 years.

**RESPONSE:**

**Please see Defendant's response to Request No. 1.**

25.    Documents evidencing the entity providing accounting services for Emerson, Emerson Storage Solutions, ClosetMaid, Metro, Flo-Healthcare and Lionville during the applicable time period.

**RESPONSE:**

**Please see Defendant's response to Request No. 1.   In addition, Metro, Flo-Healthcare, and Lionville took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff. As such, the documents sought in this Request are not reasonably calculated to lead to the discovery of admissible evidence.**

26.    The annual reports of Defendant, Emerson Storage Solutions, ClosetMaid, Metro, Flo-Healthcare and Lionville for the last 5 years.

**RESPONSE:**

**Please see Defendant's response to Request No. 1.   In addition, Metro, Flo-Healthcare, and Lionville took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff. As such, the documents sought in this Request are not reasonably calculated to lead to the discovery of admissible evidence.   Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome.**

27.   The corporate bylaws in force during the applicable time period for Emerson, Emerson Storage Solutions, ClosetMaid, Metro, Flo-Healthcare and Lionville.

**RESPONSE:**

**Please see Defendant's response to Request No. 1.   In addition, Metro, Flo-Healthcare, and Lionville took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff.  As such, the documents sought in this Request are not reasonably calculated to lead to the discovery of admissible evidence.   Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome.  Notwithstanding these objections, and subject to them, ClosetMaid's bylaws will be produced as part of Exhibit B to these responses.**

28.   A copy of the current profile of Defendant produced by Dun and Bradstreet.

**RESPONSE:**

**Please see Defendant's response to Request No. 1.   In addition, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and to the extent that the information on this issue is as available to Plaintiff as to Defendant.**

29.   A copy of the current profile produced by Dun & Bradstreet of Emerson Storage Solutions, ClosetMaid, Metro, Flo-Healthcare and Lionville, if any.

**RESPONSE:**

**Please see Defendant's response to Request No. 1.   In addition, Metro, Flo-Healthcare, and Lionville took no part in the application process for Plaintiff, in formulating or implementing ClosetMaid policies, in procuring Plaintiff's credit report, or in making any employment decision with respect to Plaintiff.  As such, the documents sought in this Request are not reasonably calculated to lead to the discovery of admissible evidence.   Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome.   Notwithstanding these objections, and subject to them, the named companies are not publically-traded.**

30.   A copy of the current LexisNexis corporate affiliations description of Emerson Electric.

**RESPONSE:**

Please see Defendant's response to Request No. 1. Further, such information is as available to Plaintiff as to Defendant.

31.     A copy of the current LexisNexis corporate affiliations description of Emerson Storage Solutions, ClosetMaid, Metro, Flo-Healthcare and Lionville.

**RESPONSE:**

Please see Defendant's response to Request No. 29. Further, Emerson objects to this Request to the extent that the request is unduly broad and burdensome, and on the basis that the information on this issue is as available to Plaintiff as to Defendant.

32.     All written disclosures to applicants for employment at Defendant that Defendant might obtain a consumer report for employment purposes or them as part of the application process during the applicable time period.

**RESPONSE:**

Please see Defendant's response to Request No. 1.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.

*Maria Greco Danaher*

Maria Greco Danaher, Esquire
PA ID No. 47036
Four Gateway Center, Suite 400
444 Liberty Avenue
Pittsburgh, PA 15222
412-394-3390
412-232-1799 (fax)
maria.danaher@ogletreedeakins.com
Attorney for Defendants

- 18 -

No. 2:08-cv-01730

## <u>VERIFICATION</u>

I, Jeffrey R. Carius, Authorized Representative of Emerson Electric Co., hereby declare and affirm that **DEFENDANT EMERSON ELECTRIC CO.'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** are true and correct to the best of my knowledge, information and belief.

Date: _7/1/09_

_____
Authorized Representative of Emerson Electric Co.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July 2009, I delivered the forgoing **DEFENDANT EMERSON ELECTRIC CO.'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** to the following by Hand Delivery, at the following address:

James M. Pietz, Esquire
Pietz Law Office LLC
Mitchell Building, Suite 700
304 Ross Street
Pittsburgh, PA 15219
(*Attorneys for Plaintiff*)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Maria Greco Danaher, Esquire