IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

R. CATHY REARDON, on behalf of herself and )
all similarly situated individuals, )
  )   Civil Action No. 08-1730
Plaintiff, )
  )   Judge Gary L. Lancaster
v. )
  )   **ELECTRONIC FILING**
CLOSETMAID CORPORATION, )
  )
Defendant. )

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant ClosetMaid Corporation ("ClosetMaid" or "Defendant"), by and through its

attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., files this Memorandum of Law in

Opposition to Plaintiff's Motion for Class Certification.

## I.  INTRODUCTION

The Fair Credit Reporting Act ("FCRA") is a complex statutory scheme regulating the

business practices of consumer reporting agencies to ensure that they exercise their "grave

responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." [1]

Embedded within this statutory scheme are a few provisions establishing conditions precedent

that an employer must perform before it may procure and use consumer reports for employment

purposes.

Plaintiff and her putative class counsel seize upon the obscure and highly technical nature

of FCRA to advance novel, cumulative, and legally unsupported claims in which they seek to

pyramid statutory damages on top of statutory damages for each condition precedent they

contend ClosetMaid failed to satisfy during its hiring process even though it did not procure any

---

[1]  See 15 U.S.C. §§ 1681 – 1681x (citing an excerpt from the Congressional findings and statement of purpose at 15 U.S.C. § 1681(a)(4).

consumer reports in most instances, and before using consumer reports as a basis to reject a mere 4 job applicants plus Plaintiff in a very limited set of circumstances.  In doing so, Plaintiff now seeks to represent thousands of individuals who have little in common with each other and with whom she is not typical; and, moreover, Plaintiff's claims present uniquely individualized questions of law and fact making a class action in this case inferior to other fair and efficient methods of adjudicating this controversy.

Plaintiff has not and cannot meet her burden of establishing all requisite elements for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Therefore, ClosetMaid respectfully requests that Plaintiff's motion for class certification be denied.

## II.   <u>COUNTERSTATEMENT OF THE CASE</u>

The sole express purpose of FCRA is "to require consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. ...." 15 U.S.C. § 1681(b).  FCRA is based upon Congressional findings that the banking system and the public's confidence in it are dependent upon fair and accurate credit reporting, that consumer reporting agencies have assumed a vital role in assembling and evaluating consumer information, and that there is "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(1-3).

FCRA permits "consumer reporting agencies" to furnish "consumer reports" for very limited purposes and to specifically enumerated users, including to any "person which it has reason to believe intends to use the information for "employment purposes." 15 U.S.C. §

1681b(a)(3)(B).   "Employment purposes" means "evaluating a consumer for employment, promotion, reassignment or retention as an employee."  15 U.S.C. § 1681a (h).

A "consumer report" is:

> "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ."

15 U.S.C. § 1681a (d)[2].

A "consumer reporting agency" is:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a (f).

Based upon these statutory definitions, ClosetMaid is a user of "consumer reports" containing various types of background information concerning individual job applicants known as "consumers."[3]  Plaintiff is an individual "consumer" who was the subject of a "consumer report" containing background information about her that ClosetMaid procured from a consumer reporting agency and used when considering her employment application.

---

[2]     In contrast to a "consumer report," an "investigative consumer report" is defined, in pertinent part, as a "consumer report [as defined above by FCRA] or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information." See 15 U.S.C. § 1681a (e).

[3]     A "consumer" is merely defined as an "individual."  15 U.S.C. § 1681a (c).

FCRA requires consumer reporting agencies to provide a notice to employer-users of their consumer reports setting forth their responsibilities as prescribed by the Federal Trade Commission ("FTC"), and further prohibits consumer reporting agencies from furnishing consumer reports to employer-users unless the consumer reporting agencies obtain certifications from the employer-users that they have satisfied and will continue to satisfy specified conditions precedent before such procurement and possible use. See 15 U.S.C. § 1681b(b)(1).  Indeed, prior to procuring any consumer reports, employers must obtain: (i) a clear and conspicuous disclosure from each applicant for whom a consumer report may be procured; and (ii) the applicants' authorization, in writing, to procure the report. See 15 U.S.C. § 1681b(b)[4].  In this regard, Plaintiff's claims largely focus on whether ClosetMaid's forms are adequate and pose what appears to be a legal issue of first impression.   ClosetMaid steadfastly maintains that its disclosure forms are legally compliant.

Then, if an employer considers the contents of a consumer report and consequently intends to reject an applicant or otherwise adversely affect him or her, the employer must inform the applicant of this possible consequence in writing and provide the applicant with a copy of the consumer report and a description, in writing, of his/her FCRA rights before actually taking any such adverse employment action. See 15 U.S.C. § 1681b(b)(3)[5].  FCRA is silent on the amount of time that must elapse after providing this so-called "Pre-Adverse Action" notice before actually taking any such adverse action[6].

---

[4]     FCRA requires additional disclosures for use of investigative consumer reports. See 15 U.S.C. § 1681d(a)(2) and (d)(1); 15 U.S.C. § 1681d(d)(4).  The instant case does not involve "investigative consumer reports.

