## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| R. CATHY REARDON | ) | |
| On behalf of herself and all | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 2:08cv1730GLL |
| v. | ) | |
| CLOSETMAID CORPORATION | ) | Hon. Chief Judge Gary Lancaster |
| | ) | |
| | ) | **Class Action** |
| Defendant**.** | **)** | |
| | | **Electronically Filed** |

## REPRESENTATIVE PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION FOR CLASS CERTIFICATION

James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
Mitchell Building
304 Ross Street, Suite 700
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010

*Counsel For Representative And Class Plaintiffs*

.

TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

I.   THE DISCLOSURE CLASS SATISFIES RULE 23 REQUIREMENTS

   A. Numerosity Is Satisfied…………………………………………..……….. 3

       1. The Amended Class Definition ..................................................... 4

       2.   The Amended Class Definition Obviates The Objection That the
          Disclosure Class Is Overbroad ..................................................... 5

   B.   Commonality and Predominace Are Satisfied ...................................... 7

       1.   ClosetMaid's Common Conduct Gives Rise To Commonality ................. 7

          a.  ClosetMaid Misconstrues The Commonality Legal Standard ............. 7

          b. The Evidence Demonstrates Commonality ........................................... 8

       2.   Predominance Is Satisfied Given The Common Method of Proof ........... 11

   C.   The Disclosure Class Satisfies Superiority ......................................... 12

II.  THE PRE-ADVERSE ACTION SUB-CLASS SATISFIES RULE 23 ..................... 14

   A.  Numerosity Is Satisfied ..................................................................... 14

   B.  Commonality Is Satisfied .................................................................. 15

       1. ClosetMaid's Willful Blindness To Its Pre-Adverse Action Duties.............. 16

       2. ClosetMaid's Violations  Are Susceptible To Common Proof ..................... 17

   C.  Typicality Is Satisfied ....................................................................... 19

   D.  Predominace Is Satisfied .................................................................. 20

IV.  CONCLUSION   ...................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Alcoa, Inc. v. United States*, 509 F.3d 173 (3d Cir. 2007) .................................................. 16

*Amchem v. Windsor Products,* 521 U.S. at 591 (1998) ....................................................... 13

*Baby Neal v. Casey,* 43 F.3d 48(3d Cir.1994) .............................................................. 8, 20

*Balderos v. Illinois Vehicle Financing,* 1997 WL 627650 (N.D. Ill. 1997) .................... 22

*Blain v. Smithkline Beecham Corp.,* 240 F.R.D. 179 (E.D.Pa.2007) ................................. 3

*Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir.1977) .................................................. 20

*Burns v. First American Bank,* 2006 WL 3754820 (N.D. Ill. 2006) ................................. 22

*Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586  (E.D.Cal.2008) ................ 6

*Carnegie v. Household International Inc.,* 376 F.3d 656 (7th Cir.2004) ......................... 23

*Cavin v. Home Loan Center,* 236 F.R.D. 387  (N.D. Ill. 2006) ........................................ 22

*Chakejian v. Equifax Info. Servs.,* 256 F.R.D. 492 (E.D.Pa.2009) .................................... 3

*Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004) .............................................................. 5

*Christakos v. InterCounty Title Co.,* 196 F.R.D. 496, 502 (N.D. Ill. 2000) .................... 22

*Cima v. WellPoint Health Networks, Inc.,* 250 F.R.D. 374 (S.D. Ill. 2008) ...................... 5

*Clarke v. Lane*, 267 F.R.D. 180 (E.D. Pa. 2010) .............................................................. 8

*Doe v. Chao,* 540 U.S. 614  (2004) .................................................................................. 23

*Elliott v. ITT Corp.,* 150 F.R.D. 569 (N.D. Ill. 1992) ................................................ 3, 5, 6

*Garrett v. State Auto Prop. & Cas. Ins. Co.,* CIV.A. 3:09-CV-404-S, 2009 WL 5125812

(W.D. Ky. 2009) ............................................................................................................ 6

*Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir. 1997) ................................. 17

*Gillespie v. Equifax Info. Services, LLC,* 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15,

2008) ............................................................................................................................ 18

*Hernandez v. Chase Bank,* 243 F.R.d. 285 (N.D. Ill. 2006) ............................................. 22

*In re Monumental Life Ins. Co.* 365 F.3d 408 (5th Cir. 2004)................................................ 4

*In re Nat'l W. Life Ins. Deferred Annuities Litig.,* 268 F.R.D. 652 (S.D. Cal. 2010) ........ 6

*In re Prudential Ins. Co. of Am. Sales Practice Litig,* 148 F.3d 283 (3d Cir.1998) .......... 7

*In re Prudential,* 148 F.3d at 316 ................................................................................... 13

*In re School Asbestos Litig.,* 789 F.2d 996 (3d Cir.1986) ............................................... 21

*In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124 (2d Cir.2001)........... 24

*Jackson v. Se. Pennsylvania Transp. Auth.,* 260 F.R.D. 168 (E.D. Pa. 2009) ................... 3

*Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 184 (3d Cir.2001) ...................................... 8

*Jordan v. Commonwealth Financial,* 237 F.R.D. 132  (E.D. Pa. 2006) .......................... 13

*Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir.1974). ............................................... 12

*Kehoe v. Fidelity Federal,* 421 F.3d 1209 (11th Cir. 2005) ............................................. 23

*Perrin v. United States*, 444 U.S. 37 (1979) .................................................................... 16

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir.1993) ............................................................... 4

*Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500 (1957).................................................. 17

*Samuel v. Univ. of Pittsburgh,* 538 F.2d 991 (3d Cir.1976) ............................................ 21

*Seawell v. Universal Fidelity Corp.,* 235 F.R.D. 64  (E.D. Pa. 2006) ............................. 13

