# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| R. CATHY REARDON | ) | |
| On behalf of herself and all | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 2:08cv1730 MRK |
| v. | ) | |
| CLOSETMAID CORPORATION | ) | Hon. Judge Mark R. Hornak |
| | ) | |
| Defendant**. | **)** | **Class Action** |

**MEMORANDUM OF LAW IN SUPPORT OF THE CLASS PLAINTIFFS' MOTION TO FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
429 Forbes Ave., Suite 1616
Pittsburgh, Pa. 15219
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010


*Counsel for the Representative And Class Plaintiff*

## TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.   PROCEDURAL BACKGROUND ............................................................3

III.   SUMMARY JUDGMENT STANDARD ..................................................4

IV.   STATEMENT OF MATERIAL UNDISPUTED FACTS...................5

    A.   ClosetMaid Required Job Applicants To Waive All Claims Against ClosetMaid As Part Of The Disclosure/Consent Form Required By The FCRA ........................................................................................................... 5

    B.   ClosetMaid's Failure To Provide FCRA Mandated Notices To Job Applicants Whose Consumer Reports  Contained Derogatory Information Before A Final Employment Decision Was Made ....................6

    C.   ClosetMaid's Knowledge About Its FCRA Duties And Responsibilities 8

V.   LEGAL ARGUMENT.................................................................................9

    A.   Plaintiffs are entitled to partial summary judgment on counts I and II Because  no reasonable jury could find that it is objectively reasonable to include a waiver of rights provision in The FCRA Disclosure/Consent Requirement §1681b(b)(2)(A)(i) and (ii).................................................... 9

        *1. The Plain Meaning of §1681b(b)(2)(A)(i) and (ii)* .......................................9

        *2. ClosetMaid Violated § 1681b(b)(2) (i) and (ii)* .........................................12

        *3. ClosetMaid's Violation Is Willful Because Any Reading of Of § 1681b(b)(2) (i) and (ii) To Authorize A Prospective Waiver Of Rights Is Objectively Unreasonable*........................................................................15

            a. The Safeco Legal Standard ...............................................................15

            b. ClosetMaid's Interpretation Of § 1681b(B)(2) To Authorize A  Waiver Of Rights Is "Objectively Unreasonable"..17

    B.   Plaintiffs are entitled to partial summary judgment on counts III and IV Because no reasonable jury could find that it is objectively reasonable to Read §1681b(b)(2)(A)(i) and (ii) as allowing an employer to determine

THE SOLE REASON FOR A FINAL EMPLOYMENT DECISION BEFORE DECIDING
WHETHER TO PROVIDE ANY MANDATED DISCLOSURES REQUIRED BY THAT
PROVISION PROVISION ........................................................................................18

    *1.  The Plain Meaning of §1681b(b)*...............................................................19

    *2. ClosetMaid Violates § 1681(b)(B)(3) By Failing*
    *To Implement Procedures To Provide The Requisite Notices*.......................23

    *3. ClosetMaid's Reading Of § 1681(b)(B)(3) As Authorizing Its Failure*
    *To Provide The Required Notices Is Objectively Unreasonable*.................24

**VI.  CONCLUSION** .................................................................................................**25**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abercrombie v. Wells Fargo Bank,* 417 F.Supp.2d 1006 (2006)....................................14

*Abraham v. Raso,* 183 F.3d 279 (3d Cir.1999).................................................................4

*Alexander v. Gardner-Denver,* 415 U.S. 36 (1974)..........................................................14

*Applemans v. City of Phila.,* 826 F.2d 214 (3d Cir.1987).................................................4

*Beverly v. Wal-Mart Stores, Inc.* No. 3:07 CV 469 (E.D.Va. 2008) ................................22

*Brooklyn Sav.Bank v. O'Neill,* 324 U.S. 697 (1945) .................................................14, 15

*Corning Glass Works v. Brennan,* 417 U.S. 188 (1974)...................................................10

*Cortez v. Trans Union, LLC,* 617 F.3d 688 Cir. 2010) ..............................................16, 17

*Douglas v. Edwards,* 298 F. 229 (2d Cir. 1924) ..............................................................10

*Fuges v. Sw. Fin. Servs., Ltd.,* 707 F.3d 241 (3d Cir. 2012).........................16, 17, 18, 24

*Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir. 1997)................................20

*Gillespie v. Equifax Info. Servs., L.L.C.,* 484 F.3d 938 (7th Cir. 2007).........................11

*Gillespie v. Equifax Info. Servs., LLC,* 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008)...........................................................................................18

*Iberia Foods Corp. v. Romeo,* 150 F.3d 298 (3d Cir.1998)..............................................5

*Kelchner v. Sycamore Manor Health Ctr.,* 305 F. Supp. 2d 429 (M.D. Pa. 2004) ...............................................................................................................1, 12, 22

*Levendos v. Stern Entm't, Inc.,* 860 F.2d 1277 (3d Cir.1988)..........................................4

*Long v. Tommy Hilfiger U.S.A., Inc.,* 671 F.3d 371 (3d Cir. 2012)................................16

*Marciniak v. Prudential Fin. Ins. Co. of Am.,* 184 F.App'x. 266 (3d Cir.2006) ...........................................................................................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985).............................................................................................................14

*Mitsushita Elec. Indus., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)......................5

*Obabueki v. International Business Machines, Corp.,* 145 F.Supp.2d 371 (S.D. NY 2001)..............................................................................................22

*Parker v. DeKalp Chrysler,* 673 F.2d 1178 (11th Cir. 1982) .........................................14

*Pennsylvania, Dept. of Pub. Welfare v. U.S. Dept. of Health & Human Services*, 647 F.3d 506 (3d Cir. 2011) ...........................................................9

*Perrin v. United States,* 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ...............................................................................................................9

*Redel's Inc. v. G.E.*, 498 F.2d 95 (5th Cir. 1974) .............................................15

*Robinson v. Napolitano*, 554 F.3d 358 (3d Cir. 2009) .....................................9

*Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500 (1957) ................................20

*Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384 (3d Cir. 2002) ........11

*Russell v. ChoicePoint Servs., Inc.*, 300 F. Supp. 2d 450 (E.D. La. 2004) ...12

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) .................................15, 16

*Singleton v. Domino's Pizza, LLC,* CIV.A. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) .................................................11, 12, 13

*Uniloc USA, Inc. v. Microsoft Corp.*, 447 F. Supp. 2d 177 (D.R.I. 2006) .....................20

*Williams, et al v. Telespectrum, Inc.* Civ. No. 3:05cv853 (E.D. Va. 2006) ...................22

*Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320 (11th Cir.1998) ................................1

*Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368 (10th Cir.1987) ...................1

## Statutes

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ............................ passim

Truth In Lending Act, 15 U.S.C. 1601, *et seq.* .............................................11

## Other Authorities

*American Heritage Dictionary* .......................................................................12

FTC Facts For Consumers, "Employment Background Checks and Credit Reports" (May 2010) ..............................................................................21

*Merriam-Webster's Collegiate Dictionary* (10th ed.2002) ..........................20

*Websters Collegiate Dictionary (11th ed. 2010)* .........................................20

*Webster's Third New International Dictionary* ..............................................12

**Rules**

Fed.R.Civ.P. 56........................................................................................4, 18

## I.    INTRODUCTION

The claims in this certified class action center upon two important provisions of the Fair Credit Reporting Act ("FCRA") that address the obligations of employers in using consumer reports for employment purposes; 15 U.S.C. § 1681b(b)(2) (the "Disclosure Provision") and 15 U.S.C. § 1681b(b)(3) (the Pre-Adverse Action Provision"). The FCRA is recognized to have the "dual purpose" of protecting a person's right to privacy and facilitating accurate reporting of information. *See e.g. Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 436 (M.D. Pa. 2004)(". . .the Act provides strong protections against misuse of employees' personal information.").[1] The FCRA "Disclosure Provision" protects the privacy rights of prospective employees by setting forth basic and simple procedures for an employer to obtain *written consent* to procure a consumer report.  This provision allows persons to authorize the disclosure of private information about them without undue conditions or restrictions. *Id. at* 435.

The Pre-Adverse Action Notice provision provides very simple procedures that facilitate the accurate reporting of consumer information by requiring employers to notify prospective employees of potentially damaging and possibly inaccurate information in their reports so that it can be addressed with the employer and corrected or deleted with the reporting agency before any final decision is made on a job application.

---

[1]      *Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320, 1322 (11th Cir.1998) (recognizing FCRA's dual purpose of facilitating accurate reporting and of protecting privacy); *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir.1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy.").

The certified classes in this case assert claims under each of these provisions.  The Plaintiffs include approximately 1800 members of a defined Disclosure Class who assert claims under the Disclosure Provision.  The members of the overarching Disclosure Class are persons who applied for a job at ClosetMaid and as to whom; ClosetMaid obtained written consent to procure and did procure a consumer report as part of the process of determining their qualification for employment.  There is also a defined Pre-Adverse Action Sub-class, consisting of approximately 70 persons, who assert claims pursuant to § 1681b(b)(3).  The members of the Pre-Adverse Action Sub-Class are Disclosure Class members whose consumer reports contained derogatory criminal history or traffic violation information and as to whom ClosetMaid ultimately did not hire.

The evidence in this case demonstrates that ClosetMaid willfully violated both the Disclosure Provision and the Pre-Adverse Action Provision, and as a result, undermined the important protections of the FCRA.  *First,* the record evidence is undisputed that ClosetMaid illegally included a Release or Waiver of Rights Provision in the forms it used to make the requisite disclosures and obtain the written authorization to procure a consumer report from the members of the Disclosure Class.  In other words, ClosetMaid used the written notice/authorization requirement of § 1681b(b)(2) as a means to obtain a prospective waiver or release of all FCRA statutory protections, seemingly authorizing the company to violate the FCRA with impunity.  The plain language and explicit Federal Trade Commission authority directly on point warned ClosetMaid that such a practice was in violation of § 1681b(b)(2), but ClosetMaid implemented the practice anyway.

*Second,* the record evidence is also undisputed that ClosetMaid failed to implement a Pre-Adverse Action procedure designed to: 1) identify those job applicants

as to whom ClosetMaid might not hire based upon information in the consumer reports, and, 2) establish a "hold" on the hiring process sufficiently long enough to allow the applicant to address potentially damaging and inaccurate information with ClosetMaid and with the consumer reporting agency in question.  Here again, the plain language and substantial FTC and judicial authority were in existence warning ClosetMaid of these requirements.  Nevertheless, ClostMaid ignored these warnings, perhaps because it had already obtained a Waiver Of Rights purportedly immunizing it from FCRA compliance.

Plaintiffs therefore respectfully request that the Court enter summary judgment in its favor as to the liability of ClosetMaid on Counts I-IV of the First Amended Complaint.

## II.    PROCEDURAL BACKGROUND

This class action was filed on December 19, 2008. Electronic Case Filing Docket No. (hereinafter "ECF") 1. The FAC alleges that ClosetMaid is subject to liability pursuant to 15 U.S.C. § 1681n(1)(A) entitled "Civil Liability For Willful Noncompliance". This FCRA civil liability provision provides:

> (a) In general. "Any person who *willfully fails to comply with any requirement imposed under this title with respect to any consumer* is liable to that consumer in an amount equal to the sum of
> (1)
> >  (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .

(emphasis added).  The FAC seeks statutory damages of between $ 100 to $1000 per class member. Pl.S.J. App. Ex. 1, ECF 16 at ¶ 42.[2] On April 27, 2011, the Honorable Chief Judge Lancaster entered a Memorandum and Order certifying the action as a class

---

[2]    References to S.J. App.Ex. ___ are to the  Plaintiffs' Appendix of Exhibits In Support Of the Motion For Partial Summary Judgment that is submitted with this Memorandum Of Law and Plaintiffs' Concise Statement Of Material Facts.

action on behalf of a defined Disclosure Class and a Pre-Adverse Action Sub-class. ECF

51.  On September 6, 2011, this Court entered an order clarifying the class definitions in

the class certification order. ECF  63.  On January 23, 2012, the Court approved a Plan

and Form of Class Notice. ECF  66.   On September 28, 2012 Class Notice was mailed to

2,147 potential members of the Disclosure Class and 72 members identified as being in

the Pre-Adverse Action Sub-class.  Thereafter, Plaintiffs' Counsel received 34 Exclusion

Requests from persons identified as being potential class members.[3]

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute of material fact

and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is

"material" if proof of its existence or nonexistence would affect the outcome of the

lawsuit under the law applicable to the case. *Levendos v. Stern Entm't, Inc.,* 860 F.2d

1277, 1229 (3d Cir.1988). A dispute is "genuine" if the evidence is such that a reasonable

jury might return a verdict for the non-moving party. *Abraham v. Raso,* 183 F.3d 279,

287 (3d Cir.1999).

The summary judgment standard does not change when parties have filed cross-

motions for summary judgment. *Applemans v. City of Phila.,* 826 F.2d 214, 216 (3d

Cir.1987). The court must rule on each party's motion on an individual basis, determining

separately for each side whether summary judgment may be entered. *Marciniak v.*

*Prudential Fin. Ins. Co. of Am.,* 184 F.App'x. 266, 270 (3d Cir.2006). If review of cross-

motions reveals no genuine issue of material fact, then judgment may be granted in favor

---

[3] Plaintiffs' Counsel will be making a filing of record that identifies the opt-outs received by their offices.

of the party entitled to judgment in view of the law and undisputed facts. *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir.1998) (citation omitted).

In analyzing the evidence submitted, the court should grant summary judgment when it can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Mitsushita Elec. Indus., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## IV.  STATEMENT OF MATERIAL UNDISPUTED FACTS

### A. CLOSETMAID REQUIRED JOB APPLICANTS TO WAIVE ALL CLAIMS AGAINST CLOSETMAID AS PART OF THE DISCLOSURE/CONSENT FORM REQUIRED BY THE FCRA

On or about December 13, 2006, the Representative Plaintiff, Cathy Reardon applied for a job with Defendant ClosetMaid Corporation. Pl.St. ¶ 1.[4] ClosetMaid provided to Reardon a document entitled, "CLOSETMAID AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT AND INFORMATION FOR EMPLOYMENT PURPOSES". (hereinafter this document is referred to as the "ClosetMaid FCRA Information/Authorization Form".) Pl.St. ¶ 2. The Closetmaid FCRA Information /Authorization Form presented to Reardon provided information describing the nature and scope of a consumer report to be obtained by ClosetMaid. Pl.St. ¶ 3. The FCRA Information /Authorization Form provided that Reardon, by executing the form, was releasing all past and future claims against ClosetMaid in return for her authorizing ClosetMaid to procure a consumer report about her. The FCRA Information/ Consent Form provides:

---

[4] References to Pl.St. ¶ ___ is to the numbered paragraphs in Plaintiffs' Concise Statement Of Material Facts In Support Of Class Plaintiffs' Motion For Partial Summary Judgment that is filed herewith.

> I hereby release ClosetMaid, and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release.  You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

(hereinafter "Waiver Of Rights Provision"). Pl.St. ¶ 4. Thereafter,   ClosetMaid obtained a consumer report on Reardon. Pl.St. ¶ 5.

ClosetMaid incorporated virtually the same "Waiver Of Rights Provision" in all of its FCRA Information/Authorization documents used with job applicants about whom ClosetMaid procured a consumer report from the beginning of the class period, December 19, 2006 until July 1, 2009. ClosetMaid operates its business from 4 different geographical locations in the United States including Ocala, Florida; Belle Vernon, Pennsylvania; Grantsville, Maryland; and Chino, California. Pl.St. ¶ 6. The ClosetMaid FCRA Notice/Consent form used for Reardon is the one used by the Ocala, Florida location. Pl.St. ¶ 7.  Each of the FCRA Information/Authorization documents used by ClosetMaid at these locations contained a Waiver Of Rights provision. Pl.St. ¶ 3-13. As a result of the allegations made in the First Amended Complaint filed on April 16, 2009, ClosetMaid revised its FCRA Information/Consent Forms by removing the Waiver Of Rights from its forms. Pl.St. ¶ 14-17.  As of July 1, 2009 ClosetMaid no longer uses FCRA Information/Authorization forms that include a Waiver Of Rights Provision. Pl.St. ¶ 17.

## B. CLOSETMAID'S FAILURE TO PROVIDE FCRA MANDATED NOTICES TO JOB APPLICANTS WHOSE CONSUMER REPORTS CONTAINED DEROGATORY INFORMATION BEFORE A FINAL EMPLOYMENT DECISION WAS MADE

The consumer report procured by ClosetMaid about Reardon contained derogatory credit and criminal history information. Pl.St. ¶ 31.  Closetmaid sent a letter to Reardon dated

December 18, 2006, by regular mail, which contained a copy of the consumer report about Reardon. Pl.St. ¶ 32. Thereafter, four (4) days later, ClosetMaid mailed a letter to Reardon dated December 22, 2006 informing Reardon that ClosetMaid had decided not to offer her the position for which she had applied. Pl.St. ¶ 33. ClosetMaid decided not to offer Reardon the position for which she had applied *before* Reardon had obtained the consumer report sent by Closetmaid with the letter dated December 18, 2006. Pl.St. ¶ 34.

ClosetMaid's hiring procedures require its Human Resources Representatives to make the following investigations into a job applicant: 1) check the applicant's references; 2) verify the applicant's employment history; 3) verify the applicant's educational background; and 4) obtain, review and consider a consumer report obtained from a designated consumer reporting agency. Pl.St. ¶ 36.   ClosetMaid procured consumer reports about all members of the Disclosure Class and Pre-Adverse Action Sub-class. Pl.St. ¶ 44. ClosetMaid considered consumer reports on applicants to determine if the results of the consumer report might adversely affect the applicant's ability to perform the job or create potential liability for ClosetMaid. Pl.St. ¶ 38. Further, evidence of violent behavior could form the basis of rejection from employment.  Pl.St. ¶ 38, 41.

