UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| R. CATHY REARDON ) | |
| On behalf of herself and all ) | |
| similarly situated individuals, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 2:08cv1730 MRK |
| v. ) | |
| CLOSETMAID CORPORATION ) | Hon. Hon. Judge Mark R. Hornak |
| ) | |
| ) | Class Action |
| ) | |
| Defendant. ) | |

**CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY OF DEFENDANT CLOSETMAID**

Pursuant to Fed.R.Civ.P. 56 and W.D. Pa. L.R. 56B.1, Representative Plaintiff and the Certified Class and Sub-Class hereby submit this Concise Statement Of Material Facts in support of Class Plaintiffs' Motion For Partial Summary Judgment, as to which the evidence is undisputed and there is no genuine dispute as to any of the following facts:

**FACTS RELATED TO THE "DISCLOSURE CLASS" AND THE
"PRE-ADVERSE ACTION" SUB-CLASS CLAIMS**

1.  On or about December 13, 2006, the Representative Plaintiff, Cathy Reardon applied for a job with Defendant ClosetMaid Corporation. Pl. S.J. App.[1] Exhibit 1, ECF 16, First Amended Complaint ("FAC") ¶ 24; ECF 16-1; Pl.S.J.App. Exhibit 2; ECF 19, Answer, ¶ 24 and 25.

2.  As part of the application packet of documents, ClosetMaid provided to Reardon a document entitled, "CLOSETMAID AUTHORIZATION TO OBTAIN A

---

[1] The Appendix refers to Plaintiffs' Appendix of Exhibits In Support Of the Motion For Partial Summary Judgment that is submitted with this Concise Statement Of Material Facts.

CONSUMER CREDIT REPORT AND INFORMATION FOR EMPLOYMENT PURPOSES". Pl. S.J. App. Ex. 1,ECF 16, Complaint ¶ 27, ECF 16-1, page 5 of 9; Pl.S.J. App. Ex. 2 ECF 19, Answer, ¶ 24 and 25. (hereinafter this document is referred to as the "ClosetMaid FCRA Information/Consent Form".

   3. The Closetmaid FCRA Information/Consent Form presented to Reardon provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> Pursuant to the Fair Credit Reporting Act, I hereby authorize ClosetMaid and its designated agents to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment, promotion, reassignment or retention as an employee. I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal, state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration and any other public records.

Pl. S.J. App. Ex. 1, ECF 16, Complaint ¶ 27, ECF 16-1, page 5 of 9; Pl. S.J. App. Ex. 2 ECF 19, Answer, ¶ 24 and 27.

   4. The ClosetMaid FCRA Information /Consent Form provided the following provision:

> I hereby release ClosetMaid, and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release. You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

(hereinafter "Waiver Of Rights Provision"); Pl. S.J. App. Ex. 1, ECF 16, Complaint ¶ 27,

ECF 16-1, page 5 of 9; ECF 19, Pl. S.J. App. Ex. 2, Answer, ¶ 24 and 27.

5. Thereafter, ClosetMaid obtained a consumer report on Reardon. Pl. S.J. App. Ex. 1, ECF 16, Complaint ¶ 33; Pl. S.J. App. Ex. 2, ECF 19, Answer, ¶ 33.

6. ClosetMaid operates its business from 4 different geographical locations in the United States including Ocala, Florida; Belle Vernon, Pennsylvania; Grantsville, Maryland; and Chino, California. Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid page 96:10-111:13 discussing Exhibit 9 to deposition[2]; Pl. S.J. App. Ex. 4, Dep. of Jennifer Boring, p. 9: 18-19.

7. The ClosetMaid FCRA Information /Consent form used for Reardon is the one used by the Ocala, Florida location. Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid page 118:111-15, ClosetMaid Dep. Ex. 13 and Ex. 15 p. 209; Pl. S.J. App. Ex. 4, Dep. of Jennifer Boring, p. 37:3, Ex. 7, p. 424 and Boring Dep. Ex. 12, p. 209.

8. The ClosetMaid FCRA Information/Consent form used at the Belle Vernon, Pennsylvania location provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> I hereby authorize ClosetMaid/Emerson Electric Co., and its designated agents to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment purposes.
>
> I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
>
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal, state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration

---

[2] The deposition of ClosetMaid refers to the deposition of Catherine B. Beal, Vice President of Human Resources for Closetmaid, who was designated to testify as a Fed.R.Civ.P. 30(b)(6) deponent. Pl.S.J.App.Ex. 3.

and any other public records.

Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid page 115:6-12, ClosetMaid Dep. Ex. 10, page 285.

