**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

R. CATHY REARDON, on behalf of herself )
and all similarly situated individuals, )
                                       )     Civil Action No. 2:08-cv-1730
          Plaintiffs, )
                                         )     Hon. Mark R. Hornak
       vs. )    United States District Judge
                                       )
CLOSETMAID CORPORATION, )    ***Filed Electronically***
                                       )
         Defendant. )

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, ClosetMaid Corporation ("ClosetMaid"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and pursuant to Federal Rule of Civil Procedure 56 and Western District of Pennsylvania Local Rule 56.1, files its Statement of Undisputed Material Facts ("Facts") and accompanying Appendix of Record Materials ("Appendix")[1].

    1.       ClosetMaid is headquartered in Ocala, Florida and manufactures various storage products including closet shelving, pantry shelving, work products, shower caddies and other miscellaneous storage items.   August 27, 2009 Deposition of Catherine Beal ("2009 Beal Dep.") pp. 10-11, **Tab 1.**

    2.       In addition to its Florida location, ClosetMaid maintains offices in Grantsville, Maryland and Chino, California and has distribution centers in Tacoma, Washington and Belle Vernon, Pennsylvania.  2009 Beal Dep., p. 11, **Tab 1.**

---

[1]     The facts contained herein are presented in a light most favorable to Plaintiff and for purposes of ClosetMaid's Motion for Summary Judgment only.  ClosetMaid does not concede the truth of any of the facts contained herein for any purpose other than its Motion for Summary Judgment.

3.       ClosetMaid maintains a Salaried Recruiting Procedure describing its hiring and processing.  2009 Beal Dep., p. 40-67, **Tab 1**; 2009 Beal Deposition Exhibit ("2009 Beal Dep., Ex.") 6, **Tab 2.**

4.       In accordance the Salaried Recruiting Procedure, ClosetMaid's recruiters and human resource managers review applications and make hiring decisions based upon relevant criteria of the position for which each applicant applies.  2009 Beal Dep., pp. 40-67, **Tab 1.**

5.       During all times relevant to this action, ClosetMaid contracted with two (2) third-party consumer reporting companies to procure consumer reports: LexisNexis and Securint. 2009 Beal Dep., pp. 61-63, **Tab 1**; 2009 Beal Dep. Ex. 8, **Tab 3.**

6.       In doing so, ClosetMaid uses consumer reports as part of its employee screening process.  2009 Beal Dep., pp. 29-30, **Tab 1.**

7.       The standards ClosetMaid applies to applicants when reviewing their consumer reports vary for different positions, such as salespeople, truck drivers, etc., as compared to other open positions.  2009 Beal Dep., pp. 62-66, **Tab 1.**

8.       The hiring process is not a "linear procedure" and as such, every position and every candidate is different and handled individually.   April 2, 2013 Deposition of Jennifer Boring ("Boring Dep."), pp. 47-57, **Tab 4.**

9.       Various human resources managers at its various locations are responsible for making these decisions, and consumer reports are obtained, depending yet again upon the position for which an employee applies.  2009 Beal Dep., pp. 62-66, **Tab 1**; Boring Dep., pp. 47-57, **Tab 4.**

10.     ClosetMaid's use of the information contained in an applicant's consumer report, if at all, is position-specific and no information necessarily would disqualify an applicant from consideration.  Boring Dep., pp. 14-18, **Tab 4.**

11.     Representatives of ClosetMaid's human resource staff have worked collaboratively to ensure FCRA compliance and their efforts have involved researching human resource sources including the Society for Human Resource Management ("SHRM"), the Bureau of Labor Reporting, and AER Employer Legislative; consulting government and legal websites; attending seminars; continually reviewing, revising and updating their FCRA forms; and participating in human resource discussion groups.  2009 Beal Dep., pp. 31-35, 45, & 75-76; **Tab 1**; July 29, 2010 Deposition of Catherine B. Beal ("2010 Beal Dep."), p. 22, **Tab 5**; Boring Dep., pp. 24-25, **Tab 4.**

12.     In fact, ClosetMaid's Salaried Recruiting Procedure specifically addresses FCRA compliance and directs its Human Resource Representatives to personally notify candidates whose applications are rejected because of a consumer report.  2009 Beal Dep., Ex. 6, p. 168, **Tab 2.**

13.     Between December 19, 2006 and July 1, 2009, any applicant that completed an employment application was provided with a copy of ClosetMaid's "Fair Credit Reporting Act Authorization Form – Notice of Intent to Obtain a Consumer Credit Report" ("Notice") and an "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" ("Authorization") if ClosetMaid determined it was interested in pursuing the applicant. 2009 Beal Dep., pp. 30, 52-53, **Tab 1**; 2009 Beal Dep. Ex. 6, pp. 178-179, **Tab 2**; 2010 Beal Dep., pp. 36, 48-49, **Tab 5**; Boring Dep., pp. 31-32, **Tab 4**.

14.     ClosetMaid used the Notice and Authorization to notify applicants that it intended to procure their consumer reports and that was requesting their authorization to do so.  2009 Beal Dep., pp. 55-57, **Tab 1**; 2009 Beal Dep. Ex. 6, pp. 178-179, **Tab 2**.

15.     On December 13, 2006, Plaintiff completed an application for employment with ClosetMaid.  November 16, 2009 Deposition of Regina C. Reardon, Reardon Deposition Exhibit ("Reardon Dep. Ex.") C, **Tab 6.**

16.     On that same date, Plaintiff executed ClosetMaid's Notice and Authorization Forms.  Reardon Dep. Ex. C., **Tab 6**.

