IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. CATHY REARDON, on behalf of herself and all similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 08-1730 |
| vs. | ) ) | Judge Mark R. Hornak |
| CLOSETMAID CORPORATION, | ) ) | Filed Electronically |
| Defendant. | ) ) | |

DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and pursuant to Federal Rule of Civil Procedure 56 and Western District of Pennsylvania Local Rule 56.1, files this Memorandum of Law in Support of its Motion for Summary Judgment.

## I.     INTRODUCTION

Plaintiff and Class Counsel seize upon the obscure and highly technical nature of the Fair Credit Reporting Act ("FCRA") to advance novel, cumulative, and legally unsupported claims in which they seek to pyramid statutory damages for each condition precedent they contend ClosetMaid failed to satisfy during its hiring process, even though ClosetMaid used consumer reports as a basis to reject a mere six (6) job applicants including Class Representative Reardon.

On December 19, 2008, Plaintiff filed a Class Action Complaint on behalf of "herself and all similarly situated individuals" alleging that ClosetMaid violated highly technical provisions of FCRA.  Plaintiff filed a First Amended Class Action Complaint on April 4, 2009.  The Court certified the Disclosure Class and a Pre-Adverse Action Sub-Class on April 27, 2011, and

subsequently clarified and limited the class and sub-class definitions by setting a class commencement date of December 19, 2006 and an end date equivalent to the date of Class notice, i.e., September 28, 2012.[1].

Now, following extensive discovery, ClosetMaid moves for summary judgment as to all claims asserted by Plaintiff on behalf of the Disclosure Class and the Pre-Adverse Action Sub-Class. As averred in her First Amended Class Complaint, Plaintiff asserts the following claims:

- Count I alleges that ClosetMaid procured consumer reports without providing a "clear and conspicuous" disclosure of its intended procurement of a consumer report to applicants in a document that consists solely of the disclosure in violation of 15 U.S.C. § 1681b (b)(2)(A)(i). ("Count I").

- Count II alleges that ClosetMaid procured consumer reports without obtaining proper authorizations in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii). ("Count II").

- Count III alleges that ClosetMaid failed to provide a copy of the consumer report to applicants at least five (5) business days before taking adverse action in violation of 15 U.S.C. § 1681b (b)(3)(A)(i). ("Count III").

- Count IV alleges that ClosetMaid failed to provide a summary of FCRA rights to applicants at least five (5) business days before taking adverse action in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii). ("Count IV").[2]

Plaintiff also contends that ClosetMaid's purported FCRA violations were willful[3] pursuant to 15 U.S.C. § 1681n (imposing actual or statutory damages, punitive damages, costs and reasonable attorneys' fees for "willful" violations).

---

1       A more detailed discussion of certification is set forth in ClosetMaid's Memorandum In Support of Motion to Decertify the Pre-Adverse Action Sub-Class.

2       Plaintiff improvidently "stacks" claims, (i.e., Counts I and II are really one claim; Count III and IV are really one claim) in an effort to double the number of violations so as to embellish damages. For a discussion on this point, see ClosetMaid's Memorandum of Law in Opposition to Plaintiff's Motion for Certification, p. 5, which is incorporated herein by reference.

3       Plaintiff must establish that ClosetMaid's purported violations were "knowing or reckless" to prove willfulness. See Safeco Ins. Co. of America v. Burr, et al., 551 U.S. 47 (2007) (defining the legal standard for willful non-compliance).

Despite these allegations, the uncontroverted record evidence establishes that ClosetMaid's FCRA disclosure and authorization forms comply with 15 U.S.C. § 1681b (b). Even so, it is undisputed that ClosetMaid changed its disclosure and authorization forms starting in July 2009 and that Class Counsel does not allege that those new forms violate FCRA in any way. The record evidence also establishes that, of the seventy-seven (77) individuals identified by Plaintiff as constituting the Pre-Adverse Action Sub-Class, twenty-two (22) sub-class members experienced no adverse employment action; an additional fifty (50) sub-class members experienced an adverse employment action totally unrelated to their consumer report; and that, of the five (5) remaining sub-class members who did experience an adverse employment action based in whole or in part on their consumer report, ClosetMaid fully complied with its FCRA obligations by providing them with a "Pre Adverse Action Notice" accompanied by copies of their consumer report and summary of FCRA rights.

Finally, even if ClosetMaid did not comply with one or more technical requirements, a contention it disputes, such purported non-compliance is, at most, negligent and certainly not willful.

## II.     SUMMARY JUDGMENT STANDARD

The applicable standards for summary judgment are set forth in FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986), and Lujan v. Nat'l Wildlife Fed'n. 497 U.S. 871 (1990).  Based upon these standards, ClosetMaid respectfully requests entry of summary judgment in its favor as to all claims asserted against it.

III.     STATEMENT OF UNDISPUTED FACTS[4]

ClosetMaid is headquartered in Ocala, Florida and manufactures various storage products including closet shelving, pantry shelving, work products, shower caddies and other miscellaneous storage items.  Facts, ¶ 1.  In addition to its Florida location, ClosetMaid maintains offices in Grantsville, Maryland and Chino, California, and has distribution centers in Tacoma, Washington and Belle Vernon, Pennsylvania.  Facts, ¶ 2.

