IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. CATHY REARDON, on behalf of herself and all similarly situated individuals,<br><br>                Plaintiffs,<br><br>vs.<br><br>CLOSETMAID CORPORATION,<br><br>                Defendant. | )<br>)<br>)  Civil Action No. 08-1730<br>)<br>)  Judge Mark R. Hornak<br>)<br>)  *Filed Electronically*<br>)<br>) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DECERTIFY THE PRE ADVERSE ACTION SUB-CLASS**

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and pursuant to this Court's Order of January 11, 2013, files this Memorandum of Law in Support of its Motion to Decertify the Pre Adverse Action Sub-Class.

      **I.**      **STATEMENT OF THE CASE**

A.  **Class Certification in this Action and the Court's Invitation to Decertify**.

By Memorandum and Order dated April 27, 2011, the Court certified a "Disclosure Class" and a "Pre Adverse Action Sub-Class" pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). Then, by Memorandum and Order dated September 6, 2011, the Court further limited the certified class and sub-class to the period from December 19, 2006 to the date of the class notice, i.e., September 28, 2012. September 6, 2011 Memorandum and Order.

The Disclosure Class is comprised of ClosetMaid's employees or prospective employees who received a disclosure and executed an authorization putatively permitting ClosetMaid to procure consumer reports about them as part of its hiring process, and for whom ClosetMaid

subsequently procured such consumer reports. Id. The Disclosure Class contends that these disclosure and authorization Forms were technically deficient and thus noncompliant with FCRA. Counts I and II of the First Amended Class Complaint seek to advance claims for ClosetMaid's purported noncompliance with the disclosure and authorization provisions of 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii) (the "Disclosure Claims"). Plaintiff's First Amended Class Complaint (Pl.'s Amend Compl."), ¶¶ 52 & 57.

The Pre Adverse Action Sub-Class, as presently certified, is comprised of a small subset of the Disclosure Class whose consumer reports contained "negative (derogatory)" information, as determined solely in the opinion of Class Counsel, and for whom ClosetMaid took adverse employment action without first providing them with a pre-adverse action notice along with copies of their consumer report and summary of FCRA rights at least five (5) days prior to taking such adverse action. See April 27, 2011 Memorandum and Order. Counts III and IV of the First Amended Class Complaint seek to advance claims for ClosetMaid's purported noncompliance with the pre adverse action provisions contained in 15 U.S.C. § 1681b(b)(3) (the "Pre Adverse Action Claims"). Pl.'s Amend. Compl., ¶¶ 62 & 67.

At the time of certification in April 2011, the Court recognized the questionable and tenuous nature of the Pre Adverse Action Sub-Class and invited ClosetMaid to move for decertification at a later juncture if the evidentiary record would so warrant. Indeed, the Court stated as follows:

> . . . It is true that Ms. Beal testified that some hiring decisions were made by individual hiring managers. If it becomes clear that most decisions were not made in a centralized fashion, ClosetMaid should move for decertification of, at a minimum, the subclass.

*\*\*\**

-3-

> While ClosetMaid's arguments are compelling, they seem more a defense to liability than an objection to class certification. On this record, it appears that plaintiff has satisfied her burden of proof. If, at a later date, it appears that individual questions predominate over common questions, and that a class action is not superior to another type of action, plaintiff will have failed to satisfy Fed.R.Civ.P. 23(b), and decertification will be appropriate.

April 27, 2011 Memorandum and Order.

The uncontroverted evidentiary record developed through discovery establishes that ClosetMaid's hiring decisions were not centralized; and, in fact, few members of the Pre Adverse Action Sub-Class experienced an adverse employment action or did so for reasons not based upon their consumer reports. Indeed, Class Counsel specifically identifies seventy-seven (77) individuals who purportedly comprise the Pre Adverse Action Sub-Class. September 13, 2010 Declaration of Christopher Colt North ("North Decl."), **Tab 12**[1]. However, seventy-two (72) of these sub-class members were either not subject to an adverse employment action whatsoever or were subject to an adverse employment action for reasons not based in whole or in part on their consumer report. Accordingly, when the sub-class members who never experienced an adverse employment action or whose employment applications were rejected for reasons totally unrelated to their consumer reports are peeled away, all that remains is six (6) people inclusive of Class Representative Reardon who actually experienced an adverse employment action based upon their consumer reports.

