## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| R. CATHY REARDON | ) | |
| On behalf of herself and all | ) | |
| similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 2:08cv1730 MRK |
| v. | ) | |
| CLOSETMAID CORPORATION | ) | Hon. Judge Mark R. Hornak |
| | ) | |
| Defendant**.** | **)** | **Class Action** |

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CLOSETMAID CORPORATION

James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
429 Forbes Ave., Suite 1616
Pittsburgh, Pa. 15219
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va 23606
(757) 873-1010

*Counsel for the Representative And Class Plaintiff*

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................... 1

III.   COUNTERSTATEMENT OF MATERIAL FACTS.................................... 2

    A.  CLOSETMAID REQUIRED JOB APPLICANTS TO WAIVE ALL CLAIMS AGAINST
        CLOSETMAID AS PART OF THE DISCLOSURE/CONSENT FORM REQUIRED BY THE
        FCRA ...........................................................................................2

    B.  CLOSETMAID'S FAILURE TO PROVIDE FCRA MANDATED NOTICES TO JOB
        APPLICANTS WHOSE CONSUMER REPORTS CONTAINED DEROGATORY
        INFORMATION BEFORE A FINAL EMPLOYMENT DECISION  WAS MADE...............................4

    C.  CLOSETMAID'S KNOWLEDGE ABOUT ITS FCRA DUTIES AND RESPONSIBILITIES...............6

IV.   LEGAL ARGUMENT .................................................................... 7

    A.  CLOSETMAID IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE
        §1681B(B)(2)(A)(I) AND (II) CLAIM ...............................................7

        1.  *The Plain Meaning of §1681b(b)(2)(A)(i) and (ii)*...................................8

        2.  *ClosetMaid Violated § 1681b(b)(2)(A) (i) and (ii) By Including A Waiver
            Of Rights Provision* ...................................................................10

        3.  *ClosetMaid's Reliance On Smith v. Waverly Partners Is Erroneous Since
            That Case Supports Plaintiffs' Reading of § 1681b(b)(2)*......................................13

        4.  *ClosetMaid's Violation Is Willful Because Any Reading of Of §
            1681b(b)(2) (i) and (ii) To Authorize A Prospective Waiver Of Rights Is
            Objectively Unreasonable* ...................................................................16

            a.     The Objectively Unreasonable Standard………………………...16

            b.     ClosetMaid's Interpretation Of § 1681b(b)(2) To Authorize A Waiver Of
                Rights Is "Objectively Unreasonable" …………………………..18

            c.     ClosetMaid Actually Knew Or Should Have Known Of Its

i

FCRA Obligations, But Ignored Them............................19

B. CLOSETMAID IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE §
1681B(B)(3) CLAIMS.................................................................................20

 1. *ClosetMaid's Reading Of §1681b(b)(3)(A) Is Contrary To Plain Meaning
and Legislative Purpose* ..........................................................................21

  a. The Plain Meaning and Purpose ...................................................... 21

  b. ClosetMaid's Reading Is Contrary To The Plain Meaning And Its
Purported Declarations Are, Therefore, Immaterial ............................ 22

 2. *ClosetMaid Violated § 1681b(b)(3)(A)* ..................................................23

 3. *ClosetMaid's Motion For Summary Judgment Is Based Upon Inadmissible
Declarations* ...........................................................................................24

 4. *ClosetMaid Reading Of § 1681b(b)(3)(A) As Authorizing Its Failure
Provide The Required Notices Is Objectively Unreasonable* .................25

V. **CONCLUSION** ................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Cortez v. Trans Union, LLC*, 617 F.3d 688 Cir. 2010) .......................................................... 17, 18

*DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241 (3d Cir. 2012) ...................................... 8

*Fowler v. Borough of Westville,* 97 F.Supp.2d 602 (D.N.J.2000) ................................................ 25

*Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012).................................................. passim

*In re Kaiser Aluminum Corp.,* 456 F.3d 328 (3d Cir.2006).......................................................... 10

*Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429 (M.D. Pa. 2004)................. 9, 10

Lamie v. U.S. Treasury, 540 U.S. 526 (2004) ................................................................................ 9

*Maldonado v. Ramirez,* 757 F.2d 48 (3d Cir.1985) ...................................................................... 25

*Reynolds v. Dept. of Army,* 439 Fed. App'x 150 (3d Cir.2011) ................................................... 24

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)............................................................... 17, 18

*Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 (D.Md. Jan. 25,

     2012 ....................................................................................................................................... 11, 18

*Smith v. Waverly Partners* 3:10-cv-028-RLV-DSC (W.D.N.C.) ........................................... 14, 15

*Smith v. Waverly Partners,* 2012 WL 3645324 (W.D.N.C. 2012) ................................... 13, 15, 16

*Summy–Long v. Pa. State Univ.,* Civ. A. No. 1:06–cv–1117, 2009 WL 811616 (M.D.Pa. Mar. 26,

     2009) ...................................................................................................................................... 25

*TRW Inc. v. Andrews*, 534 U.S. 19(2001)...................................................................................... 8

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ........................................................... passim

**Rules**

Fed.R.Civ.P. 30(b)(6) ........................................................................................................... 4

Fed.R.Civ.P. 56 .............................................................................................................. 18, 24

LCvR 56C ............................................................................................................................ 3

## I.   INTRODUCTION

Defendant ClosetMaid Corporation's ("ClosetMaid") Motion For Summary Judgment is based upon flawed readings of the Fair Credit Reporting Act, ("FCRA").

*First,* ClosetMaid argues that the "*in a document that consists solely of the disclosure*" phrase in 15 U.S.C. § 1681b(b)(2)(A) is merely an ineffective absurdity.   To the contrary, the plain meaning of the provision evidences Congress' intent to effectuate strong protections against misuse of job applicants' personal and private information— including the use of prospective waivers of rights immunizing employers from claims.

