### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | | |
|---|---|---|
| **R. CATHY REARDON** | ) | |
| **On behalf of herself and all** | ) | |
| **similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **NO. 2:08cv1730MRH** |
| **v.** | ) | |
| **CLOSETMAID CORPORATION** | ) | **Hon. Judge Mark R. Hornak** |
| | ) | |
| | ) | |
| | ) | **Class Action** |
| | ) | |
| **Defendant.** | ) | Electronically Filed |

### PLAINTIFF'S RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS PURSUANT TO W.D.LCvR 56 C1 AND STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO W.D. LCvR 56 C1

Representative Plaintiff hereby sets forth her Response to each paragraph set forth in Defendant's Statement Of Material Facts that was previously submitted pursuant to W.D.LCvR 56 B. Electronic Case Filing No. 95 (hereinafter "ECF __). In addition, Representative Plaintiff hereby sets forth her Additional Statement Of Material Facts pursuant to W.D. LCvR 56 C 1.c. at the conclusion of her Response. (See pages 25-40 below). Plaintiffs' Additional Statement of Facts replicates and is based upon the Concise Statement of Facts filed by Plaintiffs in support of Plaintiffs Motion For Partial Summary Judgment. ECF 93.

### Preliminary Statement Asserting Defendant's Failure To Comply With Fed.R.Civ. 56 and W.D. LCvR 56 B

Defendant ClosetMaid Corporation's Concise Statement Of Material Facts does not comply with W.D. LVcR 56 or Fed.R.Civ.P. 56 in two (2) respects. *First,* Local Rule 56 B requires that the Concise Statement of Material Facts include only those facts that the moving party contends are "undisputed and material". W.D.

LCvR 56 B.1. "Facts that could alter the outcome are 'material facts,'" *see Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Many of the purported facts set forth by ClosetMaid are immaterial, unsupported, state legal conclusions rather than fact, or are argumentative and as such, have been improperly included in the Concise Statement. It is respectfully requested that these particular statements, which are objected to below, be disregarded by the Court. *See e.g. Zaborowski v. Dart*, 08 C 6946, 2011 WL 6660999 (N.D. Ill. Dec. 20, 2011)("The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. . . The Court may disregard statements and responses that do not properly cite to the record. ).

*Second,* ClosetMaid has submitted the Declarations of Jennifer Boring, Merlyn Hernandez-Opio, and Patricia Dameron. The purpose of these Declarations is purportedly to identify the basis for the final decision ClosetMaid decided not to hire each person listed as being a member of the Pre-Adverse Action Sub-Class. See ClosetMaid Memorandum In Support of the MSJ, ECF 96 at p. 7-8. According to ClosetMaid, because the final basis for not hiring any person listed as being a member of the Pre-Adverse Action Subclass was not because of negative information in a consumer report, then ClosetMaid was under no duty to provide the disclosures required by 15 U.S.C.§ 1681b(b)(3). *Id.* However, as explained in Plaintiffs' Response to ClosetMaid's MSJ filed herewith, the Declarations submitted by ClosetMaid are based upon the opinion testimony of a lay witness who has no personal knowledge of the actual event in question. They are,

therefore, improper. *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008). Accordingly, Plaintiffs have filed a Motion To Strike the declarations.

1.    *ClosetMaid is headquartered in Ocala, Florida and manufactures various storage products including closet shelving, pantry shelving, work products, shower caddies and other miscellaneous storage items. August 27,2009 Deposition of Catherine Beal ("2009 Beal Dcp.") pp. 10-11,* **Tab** *1.*


   **RESPONSE**: ADMITTED.


2.    *In addition to its Florida location, ClosetMaid maintains offices in Grantsville, Maryland and Chino, California and has distribution centers in Tacoma, Washington and Belle Vernon, Pennsylvania. 2009 Beal Dep., p. 11,* **Tab** *1.*


   **RESPONSE**: ADMITTED.

3.    ClosetMaid maintains a Salaried Recruiting Procedure describing its hiring and processing. 2009 Beal Dep., p. 40-67, **Tab** 1; 2009 Beal Deposition Exhibit ("2009 Beal Dep., Ex.") 6, **Tab** 2.

   **RESPONSE**: ADMITTED.

4.    *In accordance the Salaried Recruiting Procedure, ClosetMaid's recruiters and human resource managers review applications and make hiring decisions based upon relevant criteria of the position for which each applicant applies. 2009 Beal Dep., pp. 40-67,* **Tab** *1.*

   **OBJECTION:** **T**his statement does not sets forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome.

   **RESPONSE:**   DENIED   AS   UNSUPPORTED   because   ClosetMaid's

Fed.R.Civ.P. 30(b)(6) deponent, Catherine Beal, did not testify to this statement anywhere within the pages 40-67 of her deposition as cited by this statement. Apparently, this purported fact has been simply made up by Defendant.

According to the Salaried Recruiting Procedure, ClosetMaid's hiring procedures require its Human Resources Representatives to make the following investigations into a job applicant: 1) check the applicants references; 2) verify the applicant's employment history; 2) verify the applicant's educational background; and 4) obtain, review and consider a consumer report obtained from a designated consumer reporting agency. ECF 93, Ex. 3 Dep. ClosetMaid page 40:1- 12[1]; ECF 93, ClosetMaid Dep. Ex. 6, bates page 168; ECF 93,  Ex. 4, Boring Dep. page 53:5-55-2 and Boring Dep. Ex. 9, page 168. *See also* ECF 92, Paragraph. 37 to Plaintiffs' Concise Statement Of Material Facts In Support Of The Motion For Partial Summary Judgment .

5.      *During all times relevant to this action, ClosetMaid contracted with two (2) third-party consumer reporting companies to procure consumer reports: LexisNexis and Securint. 2009 Beal Dep., pp. 61-63, Tab 1; 2009 Beal Dep. Ex. 8, Tab 3.*

**RESPONSE**: ADMITTED. However, ClosetMaid also used the services of Accurate Background as well. ECF 93, Dep. of ClosetMaid, p. 62 and 93.

6.      In doing so, ClosetMaid uses consumer reports as part of its employee screening process. 2009 Beal Dep., pp. 29-30, **Tab** 1.

**RESPONSE**: ADMITTED

7.      The standards ClosetMaid applies to applicants when reviewing their consumer reports vary for different positions, such as salespeople, truck drivers, etc., as

---

[1]      References to ECF 93 refers to the Appendix of Exhibits In Support of The Class Plaintiffs' Motion For Partial Summary Judgment.  Plaintiffs have adopted and incorporated this Appendix to be used in opposition to Defendant's Motion For Summary Judgment.

compared to other open positions. 2009 Beal Dep., pp. 62-66, **Tab** 1.

**OBJECTION: T**his statement does not sets forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome.  ClosetMaid's policy with respect to the procurement of consumer reports does not vary; consumer reports are procured with respect to all job applicants deemed qualified. ECF 93, Ex. 3, Dep. Of ClosetMaid, p. 61:14-21.

**RESPONSE**: DENIED AS UNSUPPORTED in that this statement is not consistent with ClosetMaid's testimony at pp. 62-66 of Ms. Beal's deposition as cited and is not consistent with ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6. Nowhere at pages 62-66 of ClosetMaid's testimony did its designated witness state that standards with respect to the use of consumer reports "vary for different positions".  Instead, ClosetMaid testified that it was standard with respect to all applicants is to examine their background reports for "violent" behavior and to use their social security number to verify information in their application. ECF 93, Ex. 3, ClosetMaid Dep. page 64. Moreover, ClosetMaid's Interrogatory Responses state that ClosetMaid considered consumer reports on applicants to determine if the results of the consumer report might adversely affect the applicant's ability to perform the job or create potential liability for ClosetMaid. Further, evidence of violent behavior could form the basis of rejection from employment.  ECF 93, Ex. 10,  Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

Furthermore, ClosetMaid's standard form application asked the following

question for all employees:

> "Have you ever been convicted of or pleaded guilty or Nolo Contendre (no contest or an Alford plea) to any felony?"   ___yes ___no  (The fact you have been convicted of a crime will not automatically disqualify you from further consideration for employment.) If "yes" please describe in detail and attach to application.