[5]     FCRA imposes different conditions precedent on employers who procure and use consumer reports relating to applicants for commercial truck driver and certain other jobs regulated by the U.S. Department of Transportation ("DOT"). See e.g., 15 U.S.C. § 1681b(b)(2)(B) and (C); 15 U.S.C. § 1681b(b)(3)(B).

[6]     Five (5) business days has been deemed reasonable by an FTC staff member in at least one instance. See Weisberg (FTC June 27, 1997).

Once an employer provides pre-adverse action notice, along with a copy of the consumer

report and a summary of FCRA rights, it may take its intended adverse action; but, in doing so, it

must provide notice, either orally, in written form, or electronically, which includes:

- The name, address and telephone number of the consumer reporting agency that provided the report, including a toll free number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis;
- A statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the applicant specific reasons why the adverse action was taken;
- A statement of the applicant's right to obtain a free copy of the consumer report from the consumer reporting agency by making a request within 60 days; and a statement of the applicant's right to dispute the accuracy or completeness of any information in the report with the consumer reporting agency.

15 U.S.C. § 1681m(a).

Plaintiff's First Amended Complaint asserts the following claims:

- Count I alleges that ClosetMaid procured consumer reports without providing a "clear and conspicuous" disclosure of its intended procurement of a consumer report to applicants in a document that consists solely of the disclosure in violation of 15 U.S.C. § 1681b (b)(2)(A)(i).

- Count II alleges that ClosetMaid procured consumer reports without obtaining proper authorizations in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

- Count III alleges that ClosetMaid failed to provide a copy of the consumer report to applicants at least five (5) business days before taking adverse action in violation of 15 U.S.C. § 1681b (b)(3)(A)(i).

- Count IV alleges that ClosetMaid failed to provide a summary of FCRA rights to applicants at least five (5) business days before taking adverse action in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii).

Plaintiff further contends that ClosetMaid's purported FCRA violations were willful[7] pursuant to 15 U.S.C. § 1681n (imposing actual or statutory damages, punitive damages, costs and reasonable attorneys' fees for "willful" violations). Statutory damages range from $100 to $1,000 per violation.  Alternatively, Plaintiff seeks damages for each count pursuant to 15 U.S.C. § 1681o (imposing actual damages sustained by each consumer, along with costs and attorneys' fees).

Counts I and II of Plaintiff's First Amended Complaint are duplicative in Plaintiff's attempt to challenge the adequacy of the disclosure and authorization forms ClosetMaid used to satisfy the "clear and conspicuous disclosure" and "authorization" prerequisites before procuring consumer reports.

Plaintiff now seeks class certification for a class and subclass comprised of up to 6,769 individuals many of whom signed and submitted various versions and combinations of these forms as utilized by ClosetMaid in its various locations[8] when applying for jobs from December 1, 2006 through June 30, 2009.  However, because the triggering event for an employer-user's potential FCRA liability is their procurement of an individual's consumer report without first satisfying these disclosure and authorization prerequisites[9], Plaintiff improvidently attempts to extend her reach to include in a putative class or subclass those individuals who may have signed disclosure and authorization forms but for whom ClosetMaid did <u>not</u> procure a consumer report.

---

[7]     Plaintiff must establish that ClosetMaid's purported violations were "knowing or reckless" to prove willfulness.  <u>See</u> <u>Safeco Ins. Co. of America v. Burr, et al.</u>, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed. 2d 1045 (2007) (defining the legal standard for willful violations).

[8]     ClosetMaid's locations are: (i) Granstville, Maryland, (ii) Belle Vernon, Pennsylvania, (iii) Chino, California, and (iv) Ocala, Florida.  Tacoma, Washington processed its applicants in Ocala, Florida.

[9]     Plaintiff has not identified any legal authority to support her contention that the use of a non-compliant disclosure form and of an authorization form constitutes independent violations even if ClosetMaid never procured/used consumer reports for those applicants.  <u>See</u> <u>Kelchner v. Sycamore Manor Health Center</u>, 305 F. Supp. 2d 429 (2004), <u>aff'd</u> 135 Fed. Appx. 499 (3d Cir. 2005)

Clearly, Plaintiff's attempt to certify an overly extensive putative class far exceeds her grasp by mistakenly seeking to include those individuals for whom ClosetMaid never procured and/or used a consumer report. Indeed, Plaintiff proposes to include approximately 2,090 "candidates" who merely expressed an interest in an open position and an additional 2,348 applicants who completed and submitted the requisite disclosure and authorization forms but for whom ClosetMaid did not procure consumer reports. Of the remaining 1,793 applicants who actually signed and submitted disclosure and authorization forms, ClosetMaid actually hired approximately 1,494 and rejected approximately 299. See Beal Dep. pp. 96-113; see also Beal Dep. Ex. 9.[10]

Counts III and IV of Plaintiff's First Amended Complaint are similarly duplicative in Plaintiff's attempt to challenge ClosetMaid's handling of the so-called pre-adverse action notice pre-conditions to taking an adverse employment action based in whole or in part on the contents of a consumer report as set forth at 15 U.S.C. § 1681b (b)(3)(A)(i)-(ii) (entitled "Conditions on Use for Adverse Actions").