*Serrano v. Sterling Testing Sys., Inc.,* 711 F. Supp. 2d 402  (E.D. Pa. 2010).................... 8

*v. First Am. Title Ins. Co.,* 250 F.R.D. 232 (W.D. Pa. 2008).......................................... 23

*Wachtel v. Guardian Life Ins. Co.,* 223 F.R.D. 196 (D.N.J. 2004).................................. 21

*Wiesfeld v. Sun Chemical Corp.* 84 Fed.Appx. 257 2004 WL 45152 (3d Cir. 2004)....... 4

*Williams v. LexisNexus,* 2007 WL 2439463 (E.D. Va. 2007) ......................................... 21

*Yang v. Gov't Employees Ins. Co.,* 146 F.3d 1320 (11th Cir.1998)................................... 1

*Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368 (10th Cir.1987) ...................... 1

*Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173 (W.D. Pa. 2006) ..................................... 21

## Statutes

15 U.S.C. § 1681b(b)(2) ........................................................................ *passim*

15 U.S.C. § 1681b(b)(3) ........................................................................ *passim*

15 U.S.C. § 1681n(1)(A) ............................................................................ 21

## Other Authorities

Merriam-Webster Online Dictionary ............................................................ 17

## Rules

Fed.R.Civ. 23(a)(3) ................................................................................ 20

Fed.R.Civ.P. 23(a)(1) ............................................................................... 5

Fed.R.Civ.P. 23(b)(3) .............................................................................. 12

Fed.R.Civ.P. 30(b)(6) ............................................................................... 6

Fed.R.Civ.P. 8(a)(3) ............................................................................... 21

## Treatises

3 *Restatement (Second) of Torts, §* 621 Comment a (1976) ............................................ 23

3 *Restatement of Torts, §* 621, comment a, (1938) ......................................................... 23

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760.... 5

**INTRODUCTION**

Defendant ClosetMaid Corporation ("ClosetMaid") chastises Plaintiff's class claims as based upon Fair Credit Reporting Act ("FCRA") provisions that are "complex", "obscure" and "highly technical".  Defendant's Opposition to Class Certification. Electronic Case Filing # 42 at p. 1 and 2.  (hereinafter "ECF  42 p. ___"). ClosetMaid then goes on to depict Plaintiff's class claims as essentially an unworkable annoyance that has affected at most 4 people. ECF 42, p.2.

To the contrary, the FCRA provisions at issue in this case provide simple and straightforward procedures designed to effectuate exceptionally important FCRA purposes. *Cf.* Plaintiff's Memorandum In Support Of Class Certification, ECF 35, pp. 3-7. (hereinafter ECF 35 p.__"). The FCRA is recognized to have the "dual purpose" of protecting a person's right to privacy and facilitating accurate reporting of information.[1] The two FCRA provisions at issue in this case foster these important purposes.  The FCRA "Disclosure Provision" (ECF 35, pp. 3-5) protects the privacy rights of prospective employees by setting forth basic and simple procedures for an employer to obtain written consent to procure a consumer report.  This provision allows persons to maintain the confidentiality of private information about them without undue restrictions and compulsion.

---

[1]     *See e.g. Yang v. Gov't Employees Ins. Co.,* 146 F.3d 1320, 1322 (11th Cir.1998) (recognizing FCRA's dual purpose of facilitating accurate reporting and of protecting privacy); *Zamora v. Valley Fed. Sav. & Loan Ass'n,* 811 F.2d 1368, 1370 (10th Cir.1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy.").

The Pre-Adverse Action Notice provision ("ECF 35 pp. 5-7") provides very simple procedures that facilitate the accurate reporting of consumer information by requiring employers to notify prospective employees of potentially damaging, yet inaccurate, information in their reports so that it can be addressed with the employer and corrected or deleted with the reporting agency.

The record evidence demonstrates that ClosetMaid's uniform conduct undermines these important purposes. ECF 35,pp. 7-14. It demonstrates that ClosetMaid adopted and implemented polices, procedures and form documents that violate the FCRA Disclosure and Pre-Adverse Action provisions. *Id.* ClosetMaid's conduct was not isolated and dispersed, but was a common practice affecting thousands of prospective employees. This evidence fully illustrates that the elements of the proposed Class and Sub-class claims are susceptible to proof by common, generalized evidence.  As a result, the requirements for class certification are fully satisfied.

## I.      THE DISCLOSURE CLASS SATISFIES THE RULE 23 REQUIREMENTS

ClosetMaid concedes that the Disclosure Class satisfies the "typicality" and "adequacy of representation", but contests that Plaintiff satisfied "commonality", "predominance" and "superiority".  ClosetMaid contends that the proposed "Disclosure Class" for Count I of the FAC proposed in the Motion For Class Certification (ECF 34) is excessively overbroad because it would purportedly include "aggrieved" and "non-aggrieved" persons.  ECF 42 p. 12-15.[2]  ClosetMaid argues that many persons in the initially proposed (ECF 37) Count I Disclosure Class are "non-aggrieved" because,

---

[2]      In Count I Plaintiff's allege that ClosetMaid violates 15 U.S.C. § 1681b(b)(2) ("The Disclosure Provision") by using illegal means to obtain a prospective employees consent for ClosetMaid to procure a consumer report for employment purposes.

although they may have executed a Disclosure and Consent Form authorizing ClosetMaid

to procure a consumer report, ClosetMaid never actually procured such a report in many

instances. ECF 42, pp. 6-7, 13-14. ClosetMaid also argues that its conduct was different

amongst its territories around the country.  ECF 42, pp. 15-16. From this premise,

ClosetMaid argues that "commonality" "predominace" and "superiority" are lacking.

ClosetMaid's position is obviated by the amended proposed class definition and

otherwise fully refuted below.

### A.      Numerosity Is Satisfied

ClosetMaid's argument that the proposed class is overbroad really goes to the

adequacy of the class definition rather than the issues of commonality and predominance.