The consumer reports obtained about each of the members of the Pre-Adverse Action contained evidence of a conviction for a felony, serious misdemeanor or a traffic record. Pl.St. ¶ 45. ClosetMaid did not send these 69 persons a copy of their consumer report obtained by ClosetMaid *before* ClosetMaid made a final decision about their application. Pl.St. ¶ 49.  Since December 1, 2006,  ClosetMaid has provided only 4 persons, including Ms. Reardon, a copy of their consumer report and a FTC Summary Of Rights to 4 persons pursuant to 15 U.S.C. § 1681b(b)(3). Pl.St. ¶ 43.

### C. CLOSETMAID'S KNOWLEDGE ABOUT ITS FCRA DUTIES AND RESPONSIBILITIES

The FCRA policies, practices and procedures used by ClosetMaid during the Class Period were researched and developed by ClosetMaid employees, Mary Price and Cathy Beals. Pl.St. ¶ 26. To establish the FCRA Disclosure/Consent Forms and the Pre-Adverse Action Procedures, ClosetMaid through its employees reviewed government and legal websites, among other resources. Pl.St. ¶ 27. To establish the FCRA Disclosure/Consent Forms used prior to July 1, 2009 or to establish it Pre-Adverse Action procedures, ClosetMaid did not consult with any in-house or outside lawyer. Pl.St. ¶ 28.

The Disclosure and Pre-Adverse Action provisions of the FCRA were added to the FCRA as amendments to the FCRA effective September 30, 1996. Pl.St. ¶ 18. On June 12, 1998, a FCRA Staff Opinion letter was issued by the Federal Trade Commission known as Haynes-Hauxwell that explicitly explained that, "The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Pl.St. ¶ 20. In March 1999, the Federal Trade Commission published a "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know". Pl.St. ¶ 50-51.

On or about August 31, 2004, ClosetMaid signed a Securint Application and Service Agreement with Securint, a consumer reporting agency, in order to obtain consumer reports about prospective employees, for employment purposes. Pl.St. ¶ 23. In this agreement, ClosetMaid specifically agreed that any FCRA disclosure that it used would consist "solely of the disclosure, that a consumer report might be obtained for employment purposes" and that prior to taking any adverse action, based whole or in part upon the

consumer report, ClosetMaid must provide the applicant a copy of the consumer report and a summary of the consumer's rights as prescribed by the Federal Trade Commission. Pl.St. ¶ 24. The Sucurint Application and Service Agreement also provided a NOTICE TO USERS OF CONSUMER REPORTS; OBLIGATIONS OF USERS UNDER THE FCRA that also notified ClosetMaid of its obligations under the FCRA. Pl.St. ¶ 23-25.

## V.   LEGAL ARGUMENT

### A.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND II BECAUSE NO REASONABLE JURY COULD FIND THAT IT IS OBJECTIVELY REASONABLE TO INCLUDE A WAIVER OF RIGHTS PROVISION IN THE FCRA DISCLOSURE/CONSENT REQUIREMENT OF §1681B(B)(2)(A)(I) AND (II)

#### 1.   The Plain Meaning of §1681b(b)(2)(A)(i) and (ii)

Any reasonable person would readily discern from the plain language of   § 1681b(b)(2) that it prohibits the inclusion of a Waiver Of Rights in the document used to disclose and obtain consent that a consumer report may be obtained for employment purposes. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).  *Robinson v. Napolitano,* 554 F.3d 358, 365 (3d Cir. 2009).  Reference works such as legal and general dictionaries are used in order to ascertain the ordinary meaning of words." *Pennsylvania, Dept. of Pub. Welfare v. U.S. Dept. of Health & Human Services*, 647 F.3d 506, 511 (3d Cir. 2011).  Where Congress has used technical words or terms of art, 'it (is) proper to explain them by reference to the art or science to which they (are) appropriate.' *Corning Glass Works v. Brennan*, 417 U.S. 188, 201-02 (1974). *See also, Douglas v. Edwards*, 298 F. 229, 240 (2d Cir. 1924).

Section  § 1681b(b)(2) unambiguously provides:

> Except as provided in subparagraph (B) . . . a *person* may not *procure* a *consumer report,* or cause a *consumer report* to be *procured, for employment purposes* with respect to any *consumer,* unless -
>
> (i)      a *clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and
>
> (ii)      the *consumer* has *authorized* in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

The terms "person", "consumer report", employment purposes" and "consumer" are all terms that are defined by the FCRA. *See* 15 U.S.C. § 1681a.[5]  The term "person" includes a corporation such as ClosetMaid. *Id.*  The term "individual" includes the job applicants that are the subject of this action. The term "consumer report" means the information procured by ClosetMaid from a consumer reporting agency about the Class Plaintiffs.[6]

---

[5]      The FCRA establishes the "permissible purposes" for accessing a "consumer report" about a consumer. 15 U.S.C. § 1681b(a). Section 1681b(a) authorizes the release of a consumer report by a consumer reporting agency to a person it has reason to believe "intends to use the information for employment purposes".  15 U.S.C. § 1681b(a)(3)(B).

[6]   The FCRA defines a "consumer report" in 15 U.S.C. § 1681d as:

(d) Consumer Report

(1)      In general. The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for

(A) subject to section 624, credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 604 [§ 1681b].

The term "employment purposes" means a consumer report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee. 15 U.S.C. §1681ba.

Section § 1681b(b)(2) also employs certain technical, legal phrases that have an acquired meaning in the law. The term "clear and conspicuous disclosure" is a term used in other parts of FCRA and in the Truth In Lending Act. The Third Circuit has construed this term to mean the disclosure be "in a reasonably understandable form and readily noticeable to the consumer." *Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002). *See also Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007)(defining "clearly" as used in FCRA).