9. The FCRA Information/Consent form used at the Belle Vernon, Pennsylvania location included the following Waiver Of Rights Provision:

> I hereby release ClosetMaid/Emerson Electric Co., and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release. You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid page 115:6-12, ClosetMaid Dep. Ex. 10, page 285.

10. The ClosetMaid FCRA Information/Consent form used at the Grantsville, Maryland location provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> I hereby authorize ClosetMaid/Emerson Electric Co., and its designated agents to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment purposes.
>
> I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
>
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal, state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration and any other public records.

Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid 115:6-12, ClosetMaid Dep. Exhibit 10, p. 285;

Pl. S.J. App. Ex. 4, Dep. of Jennifer Boring, p. 35:8-36:13, Boring Ex. 4, p. 285.

    11.    The ClosetMaid FCRA Information/Consent form used at the Grantsville, Maryland location included the following Waiver Of Rights Provision:

> I hereby release ClosetMaid/Emerson Electric Co., and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release. You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid page 117:2-118:9; ClosetMaid Dep. Exhibits 11, p. 291 and 12, p.309; Pl. S.J. App. Ex. 4, Dep. of Jennifer Boring, p. 35:8-36:13, Boring Ex. 4, p. 285.

    12.    The ClosetMaid FCRA Information/Consent form used at the Chino, California location provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> By my signature below, I consent to have comprehensive review of my background causing a consumer report and/or an investigative consumer report to be generated for employment purposes. I hereby authorize Do+Able Products Division/Emerson Electric Co. to obtain a background report from:
>
> LexisNexis® Express Screening<br>Post Office Box 812289<br>Boca Raton, Fl. 33481
>
> I understand that the scope of the consumer report/investigative consumer report will include: (An "X" in the box denotes this report is being requested and generated.)
>
> X Verification of social security number      X Current and previous addresses
> X Employment history including all personel files      X Education
> X Character references      X Credit history and reports
> X Motor Vehicle records to include traffic citations and registration    X Birth records
> X Criminal history from any criminal justice agency in any or all federal, state county jurisdictions

Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid page 118:20, ClosetMaid Dep. Ex. 114, page 8 of Exhibit entitled "California Authorization For Release of Information For Employment Purposes; Pl. S.J. App. Ex. 4, Dep. of Jennifer Boring, p. 37:8-38:3, Boring Dep. Ex. 8 page 8 of Exhibit entitled "California Authorization For Release of Information For Employment Purposes."

13. The ClosetMaid FCRA Information/Consent form used at the Chino, California location included the following Waiver Of Rights Provision:

> I hereby release D+Able Products/Emerson Electric and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release. You may contact me as indicated below.

Pl. S.J. App. Ex. 3, Dep. of ClosetMaid page 118:20, ClosetMaid Dep. Ex. 114, page 8 of Exhibit entitled "California Authorization For Release of Information For Employment Purposes"; Pl. S.J. App. Ex. 4, Dep. of Jennifer Boring, p. 37:8-38:3, Boring Dep. Ex. 8 page 8 of Exhibit entitled "California Authorization For Release of Information For Employment Purposes."

14. The First Amended Complaint in this action was filed on April 16, 2009. Pl. S.J. App. Ex. 1, ECF 16.

15. The FAC alleged that ClosetMaid violated 15 U.S.C. § 1681b(b)(2)(A) (i) and (ii) which provides:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a *person* may not procure a *consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless* –

  (i)  a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

  (ii)  the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Pl. S.J. App. Ex. 1, ECF 16, Complaint, ¶¶ 18-31; 51-60 .

  16. As a result, of the allegations made in the FAC, ClosetMaid revised its FCRA Information/Consent Forms by removing the Waiver Of Rights from its forms.  Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid 57:2-58:9; Pl. S.J. App. Ex. 4, Dep. of J. Boring, 31:14 -32:9, Ex. 3, p. 440.

  17. As of July 1, 2009 ClosetMaid no longer uses FCRA Information/Consent forms that include a Waiver Of Rights Provision. Pl. S.J. App. Ex. 3, Dep. Of ClosetMaid 57:2-58:9;  Dep. of J. Boring, 31:14 -41:8;  Ex. 3, p. 440, Ex. 4, p. 285, Ex.5, p. 291, Ex. 6, p. 309; Ex. 7, p.  424.

  18. Section 1681b(b)(2)(A) (i) and (ii) of the FCRA was enacted by Congress as amendments to the FCRA effective September 30,1996. S.J. App. 5, PUBLIC LAW 104–208. Sec. 2403—SEPT. 30, 1996.