17.     Upon doing so, Plaintiff understood that ClosetMaid intended to procure her consumer report, and further, understood that she was authorizing ClosetMaid to do so. November 16, 2009 Deposition of Regina C. Reardon ("Reardon Dep.") pp. 20-21, **Tab 7**.

18.     Included in the Authorization is a narrow release; however, the Notice contains no such release language.  2009 Beal Dep. Ex. 6, pp. 178-79, **Tab 2**.

19.     By July 1, 2009, ClosetMaid discontinued its use of the Notice and Authorization and instead began using its "Combined Disclosure Notice and Authorization to Obtain a Consumer Credit Report Form."  2009 Beal Dep. Ex. 7, p. 440, **Tab 8**; Boring Dep., pp. 31-32, **Tab 4**; 2013 Boring Deposition Exhibit ("Boring Dep. Ex.") 3, p. 440, **Tab 9**.

20.     ClosetMaid automatically issued both the copy and summary of FCRA rights in all circumstances where it intended to take an adverse employment based in whole or in part on a consumer report.  2009 Beal Dep., pp. 67-69, 126-127, **Tab 1**; 2009 Beal Dep. Ex. 6, p. 184, **Tab 2**; 2010 Beal Dep., p. 29; **Tab 5**.

21.     Plaintiff's consumer report contained credit history information disqualifying her from employment as a Territory Supervisor/Manager at ClosetMaid.  Reardon Dep. Ex. E, **Tab 10**.

22.     As such, and by letter dated December 18, 2006, ClosetMaid notified Plaintiff that it may not offer her that position based in whole or in part on information contained in her consumer report ("Adverse Action Letter").  Reardon Dep. Ex. E, **Tab 10**.

23.     The Adverse Action Letter included a copy of Plaintiff's consumer report and a summary of FCRA rights.  Reardon Dep. Ex. E, **Tab 10**.

24.     The Adverse Action Letter notified Plaintiff that ClosetMaid would wait five (5) business days from the date of the letter before making its hiring decision.  Reardon Dep. Ex. E, **Tab 10**.

25.     By letter dated December 22, 2006, exactly five (5) business days from the date it sent the Adverse Action Letter, ClosetMaid notified Plaintiff that it would not be offering her a position based in whole or in part on the result of her consumer report.  Reardon Dep. Ex. F, **Tab 11**; 2009 Beal Dep., p. 129, **Tab 1**.

26.     In all instances where ClosetMaid issued an adverse action letter, it waited at least five (5) days, though usually longer, before sending a second letter notifying an applicant of ClosetMaid's adverse hiring decision.  2009 Beal Dep., pp. 67-69, **Tab 1**.

27.     Class Counsel specifically identifies seventy-seven (77) individuals who purportedly comprise the Pre Adverse Action Sub-Class.  September 13, 2010 Declaration of Christopher Colt North, **Tab 12**.

28.     Of those seventy-seven (77) individuals, seventy-two (72) were either not subject to an adverse action entirely or not subject to an adverse action based in whole or in part on the

information contained in their respective consumer reports.   March 25, 2013 Declaration of Patricia Dameron ("Dameron Decl."), **Tab 13**; March 25, 2013 Declaration of Merlyn Hernandez-Opio ("Hernandez-Opio Decl.), **Tab 14**; March 25, 2013 Declaration of Jennifer Boring ("Boring Decl."), **Tab 15**.

29.       Twenty-two (22) of the seventy-seven (77) individuals identified by Plaintiff as comprising the Pre Adverse Action Sub-Class suffered no adverse action. Dameron Decl., **Tab 13**; Hernandez-Opio Decl., **Tab 14**; Boring Decl., **Tab 15**.

30.       Fifty (50) of the seventy-seventy (77) were subjected to an adverse employment action that was not based in whole or in part upon a consumer report.   Dameron Decl., **Tab 13**; Hernandez-Opio Decl., **Tab 14**; Boring Decl., **Tab 15**.

Dated: May 24, 2013                  Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**


/s/ W. Scott Hardy
W. Scott Hardy, Esquire (PA 79225)
Scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esquire (PA 94156)
Philip.kontul@ogletreedeakins.com

One PPG Place, Suite 1900
Pittsburgh, PA 15222
Ph. (412) 394-3333
Fax: (412) 232-1799

Attorneys for Defendant
ClosetMaid Corporation

Civil Action No. 2:08-cv-1730

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of May, 2013, I electronically filed the foregoing

**Statement of Undisputed Material Facts** with the Clerk of the Court using the CM/ECF system

which sent notification of such filing to the following:

James M. Pietz, Esquire
Pietz Law Office LLC
429 Forbes Avenue, Suite 1616
Allegheny Building
Pittsburgh, PA 15219
Ph. (412) 288-4333
jpietz@jpietzlaw.com

Christopher C. North, Esquire
The Consumer & Employee Rights Law Firm PC
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Ph. (757) 873-1010
cnorthlaw@aol.com

Leonard A. Bennett, Esquire
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, VA 23606
Ph. (757) 930-3660
lenbennett@clalegal.com

(*Attorneys for Plaintiff*)

/s/ W. Scott Hardy
W. Scott Hardy, Esquire
Attorney for Defendant