ClosetMaid maintains a Salaried Recruiting Procedure describing its hiring and processing criteria.  Facts, ¶ 3.  In accordance with it, ClosetMaid's recruiters and human resource managers review applications and make hiring decisions based upon the relevant criteria of the position for which each applicant applies.  Facts, ¶ 4.  In doing so, ClosetMaid uses consumer reports as part of its employee screening process.  Facts, ¶ 6.  During all times relevant to this action, ClosetMaid contracted with two (2) third-party consumer-reporting companies to procure consumer reports: LexisNexis and Securint.  Facts ¶ 5.  The standards ClosetMaid applies to applicants when reviewing their consumer reports vary for different positions, such as salespeople, truck drivers, etc., as compared to other open positions.  Facts, ¶ 7.  The hiring process is not a "linear process" and as such, every position and every candidate is different and handled individually.  Facts, ¶ 8.  Various human resources managers at its various locations are responsible for making these decisions, and consumer reports are obtained, depending yet again upon the position for which an employee applies.  Facts, ¶ 9.  Moreover, ClosetMaid's use of the information contained in an applicant's consumer report, if at all, is position-specific and no information necessarily would disqualify an applicant from consideration.  Facts ¶ 10.

---

4     ClosetMaid separately filed its Statement of Undisputed Material Facts ("Facts") and Appendix of Record Materials ("Appendix") contemporaneously with the filing of its Motion and this Memorandum of Law pursuant to W.D. Pa. L.R. 56.1.  All citations to the evidentiary record set forth in this Memorandum are designated as: "Facts, ¶ __."  For the Court's convenience, ClosetMaid offers this summary of those facts.  For purposes of this Motion only, all facts are presented in a light most favorable to Plaintiff.

Representatives of ClosetMaid's human resource staff have worked collaboratively to ensure FCRA compliance. Their efforts have involved researching human resource sources including the Society for Human Resource Management ("SHRM"), the Bureau of Labor Reporting, and AER Employer Legislative; consulting government and legal websites; attending seminars; continually reviewing, revising and updating their FCRA forms; and participating in human resource discussion groups. Facts, ¶ 11. In fact, ClosetMaid's Salaried Recruiting Policy specifically addresses FCRA compliance and directs its HR Representatives to personally notify candidates whose applications are rejected because of a consumer report. Facts, ¶ 12.

Between December 13, 2006 until July 1, 2006, applicants who completed an employment application was provided with a copy of ClosetMaid's "Fair Credit Reporting Act Authorization Form - Notice of Intent to Obtain a Consumer Credit Report" ("Notice") and an "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" ("Authorization") if ClosetMaid determined it was interested in pursuing the applicant. Facts, ¶ 13. ClosetMaid used the Notice and Authorization to notify applicants that it intended to procure their consumer reports and that it was requesting their authorization to do so. Facts, ¶ 14.

On December 13, 2006, Plaintiff completed an application for employment with ClosetMaid. Facts, ¶ 15. On that same date, Plaintiff executed ClosetMaid's Notice and Authorization Forms. Facts ¶ 16. Upon doing so, Plaintiff understood that ClosetMaid intended to procure her consumer report, and further, understood that she was authorizing ClosetMaid to do so. Facts, ¶ 17. Included in the Authorization was a narrow release; however, the Notice contained no release language. Facts, ¶ 18. ClosetMaid automatically issued both the copy and

summary of FCRA rights in all circumstances where it intended to take an adverse employment action in whole or in part on their consumer report.  Facts. ¶ 21.

By July 1, 2009, ClosetMaid discontinued its use of the Notice and Authorization and instead began using its "Combined Disclosure Notice and Authorization to Obtain a Consumer Credit Report Form" ("Combined Form").  Facts, ¶ 19.

Plaintiff's consumer report contained credit history information disqualifying her from employment as a Territory Supervisor/Manager at ClosetMaid.  Facts, ¶ 21.  As such, and by letter dated December 18, 2006, ClosetMaid notified Plaintiff that it may not offer her that position based in whole or in part on information contained in her consumer report ("Adverse Action Letter").  Facts, ¶ 22.  The Adverse Action Letter included a copy of Plaintiff's consumer report and a summary of FCRA rights.  Facts, ¶ 23.  The Adverse Action Letter notified Plaintiff that ClosetMaid would wait five (5) business days from the date of the letter before making its hiring decision.  Facts, ¶ 24.

Then, by letter dated December 22, 2006, exactly five (5) days from the date it sent the Adverse Action Letter, ClosetMaid notified Plaintiff that it would not be offering her a position based in whole or in part on the result of her consumer report.  Facts, ¶ 25.

In all instances where ClosetMaid issued an Adverse Action Letter, it waited at least five (5) days, though usually longer, before sending a second letter notifying an applicant of ClosetMaid's adverse hiring decision.  Facts, ¶ 26.