B. **Applicable Class Certification Standards**.

Fed.R.Civ.P. 23 provides an analytical framework "designed to insure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class

---

[1] ClosetMaid contemporaneously filed the record materials cited in this Memorandum of Law in its Appendix of Record Materials in Support of Defendant's Motion for Summary Judgment and Motion to Decertify Pre Adverse Action Sub-Class. Citations to the Appendix are identified by the citation to the record evidence followed by "**TAB** —".

representatives.'"  In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 621 (1997)).

All Rule 23 requirements must be established by a preponderance of the evidence.  See Chiang v. Veneman, 385 F.3d 256, 264 (3d Cir. 2004); see also In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008).  To satisfy this burden, Plaintiff must withstand a "rigorous analysis"; "actual, not presumed" compliance with Rule 23 is "indispensable." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160-61 (1982) see also In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 595-96 (3d Cir. 2009) ("[i]t is well established that 'a class may be certified only if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied'.") (quoting Beck v. Maximus, 457 F.3d 291, 297 (3d Cir. 2006)).

Moreover, the underlying causes of action must also be examined when assessing the propriety of class certification.  See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001).  While the underlying merits are not to be decided when performing its "rigorous analysis" for certification, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), the Court may "probe behind the pleadings before coming to rest on the certification question." Falcon, 457 U.S. at 160.  Indeed, the United States Court of Appeals for the Third Circuit has instructed district courts to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." Hydrogen Peroxide, 552 F.3d at 316; see also Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 189 (3d Cir. 2001).  In so doing, the Court may conduct a "preliminary inquiry into the merits" as well as "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." Hydrogen Peroxide, 552 F.3d at 317.

Plaintiff must satisfy all components of Fed.R.Civ.P. 23(a) and at least one component of Fed.R.Civ.P. 23(b) in accord with this "rigorous analysis" standard if class certification is to be sustained.  This, Plaintiff cannot do.

Rule 23(a) requires Plaintiff to establish that: "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a).  These four requirements are commonly known as numerosity, commonality, typicality, and adequacy. ClosetMaid seeks decertification of the Pre Adverse Action Sub-Class because the uncontroverted evidence adduced during discovery undermines the Court's preliminary determinations on numerosity and typicality.

Even if Plaintiff could establish numerosity and typicality pursuant to Rule 23(a), contentions ClosetMaid disputes, *infra*, the Pre Adverse Action Sub-Class should still be decertified because Plaintiff is unable to satisfy the predominance and superiority requirements of Rule 23(b). Falcon, 457 U.S. at 160-61 (No class that fails to satisfy all four prerequisites of Fed.R.Civ.P. 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b).).  Here, Plaintiff seeks certification pursuant to Fed.R.Civ.P. 23(b)(3) so she must also prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Again, this Plaintiff cannot do.

As set forth more fully below, the Pre Adverse Action Sub-Class does not satisfy the requirements for continued class certification pursuant to Fed.R.Civ.P. 23. Therefore,

ClosetMaid respectfully requests decertification of this sub-class absent entry of summary judgment in its favor as to all claims asserted by this sub-class.

## II. ARGUMENT

### A. THE PRE ADVERSE ACTION SUB-CLASS SHOULD BE DECERTIFIED BECAUSE IT LACKS NUMEROSITY AND TYPICALITY, AND BECAUSE INDIVIDUAL ISSUES PREDOMINANT.

The Pre Adverse Action Sub-Class was initially certified based upon Plaintiff's allegations that the seventy-seven (77) individuals comprising this sub-class were subject to an adverse employment action based in whole or in part on their respective consumer reports and that ClosetMaid allegedly failed to provide these individuals with a pre adverse action notice along with copies of their consumer reports and a summary of FCRA rights at least five (5) days before being notified of the impending adverse action in accordance with 15 U.S.C.A 1681b(b). North Decl., **Tab 12**; See September 6, 2011 Memorandum and Order.  However, based on the totality of this uncontroverted evidence, it is clear that the previously certified Pre Adverse Action Sub-Class lacks numerosity and typicality as required by Rule 23(a)(1) and (3), and that individual issues predominant over common issues and thus this sub-class also fails to satisfy Rule 23(b)(3).