*Second,* Closetmaid contends that the disclosures required by 15 U.S.C. § 1681b(b)(3)(A) are only triggered in those instances where the employer makes a final determination not to hire an applicant based solely upon the results of a consumer report. The plain meaning of § 1681b(b)(3)(A) evinces Congress' intent that the disclosures be provided earlier in time, well before any final employment decision is made to alert job applicants to potential negative information in the reports about them that might cause an employer not to hire them.   Accordingly, ClosetMaid's reliance upon the purported reasons that the persons in the Pre-Adverse Action Sub-class were ultimately not hired is of no moment.

ClosetMaid's constructions thwart the plain meaning and legislative purposes of these FCRA provisions. ClosetMaid's reading of these laws was objectively unreasonable and, therefore, willful.

## II.   PROCEDURAL BACKGROUND

The procedural background is provided in Plaintiffs' Memorandum Of Law In Support of The Motion For Partial Summary Judgment. Electronic Case Filing No. 91.

Case 2:08-cv-01730-MRH   Document 100   Filed 06/24/13   Page 7 of 31

III.    COUNTERSTATEMENT OF MATERIAL FACTS

A. CLOSETMAID REQUIRED ALL JOB APPLICANTS TO WAIVE ALL CLAIMS
   AGAINST CLOSETMAID AS PART OF THE DISCLOSURE/CONSENT FORM
   REQUIRED BY THE FCRA

On or about December 13, 2006, the Representative Plaintiff, Cathy Reardon applied for a job with ClosetMaid. Pl.St.Add ¶ 1.[1] ClosetMaid provided to Reardon a document entitled, "CLOSETMAID AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT AND INFORMATION FOR EMPLOYMENT PURPOSES". (hereinafter "ClosetMaid FCRA Information/Authorization Form".) Pl.St.Add. ¶ 2. The Closetmaid FCRA Information/Consent Form provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> Pursuant to the Fair Credit Reporting Act, I hereby authorize ClosetMaid and its designated agents to conduct a comprehensive review of my background through a consumer report and/or *investigative consumer report* to be generated for employment, promotion, reassignment or retention as an employee. I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal, state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration and any other public records.

Pl.St.Add. ¶ 3. ("emphasis added").

---

[1] The references to Pl.St.Add.¶ ___ are to Plaintiffs' Additional Statement Of Material Facts pursuant to W.D. LCvR 56 C 1.c. which are set forth at the conclusion Plaintiffs' Responsive Concise Statement of Material Facts. (See pages 25-40 of the Responsive Concise Statement). This Statement of Additional Facts tracks and is the same as Plaintiffs' Concise Statement Of Facts In Support Of Plaintiffs' Motion For Summary Judgment. ECF 92. Accordingly, the Statement Of Additional Facts cites to and relies upon the evidentiary and other materials in Plaintiffs' Appendix of Exhibits filed in support of the Motion For Partial Summary Judgment. See ECF 93.

2

The FCRA Information /Authorization Form provided that Reardon, by executing the form, was releasing all past and future claims against ClosetMaid in return for her authorizing ClosetMaid to procure a consumer report about her. (hereinafter "Waiver Of Rights"). Pl.St.Add. ¶ 4.

Ms. Reardon also signed a secondary or additional form called a "FAIR CREDIT REPORTING ACT AUTHORIZATION FORM-NOTICE OF INTENT TO OBTAIN A CONSUMER CREDIT REPORT".   RESPONSE ¶ 16.[2]   ("FCRA Authorization NIOCCR form"). This form provided notice that a consumer report would be obtained, however, this form did not provide any notice that ClosetMaid might obtain an "investigative consumer report". RESPONSE ST. ¶ 16  and see ECF 93, Doc. 16-1, p. 3 of 9;  RESPONSE ST. ¶ 14. ClosetMaid obtained a consumer report on Reardon. Pl.St.Add. ¶ 5.

The FCRA Authorization NIOCCR form was *not* provided or used by ClosetMaid with respect to all Disclosure Class Members. RESPONSE ST. ¶ 13. The FCRA Authorization NIOCCR form was discontinued for purposes of "simplification" RESPONSE ST. ¶ 13; ECF 93, Ex 3. ClosetMaid Dep. p. 59:10-18. However, the aforementioned FCRA Information/Consent form was used with respect to all Disclosure Class Members until July 2009.  RESPONSE ST. ¶ 13; Pl.St.Add. ¶ 16-17.

ClosetMaid incorporated virtually the same "Waiver Of Rights Provision" in all of its FCRA Information/Authorization documents from the beginning of the class period, December 19, 2006 until July 1, 2009. Pl.St.Add. ¶ 7-14.   Each of the FCRA Information/Authorization documents used by ClosetMaid contained a Waiver Of Rights

---

[2]        RESPONSE ST ¶ ___ refers to the relevant paragraph responses set forth in Plaintiffs' Responsive Concise Statement Of Facts submitted pursuant to W.D. LCvR 56C. 1.b.

provision. Pl.St.Add. ¶ 3-13. As a result, of the allegations made in the First Amended

Complaint filed on April 16, 2009, ClosetMaid revised its FCRA Disclosure/Consent Forms

by removing the Waiver Of Rights from its forms effective July 2009. Pl.St.Add. ¶ 14-17.

### B. CLOSETMAID'S FAILURE TO PROVIDE FCRA MANDATED NOTICES TO JOB APPLICANTS WHOSE CONSUMER REPORTS CONTAINED DEROGATORY INFORMATION BEFORE A FINAL EMPLOYMENT DECISION WAS MADE

The consumer report procured by ClosetMaid about Reardon contained derogatory

credit and criminal history information. RESPONSE ST. ¶ 21; Pl.St.Add. ¶ 32.  ClosetMaid

sent a letter to Reardon dated December 18, 2006, by regular mail, which contained a copy of

the consumer report about Reardon. RESPONSE ST. ¶ 21; Pl.St.Add. ¶ 33. Thereafter, four

(4) days later, ClosetMaid mailed a letter to Reardon dated December 22, 2006 informing

Reardon that ClosetMaid had decided not to offer her the position for which she had applied.

RESPONSE ST. ¶ 25; Pl.St.Add. ¶ 34. Ms. Reardon received the December 18, 2006

letter on the night of December 22, 2006 and, therefore, ClosetMaid decided not to offer

Reardon the position for which she had applied *before* Reardon had obtained the consumer

report sent by Closetmaid with the letter dated December 18, 2006. RESPONSE ST. ¶ 25;

Pl.St.Add. ¶ 35.