ECF 16-1, page 6 of 9, Ex. 1 to First Amended Complaint.

8. *The hiring process is not a "linear procedure" and as such, every position and every candidate is different and handled individually. April 2, 2013 Deposition of Jennifer Boring ("Boring Dep."), pp. 47-57, **Tab 4**.*

**OBJECTION:** This statement does not sets forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome.

**RESPONSE:** DENIED in that this statement is not consistent with Jennifer Boring's testimony at pp. 47-57 of her deposition. ECF 93, Ex. 4. In her testimony at this part of her deposition, Ms. Boring is describing the process of recruiting and reviewing job applicants by ClosetMaid's Human Resource Representatives, those persons charged with administering and processing of hiring. ECF 93, Ex. 4, Boring Dep. 49:20-50:2.   The Human Resource Representatives review the job applicants' resumes. ECF 93, Ex. 4, Boring Dep. p. 50:18-22.  They conduct pre-screening processing, i.e. verify information in the resume. ECF 93, Ex. 4, Boring Dep. p. 51:5-12. They are also required to review a consumer report or background check made on the job applicants. ECF Ex. 4, Boring Dep. 54:7-10.  All of the foregoing is required to be completed by the Human Resource Hiring Representative. ECF Ex 4, Boring Dep. 54:14:55:2. According to Ms. Boring, the conduct of these tasks is not "linear" in that they are

often performed at the same time. ECF Ex. 4, Boring Dep. 51:13-20. Accordingly, all job applicants are subject to the same relevant hiring process in that ClosetMaid obtains and reviews consumer reports about them as part of considering their application for employment. ECF Ex. 4, Boring Dep. 54:20-55:2.

9.   *Various human resources managers at its various locations are responsible for making these decisions, and consumer reports are obtained, depending yet again upon the position for which an employee applies. 2009 Beal Dep., pp. 62-66,* **Tab 1***; Boring Dep., pp. 47-57,* **Tab 4***.*

**RESPONSE:** DENIED in that as to all members of the Disclosure and Pre-Adverse Action Classes, ClosetMaid procured a consumer report. ClosetMaid, through its Fed.R.Civ.P. 30(b)(6) deponent, testified that once it has determined that a job applicant is qualified based upon a review and consideration of the application, a consumer report or background check is procured. ECF 93, Ex., 4, ClosetMaid Dep. p. 61:6-18.; See also, Response to No. 8 above which is incorporated.

10.   *ClosetMaid's use of the information contained in an applicant's consumer report, if at all, is position-specific and no information necessarily would disqualify an applicant from consideration. Boring Dep., pp. 14-18, Tab 4.*

**OBJECTION:** ARGUMENTATIVE AND NOT A MATERIAL STATEMENT OF FACT**.**  This statement is argumentative because it requires Plaintiff to adopt ClosetMaid's reading of 15 U.S.C. § 1681b(b)(3)  that the required disclosures are to be made only if the sole basis for not hiring is because of information in a consumer report. Further, this statement does not set forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome.  Whether the § 1681b(b)(3) disclosures must be

made does not depend on the actual, final basis for not hiring an applicant.  See Plaintiffs' Memorandum Of Law In Opposition To ClosetMaid's MSJ.

**RESPONSE:** DENIED AS DISPUTED. The material facts are those relevant to whether ClosetMaid "might" consider not hiring a job applicant based upon the information contained in a consumer report.  ClosetMaid testified that it was standard with respect to all applicants to examine their background reports for "violent" behavior and to use their social security number to verify information in their application. ECF 93, Ex. 3, ClosetMaid Dep. page 64. Moreover, ClosetMaid's Interrogatory Responses that ClosetMaid considered consumer reports on applicants to determine if the results of the consumer report might adversely affect the applicant's ability to perform the job or create potential liability for ClosetMaid.  Further, evidence of violent behavior could form the basis of rejection from employment.  ECF 93, Ex. 10,  Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

Furthermore, ClosetMaid's standard form application asked the following question for all employees:

> "Have you ever been convicted of or pleaded guilty or Nolo Contendre (no contest or an Alford plea) to any felony?"   ___yes ___no (The fact you have been convicted of a crime will not automatically disqualify you from further consideration for employment.) If "yes" please describe in detail and attach to application.

ECF 16-1, page 6 of 9, Ex. 1 to First Amended Complaint.

11.   *Representatives of ClosetMaid's human resource staff have worked collaboratively to ensure FCRA compliance and their efforts have involved researching human resource sources including the Society for Human Resource Management*

("SHRM"), the Bureau of Labor Reporting, and AER Employer Legislative; consulting government and legal websites; attending seminars; continually reviewing, revising and updating their FCRA forms; and participating in human resource discussion groups. 2009 Beal Dep., pp. 31-35, 45, & 75-76; Tab 1; July 29, 2010 Deposition of Catherine B. Beal ("2010 Beal Dep."), p. 22, **Tab 5**; Boring Dep., pp. 24-25, **Tab 4**.

**OBJECTION:** NOT A MATERIAL FACT. This statement does not set forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome. To the extent that ClosetMaid proffers this purported statement that ClosetMaid, through its employees, had adopted a reasonable reading of the relevant FCRA provisions, 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), such facts are not material. *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 251 (3d Cir. 2012)("*Safeco* requires only that "the company's reading of the statute *is* objectively reasonable," *Safeco,* 551 U.S. at 70 n. 20, 127 S.Ct. 2201 (emphasis added), and that the interpretation that would allow the conduct in question is "an interpretation that could reasonably have found support in the courts," *id. Safeco* does not require that the defendant actually have made such an interpretation at any particular point in time.").

**RESPONSE.** DISPUTED. To the extent, that evidence of ClosetMaid's actual reading of these FCRA provisions is deemed material, Plaintiff DENIES based upon the following facts. On June 12, 1998, an FCRA Staff Opinion letter was issued by the Federal Trade Commion known as Haynes-Hauxwell. ECF 93, Exhibit 6. The Haynes-Hauxwell Staff Opinion Letter states:

> The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that

benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result.

ECF 93, Exhibit 6. On October 21, 1997, an FCRA Staff Opinion letter was issued

by the Federal Trade Commission known as Steer-Lamb. ECF 93, Exhibit 7. The

Steer-Lamb Staff Opinion Letter states, in part:

> We believe that including an authorization in the same document with the disclosure, as you suggest, will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.

ECF 93, Exhibit 7.  On or about August 31, 2004, ClosetMaid signed a Securint

Application and Service Agreement with Securint, a consumer reporting agency, in

order to obtain consumer reports about prospective employees, for employment

purposes. ECF 93, Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8,

pp.188-192; ECF 93,  Ex. 4, Boring Dep.  27:1-30:7  Boring Dep. Ex. 2, pp.188-192;

ECF 93, Ex. 8,  Price  Dep. pp. 35:9-38-19, Price Dep. Ex.2  188-192. Appendix A to

the Securint contract provided as follows:

Permissible Purpose-Employment

Costumer hereby expressly acknowledges and agrees that, in addition to the terms and conditions of the Securint Application And Service Agreement, use of Securint Services for employment purposes is also subject to the following provisions:

1)     prior to procuring a consumer report, a clear and conspicuous disclosure, consisting solely of the disclosure, that a consumer report might be obtained for employment purposes must be made to the applicant, and

2) the applicant shall authorize in writing the right to procure the consumer report; and

3)     prior to taking any adverse action, based whole or in part upon the consumer report, Customer must provide the applicant a

> copy of the consumer report and a summary of the consumer's rights as
> prescribed by the Federal Trade Commission, and . . .