In her motion for class certification for these claims, Plaintiff seeks to certify a sub-class comprised of sixty (60) out of approximately 299 applicants whose job applications were rejected even though ClosetMaid either did not provide pre-adverse action notices or did not provide such notice at least five (5) business days in advance of taking such adverse action. However, of the sixty (60) applicants, all but four (4) plus Plaintiff were rejected for employment for reasons other than the information contained in the consumer reports.

---

[10]     ClosetMaid's Vice President of Human Resources Catherine Beal was deposed on two dates, August 27, 2009 and July 29, 2010. The transcript and exhibits from the August 27, 2009 deposition, referred to herein as "Beal Dep." can be found at ClosetMaid's contemporaneously filed Appendix of Record Materials at Tab A. The transcript and exhibits from the July 29, 2010 deposition can be found at Tab B. ClosetMaid refers to Ms. Beal's July 29, 2010 deposition herein as "Beal Dep. II."

Moreover, Plaintiff has not identified any controlling legal authority that mandates providing pre-adverse action notice <u>at least five (5) business days in advance</u> of taking an adverse employment action in every instance.  FCRA is silent on how much time must actually elapse after providing the pre-adverse action notice before taking adverse action. The pertinent provision, 15 U.S.C. § 1681b(b)(3), merely states that "in using a consumer report for employment purposes, <u>before</u> taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of [FCRA rights]" (emphasis added). In fact, this five-day rule seems to have originated from an FTC Staff Opinion Letter authored by Clarke W. Brinckerhoff, stating:

> The final issued raised by your letter concerns the period of time that an employer must wait after supplying the materials required by [15 U.S.C. § 1681b(b)], before taking adverse action, an issue on which the section is silent.  You suggest a period of five business days from the date of the notice.  Although the facts of any particular employment situation may require a different time, the five day period that you proposed appears reasonable.

<u>Weisberg</u> (FTC June 27, 1997).  A subsequent FTC Staff Opinion Letter addressing this same issue states:

> The statute does not specify how long an employer must wait, after providing the required disclosures, before taking the adverse action. The amount of time that an employer should wait before taking adverse action will vary depending upon the circumstances, such as the nature of the job involved and the way that the employer does business.  Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the purpose of the provisions to allow consumers to discuss the report with employers before adverse action is taken.

<u>Hauxwell</u> (FTC June 11, 1998); <u>see also</u> <u>Hawkey</u> (FTC Dec. 18, 1997).

## III.   ARGUMENT

**A.   PLAINTIFF FAILS TO SATISFY HER RIGOROUS BURDEN OF ESTABLISHING ALL FED.R.CIV.P. 23 ELEMENTS FOR CLASS CERTIFICATION.**

Federal Rule of Civil Procedure 23 provides an analytical framework "designed to insure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representative.'" In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998) (quoting Amchem. Prods., Inc. v. Windsor, 521 U.S. 591, 621 (1997)). Accordingly, Plaintiff must satisfy all components of Fed.R.Civ.P. 23(a) and at least one component of Fed.R.Civ.P. 23(b) in order to obtain class certification.

Rule 23(a) requires Plaintiff to establish that: "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defences of the representative parties are typical of the claims or defences of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy.

Even if Plaintiff could establish these Rule 23(a) elements, a contention ClosetMaid disputes, Plaintiff's proposed class(es) still cannot be certified unless Plaintiff also satisfies at least one component of Rule 23(b). "No class that fails to satisfy all four prerequisites of Fed.R.Civ.P. 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b)." Falcon, 457 U.S. at 160-61. Here, Plaintiff seeks certification pursuant to Fed.R.Civ.P. 23(b)(3) so she must also prove that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Plaintiff must prove all Rule 23 requirements by a preponderance of the evidence. <u>See</u> <u>Chiang v. Veneman</u>, 385 F.3d 256, 264 (3d Cir. 2004); <u>see</u> <u>also</u> <u>Hydrogen Peroxide</u>, 552 F.3d at 320. In doing so, Plaintiff must withstand a "rigorous analysis" to determine if Plaintiff meets all Rule 23 requirements when assessing Plaintiff's motion for class certification; "actual, not presumed" compliance with Rule 23 is "indispensable." <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 160-61 (1982) <u>see</u> <u>also</u> <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585, 595-96 (3d Cir. 2009)("[i]t is well established that 'a class may be certified only if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied'.")(quoting <u>Beck v. Maximus</u>, 457 F.3d 291, 297 (3d Cir. 2006)).

Moreover, Plaintiff's underlying cause(s) of action must also be examined when assessing the propriety of her motion for class certification. <u>See</u> <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 172 (3d Cir. 2001). While the underlying merits are not to be decided when performing its "rigorous analysis" of Plaintiff's motion for certification, <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-78 (1974), the Court may "probe behind the pleadings before coming to rest on the certification question." <u>Falcon</u>, 457 U.S. at 160. Indeed, the United States Court of Appeals for the Third Circuit has instructed district courts to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 316 (3d Cir. 2008); <u>see</u> <u>also</u> <u>Johnston v. HBO Film Mgmt., Inc.</u>, 265 F.3d 178, 189 (3d Cir. 2001). In so doing, the Court may conduct a "preliminary inquiry into the merits" as well as "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." <u>Johnston</u>, 552 F.3d at 317.