Although there is no explicit requirement concerning the class definition in Fed.R.Civ.P.

23, courts have held that the class must be adequately defined and clearly ascertainable

before a class action may proceed. *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill.

1992).  Court often address this requirement in conjunction with the numerosity

requirement. *See Jackson v. Se. Pennsylvania Transp. Auth.*, 260 F.R.D. 168, 182 (E.D.

Pa. 2009) *citing Chakejian v. Equifax Info. Servs.*, 256 F.R.D. 492, 497 (E.D.Pa.2009)

(considering the viability of the class definition in the context of the Rule 23(a)

numerosity analysis); *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 184

(E.D.Pa.2007) (finding that the inquiry as to the adequacy of the class definition is

subsumed in the Rule 23(a) analysis).  The amended class definition precludes any claim

of over breadth and satisfies the numerosity requirement.

### 1.    The Amended Class Definition

Plaintiff has proposed a revised class definition in an Amended Motion For Class Certification that resolves and obviates ClosetMaid's argument that the class is overbroad. Plaintiff has amended her class definition to limit the Disclosure Class in accordance with ClosetMaid's view that procurement of a consumer report is required for standing under the Disclosure Provision.[3]   Essentially, the Amended Motion eliminates the proposed class definition for Count I and then provides a single class definition for both Counts I and II of the FAC which limits the Disclosure Class to persons as to whom ClosetMaid procured a consumer report as follows: [4]

---

[3]    The Third Circuit recognizes that a court is not bound by the initial class definition. *Wiesfeld v. Sun Chemical Corp.* 84 Fed.Appx. 257, 259, 2004 WL 45152, 1 (3d Cir. 2004)(" Despite failing to revise his complaint, Weisfeld sought to narrow the definition of the class in his motion for class certification. . . . The District Court considered this revised class definition in its analysis, and we will do the same." *citing Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); *In re Monumental Life Ins. Co.* 365 F.3d 408, 414 (5th Cir. 2004)(" . . . holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition. District courts are permitted to limit or modify class definitions to provide the necessary precision.")

[4]    The Parties disputed the requirements for standing under 15 U.S.C. § 1681b(b)(2). ClosetMaid argues that in order to have standing to assert a claim the employer or prospective employer must have actually obtained consent to procure a consumer report using purportedly improper forms *and* must have then actually *procured* the report. ECF 42 p. 13. According to ClosetMaid, the violation occurs at the point of *actual procurement* of the report. Based upon this construction of  § 1681b(b)(2), ClosetMaid argued that Plaintiff's proposed Disclosure Class would encompass numerous persons as to whom ClosetMaid never procured any consumer report. ECF 42 at p. 12.

Plaintiff, by contrast, maintained that it is the *execution* of an allegedly improper disclosure and consent form that gives rise to a violation since § 1681b(b)(2) is focused on consent and authorizes the employer to procure the report at any time in the future. See Plaintiff's Motion In Support Of Class Certification. ECF 35 at p. 4-5. Nevertheless, for purposes of the prosecution of this action, Plaintiff consents to

> All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants and who executed ClosetMaid's forms purporting to authorize ClosetMaid to procure a consumer report about them, within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action.

Using this class definition as a guidepost, the Disclosure Class is composed of at least 1793 persons who executed ClosetMaid's FCRA consent forms as to whom ClosetMaid then procured a consumer report. Pl.App.Ex.G, Beal Dep., Ex. 9 Col. 1 and 2; ECF 36-7 p.103 Therefore, this proposed class definition clearly meets the "numerosity" requirements of Fed.R.Civ.P. 23(a)(1) *See* Pl.Br.Class Cert. pp.21-22.

### 2. The Amended Class Definition Obviates The Overbroad Class Objection Overbroad

The amended Disclosure Class definition provides objective criteria for assuring precise identification of class members and, therefore, resolves any objection as to being overbroad.

The Third Circuit in *Chiang v. Veneman*, 385 F.3d 256, 271-72 (3d Cir. 2004) recognized that the class definition must be based upon objective criteria that make it administratively feasible for the court to determine class membership. *See also* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760. Courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed. *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573-74 *citing Harris v. General Dev. Corp.*, 127 F.R.D. 655, 658 (N.D.Ill.1989) (citations omitted). *See also Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 377-78 (S.D. Ill. 2008);

---

ClosetMaid's position that *procurement of a report,* gives rise to a violation of § 1681b(b)(2) .

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 659 (S.D. Cal. 2010)

and  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593

(E.D.Cal.2008)("Thus, the class definition must supply "objective criteria" by which

membership may be "presently ascertain[ed]," such as "a defendant's own actions and the

damages caused by such actions, or even just geographical boundaries.")

    A class definition is objectively defined if it provides for the identification of

class members with reference to the defendant's records.  *See Elliott* 150 F.R.D. at  575.

> Here, inclusion in the class turns on the presence or absence of
> documentary evidence that a potential plaintiff was advised in advance of
> their loan closing that insurance was optional. Since this initial
> determination of class membership may be made by reviewing loan files,
> it is administratively feasible to ascertain the identities of class members.
> This court therefore concludes that the class is sufficiently defined.

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. at 660("Given that the

parties should be able to determine who is and who is not in the classes based on

Defendant's records, the Court finds that these definitions adequately describe the

proposed classes."); *Garrett v. State Auto Prop. & Cas. Ins. Co.*, CIV.A. 3:09-CV-404-S,

2009 WL 5125812 (W.D. Ky. 2009)("A quick glance at insurance records and

correspondence should be sufficient to determine whether a particular person falls within

the proposed class definitions.").