The Court in *Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) directly addressed the meaning of the term "solely" as used in § 1681b(b)(2) and found it meant "to the exclusion of all else":

> Here, dictionary definitions of the word "solely" indicate that a document disclosing that an employer planned to obtain a consumer report would not "consist[ ] solely of the disclosure" if the document also contained a liability release. 15 U.S.C. § 1681b(b) (2)(A)(i). These definitions define "solely" as, *inter alia,* "to the exclusion of all else." *Merriam Webster Online Dictionary* (2011), *available at* http://www.merriam-webster.com; *see also Oxford English Dictionary Online* (2012) (defining "solely" as "alone" or "without any other as an associate"), *available at* http://www.oed.com; *Webster's Third New Int'l Dictionary of the English Language* 2168 (3d ed.1971) (defining "solely" as "to the exclusion of alternate or competing things").

Finally, the term "authorized" used in § 1681b(b)(2) means   "invest with legal authority" *Merriam-Webster* (2013 Merriam-Webster, Inc.). "Authorize" means "to endorse, empower, justify, or permit by or as if by some recognized or proper authority" or "[t]o give permission for ... [or to] sanction." *See e.g. Russell v. ChoicePoint Servs., Inc.*, 300 F. Supp. 2d 450, 456 (E.D. La. 2004).

An apparent and unambiguous meaning of § 1681b(b)(2) can readily be discerned from these basic definitions. Any employer who intends to obtain a "consumer report" for "employment purposes" about any "consumer" must make a reasonably understandable and readily noticeable disclosure to the consumer about the intention to obtain that report. The FCRA further requires the employer to first get the consumer's written authorization to the release of the report by the consumer reporting agency.[7]  By using the plain and unambiguous language,  "in a document that consists solely of the disclosure", the § 1681b(b)(2)  clearly prohibits both the use of the use of a waiver or release of rights.

### 2.    ClosetMaid Violated § 1681b(b)(2) (i) and (ii)

Both the courts and FTC recognize that the inclusion of a Waiver of Rights provision in the FCRA mandated Disclosure/Consent form violates § 1681b(b)(2) (i) and (ii). *Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 is directly on point. In *Singleton,* the defendant home delivery pizza company used an FCRA mandated Disclosure/Consent form that was virtually identical that used by ClosetMaid. *Id.* at*1. Initially, the form disclosed to the applicant the nature and scope of the report that was to be procured. *Id.* The form also incorporated a waiver of rights provision before the part of the document that was signed by the applicant. *Id.*  The *Singleton* court found that the inclusion of the release violated both § 1681b(b)(2) (i) and (ii).  *First,* the court recognized that the release provision constituted extraneous information that was prohibited by the plain language. *Id.* at * 8."The BIIC form runs contrary to these definitions because, by containing a liability release, the form includes

---

[7]  Once the employer has obtained this written authorization, the employer is then authorized to access a consumer report *at any time* thereafter. *See Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004).

information that extends beyond the disclosure itself." *Second,* the court found that §

1681b(b)(2) ((ii), the written authorization requirement, did not allow the incorporation

of a liability release:

> According to the company, inclusion of such a release in the disclosure document must be permissible because "the statute itself provides that a consumer authorization may be made on the disclosure document." (ECF No. 22, at 11) (internal quotation marks and brackets omitted). This contention, however, ignores the significance of congressional silence on an issue where Congress has otherwise spoken. Indeed, when mandating that an employer use a document that "consists solely of the disclosure," Congress *expressly* permitted employers to include language authorizing the employer to procure the consumer report. 15 U.S.C. § 1681b(b)(2)(A)(ii); *see also Burghy,* 695 F.Supp.2d at 699. Had Congress intended for employers to include additional information in these documents, it could easily have included language to that effect in the statute. It did not do so, however, and its "silence is controlling." *Cf. Smith v. Under Armour, Inc.,* 593 F.Supp.2d 1281, 1287 (S.D.Fla.2008) (finding Congress's failure to include language regarding e-commerce in one FCRA section instructive in determining whether that section applied to e-commerce).

*Id.*

> *Third,* the court recognized that the FTC had addressed the issues in certain staff

opinion letters and found that the practice violated the Act based upon the same

reasoning.

> In addition to the statutory text, FTC interpretations of § 1681b(b)(2) suggest that inclusion of a liability release in a disclosure form violates the FCRA. (footnote omitted). In 1998, in response to company inquiries, the FTC issued two opinion letters addressing § 1681b(b)(2)'s "consists solely" language. The first letter explicitly states that "inclusion of ... a waiver [of one's FCRA rights] in a disclosure form will violate" § 1681b(b)(2) because the form will not "consist 'solely' of the disclosure." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998). The reasoning employed in the second letter supports this conclusion, stating that the FCRA prohibits disclosure forms "encumbered by any other information ... [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure." Letter from Clarke W. Brinckerhoff, Fed. Trade Comm' n, to H. Roman

13

Leathers, Manier & Herod (Sept. 9, 1998). Domino's does not contend that the BIIC form could pass muster under this guidance.

*See* Hauxwell FTC Informal Staff Letter (June 12, 1998), Pl.S.J.App. Ex. 6. Another FTC opinion states "nothing else may appear on the document that detracts from the disclosure." Hawkey FTC Informal Staff Letter (December 18, 1997). Pl.S.J. App.Ex. 7. *See also* Leathers FTC Informal Staff Opinion Letter (September 9, 1998).

Moreover, any reasonable person would have known that a provision that purports to prospectively release or waive FCRA rights conferred on consumers contravenes the statutory policy. *See Brooklyn Sav.Bank v. O'Neill,* 324 U.S. 697, 704 (1945); *Alexander v. Gardner-Denver,* 415 U.S. 36, 51 (1974); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)("We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."). *See Parker v. DeKalp Chrysler,* 673 F.2d 1178 (11th Cir. 1982)(release of prospective TILA claims in contract prohibited) and *Abercrombie v. Wells Fargo Bank,* 417 F.Supp.2d 1006, 1007 (2006).