  19. On June 12, 1998, an FCRA Staff Opinion letter was issued by the Federal Trade Commion known as Haynes-Hauxwell.  Pl. S.J. App. Exhibit 6.

  20. The Haynes-Hauxwell Staff Opinion Letter states:

The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result.

Pl. S.J. App. Exhibit 6.

21.     On October 21, 1997, an FCRA Staff Opinion letter was issued by the Federal Trade Commission known as Steer-Lamb. Pl. S.J. App. Exhibit 7.

22.     The Steer-Lamb Staff Opinion Letter states, in part:

> We believe that including an authorization in the same document with the disclosure, as you suggest, will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.

Pl. S.J. App. Exhibit 7.

23.     On or about August 31, 2004, ClosetMaid signed a Securint Application and Service Agreement with Securint, a consumer reporting agency, in order to obtain consumer reports about prospective employees, for employment purposes. Pl.S.J. Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, pp.188-192; Pl. S.J. App. Ex. 4, Boring Dep. 27:1-30:7 Boring Dep. Ex. 2, pp.188-192; Pl. S.J. App.Ex. 8, Price Dep. pp. 35:9-38-19, Price Dep. Ex.2  188-192.

24.     Appendix A to the Securint contract provided as follows:

Permissible Purpose-Employment

Costumer hereby expressly acknowledges and agrees that, in addition to the terms and conditions of the Securint Application And Service Agreement, use of Securint Services for employment purposes is also subject to the following provisions:

> 1)   prior to procuring a consumer report, a clear and conspicuous disclosure, consisting solely of the disclosure, that a consumer report   might be obtained for employment purposes must be made to the applicant, and
>
> 2)   the applicant shall authorize in writing the right to procure the consumer report; and

>   3) prior to taking any adverse action, based whole or in part upon the consumer report, Customer must provide the applicant a copy of the consumer report and a summary of the consumer's rights as prescribed by the Federal Trade Commission, and . . .

Pl.S.J. Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, p. 5 of 14 of contract; Pl. S.J. App. Ex. 4, Boring Dep. 27:1-30:7, Boring Dep. Ex. 2, p. 5 of 14 of contract; Pl. S.J. App.Ex. 8, Price Dep. pp. 35:9-38-19, Price Dep. Ex.2 p. 5 of 14 of contract.

25. The Sucurint Application and Service Agreement provided a NOTICE TO USERS OF CONSUMER REPORTS; OBLIGATIONS OF USERS UNDER THE FCRA that provided, in part:

> **II. OBLIGTIONS OF USERS WHEN CONSUMER REPORTS ARE OBTAINED FOR EMPLOYMENT PURPOSES**
>
> If information from a CRA is used for employment purposes, the suer has specific duties, which are set forth in Section 604(b) of the FCRA. The user must:
>
> Make a clear and conspicuous written disclosure to the consumer before the report is obtained, in a document that consists solely of the disclosure, that a consumer report may be obtained.
>
> Obtain prior written authorization from the consumer.
>
> Certify to the CRA that the above steps have been followed, that the information being obtained is taken based on the consumer report, a copy of the report and a summary of the consumer's rights will be provided to the consumer.
> Before taking an adverse action, provide a copy of the report to the consumer as well as the summary of the consumer's rights. (The user should receive this summary from the CRA, because Section 604 (b)(1)(B) of the FCRA requires CRAs to provide a copy of the summery with each consumer report obtained for employment purposes)

Pl.S.J. Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, p. 10 of 14 of contract; Pl. S.J. App. Ex. 4, Boring Dep. 27:1-30:7 Boring Dep. Ex. 2, p. 10 of 14 of contract.

26. The ClosetMaid FCRA Information/Consent forms used by ClosetMaid during the Class Period were researched and developed by Cathy Beal or Mary Price. Pl.S.J. Ex. 3, Dep. of ClosetMaid page 31:10; 34:22-25; 35:1-2044:24-47-1.; Pl. S.J. App. Ex. 4, Boring Dep. 43:19-44-6; Pl. S.J. App.Ex. 8, Dep. of Price pp. 28:2-29-1.

27. To establish the FCRA Disclosure/Consent Forms and the Pre-Adverse Action Procedures, ClosetMaid through its employees reviewed government and legal websites, among other resources. Pl.S.J. Ex. 3, Dep. of ClosetMaid page 31:10; 32:6-7, 34:22-25; 35:1; 44:24-47-1; Pl.SJ. Ex. 9, Response to Interrogatory No. 1 at p. 4 -5 of ClosetMaid Answers To Plaintiffs' First Set Of Interrogatories Pursuant To January 11, 2013 Order.