Class Counsel specifically identifies seventy-seven (77) members of the Pre Adverse Action Sub-Class.  Facts, ¶ 27.  Of those seventy-seven (77) individuals, seventy-two (72) of them either not subject to an adverse action entirely or not subject to an adverse action based in

whole or in part on the information contained in their respective consumer reports.  Facts, ¶ 27-30.

## IV.   ARGUMENT

Summary Judgment should be entered on behalf of ClosetMaid and all claims asserted against it should be dismissed.

ClosetMaid provided each member of the Disclosure Class with a "clear and conspicuous disclosure" of its intended procurement of their consumer reports and obtained their written authorization to do so pursuant to 15 U.S.C. § 1681b(b).  Even so, there is no dispute that as of July 1, 2009, ClosetMaid discontinued its use of the Forms being challenged by the Disclosure Class and instead began using the Combined Form that did not contain any of the alleged defects that the Disclosure Class challenges here.  As such, ClosetMaid separately seeks judgment as a matter of law, at a minimum, as to any member of the Disclosure Class who was the subject of a consumer report procured by ClosetMaid after having received and executed a disclosure and authorization form on or after July 1, 2009.  Accordingly, Counts I and II of the First Amended Class Action Complaint should be dismissed.

Moreover, the uncontroverted record evidence demonstrates that seventy-two (72) of the seventy-seven (77) Pre Adverse Action Sub-Class members either did not experience an adverse employment action at all or were subject to such adverse action for reasons not based on their consumer reports.  Facts, ¶ 28.  In fact, twenty-two (22) of these sub-class members experienced no adverse employment action at all because they declined an offer of employment, never appeared for a required job interview, or unilaterally disclaimed interest in the employment

opportunity.[5]  For those fifty-five (55) remaining sub-class members for whom ClosetMaid did take an adverse employment action, the uncontroverted evidence demonstrates that fifty (50) of those decisions were based on reasons totally unrelated to their consumer reports such as failing a mandatory drug test (2 applicants), falsifying information on the application (10 applicants), work history (2 applicants) the candidate was not the best qualified (26 applicants), the applicant's references (5 applicants) and the fact that there were no open positions at the time of application (5 applicants).  Facts, ¶ 30.  None of these fifty decisions, whether initiated by ClosetMaid or by the applicants themselves, were based in whole or in part on their consumer reports.

In fact, in the mere six (6) instances inclusive of Class Representative Reardon where ClosetMaid actually took adverse employment actions based upon applicants' consumer reports, ClosetMaid provided those individuals with the requisite pre-adverse action notice and accompanying copies of their consumer report and summary of FCRA rights at least five days beforehand as required by 15 U.S.C. § 1681b(b)(3).  Facts, ¶¶ 20, 23.  Accordingly, judgment as a matter of law should be entered in favor of ClosetMaid and thus Counts III and IV should also be dismissed in their entirety, too.

Finally, the record evidence establishes substantial efforts exhibited by ClosetMaid to ensure FCRA compliance.  Plaintiff's unsubstantiated allegations of wilfulness are completely without evidentiary support and should be dismissed as a matter of law.

---

[5]        These twenty-two individuals include: 1) Kenneth B. – Declined offer, 2) James D. – declined offer, 3) Joshua L. – declined offer, 4) Richard M. – declined offer, 5) Steven M – no show for interview, 6) Aaron W. – candidate not interested (Dameron Decl.); 7) Inovel  A. – candidate not interested, 8) Steve D. – declined offer, 9) Matthew H. – candidate not interested,  10) Richard G. – candidate not interested, 11) Stephen L. – declined offer, 12) Rodger L – declined offer, 13) Kimberly M. – declined offer, 14) Michael R. – hired, no show, 15) Shawn T. – did not appear for interview. (Hernadez-Opio Decl.). 16) Charles G. – candidate not interested, 17) Jennifer H. – candidate not interested, 18) Arnold L. – declined offer, 19) Courtney M. – declined offer, 20) Margaret P. – candidate not interested, 21) Cari R. – candidate not interested, & 22) Will R. – candidate not interested. (Boring Decl.).

A. Overview of The Fair Credit Reporting Act

FCRA is a complex statutory scheme regulating the business practices of consumer reporting agencies to ensure that they exercise their "grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."[6]  Embedded within this vast statutory scheme are a few provisions establishing conditions precedent that an employer must perform before it may procure and use consumer reports for employment purposes.

The sole express purpose of FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . . ."  15 U.S.C. § 1681(b).  FCRA requires consumer reporting agencies to provide a notice to employer-users of their consumer reports setting forth their responsibilities, and further prohibits consumer reporting agencies from furnishing consumer reports to employer-users unless the consumer reporting agencies obtain certifications from the employer-users that they have satisfied and will continue to satisfy specified conditions precedent before such procurement and possible use.  See 15 U.S.C. § 1681b(b)(1).

FCRA permits "consumer reporting agencies" to furnish "consumer reports"[7] for very limited purposes and to specifically enumerated users, including to any "person which it has reason to believe intends to use the information for "employment purposes." 15 U.S.C. § 1681b(a)(3)(B).   "Employment purposes" means, "evaluating a consumer for employment, promotion, reassignment or retention as an employee."  15 U.S.C. § 1681a(h).