#### 1. The Pre-Adverse Action Sub-Class Is Not Sufficiently Numerous to Satisfy Rule 23(a)(1).

Plaintiff has failed to establish that the Pre Adverse Action Sub-Class is "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1).  While no single magic number exists satisfying the numerosity requirement, see Behrend v. Comcast Corp., 245 F.R.D. 195, 202 (E.D. Pa. 2007), an adequate class must contain at least forty (40) individuals.  See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

The Pre Adverse Action Sub-Class is presently comprised of seventy-seven (77) applicants whose consumer reports revealed "negative (derogatory)" information concerning them as determined solely by Class Counsel. North Decl., **Tab 12**. As such, Plaintiff alleges these individuals were entitled to pre-adverse action letters along with copies of their consumer reports and a summary of FCRA rights. See Pl.'s Amend. Compl., ¶¶ 62 & 67. Yet, 15 U.S.C. § 1681b(b)(3) merely states that "in using a consumer report for employment purposes, <u>before taking any adverse action based in whole or in part on the report</u>, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of [FCRA rights.]" (emphasis added).

The uncontroverted evidence adduced during discovery reveals that seventy-two (72) of the seventy-seven (77) Pre Adverse Action Sub-Class members were either not subjected to an adverse employment action at all or were subject to an action that was not based in whole or in part on the results of their consumer report. See March 25, 2013 Declaration of Patricia Dameron ("Dameron Decl."), **Tab 13**; March 25, 2013 Declaration of Merlyn Hernandez-Opio ("Hernandez-Opio Decl.), **Tab 14**; March 25, 2013 Declaration of Jennifer Boring ("Boring Decl."), **Tab 15**. In fact, twenty-two (22) of these applicants experienced no adverse employment action because they declined an offer of employment, never appeared for a required job interview, or unilaterally disclaimed interest in the employment opportunity.[2]

---

[2] These twenty-two individuals include: (1) Kenneth B. – Declined offer, (2) James D. – declined offer, (3) Joshua L. – declined offer, (4) Richard M. – declined offer, (5) Steven M – no show for interview, (6) Aaron W. – candidate not interested (Dameron Decl., **Tab 13**); (7) Inovel A. – candidate not interested, (8) Steve D. – declined offer, (9) Matthew H. – candidate not interested, (10) Richard G. – candidate not interested, (11) Stephen L. – declined offer, (12) Rodger L – declined offer, (13) Kimberly M. – declined offer, (14) Michael R. – hired, no show, (15) Shawn T. – did not appear for interview. (Hernadez-Opio Decl., **Tab 14**). (16) Charles G. – candidate not interested, (17) Jennifer H. – candidate not interested, (18) Arnold L. – declined offer, (19) Courtney M. – declined offer, (20) Margaret P. – candidate not interested, (21) Cari R. – candidate not interested, and (22) Will R. – candidate not interested. (Boring Decl., **Tab 15**).

Moreover, for those fifty-five (55) remaining individuals for whom ClosetMaid did take an adverse action, the uncontroverted evidence demonstrates that fifty (50) of those decisions were based on reasons totally unrelated to their consumer reports for such issues as: failing a mandatory drug test (2 applicants), falsifying information on the application (10 applicants), the applicant's work history (2 applicants), the candidate was not the best qualified (26 applicants), the applicant's references (5 applicants), and the fact that there were no open positions at the time of application (5 applicants). (See Boring Decl., **Tab 15**; Dameron Decl., **Tab 13**; and Hernandez-Opio Decl., **Tab 14**).  None of these adverse actions, whether initiated by ClosetMaid or the applicants themselves, were based in whole or in part on a consumer report.

With the elimination of the aforementioned seventy-two (72) sub-class members, the Pre Adverse Action Sub-Class is reduced to a mere six (6) members inclusive of Plaintiff.  A six (6) member class can hardly be considered sufficient in determining compliance with FED.R.Civ.P. 23(a)(1)'s rigorous numerosity requirement.[3]  See Behrend, 245 F.R.D. at 202; see also Stewart, 275 F.3d at 226-27.