ClosetMaid's Fed.R.Civ.P. 30(b)(6) deponent testified that its policy was that if

there is any adverse action taken based upon the consumer report, then the consumer

report and summary of rights are given. ECF 93, Ex. 3, ClosetMaid Dep. p. 126:6-127:3;

RESPONSE ST. ¶ 20.  ClosetMaid has submitted the Declarations of Jennifer Boring,

Merlyn Hernandez-Opio, and Patricia Dameron.  ClosetMaid St. Facts ¶ 28; ECF 97-13;

97:14 97:15. The purpose of the Declarations is to demonstrate the final, exclusive reason

that ClosetMaid decided not to hire each person identified as being a Pre-Adverse Action

class member. Each Declaration contains an Exhibit A. *Id.* Taken together each of these Exhibits list all members identified as being in the Pre-Adverse Action Subclass. *Id.* Each Exhibit A to the respective Declaration contains 3 columns that lists 1) the name of the identified sub-class member; 2) the ClosetMaid location that considered the sub-class member's job application, and 3) the final reason that the sub-class member was not hired. ECF 97-13 p. 4 of 4; ECF 97-13 p. 4 of 4; ECF 93-15 p. 4 of 4.

Ms. Boring testified that several weeks before her deposition on April 2, 2013, she was given a list of persons within the Pre-Adverse Action Sub-Class. ECF 93, Ex. 4, Boring Dep. 60:9-18. She then pulled the files for each of the persons on the list. ECF 93, Ex. 4 Boring Dep. p. 59:24-60:4. She then reviewed each file and rendered a retrospective judgment as to the final basis for each person not being hired. ECF 93, Ex. 4 Boring Dep. 61. In making this determination, she did not include a column that lists the results of the consumer report obtained by ClosetMaid, because, as she stated, "It wasn't relevant." ECF 93, Ex. 4, Boring Dep. 64:2-13. However, Ms. Boring conceded that she does not even know the reason that consumer reports are used by ClosetMaid. ECF 93, Ex. 4 Boring Dep. 12:15-14:5. She made this determination even though there was "not necessarily" anything in the file that set forth the reason for not hiring. ECF 93, Ex. 4 Boring Dep. 61:5-13. She made these determinations even though she did not know if she was involved in the determination. ECF 93, Ex. 4 Boring Dep. 61:14-62:1 ("I made an educated, based upon my experience. . ."). Ms. Boring also used the same process to make the Exhibit A to the Declaration of Merlyn Hernandez-Opio (ECF 93, Ex. 4 Boring Dep. p. 67:10-69:14) and to make the Exhibit A to the Declaration of Patricia Dameron. ECF 93, Ex. 4 Boring Dep. 69:15- 71:1; Boring Dep. 57:9-66:3.

The consumer reports obtained about each of the members of the Pre-Adverse Action contained evidence of a felony criminal history background or a serious traffic record. Pl.St.Add. ¶ 46. ClosetMaid did not send these persons a copy of their consumer report obtained by ClosetMaid *before* ClosetMaid made a final decision about their application. Pl.St.Add. ¶ 44. Since December 1, 2006 ClosetMaid has provided only 4 persons, including Ms. Reardon, with disclosures pursuant to 15 U.S.C. § 1681b(b)(3). Pl.St.Add. ¶ 44.

ClosetMaid's hiring procedures require its Human Resources Representatives to make the following investigations into a job applicant: 1) check the applicant's references; 2) verify the applicant's employment history; 2) verify the applicant's educational background; and 4) obtain, review and consider a consumer report obtained from a designated consumer reporting agency. Pl.St.Add. ¶ 37. ClosetMaid procured consumer reports about all members of the Disclosure Class and Pre-Adverse Action Sub-class. Pl.St.Add. ¶ 45. ClosetMaid considered consumer reports on applicants to determine if the results of the consumer report might adversely affect the applicant's ability to perform the job or create potential liability for ClosetMaid. Pl.St.Add. ¶ 39 Further, evidence of violent behavior could form the basis of rejection from employment. Pl.St.Add. ¶ 39.

### C. CLOSETMAID'S KNOWLEDGE ABOUT ITS FCRA DUTIES AND RESPONSIBILITIES

To establish the FCRA Disclosure/Consent Forms and the Pre-Adverse Action Procedures, ClosetMaid through its employees reviewed government and legal websites, among other resources. Pl.St.Add. ¶ 27. To establish the FCRA Disclosure/Consent Forms used prior to July 1, 2009 or to establish it Pre-Adverse Action procedures, ClosetMaid did not consult with any in-house or outside lawyer. Pl.St.Add. ¶ 28.

6

The Disclosure and Pre-Adverse Action provisions of the FCRA were added to the FCRA as amendments to the FCRA effective September 30, 1997. Pl.St.Add. ¶ 18. On June 12, 1998, a FCRA Staff Opinion letter was issued by the Federal Trade Commisson known as Haynes-Hauxwell that explicitly explained that, "The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Pl.St.Add. ¶ 20. In March 1999, the Federal Trade Commission published a "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know". Pl.St.Add. ¶ 51-52.

On or about August 31, 2004, ClosetMaid signed a Securint Application and Service Agreement with Securint, a consumer reporting agency, in order to obtain consumer reports about prospective employees, for employment purposes. Pl.St.Add. ¶ 23-24.  In this agreement, ClosetMaid specifically agreed that any FCRA disclosure that it used would consist "solely of the disclosure, that a consumer report might be obtained for employment purposes" and that prior to taking any adverse action, based whole or in part upon the consumer report, ClosetMaid must provide the applicant a copy of the consumer report and a summary of the consumer's rights as prescribed by the Federal Trade Commission. Pl.St.Add. ¶ 24. The Sucurint Application and Service Agreement also also notified ClosetMaid of its obligations under the FCRA. Pl.St.Add. ¶ 23-25.