ECF 93, Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, p. 5 of 14

of contract; ECF 93, Ex. 4, Boring Dep.  27:1-30:7,  Boring Dep. Ex. 2, p. 5 of 14 of

contract; ECF 93, Ex. 8,  Price  Dep. pp. 35:9-38-19, Price Dep. Ex.2  p. 5 of 14 of

contract. The Sucurint Application and Service Agreement provided a NOTICE TO

USERS OF CONSUMER REPORTS; OBLIGATIONS OF USERS UNDER THE

FCRA that provided, in part:

**II.    OBLIGTIONS   OF   USERS   WHEN   CONSUMER REPORTS ARE   OBTAINED   FOR   EMPLOYMENT PURPOSES**

> If information from a CRA is used for employment purposes,
> the suer has specific duties, which are set forth in Section 604(b) of the
> FCRA.  The user must:

> Make a clear and conspicuous written disclosure to the
> consumer before the report is obtained, in a document that consists
> solely of the disclosure, that a consumer report may be obtained.

> Obtain prior written authorization from the consumer.

> Certify to the CRA that the above steps have been followed,
> that the information being obtained is taken based on the consumer
> report, a copy of the report and a summary of  the consumer's rights
> will be provided to the consumer.
> Before taking an adverse action, provide a copy of the report to
> the consumer as well as the summary of the consumer's rights. (The
> user should receive this summary from the CRA, because Section 604
> (b)(1)(B) of the FCRA requires CRAs to provide a copy of the
> summery with each consumer report obtained for employment
> purposes)

ECF 93, Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, p. 10 of 14

of contract; ECF 93, Ex. 4, Boring Dep.  27:1-30:7  Boring Dep. Ex. 2, p. 10 of 14 of

contract. The ClosetMaid FCRA Information/Consent forms used by ClosetMaid

during the Class Period were researched and developed by Cathy Beal or Mary Price.

ECF 93 Ex. 3, Dep. of ClosetMaid  page 31:10; 34:22-25; 35:1-2044:24-47-1.; ECF 93, Ex. 4, Boring Dep.  43:19-44-6; ECF 93, Ex. 8,  Dep. of Price  pp. 28:2-29-1. To establish the FCRA Disclosure/Consent Forms and the Pre-Adverse Action Procedures, ClosetMaid through its employees reviewed government and legal websites, among other resources. ECF 93, Ex. 3, Dep. of ClosetMaid  page 31:10; 32:6-7, 34:22-25; 35:1; 44:24-47-1; ECF 93, Ex. 9, Response to Interrogatory No. 1 at p. 4 -5 of ClosetMaid Answers To Plaintiffs' First Set Of Interrogatories Pursuant To January 11, 2013 Order. To establish the FCRA Disclosure/Consent Forms used prior to July 1, 2009, ClosetMaid did not consult with any in-house or outside lawyer.  ECF 93, Ex. 3 Dep. ClosetMaid,  pp. 14:16-24, 15:1-4, 22:9-13; 33:21 to 34:8; ECF 93, Ex. 8 Dep. of Price p. 30:12-18. To establish the FCRA Disclosure/Consent Forms used prior to July 1, 2009, ClosetMaid did not review the Securint Application And Security Agreement.  ECF 93, Ex. 3, Dep. of ClosetMaid page 94:1-22.  ClosetMaid had in the past obtained legal counsel available from its parent company, Emerson Electric Company.  ECF 93, Ex. 3 Dep. ClosetMaid,  pp. 38:2-17. ClosetMaid did not  consult with any lawyers or legal counsel from Emerson Electric in creating the FCRA Information/Consent Forms. ECF 93, Ex. 3  Dep. ClosetMaid, pp. 35:13-22.  In March 1999, the Federal Trade Commission published a "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know".  ECF 93, Ex. 13  The Federal Trade Commission publication "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know" provides:

> *A job applicant gives you the okay to get a consumer report. Although the credit history is poor and that's a negative factor, the applicant's lack of relevant experience carries more weight in your decision not to hire. What's your responsibility?*

In any case where information in a consumer report is a factor in your decision — even if the report information is not a major consideration — you must follow the procedures mandated by the FCRA. In this case, you would be required to provide the applicant a **pre-adverse action disclosure** before you reject his or her application. When you formally reject the applicant, you would be required to provide an **adverse action notice**.

12. *In fact, ClosetMaid's Salaried Recruiting Procedure specifically addresses FCRA compliance and directs its Human Resource Representatives to personally notify candidates whose applications are rejected because of a consumer report. 2009 Beal Dep., Ex. 6, p. 168,* **Tab** *2.*

**OBJECTION:** NOT A MATERIAL FACT. This statement does not set forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome. The material facts must bear on whether ClosetMaid established a Pre-Adverse Action procedure that: 1) identifies job applicants who are entitled to Pre-Adverse Action notices, that is, those job applicants as to whom the employer might consider not hiring based upon the results of a consumer report, and; 2) establishes a sufficiently long "hold" on any final employment decision until the disclosures required by 15 U.S.C. § 1681b(b)(3) are provided to them. See Plaintiffs Memorandum Of Law In Support Of The Motion For Partial Summary Judgment, ECF 91 at pp. 18-15.

**RESPONSE:** DISPUTED. The Salaried Recruiting Procedure does not provide guidance to ClosetMaid hiring personnel on this requirement.  ClosetMaid has never instituted a written policy and procedure that provides guidance to its hiring personnel as to when a Pre-Adverse Action Notice must be provided to a prospective

employee. ECF 93, Ex. 3, Dep. of ClosetMaid, page 63:4-64:22, ECF 93, Ex. 10 Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

13.   *Between December 19, 2006 and July 1, 2009, any applicant that completed an employment application was provided with a copy of ClosetMaid's "Fair Credit Reporting Act Authorization Form - Notice of Intent to Obtain a Consumer Credit Report" ("Notice") and an "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" ("Authorization") if CIosetMaid determined it was interested in pursuing the applicant. 2009 Beal Dep., pp. 30, 52-53, **Tab** 1; 2009 Beal Dep. Ex. 6, pp. 178-179, Tab 2; 2010 Beal Dep., pp. 36,48-49, **Tab** 5; Boring Dep., pp. 31-32, **Tab** 4.*

**RESPONSE:** DENIED.   The form called "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit Report" was *not* provided or used by ClosetMaid with respect to all Disclosure Class Members. ClosetMaid's "Salaried Recruiting Procedure" document was established as of May 25, 2004. ECF 93, Ex. 3, ClosetMaid Dep. p.40, Ex. 6.  At this initial point, both documents-the form called the "Fair Credit Reporting Act Authorization Form - Notice of Intent to Obtain a Consumer Credit Report" and a form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" were to put into use.  ECF 93, ClosetMaid Dep. p. 59:22-25. However, at some point in time thereafter, on a date that ClosetMaid does not remember, the document entitled "Fair Credit Reporting Act Authorization Form - Notice of Intent to Obtain a Consumer Credit Report" was discontinued for purposes of "simplification".

ECF 93, ClosetMaid Dep. p. 59:10-18. The document entitled "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" remained in use up until it was replaced as of July 2009 with a new form entitled "Combined Disclosure Notice and Authorization to Obtain a Consumer Credit Report". ECF 93, Ex. 3, Dep. Of ClosetMaid 57:2-58:9;  ECF 93 Dep. of J. Boring, 31:14 -41:8;  Ex. 3, p. 440, Ex. 4, p. 285, Ex.5, p. 291, Ex. 6, p. 309; Ex. 7, p.  424.

Accordingly, a representative sampling of Disclosure Class Member files that were produced by ClosetMaid demonstrate that *only* a document entitled "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" or some variation thereof were provided by ClosetMaid and signed by the class member. See Plaintiffs' Appendix of Exhibits In Opposition To The Motion For Summary Judgment, Ex. 1, Pietz Declaration as follows:

> Exhibit 1a, R. Butler application file, bates nos. CMC027392-CMC027401 with signed "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" at p. CMC027398;
>
> Exhibit 1b, M. Chacon, bates nos. CMC026810-CMC02689 with signed "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" at p. CMC026816;
>
> Exhibit 1c T. Champion bates nos. CMC027517- CMC027527 with signed "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" at p. CMC027523;
>
> Exhbit 1d, C Molely application file, bates nos. CMC017408–CMC017420 with signed "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" at p. CMC 017415;
>
> Exhibit 1e, application file of W. Dovonte, bates nos. CMC025536-CMC025551 with signed "California Authorization For Release of Information for Employment Purposes" at p. CMC0025543.