Finally, when certifying a putative class pursuant to Fed.R.Civ.P. 23, the Court is required to delineate "the precise parameters defining the class and a complete list of the class,

issues, or defenses to be treated on a class basis." <u>Wachtell v. Guardian Life Ins. Co. of Am.</u>, 453 F.3d 179, 185 (3d Cir. 2006).

As set forth in greater detail below, Plaintiff's motion for class certification should be denied because her proposed class fails to satisfy all requisite elements of Fed.R.Civ.P 23(a) and 23(b)(3).  Perhaps recognizing these deficiencies as impediments to certification, Plaintiff attempts to construct two (2) subclasses in her effort to fulfil her burden, yet these proposed sub-classes contain similar defects and likewise cannot satisfy Fed.R.Civ.P. 23(a) and 23(b)(3).

**B.    PLAINTIFF'S PUTATIVE "DISCLOSURE" CLASS LACKS COMMONALITY, PRESENTS INDIVIDUAL ISSUES THAT PREDOMINATE OVER COMMON ISSUES, AND POSES AN INFERIOR MEANS TO NON-CLASS METHODS FOR ADJUDICATING THIS CONTROVERY.**

Plaintiff's motion improvidently seeks to certify a class and a sub-class relating to ClosetMaid's job applicants' execution of FCRA-prescribed disclosure and authorization forms despite the putative class members' lack of commonality and despite the predominance of their individual issues over common issues. Moreover, adjudicating this controversy by class action would be inferior to other adjudication methods.

Plaintiff's proposed "disclosure" class and subclass would include:

> all employees or prospective employees, applicants or candidates of ClosetMaid residing in the United States (including all territories and other political subdivisions of the United States) who within the period prescribed by FCRA, 15 U.S.C. § 1681p, prior to the filing of this action, executed ClosetMaid's forms purporting to authorize ClosetMaid [sic] to procure a consumer report about them.

(Pl's Motion, p. 2)  Plaintiff refines her proposed "disclosure" class by also proposing to certify a "sub-class" of many of those same individuals "who were the subject of a consumer report" procured and used by ClosetMaid.  (Pl's Motion, p. 2)

Plaintiff contends that this proposed "disclosure" class would include as many as 6,769 individuals with a sub-class of up to 1,793 of those same 6,769 individuals.  (Pl.'s Mem. at 20) In effect, Plaintiff asks this Court to certify as one class the following overly broad and dissimilar groups:

(i)     Individuals, sometimes referred to as "candidates," who merely expressed an interest in working at ClosetMaid but who never applied for any such jobs, never singed and/or submitted FCRA-prescribed disclosure and authorization forms, and who were not the subject of a consumer report procured and used by ClosetMaid;

(ii)    Individual "applicants" who applied for a job at ClosetMaid but who did not sign and submit FCRA-prescribed disclosure and authorization forms and who were not the subject of a consumer report procured and used by ClosetMaid;

(iii)   Individual "applicants" who applied for a job at ClosetMaid and signed FCRA-prescribed disclosure and authorization forms, were the subject of a consumer report procured and used by ClosetMaid, and were hired by ClosetMaid;

(iv)    Individual "applicants" who applied for a job at ClosetMaid and signed FCRA-prescribed disclosure and authorization forms, were the subject of a consumer report procured and used by ClosetMaid, but who were not hired by ClosetMaid for reasons unrelated to the contents of the consumer report; and

(v)     Individual "applicants" who applied for a job at ClosetMaid and signed FCRA-prescribed disclosure and authorization forms, were the subject of a consumer report procured and used by ClosetMaid, but who were not hired by ClosetMaid for reasons related to the contents of the consumer report.

This forgoing proposed putative "disclosure" class is unsuitable for class treatment and should not be certified as such.

### 1.     Plaintiff's Putative "Disclosure" Class Lacks Commonality.

Rule 23's commonality requirement mandates the existence of "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  To satisfy this requirement, Plaintiff must withstand the Court's rigorous analysis and prove the existence of at least one question of law or fact common to the entire putative class.  See In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Action, 93 F.3d 610, 627 (3d Cir. 1996).  Where commonality is lacking, subclasses

"do not solve the problem" and they "are not a substitute for compliance with Rule 23." Sprague v. General Motors Corp., 133 F.3d 388, 399 n.9.

> (a) **Plaintiff Improvidently Seeks to Include Non-Aggrieved Individuals in Her Proposed "Disclosure" Class.**

Plaintiff improvidently seeks to include individuals in her proposed "disclosure" class who never signed and submitted FCRA-prescribed disclosure and authorization forms and/or who signed and submitted such forms but who were never the subject of a consumer report procured and used by ClosetMaid.

Plaintiff seeks to include as putative class members approximately 2,090 so-called "candidates" who merely expressed an interest in an open position but who never applied or otherwise signed and submitted FCRA-prescribed disclosure and authorization forms[11], and another approximately 2,348 individuals who completed and submitted disclosure and authorization forms but whom, unlike Plaintiff, were not the subjects of a consumer report procured and used by ClosetMaid.  See Beal Dep., pp. 96-113 see also Beal Dep. Ex. Ex. 9. None of these individuals were the subjects of a consumer report procured and used by ClosetMaid; therefore, they were not aggrieved by any purported FCRA violation in common with Plaintiff and other individuals who were the subjects of such consumer reports.