    ClosetMaid's Fed.R.Civ.P. 30(b)(6) deponent conceded in deposition that

ClosetMaid's personnel records would reflect those persons who executed its FCRA

Disclosure forms. Beal Dep. p. 103:18-23; ECF 36-7, p. 27 of 123.  Ms. Beals further

conceded that these records would reflect those persons who executed such forms and as

to whom ClosetMaid then pulled a consumer report. Beal Dep. p. 106-108; ECF 36-7, pp

27 of 123. ClosetMaid's argument that the Disclosure Class is overbroad is, therefore, moot.

### B.      Commonality and Predominace Are Satisfied

ClosetMaid asserts two objections to findings of "commonality" and "predominance". The first is the obviated argument that the Disclosure Class is overbroad. ECF 42 pp. 15.  The revised class definition resolves this objection.

 Next, ClosetMaid argues that the commonality and predominance requirements are not met because the FCRA Disclosure forms are, in some unexplained way, different depending on the region of the country where they were implemented. ECF 42, pp. 15-16.  This objection is fully refuted below.

### 1.      ClosetMaid's Common Conduct Gives Rise To Commonality

ClosetMaid lists a litany of supposed variations between the claims of class members that purportedly defeats commonality including that the claims involve different employment positions, different time periods, different geographic locations and different application and consent forms.  ECF 42 at p. 15-16.  This objection is fallacious.  The record evidence demonstrates that ClosetMaid's Applications and FCRA Disclosure And Consent forms are virtually identical insofar as the FCRA violations *that are apparent on their face*.  ECF 35 pp. 8-9. .ClosetMaid fails to identify how its FCRA Disclosure forms are materially different.

### a.      ClosetMaid Misconstrues The Commonality Legal Standard

ClosetMaid seems to suggest that any non-relevant difference between class members is sufficient to defeat commonality.  Instead, the crucial commonality question is whether all class members were subject to standardized conduct by the defendant. *In re Prudential Ins. Co. of Am. Sales Practice Litig,* 148 F.3d 283, 310 (3d Cir.1998). *Chiang,*

385 F.3d at 265 ; *Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 184 (3d Cir.2001)

(""[T]he commonality standard of Rule 23(a)(2) is not a high bar; it does not require

identical claims or facts among class members, as 'the commonality requirement will be

satisfied if the named plaintiffs share at least one question of law or fact with the

grievances of the prospective class.' "); *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994)

and *Clarke v. Lane*, 267 F.R.D. 180, 195-96 (E.D. Pa. 2010)(" Whether a form of

standardized conduct engaged in by the defendant is unlawful can satisfy the

commonality requirement pursuant to Rule 23(a).

In this case, the commonality focus must address whether the Plaintiff and

putative Disclosure Class Members were required to execute materially similar FCRA

Disclosure and Consent Forms that were then used as a basis by which ClosetMaid

procured consumer reports about them.   *Cf Serrano v. Sterling Testing Sys., Inc.,* 711 F.

Supp. 2d 402, 410-11 (E.D. Pa. 2010).  Plaintiff satisfies this standard.

### b.  The Evidence Demonstrates The Existence Of Commonality

The record evidence before the Court demonstrates that ClosetMaid did, in fact,

use the same policies and practices and materially identical FCRA disclosure and consent

forms as to all current or prospective employees regardless of job title and geographical

location throughout the relevant time period.  Beal Dep. Pp 38:18- ECF 36-7.  In 2006,

ClosetMaid reduced its hiring procedures into a written "standard operating procedure".

Beal Dep. pp. 40:1-41:11; ECF 36-7,pp.11-12.  The forms and procedures were the same

for all salaried and hourly employees.  Beal Dep. pp. 40:1-41:11;ECF 36-7,pp.11-12.

Once a person was deemed qualified for a position, they were required to fill out a

standard form application.  Beal Dep. pp. 49:22-51:6;ECF 36-7,pp.14-15.   They are also

required to complete a form consenting to ClosetMaid's procurement of a consumer report. Beal Dep. pp. 56:1-57:10;ECF 36-7,pp.11-12.  A copy of this standard form is attached to the SOP as attachement 5.6.5.  Beal Dep. Ex. 6, ECF 36-7, p.163.  As a result of this lawsuit, ClosetMaid has revised this consent form. Beal Dep. p. 57;17-58:2; ECF 36-7 p. 16.

ClosetMaid agreed to produce representative samplings of completed application forms from each of their different geographical locations. Beal Dep. pp.  113-19-114:19. ClosetMaid did not produce differing or varying application forms pursuant to these agreements.   ClosetMaid produced an exemplar from its Pennsylvania location.  Beal Dep. pp. 115, Ex. 10. ECF 36-7, p.104-109  The form was dated January 2, 2007. The person was applying for a maintenance tech position. ECF Beal Dep. pp. 115, Ex. 10; ECF 36-7, p.105. The form incorporated an "Authorization For Release Of Information" pursuant to the FCRA which incorporated a release of claims against ClosetMaid and its parent Emerson Electric.  ECF Beal Dep. pp. 115, Ex. 10;  ECF 36-7, p.109.

ClosetMaid produced an exemplar from its Grantsville Maryland location.  ECF Beal Dep. pp. 116, Ex. 11; ECF 36-7, p.110-115.   The form was dated February 12, 2007. The person was applying for a Forklift operator position. ECF Beal Dep. pp. 115, Ex. 11; ECF 36-7, p.111.  The form incorporated an "Authorization For Release Of Information" which incorporated a release of claims against ClosetMaid and its parent Emerson Electric.  ECF Beal Dep. pp. 115, Ex. 11; ECF 36-7, p.115. The form used is identical to the form used at the Pennsylvania location.  ClosetMaid produced another exemplar from its Grantsville Maryland location.  ECF Beal Dep. pp. 116, Ex. 12;  ECF 36-7, p.116-125. The form incorporated an "Authorization For Release Of Information"

which incorporated a release of claims against ClosetMaid and its parent Emerson

Electric.  ECF Beal Dep. pp. 115, Ex. 12; ECF 36-7, p.125. The form used is identical to

the form used at the Pennsylvania location and to the other Grantsville exemplar.