Here, ClosetMaid was seeking to absolve itself from future FCRA liability by obtaining a release or waiver when a consumer authorizes ClosetMaid the right to procure a consumer report. Such a provision that would effectively encourage future violations of the law is prohibited. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. at 710 ("[C]ourts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy." *Redel's Inc. v. G.E..*, 498 F.2d 95, 99 (5th Cir. 1974).

Accordingly, any employer, acting reasonably would have known, that incorporating a waiver or release in an FCRA Disclosure/Consent form violated the plain terms of § 1681b(b)(2).

> **3.**  **ClosetMaid's Violation Is Willful Because Any Reading of Of §
> 1681b(b)(2) (i) and (ii) To Authorize A Prospective Waiver Of
> Rights Is Objectively Unreasonable**

> **a.**  **The Safeco Legal Standard**

The Supreme Court held in *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007) that "willfulness" under  § 1681n encompasses both "knowing" and "reckless" violations of the FCRA. *Id. at* 68.   The *Safeco* Court did not apply the "knowing" prong of "willfulness", but instead determined that the "recklessness" component of "willfulness" comports with the common law understanding, stating that, "the term recklessness is not self-defining," the common law has generally understood it in the sphere of civil liability *as conduct violating an objective standard*:  action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." 551 U.S. at 68.   Thus, the *Safeco* Court adopted a "recklessness" standard to apply to violations of the FCRA based upon attempts to comply with its provisions as follows:

> [A] company subject to FCRA does not act in reckless disregard of it
> unless the action is not only a violation under a reasonable reading of the
> statute's terms, but shows that the company ran a risk of violating the law
> substantially greater than the risk associated with a reading that was
> merely careless.

*Safeco,* 551 U.S. at 69. *See also, Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012); *Cortez v. Trans Union, LLC*, 617 F.3d at 721;  *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 376 (3d Cir. 2012).

As the Third Circuit explained in *Fuges*, the test whether a party is subject to liability for a "willful" violation is one of "objective reasonableness". *Fuges,* 707 F.3d at 249. Thus, a court ". . .may not impose liability for a reckless, and therefore willful, violation of the statute unless that party's reading is "objectively unreasonable." *Id*. In determining "willfulness" under this objective standard, the *Fuges* court applied a 3 pronged analysis. *First,* the *Fuges* court looked to determine whether the FCRA itself gave guidance as to what was required by the statutory provision in question. *Id*. at 252. On this point, the court recognized that the Supreme Court in *Safeco* had queried whether the statutory provision was "less than pellucid". Similarly, in *Cortez v. Trans Union, LLC*, 617 F.3d at 721 the Third Circuit determined that Trans Union had willfully violated § 1681g(a), because Trans Union had adopted a reading of the provision that ignored critically important terminology: *i.e.* the "regardless of how it is stored" phrase. 617 F.3d at 711. Then, in determining this violation was "willful", the *Cortez* court found that Trans Union's avoidance of this term in light of the broad remedial nature of the statute rendered Trans Union's conduct willful. 617 F.3d at 721-22.

The *second* prong of the analysis, according to *Fuges,* is to examine whether the defendant's interpretation of the FCRA statutory provision has some basis in the statutory text. In *Fuges,* the defendant was a company that compiled and prepared current owner title reports, otherwise known as property search or limited property reports. *Fuges,* 707 F.3d at. 243-44. At issue was whether the defendant was a "consumer reporting agency" and whether the current owner reports were "consumer reports" within the definition of those terms in FCRA. In examining the definition of "consumer reporting agency", the *Fuges* court recognized that a reasonable person could read that provision as excluding

16

the defendant from the scope of the FCRA because its reports were "on properties", not "on consumers". Further, the court found that a reasonable person could properly read the definition of "consumer report" as excluding its reports because they did not bear on the individual characteristics of consumers.

The *third* prong of the analysis is to determine whether there is any agency or judicial guidance that would suggest that the defendant's interpretation is contrary to the intended interpretation of the FCRA provision. 707 F.3d at. 253. In *Cortez,* the Third Circuit held that the defendant Trans Union violated the file disclosure provision of the FCRA by failing to disclose upon request "all information in the consumer's file regardless of how it is stored". 15 U.S.C.  § 1681g(a). The *Cortez* court further rejected the contention that since this the case was one of first impression, that willfulness could not be found stating that, "The credit agency whose conduct is first examined under that section of the Act should not receive a pass because the issue has never been decided. The statute is far too clear to support any such license". *Id. at* 722.

> **b.**   **ClosetMaid's Interpretation Of § 1681b(B)(2) To Authorize A Waiver Of Rights Is "Objectively Unreasonable"**

Under the 3 pronged *Fuges* analysis, ClosetMaid's has acted willfully by reading § 1681b(B)(2) as authorizing ClosetMaid to obtain a Waiver Of Rights from job applicants that would purportedly immunize ClosetMaid from prospective FCRA violations. *First,* there is nothing ambiguous or confusing about § 1681b(B)(2)**.** It says clearly, ". . . *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes." Any reasonable person would read this in one way only: that any additional provision, including a Waiver Of Rights, would be prohibited. The *Singleton* court recognized that the use of the Disclosure/Consent form at

issue in that case would be "objective unreasonable" under a Fed.R.Civ. Rule 56 standard:

> Second, even if it were appropriate to reach this issue on a 12(b)(6) motion, Domino's would not prevail. Unlike in *Safeco,* where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning," *Smith,* 711 F.Supp.2d at 436. *See Edwards v. Toys "R" Us,* 527 F.Supp.2d 1197, 1209 (C.D.Cal.2007) ("This case presents a different situation than *Safeco* because [the FCRA provision at issue] is not ambiguous or susceptible of conflicting interpretations."). Domino's has pointed to no authority that would lead to a contrary conclusion.