28. To establish the FCRA Disclosure/Consent Forms used prior to July 1, 2009, ClosetMaid did not consult with any in-house or outside lawyer. Pl. S.J. App. Ex. 3 Dep. ClosetMaid, pp. 14:16-24, 15:1-4, 22:9-13; 33:21 to 34:8; Pl.S.J. Ex. 8 Dep. of Price p. 30:12-18.

29. To establish the FCRA Disclosure/Consent Forms used prior to July 1, 2009, ClosetMaid did not review the Securint Application And Security Agreement. Pl. S.J. App. Ex. 3, Dep. of ClosetMaid page 94:1-22.

30. ClosetMaid had in the past obtained legal counsel available from its parent company, Emerson Electric Company. Pl. S.J. App. Ex. 3 Dep. ClosetMaid, pp. 38:2-17

**FACTS RELATED TO THE "PRE-ADVERSE ACTION" SUB-CLASS CLAIMS**

31. The consumer report obtained by ClosetMaid about Reardon contained negative credit and criminal history information. Pl. S.J. App. Ex. 3 Dep. of ClosetMaid ; Pl. S.J. App. Ex. 4, Boring Dep. 72:25-73:13, Boring Ex. 12, page 220-224.

32. Closetmaid sent a letter to Reardon dated December 18, 2006, by regular mail, which contained a copy of the consumer report about Reardon. Pl. S.J. App. Ex.3 Dep. of ClosetMaid, pag 127:22-128:3, ClosetMaid Dep. Ex. 15, bates number 216  Pl. S.J. App. Ex. 4, Boring Dep. p. 72:7-14, Boring Dep. Ex. 15, page 216.

33. Four days later ClosetMaid sent a letter to Reardon dated December 22, 2006 informing Reardon that ClosetMaid had decided not to offer her the position for which she had applied. Pl. S.J. App. Ex.  Dep. of ClosetMaid 128:23-129:8, ClostMaid Dep. Ex. 8, bates number 217;  S.J. App. Ex. 4, Boring Dep. p. 75:16-76:8, Boring Dep. Ex. 12 page 217.

34. ClosetMaid decided not to offer Reardon the position for which she had applied before Reardon had obtained the consumer report sent by Closetmaid with the letter dated December 18, 2006. Pl. S.J. App. Ex.  Dep. of ClosetMaid, 129:6-130:23 ; S.J. App. Ex. 4, Boring Dep. p. 75:16-20, Boring Dep. Ex. 12 page 217.

35. The basis for ClosetMaid decision not to hire Reardon was the information contained in the consumer report obtained about her. Pl. S.J. App. Ex.3  Dep. of ClosetMaid 128:23-129:8, ClostMaid Dep. Ex. 8, bates number 217;S.J. App. Ex. 4, Boring Dep. page 72:25-74:14.

36. ClosetMaid's hiring procedures require its Human Resources Representatives to make the following investigations into a job applicant: 1) check the applicants references; 2) verify the applicant's employment history; 2) verify the applicant's educational background; and 4) obtain, review and consider a consumer report obtained from a designated consumer

reporting agency. Pl. S.J. App. Ex. Dep. ClosetMaid page 40:1-; ClosetMaid Dep. Ex. 6, bates page 168; S.J. App. Ex. 4, Boring Dep. page 53:5-55-2 and Boring Dep. Ex. 9, page 168.

37. ClosetMaid has never instituted a written policy and procedure that provides guidance to its hiring personnel as to when a Pre-Adverse Action Notice must be provided to a prospective employee. S.J.App.Ex. 3, Dep. of ClosetMaid, page 63:4-64:22, Pl.S.J. App.Ex. 10 Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

38. ClosetMaid considered consumer reports on applicants to determine if the results of the consumer report might adversely affect the applicant's ability to perform the job or create potential liability for ClosetMaid. Further, evidence of violent behavior could form the basis of rejection from employment. Pl. S.J. App. Ex. 10, Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

39. ClosetMaid's standard form application asked the following question:

"Have you ever been convicted of or pleaded guilty or Nolo Contendre (no contest or an Alford plea) to any felony?" ___yes ___no (The fact you have been convicted of a crime will not automatically disqualify you from further consideration for employment.) If "yes" please describe in detail and attach to application.