---

6        See 15 U.S.C. §§ 1681 – 1681x (citing an excerpt from the Congressional findings and statement of purpose at 15 U.S.C. § 1681(a)(4).

7        A "Consumer Report" as defined at 15 U.S.C. § 1681a(d).

Prior to procuring a consumer report, employers must obtain: (i) a clear and conspicuous disclosure from each applicant for whom a consumer report may be procured; and (ii) the applicants' authorization, in writing, to procure the report.  See 15 U.S.C. § 1681b(b).

Then, if an employer considers the contents of a consumer report and consequently intends to reject an applicant or otherwise adversely affect the application based in whole or in part on information contained in the consumer report, the employer must inform the applicant of this possible consequence in writing and provide the applicant with a copy of the consumer report and a description, in writing, of his/her FCRA rights before actually taking any such adverse employment action.  See 15 U.S.C. § 1681b(b)(3)[8].  FCRA is silent on the amount of time that must elapse after providing this so-called "Pre-Adverse Action" notice before actually taking any such adverse action[9].  Then, once an employer provides the requested pre-adverse action notice, along with copies of the consumer report and a summary of FCRA rights, it may take its intended adverse action; but, in doing so, it must provide another notice when doing so. See 15 U.S.C. § 1681m(a).

Based upon these statutory definitions, ClosetMaid is a user of "consumer reports" containing various types of background information concerning individual job applicants known as "consumers."[10]  Plaintiff is an individual "consumer" who was the subject of a "consumer report" containing certain background information that ClosetMaid procured from a consumer-reporting agency.

---

8        FCRA imposes different conditions precedent on employers who procure and use consumer reports relating to applicants for commercial truck driver and certain other jobs regulated by the U.S. Department of Transportation ("DOT").  See e.g., 15 U.S.C. § 1681b(b)(2)(B) and (C); 15 U.S.C. § 1681b(b)(3)(B).

9        Five (5) days has been deemed reasonable by an FTC staff member in at least one instance. See Weisberg (FTC June 27, 1997).

10       A "consumer" is merely defined as an "individual."  15 U.S.C. § 1681a (c).

B. <u>Counts I And II Should Be Dismissed Because ClosetMaid's forms Complied With FCRA's Disclosure and Authorization Requirements As A Matter Of Law</u>

Plaintiff alleges that ClosetMaid's Forms failed to conform to 15 U.S.C. § 1681b(b) because they purportedly: (i) failed to provide a "clear and conspicuous disclosure" of its intended procurement of a consumer report to applicants in a document that consists solely of the disclosure; and (ii) failed to obtain written authorization from each of the individuals subject to a consumer report. Plaintiffs' First Amended Class Complaint ("Pl.'s Amend. Compl.") ¶¶ 52 & 57. However, Plaintiff has failed to adduce evidence sufficient to prove that ClosetMaid's Forms fail to clearly and conspicuously disclose its intention to procure consumer reports, and Plaintiff has also failed to adduce evidence sufficient to prove that ClosetMaid did not obtain written authorizations from members of the Disclosure Class to procure those consumer reports. Even if those Forms did not technically conform to 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii), a contention ClosetMaid disputes, ClosetMaid nonetheless modified those Forms in July 2009 and eliminated any content that Plaintiff and Class Counsel allege to be noncompliant. Facts, ¶¶ 19.

1. <u>ClosetMaid's Disclosure and Authorization Forms Satisfy 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii) as a Matter of Law.</u>

Between December 19, 2006 and July 2009, ClosetMaid utilized two (2) forms to disclose its intent to procure consumer reports and to obtain applicants' authorization for doing so. Facts, ¶ 13; <u>See</u> 15 U.S.C. § 1681b(b)(2)(A). These two (2) forms were:

1) Fair Credit Reporting Act Authorization Form – Notice of Intent to Obtain a Consumer Credit Report ("Notice"); and

2) Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes ("Authorization").

(the Notice and Authorization collectively referred to herein as the "Forms"). Facts, ¶ 13.

ClosetMaid's Forms in use from December 19, 2006 through July 1, 2009 clearly and conspicuously disclosed its intent to procure consumer reports.  Facts, ¶¶ 13-14.  Moreover, by obtaining their signatures on these Forms, which expressly states "Pursuant to the Fair Credit Reporting Act, I hereby authorized ClosetMaid and its designated agents and representatives to conduct a comprehensive review of my background though a consumer report … ", ClosetMaid unquestionably secured the applicants' authorization to procure those consumer reports. Facts, ¶ 13.

ClosetMaid anticipates that Plaintiff will allege that these Forms were somehow non-compliant because ClosetMaid:

- Used two different disclosure and authorization forms;
- Included a release in its Authorization Form; and
- Mis-stated that a copy of the consumer report and a summary of FCRA rights would be provided "upon request" even though ClosetMaid provided those documents as a matter of course.

Pl.'s Amend Compl.,¶ 29-30.