Accordingly, not only does the undisputed evidence clearly show that the Pre Adverse Action Sub-Class lacks numerosity, it shows that it is entirely devoid of members.  Indeed, ClosetMaid respectfully request that the Pre Adverse Action Sub Class be decertified for its inability to comply with the numerosity requirement of Fed.R.Civ.P. 23(a)(1).

---

[3]  Moreover, the undisputed record evidence demonstrates that the remaining six (6) sub-class members for whom ClosetMaid took adverse action were, in fact, provided a pre adverse action notices along with copies of their consumer report and a summary of FCRA rights in accordance with 15 U.S.C. § 1681b(b)(3). (August 27, 2009 Deposition of Catherine Beal ("2009 Beal Dep."), pp. 67-69, 126-127, **Tab 1**; Beal 2009 Dep. Ex. 6, p. 184, **Tab 2**; July 29, 2010 Deposition of Catherine B. Beal ("2010 Beal Dep.") p. 29, **Tab 5**.)  Further, all of these individuals were provided at least five (5) days between ClosetMaid's pre adverse action notice and the adverse action. (2009 Beal Dep., pp. 67-69, **Tab 1**).

### 2. The "Pre Adverse Action" Claims are not Typical of Class Representative Reardon's Claims as Required by Rule 23(a)(3).

The uncontroverted evidentiary record also fails to show that "the claims … of the representative parties are typical of the claims … of the class." FED.R.CIV.P. 23(a)(3). Indeed, Class Representative Reardon is *sui generis* (i.e., one of a kind) among the other members of the Pre Adverse Action Sub-Class.

Rule 23(a)(3) requires that the claims of the class representative be typical of the putative class and is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." In re Prudential, 148 F.3d at 311. "The typicality requirement is intend[ed] to preclude certification of those cases where the legal theories of the named plaintiff potentially conflict with those of the absentees." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996).

To prove typicality, the United States Supreme Court requires that Plaintiff "possess the same interest and suffer the same injury" as class members, East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977), and "limit[s] the class claims to those fairly encompassed by [Plaintiffs'] claims." Falcon, 457 U.S. at 156. The legal theories of the named plaintiff must not conflict with those of the absent class members. Georgine, 83 F.3d at 631; see also Klotz v. Trans Union, LLC, 246 F.R.D. 208, 215 (E.D. Pa. 2007) (holding that a plaintiff in a FCRA case failed to satisfy the typicality requirement under Rule 23(a)). The claims of the named plaintiff must involve the *same conduct* by the defendant as those of the class members. See Johnston, 265 F.3d at 184 ("so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant …").

Class Representative Reardon's "pre adverse action" claims are not typical of those of the proposed Pre Adverse Action Sub-Class she currently represents. Plaintiff alleges she did not receive a pre-adverse action letter at least five (5) days prior to ClosetMaid taking an employment action against her. Pl.'s Amend. Compl., ¶¶ 36 & 39. Nonetheless, the evidentiary record reveals that Class Representative Reardon is improvidently representing twenty-two (22) members of the sub-class who never experienced an adverse employment action and fifty (50) other sub-class members whose consumer reports were not used by ClosetMaid's hiring recruiters when deciding to reject their job applications. See Dameron Decl., **Tab 13**; Hernandez-Opio Decl., **Tab 14**; Boring Decl., **Tab 15**.

As for those five (5) other remaining sub-class members who experienced an adverse employment action based in whole or in part on a consumer report, each of them received the requisite pre adverse action notice along with copies of their consumer report and a summary of FCRA rights at least five (5) days (in most cases more) prior to ClosetMaid notifying them of its impending adverse employment action. 2009 Beal Dep., pp. 67-69, 126-27, **Tab 1**; 2009 Beal Deposition Exhibit ("Beal Dep. Ex.") 6, pp. 184, **Tab 2**; 2010 Deposition of Catherine B. Beal ("2010 Beal Dep."), p. 29, **Tab 5**. Indeed, no other sub-class member experienced an adverse employment action without having received a pre adverse action notice with a copy of their consumer report and summary of FCRA rights at least five (5) days beforehand.