## IV.   LEGAL ARGUMENT

### A.  CLOSETMAID IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE §1681B(B)(2)(A)(I) AND (II) CLAIM

ClosetMaid motion for summary judgment is founded upon a false premise. ClosetMaid begins with the erroneous proposition that § 1681b(b)(2)(A) imposes only

two duties on an employer: 1) to make a "clear and conspicuous" disclosure of the intention to procure a consumer report; and 2) to obtain written consent from the job applicant . ECF 96 at p. 11.  From this basis, ClosetMaid argues that its disclosures were proper and written consent was obtained. *Id.*

To the contrary, § 1681b(b)(2)(A) contains a third important requirement that ClosetMaid ignores--that the disclosure/consent form must "consist solely of the disclosure".  This plain language means that waivers of rights provisions are prohibited.  .

### 1.    The Plain Meaning of §1681b(b)(2)(A)(i) and (ii)

ClosetMaid's construction of § 1681b(b)(2)(A) violates a cardinal principal of statutory construction that all words in a statute must be given effect and no word or phrase be treated as "surplusage".  *TRW Inc. v. Andrews*, 534 U.S. 19, 31(2001); *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 249 (3d Cir. 2012). ("a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Section 1681b(b)(2)(A)(i) unambiguously provides that a prospective employer is not permitted to procure a consumer report for employment purposes *unless* a clear and conspicuous disclosure is first made notifying the applicant that a consumer report will be procured *in a document that consists solely of the disclosure.*[3] As Plaintiffs demonstrated

---

[3]  Section  § 1681b(b)(2)(A) unambiguously provides:

Except as provided in subparagraph (B) . . . a *person* may not *procure a consumer report,* or cause a *consumer report* to be *procured, for employment purposes* with respect to any *consumer,* unless -

(i)      a *clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be

8

in their Motion For Partial Summary Judgment, courts and regulators construe this language to prohibit the inclusion of a waiver of rights. ECF 91 at pp. 9-15.

ClosetMaid blithely ignores the phrase "in a document that consists solely of the disclosure" in § 1681b(b)(2)(A)(i) as merely superfluous. [4] ClosetMaid reasons that the presence of a Waiver Of Rights is irrelevant so long as the disclosure is sufficiently clear and conspicuous. *Id.*   ClosetMaid asks this Court to depart from the plain meaning because otherwise it would be "slavishly literal", "impractical" and "defy common sense". ECF 96 at p. 13. Without saying so, ClosetMaid appears to rely on the principle that if application of the statute's plain language would result in an absurdity, then a court can avoid it. *See generally Lamie v. U.S. Treasury,* 540 U.S. 526, 534 (2004)(courts should apply plain language of statute unless the result is absurd). As the Third Circuit has recognized, ". . . when the literal application of statutory language would produce an outcome demonstrably at odds with the statute's purpose or would result in an absurd outcome, a court must look beyond the plain meaning of the statutory language. *In re Kaiser Aluminum Corp.,* 456 F.3d 328, 338 (3d Cir.2006)

Of course, ClosetMaid does not explain how including a prospective release of statutory rights is consistent with legislative intent. As explained in Plaintiffs' Brief In

---

procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and

(ii)    the *consumer* has *authorized* in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

[4]  Once the employer has obtained this written authorization, the employer is then authorized to access a consumer report *at any time* thereafter. *See Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004).

Support of Partial Summary Judgment, such releases tend to encourage future violations of the law and, as such, are directly contrary to legislative intent. ECF 91 at p. 14. Obviously, Congress was concerned that employers might use their right to obtain a consumer report and the duty to obtain written authorization as a means to obtain a release with respect to the use or dissemination of information in a consumer report. Congress was seeking to protect the privacy rights of job applicants and, accordingly, used the "in a document that consists solely of the disclosure" phrase as a way to prohibit releases and to ensure that employers are careful in handling applicants' private and personal information. *See e.g. Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 436 (M.D. Pa. 2004) (". . .the Act provides strong protections against misuse of employees' personal information.").

Thus, ClosetMaid's proffered examples that § 1681b(b)(2)(A)(i) might be absurdly read to prohibit "letterhead", "signature" and "date blocks" are misguided. ECF 96 at p. 13. Such items are not at odds with legislative intent and are allowed by § 1681b(b)(2)(A)(ii).

### 2.    ClosetMaid Violated § 1681b(b)(2) (i) and (ii) By Including A Waiver Of Rights Provision

Both the courts and FTC recognize that putting a Waiver of Rights provision in the FCRA mandated Disclosure/Consent form violates § 1681b(b)(2)(A)(i) and (ii). Plaintiffs have fully briefed and discussed this FCRA violation in their Motion For Partial Summary Judgment As To Liability. ECF 91 pp. 9-15 citing *Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 and other authority.  For brevity sake, Plaintiffs hereby adopt and incorporate that discussion here.

Apart from this claim, ClosetMaid's MSJ addresses two other asserted violations of § 1681b(b)(2)(A): 1) ClosetMaid's alleged use of two different FCRA disclosure/consent forms; and 2) the misrepresentation of FCRA rights of consumers in the FCRA Authorization NIOCCR form. ECF 96 at p. 12. Plaintiffs are not pursuing any claims based upon or arising from ClosetMaid's additional or secondary use of the FCRA Authorization NIOCCR form.   This is because, as explained and demonstrated in Plaintiffs' Responsive Concise Statement Of Facts, at RESPONSE ¶¶ 13-14 , ClosetMaid did not use the additional or secondary FCRA Authorization NIOCCR  with respect to all class members.  Given its sporadic use, Plaintiffs are not pursuing claims based on it.