14.     *ClosetMaid used the Notice and Authorization to notify applicants that it intended to procure their consumer reports and that was requesting their*

*authorization to do so. 2009 Beal Dep., pp. 55-57, Tab 1; 2009 Beal Dep. Ex. 6, pp. 178-179, Tab 2.*

     **RESPONSE:** ADMITTED IN PART AND DISPUTED IN PART.  ClosetMaid did not use the form called "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit Report" with respect to all Disclosure Class Members. However, the form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" or some variation of that form was used with respect to all Class Members. See Response To No. 13 above.  It is admitted that the form called "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit Report" did provide some notice that a consumer report would be obtained. However, the form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" or some variation of that form provided greater notice because it disclosed that ClosetMaid intended to obtain an "investigative consumer report" as defined by 15 U.S.C.A. § 1681a which provides:

> The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

ClosetMaid was required to also disclose that an "investigative consumer report" might also be procured. *See also* 15 U.S.C.A. § 1681d(a).

> A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a

writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title;

The disclosure required by 15 U.S.C.A. § 1681b(b) and  15 U.S.C.A. § 1681d(a) may be combined so long as the disclosure does not include extraneous information. See Supp. Pl. App. Opp. MSJ, Ex. 2 FTC Staff Opinion Letter Brinkerhoff -Wilner March 25, 1999.

Accordingly, the form called "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit Report" did not operate as a legally sufficient form of disclosure as to the nature and type of consumer report that ClosetMaid intended to procure.  However, the form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" or some variation of that form included the required disclosure that an "investigative consumer report" may be obtained and, therefore, was more comprehensive.

15.    *On December 13, 2006, Plaintiff completed an application for employment with ClosetMaid. November 16, 2009 Deposition of Regina C. Reardon, Reardon Deposition Exhibit ("Reardon Dep. Ex.") C, Tab 6.*

**RESPONSE:** ADMITTED

16.    *On that same date, Plaintiff executed CIosetMaid's Notice and Authorization Forms. Reardon Dep. Ex. C, Tab 6.*

**RESPONSE:**  ADMITTED  that Ms. Reardon signed a form called a "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit

Report" and then a form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes".

17.     *Upon doing so, Plaintiff understood that ClosetMaid intended to procure her consumer report, and further, understood that she was authorizing ClosetMaid to do so. November 16,2009 Deposition of Regina C. Reardon ("Reardon Dep.") pp. 20-21, Tab 7.*

**RESPONSE:** ADMITTED IN PART AND DENIED IN PART. This statement is denied insofar as it does not accurately state Ms. Reardon's testimony. Page 7 of Ms. Reardon's deposition indicates that she understood that ClosetMaid was "pulling a credit report."

18.     *Included in the Authorization is a narrow release; however, the Notice contains no such release language. 2009 Beal Dep. Ex. 6, pp. 178-79, Tab 2.*

**OBJECTION:** ARGUMENTATIVE AND NOT A MATERIAL STATEMENT OF FACT**.**  This statement is argumentative because it requires Plaintiffs to adopt ClosetMaid's argument that the Waiver Or Release Of Rights contained in the form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" is a "limited" release. It is not. Further, this statement requires Plaintiffs to adopt ClosetMaid's argument that the form called   "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" operates only as the authorization required by § 1681b(b)(2)(ii), when, in fact, it operates both as a disclosure and authorization required by § 1681b(b)(2)(i) and (ii).

**RESPONSE:** DISPUTED that the release is "narrow" and that the form required to provide disclosure that a consumer report may be obtained pursuant to §

1681b(b)(2)  did not contain a release.  The form called "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit Report" did not operate as a legally sufficient form of disclosure as to the nature and type of consumer report that ClosetMaid intended to procure.  However, the form called "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" or some variation of that form included the required disclosure that an "investigative consumer report" may be obtained and, therefore, was more comprehensive.  This form does include a Waiver Of Rights with respect to all Disclosure Class Members. See Response to Nos. 13 and 14 above which are incorporated here.

19. *By July 1, 2009, ClosetMaid discontinued its use of the Notice and Authorization and instead began using its "Combined Disclosure Notice and Authorization to Obtain a Consumer Credit Report Form." 2009 Beal Dep. Ex. 7, p. 440, Tab 8; Boring Dep., pp. 31-32, Tab 4; 2013 Boring Deposition Exhibit ("Boring Dep. Ex.") 3, p. 440, Tab 9.*

**RESPONSE:** DENIED IN PART AND ADMITTED IN PART.  ClosetMaid discontinued the form called a "Fair Credit Reporting Act Authorization Form-Notice of Intent to Obtain a Consumer Credit Report" at a point in time earlier than July 2, 2009, but ClosetMaid does not know when. The form entitled "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" or some variation of that form was discontinued as of July 2009. See Response To Nos. 13 and 14 above which are incorporated.

20. *ClosetMaid automatically issued both the copy and summary of FCRA rights in all circumstances where it intended to take an adverse employment*

*based in whole or in part on a consumer report. 2009 Beal Dep., pp. 67-69, 126-127, Tab 1; 2009 Beal Dep. Ex. 6, p. 184, Tab 2; 2010 Beal Dep., p. 29; Tab 5.*

**OBJECTION:** ARGUMENTATIVE AND NOT A MATERIAL STATEMENT OF FACT**.**  This statement is argumentative because it requires Plaintiffs to adopt ClosetMaid's argument that the disclosures required by § 1681b(b)(3) need not be made until a final employment decision has been made. This statement does not set forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome. The material facts must bear on whether ClosetMaid established a Pre-Adverse Action procedure that: 1) identifies job applicants who are entitled to Pre-Adverse Action notices, that is, those job applicants as to whom the employer might consider not hiring based upon the results of a consumer report, and; 2) establishes a sufficiently long "hold" on any final employment decision until the disclosures required by 15 U.S.C. § 1681b(b)(3) are provided to them. See ECF 91, Plaintiffs Memorandum Of Law In Support Of The Motion For Partial Summary Judgment at pp. 18-24.

**RESPONSE:** DISPUTED.  ClosetMaid's Fed.R.Civ.P. 30(b)(6) deponent testified that if there is any adverse action taken based upon the consumer report, then the consumer report and summary of rights are given. ECF 93, Ex. 3, ClosetMaid Dep. p. 126:6-127:3.  In other words, ClosetMaid provides the Pre-Adverse Action notices only when the final employment decision has been made and only if the reason for not making the hire is based solely on the consumer report.

21.     *Plaintiffs consumer report contained credit history information disqualifying her from employment as a Territory Supervisor/Manager at ClosetMaid. Reardon Dcp. Ex. E, **Tab** 10.*

**RESPONSE:** ADMITTED.

22.     *As such, and by letter dated December 18, 2006, ClosetMaid notified Plaintiff that it may not offer her that position based in whole or in part on information contained in her consumer report ("Adverse Action Letter"). Reardon Dep. Ex. E, **Tab** 10.*

**RESPONSE:** DENIED  in that Plaintiff received the said December 18, 2006 letter on December 22, 2006 when she came home from work that evening. ECF 93, Ex. 4 Dep. of Boring, pp. 72:25-76:7; Ex. 12 , page 229, email from R. Cathy Reardon dated, December 22, 2006 at 7:30 PM.  Accordingly, Plaintiff was "notified" of the December 18, 2006 letter on December 22, 2006, after ClosetMaid had sent the December 22, 2006 letter.