Despite the Court's need to examine the substantive elements of Plaintiff's FCRA claims as described in Newton, 259 F.3d at 172, Plaintiff has not and cannot cite any legal authority to support her contention that ClosetMaid violated FCRA when merely asking job applicants to complete and submit purportedly non-compliant FCRA-prescribed disclosure and authorization forms even though it never procured and used consumer reports for those applicants. Rather, the

---

[11]     These individuals should also be excluded from the putative "disclosure" class because they do not even meet Plaintiff's proposed class definition.  At a minimum, the class representative must "define the class in a way that enables the court to determine whether a particular individual is a class member."  Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995).

use such forms merely serves as a condition precedent to procuring and using consumer reports.

See 15 U.S.C. § 1681b(b)(2)(A).  Indeed, in <u>Kelchner v. Sycamore Manor Health Center</u>, 305 F.

Supp. 2d 429, 435 (E.D. Pa. 2004), <u>aff'd</u> 135 Fed. Appx. 499 (3d Cir. 2005), that court, when

addressing the issue of whether an employer may use blanket FCRA-prescribed disclosure and

authorization forms, stated:

> [FCRA's] detailed protections against misuse of information that is obtained through an employer's use of an authorization lead to a conclusion directly opposite that suggested by Plaintiffs.
>
> . . . [o]nce an employer decides to use these reports and take adverse action against their employees, they must follow procedures to ensure that they are being used fairly and accurately.  Plaintiff . . . was notified of her employers' right to procure consumer reports on her at some point in the future and her authorization was requested.  <u>If and when [employer] did obtain such reports, and if and when it decided to take any adverse action based on them, Plaintiff['s] . . . privacy interests would have been protected by the procedures delineated in [FCRA] that [employer] would have been required to follow. [Employer's] failure to follow the procedures would clearly subject it to a lawsuit</u> for willful noncompliance under 15 U.S.C. § 1681n.

305 F. Supp. 2d at 436 (emphasis added).  The <u>Kelchner</u> court's discussion here comports with

the pertinent statutory language at 15 U.S.C. § 1681b(b), entitled "Conditions for Furnishing and

Using Consumer Reports for Employment Purposes", which at subsection (2) delineates these

disclosure and authorization forms as prerequisites or conditions precedent by stating: "a person

may not procure a consumer report, or cause a consumer report to be procured, for employment

purposes with respect to any consumer, <u>unless</u>" such disclosures and authorizations are obtained.

See 15 U.S.C. § 1681b(b)(2)(A) (emphasis added). Accordingly, ClosetMaid's potential liability

under FCRA is triggered only when consumer reports are procured and used without first

obtaining FCRA-compliant disclosure and authorizations forms from its applicants, and <u>not</u>

when an individual applicant merely completes and submits those purportedly inadequate FCRA-prescribed disclosure and authorization forms.

These approximately 4,438 individuals[12], therefore, are not the subject of any "common" practice that is potentially unlawful under FCRA. Plaintiff, in her zealous pursuit of embellished class-based statutory damages afforded by FCRA, improvidently urges the Court to certify an erroneously overbroad class of individuals which includes those who were not the subject of a consumer report procured and used by ClosetMaid. Those individuals undoubtedly lack sufficient commonality with those who, like Plaintiff, applied for a job at ClosetMaid, completed and submitted an FCRA-prescribed disclosure and authorization form, and were the subject of a consumer report.

> **(b)** **The Putative Class Members Were not Subject to a Common Policy or Practice.**

In addition to including an overly broad group of individuals who were never the subject of a consumer report, and, therefore, are not potentially aggrieved by any cognizable FCRA claim, Plaintiff also mistakenly seeks to include dissimilar groups of job applicants in her proposed "disclosure" class who used different FCRA-prescribed disclosure and authorization forms depending on the position, geographic location, and period of time of their applications.

For example, the forms utilized at ClosetMaid's Belle Vernon, Pennsylvania, facility differed from those used at its Ocala, Florida, and Grantsville, Maryland, locations. See Beal Dep., p. 114; see Beal Dep. Exs., generally. Similarly, the forms used by ClosetMaid at its Chino, California, facility were distinct from those used at other facilities because individuals

---

[12]      These 4,438 individuals are comprised of 2,090 "candidates" who never completed disclosure and authorization forms plus 2,348 individual applicants who completed and submitted disclosure and authorization forms but for whom ClosetMaid did not procure and use a consumer report. See Beal Dep., pp. 96-113 see also Beal Dep. Ex. 9.

must check a box at the bottom of the disclosure form to ensure compliance with California state law regarding the use of consumer reports in that jurisdiction. See Beal Dep., p. 118-119; Beal Dep. Ex. 14; see also CAL. CIV. CODE § 1786.