ClosetMaid produced an exemplar from its Ocala location.  ECF Beal Dep. pp.

118, Ex. 13, ECF 36-7 pp.126-133.  The form was dated May 14, 2007. The person was

applying for any position. ECF Beal Dep. pp. 118, Ex. 13. ECF 36-7 p.127.   The form

used is identical to the form used at the Pennsylvania location, except that the

Authorization and Release differed, but nonetheless contain a release.

ClosetMaid produced an exemplar from its Chino, California location.   Beal Dep.

pp. 116, Ex. 14, ECF 36-7, pp. 134-144.  The form was dated February 12, 2007. The

person was applying for a General Labor and Shipping position. ECF Beal Dep. pp. 115,

Ex. 14; ECF 36-7, p. 134.  The form incorporated an "California Authorization For

Release Of Information For Employment Purpores" which incorporated a release of

claims against ClosetMaid, Doable Products and its parent Emerson Electric. ECF Beal

Dep. pp. 115, Ex. 14; ECF 36-7, p. 141.  The form used is identical to the form used at

the Pennsylvania, Grantsville, and Ocala locations insofar as ClosetMaid's FCRA

disclosure and consent form practices.

Finally, Ms. Beal identified Ms. Reardon's application form.  The form was dated

December 12, 2006. ECF Beal Dep. pp. 120, Ex. 15; ECF 36-7, pp.145-149 and  she was

applying for a territory manager position. ECF Beal Dep. pp. 120, Ex. 15; ECF 36-7, p.

147.  The form incorporated an "Authorization To Obtain a Consumer Credit Report And

Release Of Information For Employment Purposes" which incorporated a release of

claims against ClosetMaid.  Beal Dep. pp. 120, Ex. 15; ECF 36-7 p. 146.  In addition,

Ms. Reardon was required to execute an addition consent form authorizing Closetmaid to obtain a consumer report on her behalf.  Beal Dep. pp. 120, Ex. 15; ECF 36-7 p. 164.

In this connection, it was ClosetMaid's practice and procedure to require each prospective employee to execute two different consent forms; one as part of the application and then one later.   Beal Dep. pp. 49:22-51:6;ECF 36-7,pp.14-15.    After reviewing the application and determining that they are interested, ClosetMaid has the prospective employee execute a second consent form apart from the application. ECF Beal Dep. pp. 53:1-53:4; 56:1-57:10;ECF 36-7,pp.11-12; 15-16.  These consent forms are included in the 2006 SOP manual. ECF Beal Dep. pp.  Ex. 15; ECF 36-7 pp.62-63.  As the manual explains, once a person appears qualified for a job, each of these forms were provided to the person for execution. ECF Beal Dep. Ex 6, p. 4 of 8; ECF 36-7, p. 51.

Accordingly, this common evidence demonstrates that all class members were required to execute the same multiple FCRA Disclosure forms pursuant to the same procedures in all areas of the company.

## 2.    Predominance Is Satisfied Given The Common Method Of Proof

ClosetMaid argues  that there are too many material differences between putative class members that their individual facts and circumstances predominate over any common ones. ECF 42 at p.  18.  ClosetMaid, however, fails to focus its predominace argument on the *actual elements of Plaintiff's asserted FCRA causes of action*. Compare Plaintiff's Memo. Support Class Cert. ECF 35 at p. 26-29.  No where does ClosetMaid explain which element of Plaintiff's claims in Counts I and II of the FAC will be subject to individual proof. ECF 42 at p. 17-18.

ClosetMaid does seem to argue that each class member must prove that he or she was the subject of a consumer report obtained by ClosetMaid.  ECF 42 at p. 17.  As demonstrated above, Plaintiff accepts for purposes of this case that this requirement is an element of the FCRA Disclosure claims in Counts I and II.  Nonetheless, this element is readily subject to common, generalized proof because, as Ms. Beal conceded in deposition, Closetmaid retains records in its personnel files on those persons as to whom they have procured a consumer report. ECF Dep. Beals, pp. 96:10, Ex.9;ECF 36-7 p.103. Specifically, Exhibit 9 to Ms. Beals deposition represents an analysis of ClosetMaid's records where it identified approximately 1793  persons as to whom it procured a consumer report.

## C.    Superiority Is Satisfied

In her main brief, Plaintiff demonstrated that a class action is the only feasible method of litigation given the small nature of the recovery available and the economies of scale that would be achieved. ECF 35 at p. 31.  ClosetMaid argues in response that a class action procedure is not the superior method of litigation, but then fails to explain what available alternative procedure is superior to a class action.  ECF 42 at p. 18.

At this point, the burden has shifted to ClosetMaid to identify some better alternative procedure for handling the multiplicity of class member claims.  The superiority requirement demands that a class action represent the "best available method for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Superiority must be looked at from multiple points of view: the judicial system, the potential class members, the present plaintiff, the attorneys for the litigants, the public at large, the defendant, and the issues.  *See e.g. Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir.1974).

12

From the point of view of the judicial system and the attorneys for the Parties, a class action is obviously the best method of litigation. A class action will avoid a multiplicity of suits which would be inefficient for a court and the attorneys to handle individually. It benefits potential plaintiffs because they have statutory claims with a relatively small amount of potential recovery. Rule 23(b)(3) is the best method of adjudication for situations like these in which the potential recovery is typically so small that litigation of a single claim is, as a general matter, is hardly worth the cost and effort of litigation." *Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64, 68 (E.D. Pa. 2006); *See also Amchem v. Windsor Products,* 521 U.S. at 591 617 (1998) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Without the class action suit, many putative class members would lack the incentive to bring individual suits against defendants, "due in part to the small individual losses associated with each potential claim." *Jordan v. Commonwealth Financial,* 237 F.R.D. 132 140 (E.D. Pa. 2006); *In re Prudential,* 148 F.3d at 316 (affirming district court's finding of superiority where "the court examined the relatively modest size of individuals claims and the sheer volume of those claims in the aggregate, and concluded a class action presented the 'only rational avenue of redress for many class members' ").