2012 WL 245965. *Gillespie v. Equifax Info. Servs., LLC,* 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008)("The Court cannot conclude that an interpretation of the requirement of clear disclosure that allows use of an arguably obscure and concededly non-standard term to signify something other than what it says can be considered to be, as a matter of law, an objectively reasonable interpretation of a non-ambiguous statutory term.")

*Second,* there is no basis anywhere in the text of § 1681b(B)(2) or in the law that would allow the use of a prospective waiver of statutory rights. In fact, as demonstrated above, such provisions are absolutely prohibited.

*Third,* agency and judicial guidance is directly on point that ClosetMaid's reading is contrary to the intended interpretation of the FCRA provision. *See infra* Moreover, prospective waivers are absolutely prohibited based upon judicial decisions in existence well before ClosetMaid developed its forms.

**B. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS III AND IV BECAUSE NO REASONABLE JURY COULD FIND THAT IT IS OBJECTIVELY REASONABLE TO READ §1681B(B)(2)(A)(I) AND (II) AS ALLOWING AN EMPLOYER TO DETERMINE THE SOLE REASON FOR A FINAL EMPLOYMENT DECISION BEFORE DECIDING WHETHER TO PROVIDE ANY MANDATED DISCLOSURES REQUIRED BY THAT PROVISION**

1.      The Plain Meaning of §1681b(b)

Basic rules of statutory construction also demonstrate that § 1681b(b) is clear and

unambiguous in setting forth the required procedures that an employer must follow in

*using* a consumer report that contains potentially derogatory information. The full text of

the Pre-Adverse Action provision states:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, *before taking any adverse action based in whole or in part* on the report, the person *intending* to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i)      a copy of the report; and
>
> (ii)      a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3).

This statutory provision includes terms that are defined by the FCRA and others

that are not. The term "adverse action" is defined in 15 U.S.C. § 1681a(k).[8]   The

commonly understood dictionary definition of the adverb "before" is ""in advance of' or

"at an earlier time". *Websters Collegiate Dictionary,* p. 110 (11th Ed. Merriam-Webster

2010).  In this context, the term "taking" is used as the gerund of the verb "take" which

_____

[8] The FCRA defines "adverse action" in the employment context in 15 U.S.C. § 1681a(k) as follows:

  (k)      Adverse Action

  (1) Actions included. The term "adverse action"

  (B) means . . .  (ii) a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee;

means "to undertake, make or perform" . *Websters Collegiate Dictionary,* p. 1273, 17a. The statutory term "in whole or in part" means even a "slight" reliance on a consumer report. The dictionary defines "in part" to mean "in some degree" or "partially". Merriam-Webster p. 903.  In other federal statutory contexts, courts have construed this phrase to mean "slightest".  *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (courts have construed the phrase "in whole or in part" with the adjective "slightest.") *citing Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 506 (1957) where the Supreme Court used the term "slightest" to describe the reduced standard of causation between the employer's negligence and the employee's injury in FELA § 51 cases. The term "intending to take" means an action to be taken prospectively or in the future. *Uniloc USA, Inc. v. Microsoft Corp.*, 447 F. Supp. 2d 177, 190 (D.R.I. 2006) citing *Merriam-Webster's Collegiate Dictionary* 607 (10th ed.2002) ( defining "intending" as "prospective, aspiring").

From these unambiguous definitions, any employer, acting reasonably, could derive the meaning of this provision.  It means that if an employer, possibly, or in the future might make a final determination not to hire an applicant, after any consideration of a consumer report about the applicant in even the slightest degree, then the employer must put a hold on any final determination on the application in order to send the disclosures required by 1681b(b)(3).  Importantly, even if ultimately the reason that a person is not hired (or hired) is not because of information in a consumer report, the employer still must provide the required disclosures if the employer *might* have not hired a person based upon the consumer report. The late Honorable Chief Judge Lancaster construed this provision accordingly in ruling on the motion for class certification:

> ClosetMaid contends that, in order to violate the FCRA, their employment decision must have solely been motivated by the consumer report. Plaintiff argues that the fact that ClosetMaid obtained a consumer report regarding her and then refused to hire establishes that the information in the consumer report, if not the sole reason for ClosetMaid's decision, was at a minimum, a part of the reason they refused to hire plaintiff. . . defendant's argument would lead to a strained reading of the statute.

ECF 51 at p. 11. The FTC explained this operation in "FTC FACTS For Business, Using Consumer Reports: What Employers Need To Know" (March 1999). Pl. St. ¶ 50-51; Pl.S.J. App. Ex. 13. *See also,* FTC Facts For Consumers, "Employment Background Checks and Credit Reports" (May 2010)(" If an employer *might use* information from a credit or other background report to take an "adverse action" . . .he must give you a copy of the report and a document . . . *A Summary of Your Rights.* Pl.S.J. App. Ex. 14.

Thus, if an employer might decide, in the future, that information in a consumer report might disqualify an applicant, the employer must put a "hold" on the recruiting process of that applicant. The employer must then disclose to the applicant: 1) a copy of the consumer report to the applicant; and 2) a copy of the FTC Summary Rights. Once the disclosure is made, the employer must wait a sufficient amount of time to allow the applicant to respond to or address any potentially derogatory information in the report with the employer.

The purpose for this "waiting period" is to provide the prospective or current employee a meaningful period of time to meet with the employer and the consumer reporting agency to explain or correct the accuracy or veracity of negative information in that report. *See Kelchner  v. Sycamore Manor Health,* 305 F.Supp.2d 429, 435-36 (M.D. Pa. 2004).

The employer must provide a copy of the report "a sufficient amount of time before it takes adverse action so that the consumer may rectify the inaccuracies in the report. *Beverly v. Wal-Mart Stores, Inc.* No. 3:07 CV 469 (E.D.Va. 2008) Pl.S.J. App. Ex. 15;   *Williams, et al v. Telespectrum, Inc.* Civ. No. 3:05cv853 (E.D. Va. 2006) (adopted by Judge R. Payne January 8, 2007) Pl.S.J. App.Ex. 16.   The opportunity to discuss and dispute the report is exactly the scenario envisioned by the FCRA. *Obabueki v. International Business Machines, Corp.,* 145 F.Supp.2d 371, 392 (S.D. NY 2001).