Pl.S.J. Ex. 1, ECF 16-1, page 6 of 9 (form application of C.Reardon),

40. In ClosetMaid's recruiting process, the Human Resources representative must verify past employment, education, and take into consideration the consumer report and background check to identify information, if any, that disqualifies the candidate from

employment. Pl. S.J. App. Ex. 3 Boring Dep. 54:20-25 and 55:1-11.

41. According to ClosetMaid's policies, a criminal conviction that was violent in nature would disqualify the applicant from employment because "of violence in the workplace." Pl.S.J. App. Ex. 3 ClosetMaid Dep. 64:3-7.

42. In ClosetMaid's recruiting and hiring process results of a background check that indicated theft, drug possession, assault and forgery were the types of convictions that caused concern during the hiring process, along with bad credit Pl.S.J.Ex. 3, Dep. of Boring pages 15:3-12, 5:13-18, 16:16-19, 17:4-12, 15:19-21; 18:14-15.

43. Since December 1, 2006 ClosetMaid has sent to 3 persons, not including Cathy Reardon, a copy of their consumer and a FTC Summary Of Rights pursuant to 15 U.S.C. § 1681b(b)(3) . S.J. App. Ex. 11, Defendant ClosetMaid Corporation's Answers and Responses To Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 2 and Answer Thereto referring to an Exhibit A of documents including bates numbers 130 to 163 including documents relating to job applicants Edgar Garcia, (bates 130-141); Dawn Rust (bates nos. 141 to 158) and Walter Thomas (bates nos. 159-163).

44. From December 1, 2006 until June 30, 2009, ClosetMaid obtained consumer reports on 1,829 job applicants, 1494 of whom were hired, and 299 who were not hired. Pl. S.J. App.Ex. 3, Dep. Of ClosetMaid, page 96:10 -107:23, ClosetMaid Exhibit 9, Columns designated "#EE's hired" and "FCRA forms completed and background check run (not hired)" and "# Credit Checks".

45. The consumer reports obtained about each member of the Pre-Adverse Action class contained a report of a conviction for a felony, a serious misdemeanor, a

serious traffic conviction such as DUI, or a misdemeanor. S.J. App. Ex. 12 and 13, Declaration of C. North.

46. The final employment decision as to the 69 members of the Pre-Adverse action sub-class was that they would not be working for ClosetMaid. S.J. App.Ex. 4, Dep.Of Boring page 57:9-72:1, Boring Dep. Ex. 10 and Boring Exhibit 11, with attached Declarations of Hernandez-Opio and Patricia Dameron, bates nos. CM 5093-5098.

47. With respect to the 69 persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not have in place a written or standard procedure to send these persons a copy of the consumer report obtained about them and an FTC Summary Of Rights notice in light of the negative information in their consumer report. S.J.App.Ex. 3, Dep. of ClosetMaid, page 63:4-64:22, Pl.S.J. App.Ex. 10 Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

48. With respect to the 69 ClosetMaid persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not place a "hold" on the final decision whether to hire or not hire said persons in order to send these 69 persons a copy of their consumer report and an FTC Summary Of Rights before ClosetMaid reached any final decision to not hire them . SJ. App. Ex. 12 Declaration of North with chart.

49. With respect to the 69 ClosetMaid persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not send any of these persons a copy of their consumer report and an FTC Summary Of Rights. SJ. App. Ex. 12 Declaration of North with chart.

50. In March 1999, the Federal Trade Commission published a "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know". Pl.S.J. App.Ex. 13

51.     The Federal Trade Commission publication "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know" provides:

> *A job applicant gives you the okay to get a consumer report. Although the credit history is poor and that's a negative factor, the applicant's lack of relevant experience carries more weight in your decision not to hire. What's your responsibility?*
>
> *In any case where information in a consumer report is a factor in your decision — even if the report information is not a major consideration — you must follow the procedures mandated by the FCRA. In this case, you would be required to provide the applicant a **pre-adverse action disclosure** before you reject his or her application. When you formally reject the applicant, you would be required to provide an **adverse action notice**.*

          Respectfully submitted,

          By:     /James M. Pietz

          James M. Pietz
          Pa I.D. No. 55406
          Pietz Law Office LLC
          429 Forbes Ave., Suite 1616
          Pittsburgh, Pa. 15219
          412-288-4333
          jpietz@jpietzlaw.com

          Leonard A. Bennett, Esq.
          Consumer Litigation Associates
          12515 Warwick Boulevard
          Newport News, Va. 23606
          (757) 930-3660
          lenbennett@clalegal.com

          Christopher North. Esq.
          751-A Thimble Shoals Blvd.
          Newport News, Va  23606
          (757) 873-1010

*Counsel for the Representative And
ClassPlaintiffs*