First, there is no controlling legal authority supporting Plaintiff's contention that ClosetMaid's Forms, even if arguably redundant, were in any way in conflict with the statutory language obligating it to make a "clear and conspicuous disclosure . . ." that a consumer report may be obtained for employment purposes and to secure written authorization to do so as required by 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii).  In fact, 15 U.S.C. § 1681b(b)(2)(A) contains no prohibition against the use of two forms to make the required disclosure and to secure the required authorization and, indeed, actually contemplates the permissible use of multiple forms by its express use of the phrase "which authorization <u>may</u> be made on the document referred to in clause (i) . . .."  <u>See</u> 15 U.S.C. § 1681b(b)(2)(A)(ii)(emphasis added).  If anything, ClosetMaid's Forms actually enhanced the visibility of the disclosure by presenting it to

applicants twice.  In other words, applicants had multiple opportunities to review the disclosure before authorizing ClosetMaid's procurement of their consumer reports.

Plaintiff next contends that ClosetMaid's Forms are somehow noncompliant because its Authorization contains a release of "liability for damages . . . because of compliance with this authorization and request to release."  See Pl.'s Amend. Compl. ¶ 27.  Specifically, Plaintiff relies on a hyper-technical and impractical reading of the word "solely" contained in Section 1681b(b)(2)(A)(i).  Id. at ¶ 30.  According to Plaintiff's interpretation, any disclosure form must completely be devoid of all other content.  This slavishly literal reading of Section 1681b(b)(2)(A)(i) would seemingly also preclude company letterhead, signature and date blocks, document titles, etc.  Such an interpretation is impractical and overlooks FCRA's clear intent to alert applicants that their consumer reports would be procured upon their authorization. Plaintiff's interpretation of this provision defies common sense and contravenes FCRA's real intent.  See 15 U.S.C. § 1681(a)(1-3).  Moreover, interpreting the word "solely" contained in Section 1681b(b)(2)(A)(i) as precluding other FCRA-related content in a disclosure is undermined by the parenthetical in Section 1681b(b)(2)(A)(ii) which expressly permits inclusion of an authorization.

Even so, the purportedly offending "release" contained in the Authorization merely expresses the legal truism that FCRA permits employers such as ClosetMaid to procure consumer reports for employment purposes without being held liable for doing so as a matter of law.  By contrast, any person who procures a consumer report without a permissible purpose, e.g., an employment purpose, or without first complying with the disclosure and authorization provisions of Section 1681b(b)(2)(A), may be held liable for doing so.  Indeed, the inclusion of the release in the Authorization does not nullify the fact that a "clear and conspicuous disclosure

has been made in writing" to the members of the Disclosure Class as required by Section 1681b(b)(2)(A)(i).  Moreover, Plaintiff cannot credibly argue that including the release in the Authorization somehow nullifies the class members' authorization to procure the consumer reports because, at a minimum, Section 1681b(b)(2)(A)(ii) does not contain the "consists solely" language.

Recently, the U.S. District Court for the Western District Court of North Carolina faced this very issue; that is, whether an employer's inclusion of a release in a FCRA procurement authorization would render it noncompliant.  See Smith v. Waverly Partners, LLC 3:10-CV-00028-RLV, 2012 WL 3645324 at *1, 6 (W.D.N.C. Aug. 23, 2012).  In granting the employer's motion for summary judgment, the court focused on whether the release contained in the authorization "provided a distraction" so as to render ineffective the requirement that the disclosure and authorization forms be clear and conspicuous. In making its determination, the court held that, while the *release* was invalid, the "single sentence within the authorization [referring to the release], which was kept markedly distinct from the disclosure language—was *not so great a distraction* as to discount the effectiveness of the disclosure and authorization statements".  Id. *6 (emphasis added).  Here, like in Waverly Partners, the uncontroverted evidence establishes that ClosetMaid's use of a release was certainly "not so great a distraction as to discount" the effect of the disclosure and authorization or otherwise establish a violation of the FCRA.  In fact, Plaintiff admits that she understood that ClosetMaid intended to procure her consumer report, and further, understood that she was authorizing ClosetMaid to proceed as such.  Facts, ¶ 17.  Clearly, ClosetMaid's Forms provided the "clear and conspicuous disclosure" and authorization required to conform with Section 1681b(b)(2)(A)(i) and (ii).

Finally, Plaintiff contends that ClosetMaid's Forms were noncompliant because they "misrepresented" FCRA rights.  Pl.'s Amend. Compl. ¶¶ 26 & 28.  ClosetMaid's Forms contain the following sentence:

> I understand that, pursuant to the federal Fair Credit Reporting Act, if any adverse action is to be taken based upon this consumer report, a copy of the report and a summary of the consumer's rights will be provided to me <u>if requested</u>.