As such, Class Representative Reardon's pre-adverse action claims are so individualized to her that they are not typical of the other five (5) sub-class members. Accordingly, the Pre Adverse Action Sub-Class does not satisfy the typicality requirement of Fed.R.Civ.P. 23(a)(3).

### 3. Sub-Class Members' Individual Issues Predominate Over Common Issues And Would Pose an Inferior Method for Resolving this Action.

Plaintiff has not and cannot establish that issues common to the Pre Adverse Action Sub-Class predominate over the sub-class members' respective individual factual issues as required by Fed.R.Civ.P. 23(b)(3). Indeed, the Court recognized this likely deficiency when it initially certified the sub-class. April 27, 2011 Memorandum and Order, pp. 17-18. Further discovery had not cured this defect.

Class Counsel undertook a case-by-case analysis of each sub-class member's consumer report to render their subjective and individualized opinion as to what Class Counsel deems "negative" and "derogatory" enough to be disqualifying in their effort to argue that each of these seventy-seven (77) sub-class members experienced an adverse employment action based in whole or in part on the contents of their consumer reports so as to implicate the pre-adverse action notice requirements of FCRA at 15 U.S.C. § 1681b(b)(3)(A)(i)-(ii). North Decl., **Tab 12**. Setting aside Class Counsel's speculative and irrelevant opinions in this regard, the uncontroverted evidentiary record clearly shows that twenty-two (22) of these seventy-seven (77) sub-class members actually experienced no adverse action at all because they declined job offers, failed to appear for their job interviews, etc.[4], and that an additional fifty (50) sub-class members were not hired for reasons totally unrelated to their consumer reports such as failing drug tests, etc.[5] Indeed, ClosetMaid has filed contemporaneously herewith its motion for summary judgment seeking dismissal of these Pre Adverse Action Claims advanced by these uncommon and atypical sub-class members.

---

[4] Dameron Decl., **Tab 13**; Hernandez-Opio Decl., **Tab 14**; Boring Decl., **Tab 15**.
[5] Id.

Even assuming, *arguendo*, that there are disputed issues of material fact regarding whether some or all the twenty-two (22) sub-class members were even rejected or whether some or all of the fifty (50) other sub-class members were rejected in whole or in part because of their consumer reports, those potential factual disputes could only be resolved by an individualized assessment as to each sub-class member, including:

- The identity of the ClosetMaid recruiter who made each hiring decision;

- The type and nature of each position for which each sub-class member applied and the standards each ClosetMaid recruiter applied to each such position when making those hiring decisions;

- Other potentially disqualifying information contained in each sub-class member's application or otherwise discerned during the hiring process;

- A comparison of each sub-class member's overall qualifications to the qualifications of other applicants for the same job, including the successful candidate; and

- The type and nature of criminal, credit, or other background information contained in each sub-class member's consumer report and a determination as to whether such information was relevant to the decision concerning each vacant position at issue.

This type of individualized assessment is exactly how ClosetMaid made its hiring decisions. For example, Catherine Beal, ClosetMaid's Vice President of Human Resources, testified without contradiction that individual recruiters would review applicants and make decisions based upon the position for which the applicant was applying. 2009 Beal Dep., pp. 62-66, **Tab 1**. Ms. Beal testified that the standards ClosetMaid applied to applicants when reviewing their consumer reports would be different for salespeople, truck drivers, etc., as compared to other open positions, and that its various human resources managers at its various locations would be responsible for making these decisions, and that credit checks were obtained, depending yet again upon the positions for which each applied. Id. Ms. Jennifer Boring, ClosetMaid's Human Resource Director, also testified that ClosetMaid's hiring processes, which

includes the use of consumer reports, is not a "linear process." Boring Dep., pp. 47, **Tab 4**. She specifically noted that the processes are *position dependant* and that the hiring mechanisms for "*every position and every candidate is different*." Boring Dep., pp. 47-57, **Tab 4** (emphasis added.) Importantly, Ms. Beal also testified that the reasons for rejecting the applications of sub-class members were diverse and seldom based upon information contained in the applicants' consumer reports. <u>See</u> 2009 Beal Dep., pp. 106-108, **Tab 1**; 2009 Beal Dep. Ex. 9, **Tab 16**.