Even so, it should be pointed out that ClosetMaid is mischaracterizing the two different forms.   On the one hand, ClosetMaid attempts to depict the FCRA Authorization NIOCCR form as the form purportedly for providing the disclosure required by § 1681b(b)(2)(A)(i) and the ClosetMaid FCRA Information/Authorization Form (the form incorporating the Waiver Of Rights) as the form purportedly for obtaining the authorization required by § 1681b(b)(2)(A)(ii). ECF 96 p. 5, 13-14.  Based upon this misleading depiction, ClosetMaid argues that the Waiver Of Rights to which Plaintiffs' object contained in the "authorization" form and not the "disclosure" form, and therefore, the release is not clearly prohibited since § 1681b(b)(2)(A)(ii) does not contain the "consist solely" provision. ECF 96. pp 13-14. This is a blatant misrepresentation of ClosetMaid's own forms and practices. Both forms include FCRA disclosures about the nature and scope of consumer reports to be obtained. *Cf.* ECF 16-1 page 3 of 9 and ECF # 16-1, page 5 of 9.  Both forms have separate blocks for consumer signatures for obtaining authorization. *Id.* Both forms are referred to as "authorization" forms. *Id.* Thus, both

forms are intended to be combined disclosure/ consent forms used to provide the disclosure required by § 1681b(b)(2)(A)(ii) and the authorization required by § 1681b(b)(2)(ii). As § 1681b(b)(2)(ii) specifically provides, ". . . authorization may be made on the document referred to in clause (i)". 15 U.S.C. § 1681b(b)(2)(A)(ii). Moreover, ClosetMaid testified that the FCRA Authorization NIOCCR form was duplicative and thus was taken out of service. RESPONSE ¶ 13. This Court must reject ClosetMaid's attempt to misrepresent its own policies and practices.

ClosetMaid's also argues that the use of two forms provided enhanced disclosure (ECF 96 at p. 12). This is mistaken for two reasons. First, as demonstrated, the FCRA Authorization NIOCCR form was implemented sporadically and then discontinued. Second, the disclosure provided by the FCRA Authorization NIOCCR form was legally insufficient because it failed to disclose the intention to also obtain an "investigative consumer report". By contrast, the ClosetMaid FCRA Information/Consent form disclosed that ClosetMaid intended to obtain an "investigative consumer report" as defined by 15 U.S.C.A. § 1681a. [5] Accordingly, the FCRA Authorization NIOCCR form did not operate as a legally sufficient form of disclosure as to the nature and type of consumer report that ClosetMaid intended to procure.

---

[5] 15 U.S.C.A. § 1681a provides:

> The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

The disclosure required by 15 U.S.C.A. § 1681b(b)(1)(A) and 15 U.S.C.A. § 1681d(a) may be combined so long as the disclosure does not include extraneous information. See FTC Staff Opinion Letter Brinkerhoff -Wilner March 25, 1999. *See* Plaintiffs' Supp. App. Ex. 2.

**3.     ClosetMaid's Reliance On *Smith v. Waverly Partners* Is Erroneous Since That Case Supports Plaintiffs' Reading of § 1681b(b)(2)(A)**

ClosetMaid contends that *Smith v. Waverly Partners,* 2012 WL 3645324 (W.D.N.C. 2012) held that the inclusion of a waiver of rights provision in a form governed by § 1681b(b)(2)(A) does not violate that provision. ECF 96 at p. 14. ClosetMaid completely misrepresents *Waverly Partners.*

Properly understood, the plaintiff in *Waverly Partners* did ***not*** assert a claim based upon the "in a document that consists solely of the disclosure" provision in § 1681b(b)(2)(A)(i).  She claimed that the defendant violated the "clear and conspicuous" requirement of § 1681b(b)(2)(A) by failing to disclose in the FCRA/consent form that her current employer would be contacted as part of the investigative background report, i.e. that the disclosure was not clear or conspicuous.  In turn, the defendant raised the waiver of rights provision in the FCRA disclosure/ consent form as a complete defense to liability.  Ultimately, the court found that public policy precluded use of the waiver of rights as a defense.  However, the court explicitly stated that a violation of   § 1681b(b)(2)(A)(i) based upon the defendant's use of the waiver of rights provision could not be found because *the plaintiff had not alleged that claim in her complaint.* In sum, *Waverly Partners* highlights the harm that Congress sought to prevent by enacting the "in a document that consists solely of the disclosure" requirement— namely, to preclude employers and others from immunizing themselves from violations of the FCRA and other laws.  ClosetMaid's reliance on *Waverly Partners* is erroneous.

In *Waverly Partners*, the plaintiff alleged that she was an employee of the Cato Corporation. See 3:10-cv-028-RLV-DSC (W.D.N.C.) Second Amended Complaint at

ECF 17 at ¶5. (filings in *Waverly* hereinafter "*Waverly* ECF ___") Pl. Supp. App.Ex. 3. Waverly Partners was a company engaged in executive recruitment. Pl. Supp. App.Ex. 3. *Waverly* ECF 17, ¶ 2.   As part of recruiting the plaintiff for a position at another company, Waverly had the plaintiff sign a FCRA consent form. Pl. Supp. App.Ex. 3, *Waverly* ECF 17, ¶ 15-16.   The plaintiff alleged that the FCRA consent form did not authorize Waverly to contact her current employer. Pl. Supp. App.Ex. 3, *Waverly* ECF 17, ¶17.   Nonetheless, a copy of the FCRA consent form was provided to plaintiff's current employer. Pl. Supp. App.Ex. 3, *Waverly* ECF 17, ¶ 20-24. Once plaintiff's current employer learned of the FCRA consent form, it took steps to terminate her employment. Pl. Supp. App.Ex. 3, *Waverly* ECF 17, ¶ 35- 38.   The SAC alleged claims for Invasion of Privacy (Count I);  violation of the FCRA (Count II); Negligent Misrepresentation (Count III); Unfair and Deceptive Practices (Count IV); Breach of Contract (Count V). Pl. Supp. App.Ex. 3, *Waverly* ECF 17, ¶¶ 39-91.   Specifically, the claim alleging violation of the FCRA alleged that defendants were not authorized to contact or obtain information from the plaintiff's employer and that the unauthorized disclosure of the FCRA Consent Form to plaintiff's employer was an impermissible and unauthorized method of obtaining information for the consumer report under the FCRA. Pl. Supp. App.Ex. 3, *Waverly* ECF 17, ¶¶ 54-55. The court dismissed Invasion of Privacy and Deceptive Practices on a motion to dismiss. *Smith v. Waverly Partners,* 2011 WL 1655592 ( W.D. N.C. 2011).