23.     *The Adverse Action Letter included a copy of Plaintiffs consumer report and a summary of FCRA rights. Reardon Dep. Ex. E, **Tab** 10.*

**RESPONSE:** ADMITTED.

24.     The Adverse Action Letter notified Plaintiff that ClosetMaid would wait five (5) business days from the date of the letter before making its hiring decision. Reardon Dep. Ex. E, **Tab** 10.

**RESPONSE:** ADMITTED.

25.     *By letter dated December 22, 2006, exactly five (5) business days from the date it sent the Adverse Action Letter, ClosetMaid notified Plaintiff that it would not be offering her a position based in whole or in part on the result of her consumer report. Reardon Dep. Ex. F, **Tab** 11; 2009 Beal Dep., p. 129, **Tab** 1.*

**RESPONSE:** DENIED in that 5 business days from December 18, 2006

would be December 26 or December 27, 2006. Plaintiff Supp App. Ex. 3. Denied also in that Plaintiff was not notified of the decision not to hire her until sometime after December 22, 2006.

26.    *In all instances where ClosetMaid issued an adverse action letter, it waited at least five (5) days, though usually longer, before sending a second letter notifying an applicant of ClosetMaid's adverse hiring decision. 2009 Beal Dep., pp. 67-69,* **Tab** *1.*

**OBJECTION:** ARGUMENTATIVE AND IMMATERIAL . For any person so classified they would not be a member of the Pre-Adverse Action Sub-Class.

**RESPONSE:** DENIED. Since December 1, 2006 ClosetMaid has sent to 3 persons, not including Cathy Reardon,   a copy of their consumer and a FTC Summary Of Rights pursuant to 15 U.S.C. § 1681b(b)(3). ECF 93, Ex. 11, Defendant ClosetMaid Corporation's Answers and Responses To Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 2 and Answer Thereto referring to an Exhibit A of documents including bates numbers 130 to 163 including documents relating to job applicants Edgar Garcia, (bates 130-141); Dawn Rust (bates nos. 141 to 158) and Walter Thomas (bates nos. 159-163).

27.    *Class Counsel specifically identifies seventy-seven (77) individuals who purportedly comprise the Pre Adverse Action Sub-Class. September 13, 2010 Declaration of Christopher Colt North,* **Tab** *12.*

**RESPONSE:** ADMITTED.

28.    *Of those seventy-seven (77) individuals, seventy-two (72) were either not subject to an adverse action entirely or not subject to an adverse action based in whole or in part on the information contained in their respective consumer reports. March 25, 2013 Declaration of Patricia Dameron ("Dameron Decl."),* **Tab** *13; March 25,*

*2013 Declaration of Merlyn Hemandez-Opio ("Hemandez-Opio Decl.),* **Tab** *14; March 25, 2013 Declaration of Jennifer Boring ("Boring Decl."),* **Tab** *15.*

**OBJECTION:** ARGUMENTATIVE, IMMATERIAL AND BASED UPON IMPROPER EMPLOYEE DECLARATIONS. This statement is argumentative because it requires Plaintiff to adopt ClosetMaid's reading of 15 U.S.C. § 1681B(B)(3) that the required disclosures are to be made only if the sole basis for not hiring is because of information in a consumer report. Further, this statement does not set forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome. Whether the § 1681B(B)(3) disclosures must be made does not depend on the actual, final basis for not hiring an applicant. The material facts must bear on whether ClosetMaid established a Pre-Adverse Action procedure that: 1) identifies job applicants who are entitled to Pre-Adverse Action notices, that is, those job applicants as to whom the employer might consider not hiring based upon the results of a consumer report, and; 2) establishes a sufficiently long "hold" on any final employment decision until the disclosures required by 15 U.S.C. § 1681b(b)(3) are provided to them. See Plaintiffs Memorandum Of Law In Support Of The Motion For Partial Summary Judgment at pp. 18-24 .

**RESPONSE:** DISPUTED. The consumer reports obtained about each member of the Pre-Adverse Action class contained a report of a conviction for a felony, a serious misdemeanor, a serious traffic conviction such as DUI, or a misdemeanor. ECF 93, Ex. 12 and 13, Declaration of C. North. The final employment decision as to the 69 members of the Pre-Adverse action sub-class was that they would not be working for ClosetMaid. ECF 93, Ex. 4, Dep.Of Boring page 57:9-72:1, Boring

Dep. Ex. 10 and Boring Exhibit 11, with attached Declarations of Hernandez-Opio and Patricia Dameron, bates nos. CM 5093-5098. With respect to the 69 persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not have in place a written or standard procedure to send these persons a copy of the consumer report obtained about them and an FTC Summary Of Rights notice in light of the negative information in their consumer report. ECF 93, Ex. 3, Dep. of ClosetMaid, page 63:4-64:22, ECF 93, Ex. 10 Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6. With respect to the 69 ClosetMaid persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not place a "hold" on the final decision whether to hire or not hire said persons in order to send these 69 persons a copy of their consumer report and an FTC Summary Of Rights before ClosetMaid reached any final decision to not hire them . ECF 93, Ex. 12 Declaration of North with chart. With respect to the 69 persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not send any of these persons a copy of their consumer report and an FTC Summary Of Rights.  ECF,93 Ex. 12 Declaration of North with chart.

29.    *Twenty-two (22) of the seventy-seven (77) individuals identified by Plaintiff as comprising the Pre Adverse Action Sub-Class suffered no adverse action. Dameron Decl.,* **Tab** *13; Hemandez-Opio Decl.,* **Tab** *14; Boring Decl.,* **Tab** *15.*

**OBJECTION:** ARGUMENTATIVE, IMMATERIAL AND BASED UPON IMPROPER EMPLOYEE DECLARATIONS. This statement is argumentative because it requires Plaintiff to adopt ClosetMaid's reading of 15 U.S.C. § 1681b(b)3)  that the required disclosures are to be made only if the sole basis for not hiring is because of information in a consumer report. Further, this

statement does not set forth a "material fact" as required by W.D.LCvR 56B.1 in that its truth or falsity will not be determinative of the outcome.  Whether the § 1681b(b)3) disclosures must be made does not depend on the actual, final basis for not hiring an applicant.   The material facts must bear on whether ClosetMaid established a Pre-Adverse Action procedure that: 1) identifies job applicants who are entitled to Pre-Adverse Action notices, that is, those job applicants as to whom the employer might consider not hiring based upon the results of a consumer report, and; 2) establishes a sufficiently long "hold" on any final employment decision until the disclosures required by 15 U.S.C. § 1681b(b)(3) are provided to them. See ECF 91, Plaintiffs Memorandum Of Law In Support Of The Motion For Partial Summary Judgment at pp. 18-24.

**RESPONSE:** DENIED. See the Response to No. 28 above which is incorporated here.

30. *Fifty (50) of the seventy-seventy (77) were subjected to an adverse employment action that was not based in whole or in part upon a consumer report. Dameron Decl.,* **Tab 13***; Hemandez-Opio Decl.,* **Tab 14***; Boring Decl.,* **Tab 15***.*

**OBJECTIONS AND RESPONSE:** The objections and response to No. 29 above are adopted and incorporated here.

### PLAINTIFF'S COUNTER STATEMENT OF ADDITIONAL MATERIAL FACTS NOT IN DISPUTE

#### Preliminary Statement

On May 24, 2013, Plaintiffs filed a Motion For Partial Summary Judgment as to Liability ("ECF 90"), a Memorandum In Support (ECF 91) and a Concise Statement Of Material Facts. ECF 92.   Plaintiffs Concise Statement Of Material Facts (ECF 92) filed in support of the Motion For Partial Summary Judgment provides additional facts that are material

and that are necessary for resolution of the motion.  Plaintiffs hereby restates that Concise Statement Of Material Facts below as the Responsive Statement of Additional Facts that is required by W.D. LCvr 56C 1. c.