The evidence gathered thus far also reveals that some of the individuals that Plaintiff seeks to represent applied for commercial driver positions. See Beal Dep., p. 23, 39. As noted above, FCRA imposes different conditions precedent on employers who desire to procure and use consumer reports relating to applicants for commercial truck driver and certain other jobs regulated by the U.S. Department of Transportation ("DOT"). These individuals were subject to different processes and procedures for procuring and using consumer reports. See e.g., 15 U.S.C. § 1681b(b)(2)(B) and (C); 15 U.S.C. § 1681b(b)(3)(B).

Finally, the record evidence also reveals that ClosetMaid procured consumer reports from different consumer reporting agencies and consequently followed different processes when doing so with each such consumer reporting agency. See Beal Dep., pp. 61-63.

It is clear that the only factual issue material to determining liability *vel non* for Plaintiffs FCRA claims expressed at Counts I and II of her First Amended Complaint and for whom she seeks to certify the so-called "disclosure" class and sub-class is the adequacy of the FCRA-prescribed disclosure and authorization forms signed and submitted by applicants before ClosetMaid procured and used consumer reports concerning them. Clearly, Plaintiff's proposed class and sub-class include individuals who admittedly were never the subject of a consumer report, and, furthermore, include additional individuals who were the subject of consumer reports procured and used by ClosetMaid, but who signed and submitted different disclosure and authorization forms and whose applications were processed by ClosetMaid through different consumer reporting agencies. Under these circumstances, Plaintiff has failed to prove the

requisite commonality necessary under the Court's rigorous analysis of her motion seeking certification of this overly broad and diverse "disclosure" class and sub-class.

>    2.    **Individual Issues Predominate in Plaintiff's Proposed "Disclosure" Class and Would Pose an Inferior Method for Resolving this Action.**

Plaintiff seeks certification of her proposed "disclosure" class and sub-class pursuant to Rule 23(b)(3). Courts commonly separate the requirements of Fed.R.Civ.P. 23(b)(3) into "predominance" and "superiority" analyses. See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 257-58 (3d Cir. 2009); see also Hydrogen Peroxide, 552 F.3d at 310.  Certification under Rule 23(b)(3) in this instance would be inappropriate because the record evidence shows that individual questions of fact and law predominate over common issues and because a class action would be inferior to other methods for adjudicating this controversy.

The Third Circuit has instructed that the predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a)(2), and, in fact, it actually subsumes that commonality analysis. See Danvers Motor Co, Inc. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008).  This predominance analysis requires Plaintiff to demonstrate that "issues common to the class must predominate over individual issues." In re Prudential, 148 F.3d at 313-14.

Plaintiff cannot satisfy the predominance requirement of Fed.R.Civ.P. 23(b)(3) because many members of this putative class were never subjects of a consumer report. See Beal Dep. Ex. 9.  As set forth above, these groups of potential class members lack commonality with those who were subjects of consumer reports procured and used by ClosetMaid and their individual circumstances predominate over anything they would have in common.

To remedy this deficiency, Plaintiff proposes a sub-class consisting solely of those individuals who were subjects of consumer reports procured and used by ClosetMaid.  However, the creation of a sub-class would exacerbate rather than remedy the deficiencies in

predominance. <u>Sprague</u>, 133 F.3d at 399 n.9; <u>see</u> <u>also</u> <u>Clark Equip. Co. v. Int'l Union, Allied Indus. Workers</u>, 803 F.2d 878, 880 (6th Cir. 1986) ("Subclassing …appropriate only when the court believes it will materially improve the litigation" because "subclassing often leads to more complex and protracted litigation.").

The record evidence reveals that ClosetMaid utilized different consumer reporting agencies to procure consumer reports during the relevant time period, that it used different disclosure and authorization forms at different ClosetMaid facilities during different time periods, and that the disclosure and authorization forms used at ClosetMaid's Chino, California facility were especially unique in that they included specific language applicable under California law.[13] Importantly, the evidentiary record reveals that ClosetMaid obtained two such forms from Plaintiff, but that it later ceased using one of those forms for other applicants. <u>See</u> Beal Dep., pp. 125-26.

There are so many material differences among and between the putative class and sub-class members that their individual facts and circumstances predominate over any issues they may have in common.

Given the predominance of their individual issues, class-based adjudication would be far inferior to alternative methods of adjudication. To prove otherwise, Plaintiff must show that a class action, rather than individual litigation, is the best method for achieving a fair and efficient adjudication of this controversy. <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 191 (3d Cir. 2001). This analysis requires the court to balance the merits of a class action against the merits of alternative methods of adjudication. <u>See</u> <u>In re Community Bank of Northern Virginia</u>, 418 F.3d 277, 309 (3d Cir. 2005)(citing <u>Georgine v. Amchem Prods., Inc.</u>, 83 F.3d 610,

---

[13] The evidence also reveals that some of the individuals Plaintiff seeks to represent applied for commercial driver positions who were the subject of separate and distinct FCRA requirements. <u>See</u> <u>e.g.</u>, 15 U.S.C. § 1681b (b)(2)(B) and (C); 15 U.S.C. § 1681b (b)(3)(B).