A class action will further benefit the public at large and the issues because systemic issues of public importance are at issue affecting the privacy and confidentiality rights of prospective employees and the duties of employers where consumer reports are used to assess employee qualifications.

## II.  THE PRE-ADVERSE ACTION SUB-CLASS SATISFIES RULE 23

ClosetMaid argues that the "Pre-Adverse Action" Sub-class fails to satisfy the numerosity, commonality, typicality, predominance and superiority requirements of Rule 23.  Again, ClosetMaid misstates the applicable law and ignores or misconstrues the nature of the evidence.

### A.  Numerosity Is Satisfied

ClosetMaid argues that Plaintiff has produced no evidence that ClosetMaid took an adverse action without first providing the requisite notices with respect to a sufficiently numerous class. ECF 42 at 19-20.  ClosetMaid blithely disregards the North Declaration. Pl.App.Cl.Cert. Ex. I; ECF 36-9. The North Declaration carefully details the process used by Plaintiff's Counsel to derive a Pre-Adverse Action Sub-Class of approximately 69 persons.   To begin with, this Sub-class is defined as follows:

> All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report obtained by ClosetMaid which contained any negative (derogatory) credit history, driving record, public record criminal arrest, charge or conviction, civil judgment, bankruptcy or tax liens, regarding such employee or prospective employee within the period prescribed by FCRA, 15 U.S.C. §1681p, prior to the filing of this action and for whom Defendants did fail to provide that applicant a copy of their consumer report and/or FCRA summary of rights at least five business days before the employee or prospective employee was notified that ClosetMaid may take adverse action.

The objective criteria in this definition was used to identify the Sub-class. Plaintiff's Counsel first obtained the approximately 300 files of persons as to whom ClosetMaid procured a consumer report and then took an adverse employment action.  Beal Dep. Ex9; ECF 36-7 p.103 column 3 entitled "FCRA Forms Complete, Background checks run (not hired).   Plaintiff's Counsel then examined these files and identified the consumer

reports for each person.  Pl.App.Ex.I, North Decl. para. 3; ECF 36-9, p.2.   Plaintiff's

Counsel then identified which of these consumer reports contained adverse credit, public

record, traffic or criminal background information. Pl.App.Ex.I, North Decl. para. 7-10;

ECF 36-9, p.2.   From this objective review, Plaintiff's Counsel identified 69 persons

who consented to the procurement of a consumer; as to whom ClosetMaid procured a

consumer report; who had adverse information in this consumer report; who ClosetMaid

declined to hire, and; as to whom ClosetMaid did not provide any of the requisite Pre-

Adverse Action notices.  Pl.App.Ex.I, North Decl. para. 13-14; ECF 36-9, p.2-3.

ClosetMaid's argument  that no proof of numerosity exists is fallacious.

**B.      Commonality Is Satisfied**

According to ClosetMaid, commonality does not exist because its hiring practices

are purportedly "Balkanized", with each individual hiring manager given the discretion to

decide the reason for a refusal to hire. ECF 42 at p. 20.  Although each hiring manager is

required to obtain a consumer report, each such manager purportedly has the sole

discretion to determine a solo basis for rejecting or not hiring a prospective employee.

ECF 42 at p. 20.   If the hiring manager determines that solo basis does not arise from a

consumer report, then apparently ClosetMaid does not send any Pre-Adverse Action

notices.   As a result, according to ClosetMaid,  Pre-Adverse Action Notices were sent to

only 4 or 5 prospective employees during the class period.

ClosetMaid's position is contrary to law and the facts.  Indeed, ClosetMaid's

position conclusively demonstrates that it is willfully blind to its FCRA Pre-Adverse

Action duties. The disclosure duties under § 1681b(b)(3) are not triggered only where the

sole basis of the adverse action is the consumer report, but where the consumer report is

even, *in part, the basis of the action*.  The record evidence establishes that hiring

15

managers must consider a consumer report for *all* prospective employees. Therefore, common evidence exists to demonstrate those instances where ClosetMaid was required to send the notices. Plaintiff has adduced common, generalized evidence that ClosetMaid violates its Pre-Adverse Action duties on a systemic basis.

   1.   **ClosetMaid's Willful Blindness To Its Pre-Adverse Action Duties**

A plain reading of § 1681b(b)(3) demonstrates that Pre-Adverse action duties are triggered where the consumer report is even "slightly" considered, not where it is the sole factor for adverse action as ClosetMaid would have it.

Section 1681b(b)(3) requires that if the employer is "intending to take" an "adverse action" based *in whole or in part on information in the consumer report* then the employer must provide the applicant a copy of the report and a copy of a description of a consumer's rights under the FCRA *before* the "adverse action" is taken.   ECF 35 at pp. 5-6. The statutory terms "intending to take" and "based whole and in part" must be given their ordinary, dictionary meanings.  *See Alcoa, Inc. v. United States*, 509 F.3d 173, 181 (3d Cir. 2007) citing *Perrin v. United States*, 444 U.S. 37, 42,(1979) (it is a fundamental canon of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning").  The term "intending to take" means an action to be taken prospectively or in the future. *Uniloc USA, Inc. v. Microsoft Corp.*, 447 F. Supp. 2d 177, 190 (D.R.I. 2006) citing *Merriam-Webster's Collegiate Dictionary* 607 (10th ed.2002) ( defining "intending" as "prospective, aspiring").  Thus, the term intending to take an adverse action is to one that may occur in the future depending on the employer's intentions with respect to the contents of consumer reports.