The FTC has provided a number of Staff Opinion letters that explain this requirement that an employer must provide the required notices well before any final employment determination on the job applicant. *See* FCRA Opinion Letters: Brinkerhoff-Soganik, October 23, 1997, Pl. S.J. App.Ex. 17 (disclosures must be made before final action is taken);  Haynes-Lewis, June 11, 1998, Pl. S.J. App.Ex. 18   ("Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the purpose of the provisions to allow consumers to discuss the report with employers before adverse action is taken."); Haynes-Hawkey, December 18, 1997, Pl.S.J. App.Ex. 19 (same);  Haynes-Rosen, June 9, 1998, Pl.S.J. App.Ex. 20 ("Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete. If the report is in error, the employer may reconsider his or her tentative decision to take adverse action."); Texas Automobile Dealers Association, February 11, 1998,  Pl.S.J. App.Ex. 21.

Accordingly, 15 U.S.C. § 1681b(b)(3) requires an employer to establish a Pre-Adverse Action procedure that: 1) identifies job applicants who are entitled to Pre-Adverse Action notices, that is, those job applicants as to whom the employer might consider not hiring based upon the results of a consumer report, and; 2) establishes a sufficiently long "hold" on any final employment decision until the disclosures required by 15 U.S.C. § 1681b(b)(3) are provided to them.

### 2.    ClosetMaid Violates § 1681(b)(B)(3) By Failing To Implement Procedures To Provide The Requisite Notices

No material issue of fact exists that ClosetMaid has failed to establish procedures designed to comply with § 1681(b)(B)(3).  *First,* there is no dispute that ClosetMaid has failed to adopt a procedure that identifies job applicants who are entitled to a Pre-Adverse Action Notice-- that is those job applicants at ClosetMaid as to whom it might decide not to hire.  ClosetMaid obtains consumer reports about the criminal or credit background of job applicants because of its concern that that a person's background may evidence:1) the applicant's inability to perform the job; 2)  potential for creating liability for ClosetMaid; or  3) tendency towards violent behavior could hurt others.  Pl.St. ¶ 38-42.  ClosetMaid procured consumer reports about each member of the Pre-Adverse Action Sub-Class. At the same time, the consumer reports procured about each member of the Pre-Adverse Action Sub-class contained derogatory information evidencing possible past incidences of drug use, theft, assault, fraud, bad checks, receiving stolen property.   Pl.St. ¶ 45.  Given ClosetMaid's own policies, ClosetMaid knew it could take an adverse action against these applicants, but it never established any procedure designed to provide such applicants Pre-Adverse Action disclosures. Indeed, since 2006, ClosetMaid has sent out only 4 Pre-Adverse Action Notices, even though it has procured thousands of consumer

reports about prospective employees.  Pl.St. ¶ 43-44. This fact alone is should have been a  "red flag" for ClosetMaid.

*Second,* ClosetMaid has failed to establish any procedure that puts a final employment decision on hold until job applicants are provided the required disclosures. With respect to the members of the Pre-Adverse Action Sub-Class, ClosetMaid did not put a hold on making any final employment determination until after any § 1681(b)(B)(3) disclosures were made and a sufficient amount of time had passed to allow the applicant to review and address the issues. Pl.St. ¶ 47, 48.

In sum, the evidence demonstrates, irrefutably, that ClosetMaid never adopted any Pre-Adverse Action procedure that sought to comply with § 1681(b)(B)(3). But then again, ClosetMaid did not care about adopting such procedures, since it had already obtained a Waiver from the class members that it did not have to comply with the FCRA.

### 3. ClosetMaid Reading Of § 1681(b)(B)(3) As Authorizing Its Failure Provide The Required Notices Is Objectively Unreasonable

The 3 pronged *Fuges* analysis also demonstrates that ClosetMaid has acted willfully by reading § 1681b(B)(3) to authorize legally deficient Pre-Adverse Action procedures. *First,* there is nothing ambiguous or confusing about § 1681b(B)(3) as explained above.  The plain language indicates that the required notices have to be given anytime the employer might be considering not hiring an applicant in light of information in a consumer report. Likewise, the plain language evinces Congress' concern that job applicants be given sufficient notice so that they could address potential inaccuracies with the employer.  Given this information, no reasonable employer would have established the procedures adopted by ClosetMaid.

*Second,* nothing in § 1681b(B)(3) authorizes ClosetMaid to make the final employment decision *before* any required notices are given to employees or to fail to provide any notices whatsoever where seriously derogatory information is contained in the consumer reports. *Third,* agency and judicial guidance is extensive and directly on point.

## VI.    CONCLUSION

Wherefore, it is respectfully requested that this Court enter partial summary judgment in favor of the Disclosure Class and the Pre-Adverse Action Sub-Class as to liability of Defendant ClosetMaid on the claims in the FAC. A proposed Order Of Court defining the scope of the proposed summary judgment is attached to the Motion For Partial Summary Judgment.

May 24, 2013                              Respectfully submitted,

                                          By:    /James M. Pietz____
                                          James M. Pietz
                                          Pa I.D. No. 55406
                                          Pietz Law Office LLC
                                          429 Forbes Ave., Suite 1616
                                          Pittsburgh, Pa. 15219
                                          412-288-4333
                                          jpietz@jpietzlaw.com

                                          Leonard A. Bennett, Esq.
                                          Consumer Litigation Associates
                                          12515 Warwick Boulevard
                                          Newport News, Va. 23606
                                          (757) 930-3660
                                          lenbennett@clalegal.com

                                          Christopher North. Esq.
                                          751-A Thimble Shoals Blvd.
                                          Newport News, Va  23606
                                          (757) 873-1010

                                          *Counsel for the Representative And
                                          ClassPlaintiffs*