Facts, ¶ 13 (emphasis added).  Because FCRA requires an employer to provide a copy of a consumer report and a summary of FCRA rights before taking an adverse employment action based upon a consumer report, Plaintiff argues that ClosetMaid's Forms are defective because they say ClosetMaid will provide this information "if requested".  Even so, nothing in FCRA requires ClosetMaid to state in its disclosure anything about its Pre-Adverse Action Notice obligations.  <u>See</u> 15 U.S.C. § 1681b(b)(2)(A) and (3)(A).  Yet, uncontroverted testimony proves that, despite the existence of this "if requested" language, ClosetMaid supplied copies of the consumer report and summary of FCRA rights in every instance where an adverse employment action was about to be taken based upon a consumer report as required by 15 U.S.C. § 1681b(b)(3)(A).  Facts, ¶ 20.  In fact, ClosetMaid issued Plaintiff a copy of her consumer report and summary of FCRA rights before rejecting her job application.  Facts, ¶ 23.  Despite ClosetMaid's errant inclusion of this language in the Forms, such language was simply not followed.  <u>See</u> Facts, ¶ 20.

It is clear therefore, that Plaintiff has failed to adduce sufficient evidence to prove that ClosetMaid's Forms violated FCRA in any regard.  As such, summary judgment should be entered in favor of ClosetMaid as to Counts I and II because ClosetMaid has demonstrated its compliance with 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii) as a matter of law.

2.  ClosetMaid is entitled to Summary Judgment as to all Purported Members of the Disclosure Class for whom ClosetMaid Procured a Consumer Report on or after July 1, 2009.

Assuming *arguendo* that an issue of fact or law exists with regard to whether ClosetMaid's Forms were compliant with Section 1681b(b)(2)(A)(i) and (ii), contentions that ClosetMaid disputes, ClosetMaid is still entitled to summary judgment as to all members of the Disclosure Class for whom ClosetMaid procured a consumer report from July 1, 2009 to the present.  Indeed, the uncontroverted evidentiary record demonstrates that ClosetMaid modified the disclosure and authorization forms used on and after July 1, 2009, which removed any elements of the Forms that Class Counsel is challenging in this action.  Facts, ¶ 19.  As such, ClosetMaid is entitled to summary judgment as to any purported claim asserted on behalf of a Disclosure Class member who executed a disclosure and authorization on or after July 1, 2009.

C.  PLAINTIFF FAILED TO ADDUCE EVIDENCE SUFFICIENT TO ESTABLISH CLAIMS AT COUNTS III AND IV OF THE COMPLAINT ON BEHALF OF THE PRE-ADVERSE ACTION SUB-CLASS.

Plaintiff alleges in Counts III and IV of the First Amended Class Complaint that ClosetMaid, when preparing to take an adverse employment action against applicants whose consumer reports contain "negative (derogatory)" information about them, failed to provide those individuals with a pre adverse action notice along with copies of their consumer report and a summary of FCRA rights at least five (5) days before taking an adverse action.  Pl.'s Amend Compl. ¶¶ 62 & 67.  However, Plaintiff failed to adduce evidence sufficient to prove that all but a handful of sub-class members were even entitled to Pre-Adverse Action Notices or that they did not receive this material as required.  Accordingly, summary judgment should be entered in favor of ClosetMaid as to Counts III and IV.  See Facts, ¶¶ 28-30.

Pursuant to FCRA, if an employer considers the contents of a consumer report and consequently intends to make an adverse employment decision based in whole or in part on that consumer report, then the employer must so inform the applicant in writing and provide the applicant with a copy of their consumer report and a summary of FCRA rights before actually taking any such adverse employment action. See 15 U.S.C. § 1681b(b)(3). Plaintiff claims that FCRA requires ClosetMaid to abstain from taking any adverse action for a minimum of five (5) days after ClosetMaid provides this notice to the applicant of such possible adverse employment action. However, FCRA is silent on the amount of time that must elapse before an employer may actually take such adverse action. Indeed, the "five-day rule" relied upon by Plaintiff seemingly originated from nothing more than an FTC Staff Opinion Letter that does not mandate a five-day waiting period, but merely suggests it as "reasonable." Weisberg (FTC June 27, 1997)(emphasis added). A subsequent FTC Staff Opinion Letter addressing this same issue states:

> The statute does not specify how long an employer must wait, after providing the required disclosures, before taking the adverse action. The amount of time that an employer should wait before taking adverse action will vary depending upon the circumstances, such as the nature of the job involved and the way that the employer does business. Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the purpose of the provisions to allow consumers to discuss the report with employers before adverse action is taken.

Haynes (FTC June 11, 1998)(emphasis added); see also Hawkey (FTC Dec. 18, 1997)[11].

Finally, under FCRA, once an employer provides the pre-adverse action notice with copies of the consumer report and a summary of FCRA rights, it may take its intended adverse action. See 15 U.S.C. § 1681m(a).

---

[11] For the Court's convenience, copies of Messrs. Weisberg, Haynes and Hawkey's FTC Opinions are included in ClosetMaid's Appendix of Record Materials in Support of Defendant's Motion for Summary Judgment and Motion to Decertify the Pre-Adverse Action Sub-Class at Tab 17.