In fact, nowhere is this predominance of individual factual issues over common issues more evident than in the uncontroverted Declarations of Ms. Jennifer Boring, Patricia Dameron, and Merlyn Hernandez-Opio. Apart from demonstrating that seventy-two (72) of the seventy-seven (77) current members of the Pre Adverse Action Sub-Class were either not subjected to an adverse employment action or experienced no action based in whole or in part on their consumer reports, these Declarations also show the numerous and individualized reasons as to why these applicants were not ultimately hired by ClosetMaid. Dameron Decl., **Tab 13**; Hernandez-Opio Decl., **Tab 14**; Boring Decl., **Tab 15**. Moreover, and as argued more fully above, many sub-class members did not continue in the hiring process because they falsified information on their employment applications, they failed mandatory drug screenings, they were not the best qualified candidates based on experience, they failed to appear for their interview, or ClosetMaid did not have open positions at the time of application. <u>Id</u>. Moreover, on at least twenty-two (22) occasions, applicants were simply not interested or actually declined an offer extended by ClosetMaid. <u>Id</u>. These individualized factual issues clearly predominate over any issues the Pre Adverse Action Sub-Class members might have in common. Accordingly, the Pre Adverse Action Sub-Class does not satisfy the predominance requirement of Fed.R.Civ.P. 23(b)(3).

It is noteworthy that Plaintiff contends that ClosetMaid committed wilful noncompliance with FCRA or, in the alternative, negligent noncompliance, and that the Pre Adverse Action Sub-Class would potentially be seeking statutory and punitive damages if Plaintiff proves wilful noncompliance.  Similar claims were asserted by Class Counsel in another case and deemed by that court to be inappropriate for class certification.  See Williams v. Telespectrum, Inc., Civil Action No. 05-853, 2007 WL 6787411 (E.D. Va. June 1, 2007) (denying plaintiff's motion for class certification of FCRA claims under Rule 23(b)(3)).  The Telespectrum court held that the issue of litigating actual damages for each member of the FCRA class "bars such a class from being certified."  2007 WL 6787411 at *5.  The Telespectrum court also held that determining the defendant's liability for punitive damages would overshadow the common questions to be litigated in that case.  Id.

Here, as in Telespectrum, Class Counsel represents a sub-class seeking actual damages for negligent noncompliance with FCRA and statutory and punitive damages for purportedly wilful noncompliance with FCRA.  However, the amount of punitive damages that could be awarded against ClosetMaid would be limited by the Due Process Clause of the Constitution insofar as such an award bears a reasonable relationship to actual damages.  See BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996).  Each potential class member's actual damages could vary widely depending upon their individualized circumstances.  See Telespectrum, 2007 WL 6787411 at *6.  As argued above, each member of the Pre Adverse Action Sub-Class, irrespective of whether he or she was the subject of an adverse action, applied and was evaluated on an individualized, applicant- and position-specific basis.  See Beal Dep., pp. 63-65, 110, **Tab 4**; Boring Dep., pp. 47-57, **Tab 1**.  Therefore, it is possible that a punitive damages award based

upon an individual sub-class member's actual damages would substantially exceed constitutional permissibility.

## IV. CONCLUSION

WHEREFORE, Defendant, ClosetMaid Corporation, respectfully requests that this Honorable Court grant Defendant's Motion to Decertify the Pre Adverse Action Sub-Class.

Dated: May 24, 2013

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

**/s/ *W. Scott Hardy***

W. Scott Hardy, Esq.
PA I.D. No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esq.
PA I.D. No. 94156
philip.kontul@ogletreedeakins.com

One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 394-3333
Facsimile: (412) 232-1799

Attorneys for Defendant
ClosetMaid Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DECERTIFY THE PRE ADVERSE ACTION SUB-CLASS was filed electronically on May 24, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ ***W. Scott Hardy***

Attorney for Defendant ClosetMaid Corporation