Thereafter, defendant Waverly Partners filed a motion for summary judgment. Pl. Supp. Pl. App. Ex. 4, *Waverly* ECF 59.  In the motion, Waverly Partners argued that the FCRA Consent Form included a waiver of all claims plaintiff had against Waverly and, therefore, all claims were subject to dismissal. Pl Supp. App. Ex. 4, *Waverly* ECF 59, p.

2-3, 10-11. Waverly further argued that the FCRA Consent Form complied with the FCRA because it disclosed that a consumer report would be obtained for employment purposes and it obtained a written authorization. Supp. Pl. App. Ex. 4, *Waverly* ECF 59, p.12. In response, plaintiff argued that Waverly's defense based upon the Waiver and Release was unenforceable and ineffective as against public policy. Supp. Pl. App. Ex. 5, *Waverly* ECF 67 pp. 7-8.  Plaintiff further argued that her FCRA claim was valid because the waiver and release violated the plain terms of § 1681b(b)(2)(A) (i) and (ii) and because Waverly had exceeded the scope of the investigation it said it would undertake in the FCRA consent form.  Supp. Pl. App. Ex. 5,*Waverly* ECF 67 p. 15.

In addressing Waverly's motion, the court first addressed Waverly's defense based upon the Waiver and Release. 2012 WL 3645324 *5-6.  Initially, the court noted that the plaintiff had not alleged an FCRA based claim asserting that the Waiver and Release violated the FCRA. *Id.* at 5.  The court further noted that the plaintiff **did** contend that the waiver was unenforceable as against public policy. *Id.*  In addressing whether the waiver and release was unenforceable the court stated, "Therefore, in order to give Congress's inclusion of the word "solely" meaningful effect, the Court agrees that inclusion of the waiver provision was statutorily impermissible and that the waiver is therefore invalid." *Id.* at 6.  The court next addressed whether § 1681b(b)(2) (i) and (ii) were violated because Waverly had exceeded the scope of the investigation. *Id.* The court found that the disclosure provided in the FCRA consent form was adequate and, therefore, no FCRA violation was found based upon the clarity or conspicuousnes of the disclosure. *Id.*  Thereafter, the court found a claim for breach of contract.  *Id. at* *7-8.

Unlike the plaintiff in *Waverly Partners,* Plaintiffs have alleged that the Waiver Of Rights violates § 1681b(b)(2)(A). The *Waverly* court recognized that it could not find a violation where one was not properly alleged. Nonetheless, the court overruled Waverly's affirmative defense based upon the Waiver and Release.  In other words, had the plaintiff properly alleged that the Waiver and Release violated § 1681b(b)(2) (A) the court could, and apparently would, have found a violation of the FCRA. As such, *Waverly* fully supports Plaintiffs' position and highlights the harm posed to consumers presented by employers' use of prospective waivers of rights in disclosure/consent forms.

4.      **ClosetMaid's Violation Is Willful Because Any Reading of Of § 1681b(b)(2)(A) (i) and (ii) To Authorize A Prospective Waiver Of Rights Is Objectively Unreasonable**

ClosetMaid argues that Plaintiffs have not adduced sufficient evidence to establish, as a matter of law, that ClosetMaid violated § 1681b(b)(2)(A) (i) and (ii).  ECF 96 at p. 20.   In doing so, ClosetMaid steadfastly avoids the relevant Third Circuit authority for determining the presence of the "willfulness" component of the civil liability provision of the FCRA, 15 U.S.C. § 1681n(1)(A). *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012).  As the Third Circuit explained in *Fuges,* the test for a "willfulness" is  "objective reasonableness". *Fuges,* 707 F.3d at 249.  A court ". . .may not impose liability for a reckless, and therefore willful, violation of the statute unless that party's reading is "objectively unreasonable." *Id*.

a.      **The Objectively Unreasonable Standard**

In determining "willfulness" under this objective standard, the *Fuges* court applied a 3 pronged analysis.  *First,* the *Fuges* court looked to determine whether the FCRA itself gave guidance as to what was required by the statutory provision in question.

*Id.* at 252. On this point, the court recognized that the Supreme Court in *Safeco* had queried whether the statutory provision was "less than pellucid". Similarly, in *Cortez v. Trans Union, LLC*, 617 F.3d at 721 the Third Circuit determined that Trans Union had willfully violated § 1681g(a), because Trans Union had adopted a reading of the provision that ignored critically important terminology: *i.e.* the "regardless of how it is stored" phrase. 617 F.3d at 711. Then, in determining whether this violation was "willful", the *Cortez* court found that Trans Union's avoidance of this term in light of the broad remedial nature of the statute rendered Trans Union's conduct willful. 617 F.3d at 721-22.

The *second* prong of the analysis, according to *Fuges,* is to examine whether the defendant's interpretation of the FCRA statutory provision has some basis in the statutory text. In *Fuges,* the defendant was a company that compiled and prepared current owner title reports, otherwise known as property search or limited property reports. *Fuges,* 707 F.3d at. 243-44. At issue was whether the defendant was a "consumer reporting agency" and whether the current owner reports were "consumer reports" within the definition of those terms in FCRA. In examining the definition of "consumer reporting agency", the *Fuges* court recognized that a reasonable person could read that provision as excluding the defendant from the scope of the FCRA because its reports were "on properties", not "on consumers". Further, the court found that a reasonable person could properly read the definition of "consumer report" as excluding its reports because they did not bear on the individual characteristics of consumers.

The *third* prong of the analysis is to determine whether there is any agency or judicial guidance that would suggest that the defendant's interpretation is contrary to the

17

intended interpretation of the FCRA provision. 707 F.3d at. 253. In *Cortez*, the Third Circuit held that the defendant Trans Union violated the file disclosure provision of the FCRA by failing to disclose upon request "all information in the consumer's file regardless of how it is stored". 15 U.S.C. § 1681g(a). The *Cortez* court further rejected the contention that since this the case was one of first impression, that willfulness could not be found stating that, "The credit agency whose conduct is first examined under that section of the Act should not receive a pass because the issue has never been decided. The statute is far too clear to support any such license". *Id. at* 722.