1.      On or about December 13, 2006, the Representative Plaintiff, Cathy Reardon applied for a job with Defendant ClosetMaid Corporation. ECF 93,[2] Exhibit 1, ECF 16, First Amended Complaint ("FAC") ¶ 24; ECF 16-1; ECF 93 Exhibit 2; ECF 19, Answer, ¶ 24 and 25.

2.      As part of the application packet of documents, ClosetMaid provided to Reardon a document entitled, "CLOSETMAID AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT AND INFORMATION FOR EMPLOYMENT PURPOSES". ECF 93 Ex. 1,ECF 16, Complaint ¶ 27, ECF 16-1, page 5 of 9; ECF 93 Ex. 2 ECF 19, Answer, ¶ 24 and 25. (hereinafter this document is referred to as the "ClosetMaid FCRA Information/Consent Form".

3.      The Closetmaid FCRA Information/Consent Form presented to Reardon provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> Pursuant to the Fair Credit Reporting Act, I hereby authorize ClosetMaid and its designated agents to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment, promotion, reassignment or retention as an employee. I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal,

---

[2]      ECF 93 refers to the Electronic Case Filing number for Plaintiffs' Appendix of Exhibits In Support Of the Motion For Partial Summary Judgment that was submitted with Plaintiffs' Motion For Partial Summary Judgment as to Liability.

state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration and any other public records.

ECF 93 Ex. 1, ECF 16, Complaint ¶ 27, ECF 16-1, page 5 of 9; ECF 93 Ex. 2 ECF 19, Answer, ¶ 24 and 27.

4.      The ClosetMaid FCRA Information /Consent Form provided the following provision:

I hereby release ClosetMaid, and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release.  You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

(hereinafter "Waiver Of Rights Provision"); ECF 93, Ex. 1, ECF 16, Complaint ¶ 27, ECF 16-1, page 5 of 9; ECF 19, ECF 93, Ex. 2, Answer, ¶ 24 and 27.

5.      Thereafter, ClosetMaid obtained a consumer report on Reardon. ECF 93 Ex. 1, ECF 16, Complaint ¶ 33; ECF 93 Ex. 2, ECF 19, Answer, ¶ 33.

6.      ClosetMaid operates its business from 4 different geographical locations in the United States including Ocala, Florida; Belle Vernon, Pennsylvania; Grantsville, Maryland; and Chino, California.  ECF 93 Ex. 3, Dep. Of ClosetMaid page 96:10- 111:13 discussing Exhibit 9 to deposition[3]; ECF 93 Ex. 4, Dep. of Jennifer Boring, p. 9: 18-19.

7.      The ClosetMaid FCRA Information /Consent form used for Reardon is the one used by the Ocala, Florida location.  ECF 93 Ex. 3, Dep. Of ClosetMaid page  118:111-15, ClosetMaid Dep. Ex. 13 and Ex. 15 p. 209; ECF 93

---

[3]      The deposition of ClosetMaid refers to the deposition of Catherine B. Beal, Vice President of Human Resources for Closetmaid, who was designated to testify as a Fed.R.Civ.P. 30(b)(6) deponent. ECF 93Ex. 3.

Ex. 4, Dep. of Jennifer Boring, p. 37:3, Ex. 7, p. 424 and Boring Dep. Ex. 12, p. 209.

      8.     The ClosetMaid FCRA Information/Consent form used at the Belle Vernon, Pennsylvania location provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> I hereby authorize ClosetMaid/Emerson Electric Co., and its designated agents to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment purposes.
>
> I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
>
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal, state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration and any other public records.

ECF 93 Ex. 3, Dep. Of ClosetMaid page 115:6-12, ClosetMaid Dep. Ex. 10, page 285.

      9.     The FCRA Information/Consent form used at the Belle Vernon, Pennsylvania location included the following Waiver Of Rights Provision:

> I hereby release ClosetMaid/Emerson Electric Co., and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release.  You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

ECF 93 Ex. 3, Dep. Of ClosetMaid page 115:6-12, ClosetMaid Dep. Ex. 10, page 285.

10.     The ClosetMaid FCRA Information/Consent form used at the Grantsville, Maryland location provided the following information about the nature and scope of a consumer report to be obtained by ClosetMaid:

> I hereby authorize ClosetMaid/Emerson Electric Co., and its designated agents to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment purposes.
>
> I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
>
> Verification of Social Security Number, current and previous residences, employment history including personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any federal, state, or county jurisdictions, birth records, motor vehicle records to include traffic citations and registration and any other public records.

ECF 93 Ex. 3, Dep. Of ClosetMaid 115:6-12, ClosetMaid Dep. Exhibit 10, p. 285;

ECF 93 Ex. 4, Dep. of Jennifer Boring, p. 35:8-36:13, Boring Ex. 4, p. 285.

11.     The ClosetMaid FCRA Information/Consent form used at the Grantsville, Maryland location included the following Waiver Of Rights Provision:

> I hereby release ClosetMaid/Emerson Electric Co.,  and its agents, officials, representatives, or assigned agencies, including officers, employees or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release.  You may contact me as indicated below. I understand that that a copy of this authorization may be given at any time, provided I do so in writing.

ECF 93 Ex. 3, Dep. Of ClosetMaid page 117:2-118:9; ClosetMaid Dep. Exhibits

11,  p. 291 and 12, p.309;  ECF 93 Ex. 4, Dep. of Jennifer Boring, p. 35:8-36:13,

Boring Ex. 4, p. 285.

12.     The ClosetMaid FCRA Information/Consent form used at the

Chino, California location provided the following information about the nature and

scope of a consumer report to be obtained by ClosetMaid:

> By my signature below, I consent to have comprehensive review of
> my background causing a consumer report and/or an investigative
> consumer report to be generated for employment purposes. I hereby
> authorize Do+Able Products Division/Emerson Electric Co. to
> obtain a background report from:
>
> 
>
> LexisNexis® Express Screening
> Post Office Box 812289
> Boca Raton, Fl. 33481
>
> 
>
> I understand that the scope of the consumer report/investigative
> consumer report will include: (An "X" in the box denotes this report
> is being requested and generated.)
>
> | | |
> |---|---|
> | X Verification of social security number | X Current and previous addresses |
> | X Employment history including all personel files | X Education |
> | X Character references | X Credit history and reports |
> | X Motor Vehicle records to include traffic citations and registration | X Birth records |
> | X Criminal history from any criminal justice agency in any or all federal, state county jurisdictions | |

ECF 93 Ex. 3, Dep. Of ClosetMaid page 118:20, ClosetMaid Dep. Ex. 114, page 8

of Exhibit entitled "California Authorization For Release of Information For

Employment Purposes; ECF 93 Ex. 4, Dep. of Jennifer Boring, p. 37:8-38:3,

Boring Dep. Ex. 8 page 8 of Exhibit entitled "California Authorization For Release

of Information For Employment Purposes."

     13.     The ClosetMaid FCRA Information/Consent form used at the

Chino, California location included the following Waiver Of Rights Provision:

> I hereby release D+Able Products/Emerson Electric and its agents,
> officials, representatives, or assigned agencies, including officers,
> employees or related personnel both individually and collectively,
> from any and all liability for damages of whatever kind, which may
> at any time, result to me, my heirs, family, or associates because of
> compliance with this authorization and request to release.  You may
> contact me as indicated below.

ECF 93 Ex. 3, Dep. of ClosetMaid page 118:20, ClosetMaid Dep. Ex. 114, page 8 of Exhibit entitled "California Authorization For Release of Information For Employment Purposes"; ECF 93 Ex. 4, Dep. of Jennifer Boring, p. 37:8-38:3, Boring Dep. Ex. 8 page 8 of Exhibit entitled "California Authorization For Release of Information For Employment Purposes."

14.     The First Amended Complaint in this action was filed on April 16, 2009. ECF 93 Ex. 1, ECF 16.

15.     The FAC alleged that ClosetMaid violated 15 U.S.C. § 1681b(b)(2)(A) (i) and (ii) which provides:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a *person* may not procure a *consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –*
>
> (i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes*; and*
>
> (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

ECF 93 Ex. 1, ECF 16, Complaint, ¶¶ 18-31; 51-60  .