632 (3d Cir. 1996)).  For the reasons set forth above regarding commonality and predominance, Plaintiff also fails to satisfy this superiority requirement.[14]

> **C.   PLAINTIFF'S PUTATIVE "PRE-ADVERSE ACTION" SUB-CLASS LACKS NUMEROSITY, COMMONALITY AND TYPICALITY, PRESENTS INDIVIDUAL ISSUES THAT PREDOMINATE OVER COMMON ISSUES, AND POSES AN INFERIOR MEANS TO NON-CLASS METHODS FOR ADJUDICATING THIS ACTION.**

Plaintiff's motion also seeks to certify an additional sub-class for Courts III and IV of her First Amended Complaint to involve those individuals who were subjects of consumer reports procured and used by ClosetMaid "which contained any negative (derogatory)" information and whom ClosetMaid failed to provide a copy of their consumer report and/or FCRA summary of rights at least five (5) business days before being notified that ClosetMaid may take an adverse action.  See Pl's Motion, p. 2.  Plaintiff's motion improvidently seeks to certify this sub-class despite the putative class members' lack of numerosity, commonality and typicality, and despite the predominance of their individual issues over common issues. Moreover, adjudicating this controversy by class action would be inferior to other adjudication methods.

> **1.   Plaintiff Fails to Demonstrate That Her Proposed "Pre-Adverse Action" Sub-Class Is Sufficiently Numerous.**

Plaintiff has failed to establish that her proposed "pre-adverse action" sub-class of "at least 60 persons"[15] is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  While no single magic number exists satisfying the numerosity requirement, see Behrend v. Comcast Corp., 245 F.R.D. 195, 202 (E.D. Pa. 2007), an adequate class must contain at least 40 individuals.  See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

---

[14]     Moreover, given that FCRA provides for the recovery of attorneys' for individual claims, individual litigation with regard to these purported violations is appropriate. See e.g., Klotz v. Trans Union, LLC, 246 F.R.D. 208, 217 (E.D. Pa. 2007)(holding that the attorneys' fees and penalties for violations under the FCRA dispel the notion that a class action is the only way to adjudicate the plaintiff's claims).

[15]     Pl's Brief, p. 20.

Other than Plaintiff herself, Plaintiff has adduced no evidence that ClosetMaid took an adverse action against any other individuals who were the subjects of a consumer report without first providing them a copy of their consumer report, a summary of their FCRA rights, and a notice along with these materials informing the individual that an adverse action may be taken at least five (5) business days in advance of taking such action. See Beal Dep. II, p. 28. This failure renders Plaintiff's "pre-adverse action" sub-class deficient as a matter of law.

**2.   Plaintiff's "Pre-Adverse Action" Sub-Class Lacks Commonality.**

As previously noted, Fed. R. Civ. P. 23(a)(2) requires that Plaintiff prove the existence of at least one question of law or fact common to the entire class. See In re Prudential, 93 F.3d at 627. In this case, Plaintiff attempts to argue that the individuals who comprise her proposed "pre-adverse action" sub-class were each subjected to a company-wide policy utilizing the same criteria in reviewing consumer reports and whose applications were rejected on the basis of "negative" or "derogatory" entries without having received, at least five (5) business days beforehand, an FCRA-mandated "pre-adverse action" notice accompanied by a copy of the applicant's consumer report and summary of FCRA rights. See Pl's Brief, p. 19. The evidence of record, however, reveals that ClosetMaid had no such common policy or practice.

The record evidence adduced thus far reveals that ClosetMaid's individual hiring managers made their own decisions for each position on a case-by-case basis and that the contents of an applicant's consumer report disqualifying for a given position may not be disqualifying for others. For example, Catherine Beal, ClosetMaid's Vice President of Human Resources, testified without contradiction that individual recruiters would review the results of consumer reports and would make decisions based upon the position for which the applicant was applying. See Beal Dep., pp. 62-66. Ms. Beal further testified that the standards ClosetMaid applied to applicants when reviewing their consumer reports would be different for salespeople,

truck drivers, etc.[16], as compared to other open positions, that its various human resources managers at its various locations would be responsible for making these decisions[17], and that credit checks were obtained for only a small portion of this proposed sub-class; 36 including Plaintiff, depending yet again upon the position for which they applied[18].

Importantly, Ms. Beal testified that the reasons for rejecting the applications of individuals in Plaintiff's proposed "pre-adverse action" sub-class were diverse and seldom based upon information contained in the applicants' consumer reports. See Beal Dep., pp. 106-108; see also Beal Dep. Ex. 9.

Once again, this evidence shows that Plaintiff has not and cannot satisfy her burden of proving commonality.

### 3.   Plaintiff's "Pre-Adverse Action" Claims are not Typical.

Plaintiff also fails to show that "the claims ... of the representative parties are typical of the claims ... of the class." FED. R. CIV. P. 23(a)(3). Indeed, Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the putative class and is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." In re Prudential, 148 F.3d at 311. "The typicality requirement is intend[ed] to preclude certification of those cases where the legal theories of the named plaintiff potentially conflict with those of the absentees." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1998).

To prove typicality, the United States Supreme Court requires that Plaintiff "possess the same interest and suffer the same injury" as class members, East Tex. Motor Freight Sys., Inc. v.

---

[16]     Beal Dep., pp. 63-64.

[17]     Beal Dep., p. 65.

[18]     Beal Dep., p. 110.