Further, the statutory term "in whole or in part" means even a "slight" reliance on a consumer report. The dictionary defines "in part" to mean "in some degree" or "partially".   Merriam-Webster Online Dictionary.  In other federal statutory contexts, courts have construed this phrase to mean "slightest".  *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997)(courts have construed the phrase "in whole or in part" with the adjective "slightest.") *citing Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957) where the Supreme Court used the term "slightest" to describe the reduced standard of causation between the employer's negligence and the employee's injury in FELA § 51 cases.

Therefore, the FCRA Pre-Adverse Action provision requires an employer to provide the consumer report and summary of rights where the employer's policies evidence even the slightest reliance on negative information in a consumer report as a potentially disqualifying factor in the employment decision.  Proof of such a policy is subject to common proof.

### 2.     ClosetMaid's Violations  Are Susceptible To Common Proof

The evidence demonstrates that all hiring decisions at ClosetMaid depend at least in part on the contents of a consumer report.  ClosetMaid trains and admonishes its human resource personnel to procure and review a consumer report with respect to all employees.  Beal Dep. p. 49:22- 50:11, ECF 36-7 p. 14. In each instance they are a required to base their hiring decision on one of four factors, *including the results of a background check.*  Beal Dep. p. 39:23, Ex. 6, p.5  ECF 36-7 p. 52. Therefore, all hiring decisions made at ClosetMaid are based, *at least in part,* on the results of a consumer report or background check. Ms. Beals testified that ClosetMaid procures a consumer report with respect to all prospective employees.  According to ClosetMaid's records,

ClosetMaid took adverse action against approximately 69 persons as to whom it procured a consumer report and each of whom had adverse information in their background report. Yet, in only 4 or 5 instances did ClosetMaid ever send these affected prospective employees the required Pre-adverse actions notices.  In Ms. Reardon's case, ClosetMaid took adverse action and then, after-the-fact, decided to send her the pre-adverse action notices. ECF 35, p. 14-15. This abhorrent conduct presents a clear basis for this Court to grant, not deny class certification to the proposed Pre-adverse action Sub-class.

ClosetMaid, however, contends that Plaintiffs must, inevitably, adduce evidence of each adverse employment decision made by ClosetMaid's human resource managers. This is erroneous.  Section 1681b(b)(3) focuses on the intentions of ClosetMaid and whether its policies and practices required all hiring managers to rely, *at least in part,* on consumer reports in making hiring decisions.  Such an issue is clearly susceptible to common proof. *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008):

> But willfulness will not turn, as Equifax asserts, on whether class members can show that Equifax deliberately tried to harm them in particular. Rather, it turns on whether Equifax knowingly or recklessly disregarded its statutory obligations under FCRA. *See Safeco,* --- U.S. at ----, 127 S.Ct. at 2208-09. That is plainly a common issue in this case, not an individual one, as it concerns a standardized practice that Equifax used. In short, willfulness is perfectly suitable for class-wide proof in this case.

Plaintiff has presented common, generalized evidence tending to prove that ClosetMaid systemically violates §1681b(b)(3) by relying on the contents of consumer reports, but never  sent the requisite reports and notices. No reason exists to adduce evidence of each individual hiring decision.

ClosetMaid's own argument demonstrates that a violation of §1681b(b)(3) is susceptible to common proof. ClosetMaid argues that the employment decision invariably involves consideration of information in a prospective employee's consumer report. ECF 42 at p. 22.  ClosetMaid states that the decision involves 1) nature of the job applied for; 2) application information; 3) other information from hiring process; 4) comparison to other applicants, and; 5) *information contained in a consumer report*. ECF 42 at p. 22. In other words, as ClosetMaid concedes, its employment decisions are based *in part* on information in a consumer report.

### C.    Typicality Is Satisfied

ClosetMaid argues that typicality should be denied because there is a slight factual difference between Ms. Reardon and other members of the Pre-Adverse Action Sub-class in that the class members did *not* receive any pre-adverse action notice whereas Ms. Reardon did receive the notice, but not until after the adverse action had already been taken. ECF 42 at p. 22.  Viewed accordingly, the Sub-class and Ms. Reardon are completely aligned. The purpose for requiring this "Pre-Adverse Action Notice" is to provide the prospective or current employee a meaningful period of time to meet with the employer and the consumer reporting agency to explain or correct the accuracy or veracity of information in that report.  See ECF 35  at p. 7.  Both Ms. Reardon and the Sub-Class were therefore both deprived of the opportunity to address their consumer reports with ClosetMaid.

As Plaintiff pointed out in her main brief, even when there are actual differences between the representative parties and the rest of the class, a proposed class will meet Fed.R.Civ. 23(a)(3) requirements if "the claim arises from the same events or practice or course of conduct that gives rise to the claims of the class members, and if it is based on

the same legal theory." ECF 35 at p. 24. Here, the claims of Ms. Reardon and the Sub-class arise from the same practice or course of conduct: Closetmaid's failure to implement a legally correct pre-adverse action procedure which deprives prospective employees of the opportunity to address adverse information in their consumer reports with the employer and with the consumer reporting agency.

### D.    Predominace Is Satisfied

ClosetMaid argues that predominance cannot be satisfied with respect to the Pre-Adverse Action Sub-class claims because individualized proof issues with respect to liability and damages will purportedly override any common issues.  ECF 42 at p. 24-25. ClosetMaid is wrong with respect to proof of liability because, as demonstrated above and in Plaintiff's main brief, the elements of the claims under §1681b(b)(3) are subject to common, generalized proof. ECF 35  at p. 29-30.