In this case, Plaintiff specifically identifies seventy-seven (77) individuals comprising the Pre Adverse Action Sub-Class based solely upon Class Counsel's review of their consumer reports and Class Counsel's personal opinion that those consumer reports contain "negative" or "derogatory" information. Facts, ¶ 27.  Yet, of these seventy-seven (77) sub-class members, twenty-two (22) of them had not actually experienced an adverse employment action.  Facts, ¶ 29.  For instance: (i) Courtney M. declined an offer an employment; (ii) Steven M. never appeared for an interview; and, (iii) Richard G. indicated he was not interested in a position. Facts, ¶ 29.  These individuals, as well as many others, simply were not entitled to receive a pre-adverse action notice of rights from ClosetMaid because they did not experience an adverse employment action as a matter of law.  All but five (5) of the remaining fifty-five (55) sub-class members experienced adverse employment actions for reasons not based in whole or in part on their consumer reports.  Facts, ¶ 27-30.

For instance: (i) Richard H. failed ClosetMaid's mandatory drug screening; (ii)  Carole G. falsified information on her employment application; and (iii) there were no open positions when Michael K. applied for employment.  Facts, ¶ 30.  None of these decisions, whether initiated by ClosetMaid or the applicants themselves, were based in whole or in part on a consumer report.  Therefore, ClosetMaid was not required to provide a copy consumer reports or a summary of FCRA rights to any of these seventy-two (72) individuals.  See 15 U.S.C. § 1681b(b)(3).  The pertinent provision, 15 U.S.C. § 1681b(b)(3), merely states that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of [FCRA rights]" (emphasis added).  Because the evidentiary record clearly establishes that all but five (5)

of the sub-class members either did not experience an adverse employment action or any adverse action based in whole or in part on a consumer report, Counts III and IV are entirely without merit as to these seventy-two (72) individuals.

As for the remaining five (5) sub-class members (six in total including Plaintiff) who were not hired based in whole or in part on their consumer reports, they were all provided a copy of their consumer report and summary of FCRA rights.  Facts, ¶ 20.  Moreover, each of these six (6) individuals was afforded a "minimum" of five (5) days, though usually longer, before ClosetMaid initiated its adverse action.  Facts, ¶ 26.  In fact, Plaintiff's own "pre-adverse action" notice was issued on Monday, December 18, 2006 and her no-hire notification was issued five (5) business days later on Friday, December 22, 2006.  Facts, ¶¶ 22 & 25.  Finally, Plaintiff does not dispute the fact that she received a copy of her consumer report and a summary of her FCRA rights.  Facts, ¶ 23.

Nonetheless, as set forth above, the statutory text of FCRA does not impose a five-day waiting period and Plaintiff relies on nothing more than old FTC Staff Opinion Letters to support her claim in this regard despite the fact that those letters merely state that five days would be reasonable.

Each of the remaining five sub-class members were provided a copy of his/her consumer report and summary of FCRA rights in accordance with 15 U.S.C. § 1681b(b)(3) at least five (5) days before ClosetMaid issued its adverse action notice.  Facts, ¶¶ 20, 26.  Accordingly, ClosetMaid is entitled to summary judgment as to Counts III and IV of the First Amended Class Action Complaint.

### D. PLAINTIFF HAS NOT ADDUCED EVIDENCE SUFFICIENT TO ESTABLISH WILLFUL NONCOMPLIANCE OF FCRA AS A MATTER OF LAW.

Finally, Plaintiff contends that ClosetMaid's purported noncompliance with FCRA was willful and thus subject to enhanced liability and penalties pursuant to 15 U.S.C. § 1681n (imposing actual or statutory damages, punitive damages, costs and reasonable attorneys' fees for "willful" violations). Pl.'s Amend. Compl. ¶¶ 40-43. However, Plaintiff has failed to adduce sufficient evidence to prove as a matter of law that ClosetMaid violated FCRA willfully or otherwise.

In Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), the United States Supreme Court held that in order to establish willful noncompliance with FCRA, a plaintiff must adduce evidence sufficient to prove that an employer either knowingly or recklessly violated the requirements of FCRA. Id. at 56–60. Thus, where, as here, there exists no evidence that an employer knew that its actions did not conform with its FCRA obligations, the Court's analysis must turn to whether a reasonable jury could conclude that the employer recklessly violated FCRA's requirements. Id. Under Safeco, "a company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. Otherwise stated, a company's erroneous reading of FCRA does not constitute a reckless - and therefore willful - violation of FCRA unless the company's reading is "objectively unreasonable." Id.

The Safeco Court identified two factors for analyzing whether a company's interpretation of FCRA is "objectively unreasonable," including: (1) the clarity of the statutory text with respect to the challenged conduct; and (2) the amount of relevant judicial or agency guidance

available to the company to aid its efforts to interpret FCRA.  551 U.S. at 69.  In <u>Safeco</u>, a "dearth of guidance," along with FCRA's "less-than-pellucid statutory text," convinced the court that "Safeco's reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." <u>Id</u>. At 70.  In light of <u>Safeco</u>, it is abundantly clear that ClosetMaid's alleged actions do not rise to level of "objective unreasonableness" required by the <u>Safeco</u> Court.