> **b.** **ClosetMaid's Interpretation Of § 1681b(B)(2) To Authorize A Waiver Of Rights Is "Objectively Unreasonable"**

Under the 3 pronged *Fuges* analysis, ClosetMaid has acted willfully by reading § 1681b(B)(2)(A) as authorizing ClosetMaid to obtain a Waiver Of Rights from job applicants that would purportedly immunize ClosetMaid from prospective FCRA violations. *First,* there is nothing ambiguous or confusing about § 1681b(b)(2)(A)(i)**.** It says clearly, "*. . . in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes." Any reasonable person would read this in one way only: that any additional provision, including a Waiver Of Rights, would be prohibited. The *Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 court recognized that the Disclosure/Consent form at issue in that case would be "objective unreasonable" under a Fed.R.Civ. Rule 56 standard. ("Unlike in *Safeco,* where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning,").

*Second,* there is no basis anywhere in the text of § 1681b(B)(2)(A) or in the law that would allow the use of a prospective waiver of statutory rights. In fact, as demonstrated such provisions are absolutely prohibited. ECF 91 at p. 12-14.

*Third,* agency and judicial guidance is directly on point that ClosetMaid' s reading is contrary to the intended interpretation of the FCRA provision.  *See* ECF 91  at p. 12-14. Moreover, prospective waivers are absolutely prohibited based upon judicial decisions in existence well before ClosetMaid developed its forms. ECF 91  at p. 14.

### c.  ClosetMaid Actually Knew Or Should Have Known Of Its FCRA Obligations, But Ignored Them

ClosetMaid completely fails to apply the "objective reasonableness" standard mandated by *Fuges.* Instead, ClosetMaid attempts to argue that it acted "subjectively reasonable" by focusing on the conduct of its employees in attempting to comply with the FCRA. ECF 96 pp. 22-23 and *see* ClosetMaid Statement Fact, ¶ 11 and Response thereto. However, *Fuges* makes clear that the inquiry is one of "objective reasonableness".

Yet, even assuming a defendant's subjective reasonableness is relevant, the record evidence would support Plaintiffs. Here, the presence of the Waiver of Rights and Release in ClosetMaid's FCRA Disclosure/Consent forms was not an unintended mistake. ECF 93, Ex. 8, Dep. of Mary Price, p. 48:3- 6. Obviously, ClosetMaid made a conscious decision to incorporate the provision in its forms. As Jennifer Boring testified, the inclusion of the waiver was not accidental. ECF 93, Ex. 8, Dep. of Mary Price, p. 48:3- 6.  Despite this conscious decision, ClosetMaid was on specific notice that the inclusion of the waiver was illegal. RESPONSE ¶ 11.  ClosetMaid's own contract with its credit reporting companies told ClosetMaid about its FCRA obligation to use a disclosure/consent form that "solely" consisted of the disclosure and authorization and, in

fact, made it a contractual obligation that ClosetMaid create forms in this regard. RESPONSE ¶ 11. As Mary Price, testified, these contracts were examined and understood by ClosetMaid. ECF 93, Ex. 8, Dep. of Mary Price, p. 35:11-40-4.

Moreover, as ClosetMaid concedes, it employees searched the Internet to learn about their responsibilities under the FCRA in using consumer reports for employment purposes. *see* ClosetMaid Statement Fact, ¶ 11 and Response thereto. If so, they then easily would have discovered the Federal Trade Commission Staff Opinion letters that warned that inclusion of a Waiver Of Rights was illegal under the FCRA. ClosetMaid could have, but failed to consult with any legal counsel about their FCRA disclosure/consent forms. Indeed, the evidence of ClosetMaid's specific knowledge and its own recklessness is very substantial.

### B. CLOSETMAID IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE § 1681B(B)(3)(A) CLAIMS

ClosetMaid's MSJ with respect to the § 1681b(b)(3)(A) claim is fundamentally flawed for at least three reasons. *First,* it proceeds from an erroneous reading of § 1681b(b)(3)(A) as providing that the requisite disclosures of the consumer report and summary of FCRA rights be made *only if* the employer actually takes an adverse action that is solely based on the results of the consumer report. ClosetMaid's construction ignores § 1681b(b)(3)(A) plain meaning and its essential purpose to alert prospective employees of negative information in their reports so that it can be addressed with the employer and corrected with the consumer reporting agency.

*Second,* as a result of ClosetMaid's erroneous construction, the purported evidence it has submitted in the form of employee declarations evidence has no probative value. ClosetMaid employee, Jenifer Boring, within the last few months reviewed the

files of Pre-Adverse action class members to make a retrospective determination that virtually all persons in the Pre-Adverse Action were not subject to any Adverse Action. However, as demonstrated in Plaintiffs' MSJ and below, the trigger for making the required disclosures is not whether an adverse action actually occurs, but whether the information in the consumer report might be used to take an adverse action.

*Third,* even assuming the declarations submitted by ClosetMaid could be said to be probative, they do not constitute competent, admissible evidence. The declarations are not made on personal knowledge and constitute mere lay opinion evidence.

    1.    **ClosetMaid's Reading Of §1681b(b)(3)(A) Is Contrary To Plain Meaning and Legislative Purpose**

    a.    **The Plain Meaning and Purpose**

Plaintiffs' MSJ demonstrated the plain meaning and purpose of § 1681b(b)(3)(A).[6] That statutory analysis in Plaintiffs' MSJ Brief is therefore incorporated.

---

[6]    The full text of the Pre-Adverse Action provision states:

    Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, *before taking any adverse action based in whole or in part* on the report, the person *intending* to take such adverse action shall provide to the consumer to whom the report relates –

    (i)    a copy of the report; and

    (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3)(A).