16.     As a result, of the allegations made in the FAC, ClosetMaid revised its FCRA Information/Consent Forms by removing the Waiver Of Rights from its forms. ECF 93 Ex. 3, Dep. Of ClosetMaid 57:2-58:9; ECF 93 Ex. 4, Dep. of J. Boring, 31:14 -32:9, Ex. 3, p. 440.

17.     As of July 1, 2009 ClosetMaid no longer uses FCRA Information/Consent forms that include a Waiver Of Rights Provision. ECF 93 Ex. 3,

Dep. Of ClosetMaid 57:2-58:9;  Dep. of J. Boring, 31:14 -41:8;  Ex. 3, p. 440, Ex. 4,

p. 285, Ex.5, p. 291, Ex. 6, p. 309; Ex. 7, p.  424.

18.     Section 1681b(b)(2)(A) (i) and (ii) of the FCRA was enacted by

Congress as amendments to the FCRA effective September 30,1996. S.J. App. 5,

PUBLIC LAW 104–208. Sec. 2403—SEPT. 30, 1996.

19.     On June 12, 1998, an FCRA Staff Opinion letter was issued by the

Federal Trade Commion known as Haynes-Hauxwell.  ECF 93 Exhibit 6.

20.     The Haynes-Hauxwell Staff Opinion Letter states:

The inclusion of such a waiver in a disclosure form will violate Section
604(b)(2)(A) of the FCRA, which requires that a disclosure consist
"solely" of the disclosure that a consumer report may be obtained for
employment purposes. Moreover, it is a general principle of law that
benefits provided to citizens by federal statute generally may not be
waived by private agreement unless Congress intended such a result.

ECF 93 Exhibit 6.

21.     On October 21, 1997, an FCRA Staff Opinion letter was issued by

the Federal Trade Commission known as Steer-Lamb. ECF 93 Exhibit 7.

22.     The Steer-Lamb Staff Opinion Letter states, in part:

We believe that including an authorization in the same document
with the disclosure, as you suggest, will not distract from the
disclosure itself; to the contrary, a consumer who is required to
authorize procurement of the report on the same document will be
more likely to focus on the disclosure. However, such a document
should include nothing more than the disclosure and the
authorization for obtaining a consumer report.

ECF 93 Exhibit 7.

23.     On or about August 31, 2004, ClosetMaid signed a Securint

Application and Service Agreement with Securint, a consumer reporting agency, in

order to obtain consumer reports about prospective employees, for employment

purposes. ECF 93 Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8,

pp.188-192; ECF 93 Ex. 4, Boring Dep.  27:1-30:7  Boring Dep. Ex. 2, pp.188-192;

ECF 93Ex. 8,  Price  Dep. pp. 35:9-38-19, Price Dep. Ex.2  188-192.

24.      Appendix A to the Securint contract provided as follows:

Permissible Purpose-Employment

Costumer hereby expressly acknowledges and agrees that, in addition to the terms and conditions of the Securint Application And Service Agreement, use of Securint Services for employment purposes is also subject to the following provisions:

1)      prior to procuring a consumer report, a clear and conspicuous  disclosure, consisting solely of the disclosure, that a consumer report        might be obtained for employment purposes must be made to the applicant, and

2)      the applicant shall authorize in writing the right to procure the consumer report; and

3)   prior to taking any adverse action, based whole or in part upon   the consumer report, Customer must provide the applicant a copy of the consumer report and a summary of the consumer's rights as prescribed by the Federal Trade Commission, and . . .

ECF 93 Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, p. 5 of 14

of contract; ECF 93 Ex. 4, Boring Dep.  27:1-30:7,  Boring Dep. Ex. 2, p. 5 of 14 of

contract; ECF 93 Ex. 8,  Price  Dep. pp. 35:9-38-19, Price Dep. Ex.2  p. 5 of 14 of

contract.

25.      The Sucurint Application and Service Agreement provided a NOTICE

TO USERS OF CONSUMER REPORTS; OBLIGATIONS OF USERS UNDER

THE FCRA that provided, in part:

**II.   OBLIGTIONS   OF   USERS   WHEN   CONSUMER REPORTS ARE      OBTAINED      FOR      EMPLOYMENT PURPOSES**

If information from a CRA is used for employment purposes, the suer has specific duties, which are set forth in Section 604(b) of the FCRA.  The user must:

Make a clear and conspicuous written disclosure to the consumer before the report is obtained, in a document that consists solely of the disclosure, that a consumer report may be obtained.

Obtain prior written authorization from the consumer.

Certify to the CRA that the above steps have been followed, that the information being obtained is taken based on the consumer report, a copy of the report and a summary of the consumer's rights will be provided to the consumer.
Before taking an adverse action, provide a copy of the report to the consumer as well as the summary of the consumer's rights. (The user should receive this summary from the CRA, because Section 604 (b)(1)(B) of the FCRA requires CRAs to provide a copy of the summery with each consumer report obtained for employment purposes)

ECF 93 Ex. 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Ex. 8, p. 10 of 14

of contract; ECF 93 Ex. 4, Boring Dep.  27:1-30:7  Boring Dep. Ex. 2, p. 10 of 14 of

contract.

26.     The ClosetMaid FCRA Information/Consent forms used by ClosetMaid

during the Class Period were researched and developed by Cathy Beal or Mary Price.

ECF 93  Ex. 3, Dep. of ClosetMaid  page 31:10; 34:22-25; 35:1-2044:24-47-1.; ECF

93 Ex. 4, Boring Dep.  43:19-44-6; ECF 93Ex. 8,  Dep. of Price  pp. 28:2-29-1.

27.     To establish the FCRA Disclosure/Consent Forms and the Pre-Adverse

Action Procedures, ClosetMaid through its employees reviewed government and legal

websites, among other resources. ECF 93  Ex. 3, Dep. of ClosetMaid  page 31:10;

32:6-7, 34:22-25; 35:1; 44:24-47-1; Pl.SJ. Ex. 9, Response to Interrogatory No. 1 at p.

4 -5 of ClosetMaid Answers To Plaintiffs' First Set Of Interrogatories Pursuant To

January 11, 2013 Order.

28.     To establish the FCRA Disclosure/Consent Forms used prior to July 1,

2009, ClosetMaid did not consult with any in-house or outside lawyer.  ECF 93 Ex. 3

Dep. ClosetMaid,  pp. 14:16-24, 15:1-4, 22:9-13; 33:21 to 34:8; ECF 93 Ex. 8 Dep. of

Price p. 30:12-18.

29.     To establish the FCRA Disclosure/Consent Forms used prior to July 1,

2009, ClosetMaid did not review the Securint Application And Security Agreement.

ECF 93 Ex. 3, Dep. of ClosetMaid page 94:1-22.

30.     ClosetMaid had in the past obtained legal counsel available from its

parent company, Emerson Electric Company.  ECF 93 Ex. 3 Dep. ClosetMaid,  pp.

38:2-17

31.     ClosetMaid did not  consult with any lawyers or legal counsel from

Emerson Electric in creating the FCRA Information/Consent Forms. ECF 93 Ex. 3

Dep. ClosetMaid,  pp. 35:13-22.

### FACTS RELATED TO THE "PRE-ADVERSE ACTION" SUB-CLASS CLAIMS

32.      The consumer report obtained by ClosetMaid about Reardon contained

negative credit and criminal history information. ECF 93 Ex. 3 Dep. of ClosetMaid ;

ECF 93 Ex. 4, Boring Dep. 72:25-73:13, Boring Ex. 12, page 220-224.