Rodriguez, 431 U.S. 395, 403 (1977), and "limit[s] the class claims to those fairly encompassed by [Plaintiffs'] claims." The legal theories of the named plaintiff must not conflict with those of the absent class members. Georgine, 83 F.3d at 631; see also Klotz v. Trans Union, LLC, 246 F.R.D. 208, 215 (E.D. Pa. 2007)(holding that a plaintiff in a FCRA case failed to satisfy the typicality requirement under Rule 23(a)). The claims of the named plaintiff must involve the *same conduct* by the defendant as those of the class members. See Johnston, 265 F.3d at 184 ("so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant …").

Plaintiff's claims are not typical of those of the proposed pre-adverse action sub-class she seeks to represent. Plaintiff alleges she did not receive a pre-adverse action letter at least five days prior to ClosetMaid taking an employment action against her. Nonetheless, she now seeks to represent a class of individuals who received no adverse action notice from ClosetMaid at all, rendering her claims atypical and defeating her attempt to represent these individuals.

    4.    **Individual Issues Predominate in Plaintiff's Proposed "Pre-Adverse Action" Sub-Class and Would Pose an Inferior Method for Resolving this Action.**

Plaintiff has not and cannot establish the predominance of issues common to the proposed "pre-adverse action class" over the proposed sub-class members' respective individual issues as required by Fed.R.Civ.P. 23(b)(3) for the same reasons, expressed above, that Plaintiff cannot satisfy the commonality requirement of Fed.R.Civ.P. 23(a).

Indeed, Plaintiff and/or her counsel undertakes a case-by-case analysis of each proposed sub-class member's consumer report to make a subjective and individualized judgment as to what Plaintiff (or her counsel) deems "negative" and "derogatory" enough to be disqualifying in her effort to argue that each of these sixty (60) individuals experienced an adverse employment action based in whole or in part on the contents of their consumer reports so as to implicate the

pre-adverse action notice requirements of FCRA at 15 U.S.C. § 1681b(b)(3)(A)(i)-(ii).  Issues germane to this assessment are individualized as to each applicant and by necessity would include: the type and nature of job each applicant applied for; other potentially disqualifying information contained in the applicant's application or otherwise discerned during the hiring process; the comparison of that applicant's overall qualifications to other applicants for the same job; and the type and nature of criminal or other background check information contained in each applicant's consumer report.  These individualized issues clearly predominate over any issues these proposed "pre-adverse action" sub-class members might have in common.

It is noteworthy that Plaintiff is claiming that ClosetMaid committed wilful FCRA violations or, in the alternative, negligent violations, and that she and her proposed class and sub-class members would potentially be seeking statutory and punitive damages. Similar claims were asserted by Plaintiff's counsel in another case and deemed by the court to be inappropriate for class certification.  See Williams v. Telespectrum, Inc., Civil Action No. 05-853, 2007 WL 6787411 (E.D. Va. June 1, 2007)(denying plaintiff's motion for class certification of FCRA claims under Rule 23(b)(3)).  The Telespectrum court held that the issue of litigating actual damages for each member of the class under FCRA "bars such a class from being certified." 2007 WL 6787411 at *5.  The Telespectrum court also held that determining the defendant's liability for punitive damages would overshadow the common questions to be litigated in that case.  Id.

In this case, as in Telespectrum, Plaintiff asks this Court to certify a class seeking actual damages for negligent FCRA violations and punitive damages for purportedly wilful FCRA violations.  However, the amount of punitive damages that could be awarded against ClosetMaid would be limited by the Due Process Clause of the Constitution insofar as such an award bears a reasonable relationship to actual damages.  See BMW of North America, Inc. v. Gore, 517 U.S.

559 (1996). Under FCRA, statutory damages are capped at $1,000 per wilful violation, see 15 U.S.C. § 1681n(a)(1)(A), yet each potential class member's actual damages could vary widely depending upon their individualized circumstances. See Telespectrum, 2007 WL 6787411 at *6. Therefore, it is possible that a punitive damages award based upon an individual plaintiff's actual damages would substantially exceed constitutional permissibility.

Finally, and for the reasons set forth above regarding numerosity, commonality, and predominance, individual litigation is the best method for achieving a fair and efficient adjudication of this controversy. See Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d at 191; In re Community Bank of Northern Virginia, 418 F.3d at 309 (citing Georgine, 83 F.3d at 632); Klotz, 246 F.R.D. at 217.

### IV.   CONCLUSION

WHEREFORE, Defendant, ClosetMaid Corporation, respectfully requests that this Honorable Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

Dated:  November 1, 2010

*/s/ W. Scott Hardy*
Thomas A. Smock, Esq.
PA I.D. No. 20203
thomas.smock@ogletreedeakins.com

W. Scott Hardy, Esq.
PA I.D. No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esq.
PA I.D. No. 94156
philip.kontul@ogletreedeakins.com

Four Gateway Center
444 Liberty Avenue, Suite 400
Pittsburgh, PA  15222-1237
Telephone: (412) 394-3346
Facsimile: (412) 232-1799

Counsel for ClosetMaid Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION was filed electronically on November 1, 2010. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ W. Scott Hardy*
Counsel for Defendants

9311499.3 (OGLETREE)