ClosetMaid is also wrong in arguing that the issue of proof damages is sufficient to defeat predominance. ECF 42 at 23-24.  ClosetMaid ignores prevailing Third Circuit law.  Individual damages issues do not defeat an otherwise valid class certification attempt. *See Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)("The individual damage determinations could be made, we explained, at a separate phase of the trial, but the class phase could resolve the central issue of liability for the alleged misrepresentations and omissions.") *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977) ("[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when common issues which determine liability predominate."), *cert. denied,* 434 U.S. 1086 (1978); *In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.1986)("[r]esolution of common issues need not guarantee a conclusive finding on liability, nor is it a disqualification that

20

damages must be assessed on an individual basis.") (citations omitted); *Samuel v. Univ. of Pittsburgh,* 538 F.2d 991, 995-996 (3d Cir.1976)(rejecting the district court's decision to decertify a class because factual determinations individual to each class member would need to be made to determine the proper restitution). *Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173, 196-97 (W.D. Pa. 2006) and *Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 214 (D.N.J. 2004).

Moreover, the adjudication of the Sub-class claims cannot defeat predominance because a common formula may properly apply to determine each class member's statutory and punitive damages.  The FCRA allows a plaintiff to elect between the recovery of statutory or actual damages. 15 U.S.C. § 1681n(1)(A); ECF 35  at p. 3. Plaintiff has alleged a claim for statutory damages of up to $1000 or, in the alternative, a right to actual damages pursuant to Fed.R.Civ.P. 8(a)(3), plus a claim for punitive damages. FAC at ¶¶ 65 and 70.

To the extent the Sub-Class obtains an award of statutory and punitive damages, they would be entitled to share equally in any award of statutory damages and punitive damages since the award arises from common evidence. The recent decision in  *Williams v. LexisNexus,* 2007 WL 2439463 (E.D. Va. 2007) explains that where the class claims are based upon statutory, rather than actual, damages, the measure of statutory and punitive damages is common to the class.  *Williams* explains that where actual damages are asserted, the measure of actual and punitive damages may be individualized because the amount of punitive damages, for due process purposes, must be measured against the amount of individual damages recovered. *Id.*  By contrast, where the claim is based upon common evidence giving rise to statutory damages, the measure of statutory and punitive

damages is equal to each class member because the punitive damages, for due process purposes, would be measured against the amount of statutory damages. *Id.*

Thus, courts routinely find predominance where, as here, the claim is limited to statutory damages only. *See e.g. Cavin v. Home Loan Center,* 236 F.R.D. 387, 395  (N.D. Ill. 2006) (" First, it should be noted again that the Cavins and the proposed class seek only statutory damages, so it is doubtful that an individualized damages inquiry will in fact be necessary. . . . Regardless, it is settled law that individualized damages, absent more, will not generally preclude class certification."); *Hernandez v. Chase Bank,* 243 F.R.d. 285 (N.D. Ill. 2006); *Christakos v. InterCounty Title Co.,* 196 F.R.D. 496, 502 (N.D. Ill. 2000)("Moreover, this is a classic Rule 23(b)(3) class, with small or statutory damages brought by plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the facts alleged were proved, otherwise might get away with piecemeal highway robbery by committing many small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy."); *Burns v. First American Bank,* 2006 WL 3754820 *9-10 (N.D. Ill. 2006) (calculation of statutory damages equally among class members to determine superiority); *See also, Balderos v. Illinois Vehicle Financing,* 1997 WL 627650 (N.D. Ill. 1997). (". . .. The computation of per class member statutory damages presents a common question because once liability is established, the class members are permitted to share equally in any award of statutory damages.").

The reasoning of these cases is correct because statutory damages are awarded as a *substitute* for actual damages since the harm incurred is often difficult to trace and identify.  *Doe v. Chao,* 540 U.S. 614 622-621 (2004). The authorization for statutory

damages is based upon the common law analogue of "presumed damages." *Id.* at 621 n.3 *citing* 3 *Restatement of Torts,* § 621, comment a, (1938) and 3 *Restatement (Second) of Torts,* § 621 Comment a (1976). *See also Kehoe v. Fidelity Federal,* 421 F.3d 1209, 1213 (11th Cir. 2005) ("Damages for a violation of an individual's privacy are a quintessential example of damages that are uncertain and possibly unmeasurable. Since liquidated damages are an *appropriate substitute* for potentially uncertain and unmeasurable actual damages of a privacy violation, it follows that proof of actual damages is not necessary for an award of liquidated damages.") (emphasis added). Damage that results from the inability to discover and correct a credit file may be immeasurable justifying statutory damages here. The determination of statutory and punitive damages presents a common question.

Even assuming that actual damages would be elected, such is not enough to deny class certification. *See Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 248-49 (W.D. Pa. 2008) where Judge Conti cited and quoted Judge Posner in *Carnegie v. Household International Inc.*, 376 F.3d 656, 661 (7th Cir.2004):

> Once [the question of liability] is answered, if it is answered in favor of the class, a global settlement ... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."

*Id.* (Posner, J.) (quoting *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir.2001)).

## IV.  CONCLUSION

Wherefore it is respectfully requested that this Honorable Court grant Plaintiff's

Motion For Class Certification.  A proposed order of Court is attached to the Amended

Motion For Class Certification

By: Dated: November 23, 2010  Respectfully Submitted:

             By:  /s/ James M. Pietz _____

             James M. Pietz
             Pa I.D. No. 55406
             Pietz Law Office LLC
             Mitchell Building
             304 Ross Street, Suite 700
             412-288-4333
             jpietz@jpietzlaw.com

             Leonard A. Bennett, Esq.
             Consumer Litigation Associates
             12515 Warwick Boulevard
             Newport News, Va. 23606
             (757) 930-3660
             lenbennett@clalegal.com

             Christopher North. Esq.
             751-A Thimble Shoals Blvd.
             Newport News, Va  23606
             (757) 873-1010

             *Counsel for the Representative And Class*