The express language of FCRA requires ClosetMaid, prior to procuring any consumer reports, to obtain: (i) a clear and conspicuous disclosure from each applicant for whom a consumer report may be procured; and (ii) the applicant's authorization, in writing, to procure the report. <u>See</u> 15 U.S.C. § 1681b(b).  ClosetMaid's Forms provided clear and conspicuous disclosures and ClosetMaid secured written authorizations before procuring consumer reports. Facts, ¶¶ 13, 14.  Based on the plain reading of the statutory text, as required by the Supreme Court in <u>Safeco</u>, ClosetMaid's use of the Forms cannot be considered objectively unreasonable or reckless, <u>i.e.</u>, "willful," as a matter of law.

Plaintiff also alleges that ClosetMaid willfully violated FCRA because its Forms indicated that the consumer reports upon which an adverse action was based would be provided "as requested."  Pl.'s Amend. Compl. ¶¶ 26, 28, 52, & 57.  Yet, in practice, the uncontroverted record evidence shows that ClosetMaid always provided the requisite pre-adverse action notices along with a copies of consumer reports and a summary of FCRA rights to those unsuccessful job applicants whose applications were rejected based, in whole or in part, upon their consumer reports. Facts, ¶ 20.  ClosetMaid's actions cannot be deemed "willful" when it remained wholly compliant with FCRA, irrespective of the superfluous and innocuous "as requested" language contained in the Forms. <u>See</u> <u>Id</u>.

Plaintiff also attempts to establish willfulness based on the inclusion of a release in ClosetMaid's Authorization.  Pl.'s Amend. Compl. ¶ 27, 52, & 57.  However, and as discussed above, there is no statutory language in FCRA and Plaintiff cites no legal authority for the proposition that ClosetMaid willfully failed to comply with FCRA by including such a release in its Forms.  Indeed, the Forms clearly and conspicuously disclose to all class members ClosetMaid's intention to procure consumer reports for employment purposes as required by FCRA.  Facts, ¶¶ 13, 14.  Moreover, ClosetMaid secured the class members' written authorization to procure their consumer reports as required by FCRA.  Id.  Plaintiff's own testimony shows that she fully understood what was being disclosed and that she was in fact authorizing the procurement of her consumer report for consideration by ClosetMaid in its hiring process.  Facts, ¶ 17.  Nothing in ClosetMaid's Forms support a finding that ClosetMaid's interpretation of the applicable FCRA process was "objectively unreasonable."

As to Counts III and IV (relating to the Pre Adverse Action Sub-Class), Plaintiff alleges that ClosetMaid willfully failed to provide a copy of a consumer report and summary of FCRA rights at least five (5) days in advance of taking an adverse action based in whole or in part on a consumer report.  Pl.'s Amend. Compl. ¶¶ 62 & 67.  Yet again, the uncontroverted record evidence demonstrates that, in the mere six (6) instances, inclusive of Plaintiff, in which ClosetMaid took an adverse employment decision based upon those applicants' consumer reports, each such applicant was provided with a pre-adverse action notice along with a copy of their consumer report and a summary of FCRA rights at least five (5) days before taking such adverse action.  Facts, ¶ 20 & 26.  Moreover, each of these applicants was afforded a minimum of five (5) days, usually longer, between ClosetMaid's initial pre-adverse action notice and the notice of its ultimate decision.  Facts, ¶ 26.  Given that there is no controlling legal authority

requiring a five-day waiting period, ClosetMaid cannot be found to have willfully violated such a waiting period when it does not exist.

Finally, the most compelling evidence that ClosetMaid's purported violations were not willful is the existence of ClosetMaid's Salaried Recruitment Procedure and the uncontroverted testimony of ClosetMaid's human resource representatives' attempts to ensure compliance with FCRA.  Facts, ¶¶ 3, 11.  Cathy Beal, Vice President of Human Resources, Mary Price, former Human Resource Manager, and Jennifer Boring, Human Resource Director, all testified without contradiction as to the collaborative efforts undertaken by ClosetMaid to ensure FCRA compliance.  Facts, ¶ 11.  These efforts included ongoing research of human resource outlets including the Society for Human Resource Management ("SHRM"), the Bureau of Labor Reporting, and AER Employer Legislative; consulting government and legal websites; attending seminars; continually reviewing, revising and updating FCRA forms; and participating in human resource discussion groups. Facts, ¶ 11.  These facts demonstrate that ClosetMaid undertook significant efforts to attempt to ensure compliance with the FCRA.

V.    CONCLUSION

WHEREFORE, Defendant ClosetMaid Corporation respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter judgment on behalf of ClosetMaid Corporation as to all claims asserted by Plaintiff in the First Amended Class Action Complaint.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ **W. Scott Hardy**
W. Scott Hardy, Esq.
PA I.D. No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esq.
PA I.D. No. 94156
philip.kontul@ogletreedeakins.com

One PPG Place
Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 394-3333
Facsimile: (412) 232-1799

Attorneys for Defendant
ClosetMaid Corporation

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF LAW

IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was filed

electronically on May 24th, 2013.  Notice of this filing will be sent to all parties by operation of

the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ **W. Scott Hardy**

Attorney for Defendant
ClosetMaid Corporation