> b.   **ClosetMaid's Reading Is Contrary To The Plain Meaning And Its Purported Declarations Are, Therefore, Immaterial**

ClosetMaid continually argues that Plaintiffs must prove that each of the Pre-Adverse Action class members were subject to an "adverse action". ECF 96 p. 16 and 18. ClosetMaid also argues that even if an adverse action is identified, it must be further demonstrated that the reason for the adverse action is solely because of the information in the consumer report. ECF 96 at p. 18. However, the trigger for the required notice is not the actual occurrence of an adverse action based upon the consumer report; the trigger is the presence of derogatory information in the consumer report that the employer could use to take adverse action.  Moreover, even if the information might not be the only reason for a possible adverse action; the disclosures still must be made.  "FTC FACTS For Business, Using Consumer Reports" (March 1999). Pl. St. Add. Fact, ¶ 11.

Accordingly, the declarations upon which ClosetMaid relies have no probative value as to compliance with § 1681b(b)(3).  *First*, the Exhibit A's to the Declarations do not even include or identify the results of the consumer reports obtained, even though consumer reports were obtained about each member of the Pre-Adverse Action class. *Second,* Jennifer Boring, the employee who created and derived each of the Exhibit A's, does not even know why ClosetMaid obtains consumer reports about job applicants and she said such information was irrelevant.  *Third,* the actual final reason for not hiring any of the job applicants is not probative as to whether any of the class members were entitled to the disclosures.  Thus, ClosetMaid suggestion that 22 of the sub-class members ultimately "declined an offer" or "did not show up for an interview" or "were not interested" is not probative as to whether the disclosures were required to be made earlier

22

in the recruiting process.  The basic purpose for requiring the disclosures is to assist job applicants in addressing any consumer report issues well before any final decision is made.  Accordingly, ClosetMaid suggestion that it could wait to make the disclosures until after an adverse decision was made impairs to the operation of § 1681b(b)(3).

Moreover, the fact that the 55 job applicants as identified by ClosetMaid were not hired because of some other reason such as a "failed drug test", a "falsified job application" or "absence of open positions" is also not probative of whether the disclosures were required to be made in the first place.  Again, under the intended operation of § 1681b(b)(3)(A), the required disclosures are to antedate the final employment decision in order to allow the applicant to address the issues *before* any final decision is even made.  Further, the fact that the employer might not hire for a reason not based on a consumer report is not material; even if a consumer report was used even in part, the disclosures must be made.  Here, ClosetMaid used the consumer reports. Indeed, their policies required examination of the reports for disqualifying information.

### 2.    ClosetMaid Violated § 1681b(b)(3)(A)

No material issue of fact exists that ClosetMaid has failed to establish procedures designed to comply with § 1681b(b)(3)(A).  *First,* there is no dispute that ClosetMaid has failed to adopt a procedure that identifies job applicants who are entitled to a Pre-Adverse Action Notice-- that is those job applicants at ClosetMaid as to whom it might decide not to hire.  ClosetMaid obtains consumer reports about the criminal or credit background of job applicants because of its concern that that a persons background may evidence:1) the applicant's ability to perform the job; 2)  potential for creating liability for ClosetMaid; 3) tendency towards violent behavior could .  Pl.St.Add. ¶ 38.  ClosetMaid procured consumer

23

reports about each member of the Pre-Adverse Action Sub-Class. At the same time, the consumer reports procured about each member of the Pre-Adverse Action Sub-class contained derogatory information evidencing possible past incidences of drug use, theft, assault, fraud, bad checks, receiving stolen property.    Pl.St.Add. ¶ 38.   Given ClosetMaid's own policies, ClosetMaid knew it could take an adverse action against these applicants, but it never established any procedure designed to provide such applicants Pre-Adverse Action disclosures. Indeed, since 2006, ClosetMaid has sent out only 4 Pre-Adverse Action Notices, even though it has procured thousands of consumer reports about prospective employees.  This fact alone is should have been a  "red flag".

*Second,* ClosetMaid has failed to establish any procedure that puts a final employment decision on hold until job applicants are provided the required disclosures. With respect to the members of the Pre-Adverse Action Sub-Class, ClosetMaid did not put a hold on making any final employment determination until after any § 1681b(b)(3)(A) disclosures were made and a sufficient amount of time had passed to allow the applicant to review and address the issues. Pl.St.Add. ¶ 38.

In sum, the evidence demonstrates, irrefutably, that ClosetMaid never adopted any Pre-Adverse Action procedure that sought to comply with § 1681b(b)(3)(A).

**3.    ClosetMaid's Motion For Summary Judgment Is Based Upon Inadmissible Declarations**

Federal Rule 56 (c)(4) provides that, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Statements in affidavits made in the absence of personal knowledge or without factual foundation, and conclusory statements for which no basis in fact or

personal knowledge is provided, are not properly considered. *See Reynolds v. Dept. of Army,* 439 Fed. App'x 150, 152 (3d Cir.2011); *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985). *See also* Plaintiffs Motion To Strike that is being filed in connection with this Response.

### 4.   ClosetMaid Reading Of § 1681b(b)(3)(A) As Authorizing Its Failure Provide The Required Notices Is Objectively Unreasonable

The 3 pronged *Fuges* analysis also demonstrates that ClosetMaid has acted willfully by reading § 1681b(b)(3)(A) to authorize legally deficient Pre-Adverse Action procedures. *First,* there is nothing ambiguous or confusing about § 1681b(b)(3)(A) as explained above.  The plain language indicates that the required notices have to be given anytime the employer might be considering not hiring an applicant in light of information in a consumer report. Likewise, the plain language evinces Congress' concern that job applicants be given sufficient notice so that they could address potential inaccuracies with the employer.  Given this information, no reasonable employer would have established the procedures adopted by ClosetMaid.

*Second,* nothing in § 1681b(b)(3)(A) authorizes ClosetMaid to make the final employment decision *before* any required notices are given to employees or to fail to provide any notices whatsoever where seriously derogatory information is in the reports. *Third,* agency and judicial guidance is extensive and directly on point.

### V.   CONCLUSION

Wherefore, it is respectfully requested that ClosetMaid's Motion For Summary Judgment be over-ruled.

June 24, 2013                                        Respectfully submitted,

By:     /James M. Pietz_____
James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
429 Forbes Ave., Suite 1616
Pittsburgh, Pa. 15219
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010

*Counsel for the Representative And
ClassPlaintiffs*