33.     Closetmaid sent a letter to Reardon dated December 18, 2006, by

regular mail, which contained a copy of the consumer report about Reardon. ECF 93

Ex.3 Dep. of ClosetMaid, pag 127:22-128:3, ClosetMaid Dep. Ex. 15, bates number

216  ECF 93 Ex. 4, Boring Dep. p. 72:7-14, Boring Dep. Ex. 15, page 216.

34.     Four days later ClosetMaid sent a letter to Reardon dated December 22,

2006 informing Reardon that ClosetMaid had decided not to offer her the position for

which she had applied. ECF 93 Ex.  Dep. of ClosetMaid 128:23-129:8, ClostMaid Dep.

Ex. 8, bates number 217;  S.J. App. Ex. 4, Boring Dep. p. 75:16-76:8, Boring Dep. Ex.

12 page 217.

35.     ClosetMaid decided not to offer Reardon the position for which she had applied before Reardon had obtained the consumer report sent by Closetmaid with the letter dated December 18, 2006. ECF 93 Ex.  Dep. of ClosetMaid, 129:6-130:23 ; S.J. App. Ex. 4, Boring Dep. p. 75:16-20, Boring Dep. Ex. 12 page 217.

36.     The basis for ClosetMaid decision not to hire Reardon was the information contained in the consumer report obtained about her. ECF 93 Ex.3  Dep. of ClosetMaid 128:23-129:8, ClostMaid Dep. Ex. 8, bates number 217;S.J. App. Ex. 4, Boring Dep. page 72:25-74:14.

37.     ClosetMaid's hiring procedures require its Human Resources Representatives to make the following investigations into a job applicant: 1) check the applicants references; 2) verify the applicant's employment history; 2) verify the applicant's educational background; and 4) obtain, review and consider a consumer report obtained from a designated consumer reporting agency. ECF 93 Ex.  Dep. ClosetMaid page 40:1-; ClosetMaid Dep. Ex. 6, bates page 168;  S.J. App. Ex. 4, Boring Dep. page 53:5-55-2 and Boring Dep. Ex. 9, page 168.

38.     ClosetMaid has never instituted a written policy and procedure that provides guidance to its hiring personnel as to when a Pre-Adverse Action Notice must be provided to a prospective employee. S.J.App.Ex. 3, Dep. of ClosetMaid, page 63:4-64:22, ECF 93Ex. 10 Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto at page 6.

39.     ClosetMaid considered consumer reports on applicants to determine if the results of the consumer report might adversely affect the applicant's ability to perform the job or create potential liability for ClosetMaid.  Further, evidence of violent

behavior could form the basis of rejection from employment.  ECF 93 Ex. 10,

Defendant ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of

Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto

at page 6.

40.     ClosetMaid's standard form application asked the following

question:

> "Have you ever been convicted of or pleaded guilty or Nolo Contendre (no contest or an Alford plea) to any felony?"   ___yes ___no (The fact you have been convicted of a crime will not automatically disqualify you from further consideration for employment.) If "yes" please describe in detail and attach to application.

ECF 93 Ex. 1, ECF 16-1, page 6 of 9 (form application of C.Reardon),

41.     In ClosetMaid's recruiting process, the Human Resources

representative must verify past employment, education, and take into consideration

the consumer report and background check to identify information, if any, that

disqualifies the candidate from employment.  ECF 93 Ex. 3 Boring Dep. 54:20-25

and 55:1-11.

42.     According to ClosetMaid's policies, a criminal conviction that was

violent in nature would disqualify the applicant from employment because "of

violence in the workplace."  ECF 93 Ex. 3 ClosetMaid Dep. 64:3-7.

43.     In ClosetMaid's recruiting and hiring process results of a

background check that indicated theft, drug possession, assault and forgery were

the types of convictions that caused concern during the hiring process, along with

bad credit ECF 93Ex. 3, Dep. of Boring pages 15:3-12, 5:13-18, 16:16-19, 17:4-12,

15:19-21; 18:14-15.

44.     Since December 1, 2006 ClosetMaid has sent to 3 persons, not including Cathy Reardon,   a copy of their consumer and a FTC Summary Of Rights pursuant to 15 U.S.C. § 1681b(b)(3) .  S.J. App. Ex. 11, Defendant ClosetMaid Corporation's Answers and Responses To Plaintiff's First Set Of Interrogatories and Requests For Production, Interrogatory No. 2 and Answer Thereto referring to an Exhibit A of documents including bates numbers 130 to 163 including documents relating to job applicants Edgar Garcia, (bates 130-141); Dawn Rust (bates nos. 141 to 158) and Walter Thomas (bates nos. 159-163).

45.     From December 1, 2006 until June 30, 2009, ClosetMaid obtained consumer reports on 1,829 job applicants, 1494 of whom were hired, and 299 who were not hired. ECF 93Ex. 3, Dep. Of ClosetMaid, page 96:10 -107:23, ClosetMaid Exhibit 9, Columns designated "#EE's hired" and "FCRA forms completed and background check run (not hired)" and "# Credit Checks".

46.     The consumer reports obtained about each member of the Pre-Adverse Action class contained a report of a conviction for a felony, a serious misdemeanor, a serious traffic conviction such as DUI, or a misdemeanor.  S.J. App. Ex. 12 and 13, Declaration of C. North.

47.     The final employment decision as to the 69 members of the Pre-Adverse action sub-class was that they would not be working for ClosetMaid.  S.J. App.Ex. 4, Dep.Of Boring page  57:9-72:1, Boring Dep. Ex. 10 and Boring Exhibit 11, with attached Declarations of Hernandez-Opio and Patricia Dameron, bates nos. CM 5093-5098.

48.     With respect to the 69 persons listed as being in the Pre-Adverse Action Sub-class ClosetMaid did not have in place a written or standard procedure to send

these persons a copy of the consumer report obtained about them and an FTC Summary

Of Rights notice in light of the negative information in their consumer report.

S.J.App.Ex. 3, Dep. of ClosetMaid, page 63:4-64:22, ECF 93Ex. 10 Defendant

ClosetMaid's Supplemental Answer And Response to Plaintiff's First Set Of

Interrogatories and Requests For Production, Interrogatory No. 16 and Answer thereto

at page 6.

49.     With respect to the 69 ClosetMaid persons listed as being in the Pre-

Adverse Action Sub-class ClosetMaid did not place a "hold" on the final decision

whether to hire or not hire said persons in order to send these 69 persons a copy of their

consumer report and an FTC Summary Of Rights before ClosetMaid reached any final

decision to not hire them . SJ. App. Ex. 12 Declaration of North with chart.

50.     With respect to the 69 ClosetMaid persons listed as being in the Pre-

Adverse Action Sub-class ClosetMaid did not send any of these persons a copy of their

consumer report and an FTC Summary Of Rights.  SJ. App. Ex. 12 Declaration of

North with chart.

51.     In March 1999, the Federal Trade Commission published a "FTC

FACTS for Business: Using Consumer Reports: What Employers Need To Know".

ECF 93Ex. 13

52.     The Federal Trade Commission publication "FTC FACTS for

Business: Using Consumer Reports: What Employers Need To Know" provides:

> *A job applicant gives you the okay to get a*
> *consumer report. Although the credit history is*
> *poor and that's a negative factor, the*
> *applicant's lack of relevant experience carries*
> *more weight in your decision not to hire.*
> *What's your responsibility?*
>
> In any case where information in a consumer

report is a factor in your decision —
even if the report information is not a major
consideration — you must follow the procedures
mandated by the FCRA. In this case,
you would be required to provide the
applicant a **pre-adverse action disclosure**
before you reject his or her application.
When you formally reject the applicant, you
would be required to provide an **adverse
action notice**.


Respectfully submitted,

June 24, 2013                By:      /James M. Pietz

James M. Pietz
Pa I.D. No. 55406
Pietz Law Office LLC
429 Forbes Ave., Suite 1616
Pittsburgh, Pa. 15219
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett, Esq.
Consumer Litigation Associates
12515 Warwick Boulevard
Newport News, Va. 23606
(757) 930-3660
lenbennett@clalegal.com

Christopher North. Esq.
751-A Thimble Shoals Blvd.
Newport News, Va  23606
(757) 873-1010

*Counsel for the Representative And
ClassPlaintiffs*