IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. CATHY REARDON, on behalf of herself and all similarly situated individuals,<br><br>     Plaintiffs,<br><br>vs.<br><br>CLOSETMAID CORPORATION,<br><br>     Defendant. | Civil Action No. 2:08-cv-1730<br><br>Judge Mark R. Hornak<br><br>*Filed Electronically* |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
CLASS PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak, & Stewart, P.C., and pursuant to Federal Rule of Civil Procedure 56 and Western District of Pennsylvania Local Rule 56.1, files this Response in Opposition to Class Plaintiffs' Motion for Summary Judgment.

## I.  INTRODUCTION

Class Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") should be denied because they failed to adduce evidence sufficient to establish that ClosetMaid committed even a negligent violation of the Fair Credit Reporting Act ("FCRA"). Indeed, as the party bearing the burden of proof at trial, Class Plaintiffs face a heightened standard of review for the entry of summary judgment; a standard of review which they cannot satisfy.

As set forth below, Class Plaintiffs fail to establish that ClosetMaid's Notice and Authorization Forms are noncompliant with the FCRA as a matter of law. As such, Plaintiffs' Motion should be denied and judgment should be entered on behalf of ClosetMaid as to Counts I and II of the First Amended Complaint pursuant to ClosetMaid's own Motion for Summary Judgment.

Further, as to Counts III and IV, Plaintiffs' Motion should be denied because they fail to proffer evidence sufficient to prove that ClosetMaid took adverse employment action against the members of the Pre Adverse Action Subclass based in whole or in part on their consumer reports without first providing them with certain prescribed information (i.e., a copy of their consumer report and a summary of FCRA rights) pursuant to 15 U.S.C. §1681b(b)(3). To the contrary, and as set forth in ClosetMaid's Motion for Summary Judgment, judgment should be entered on behalf of ClosetMaid as to these claims because ClosetMaid did indeed comply with the FCRA in all applicable respects.

ClosetMaid hereby incorporates by reference as if fully set forth herein its Motion for Summary Judgment, Statement of Undisputed Material Facts, Memorandum of Law in Support of Motion for Summary Judgment, and Appendix of Record Materials, setting forth the bases for the entry of summary judgment on behalf of ClosetMaid.

## II.    STANDARD OF REVIEW

The standard of review is more stringent where the party who bears the burden of proof at trial seeks summary judgment. See Nat'l State Bank v. Fed. Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Indeed, as the United States Court of Appeals for the Third Circuit has held, "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. Id. (citing Resolution Trust Corp. v. Gill, 960 F.2d 336, 340 (3d Cir. 1992)). Therefore, in order to be entitled to summary judgment, a plaintiff who bears the burden of proof at trial must "produce enough evidence to justify a directed verdict in order to meet its initial burden." Id. at n.2 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986)).

-3-

### III.   ARGUMENT

Plaintiffs' Motion should be denied because they fail to adduce evidence sufficient to prove that ClosetMaid violated the Fair Credit Reporting Act ("FCRA"), let alone "willfully." Indeed, Class Plaintiffs have not proffered evidence sufficient to prove even a negligent violation of FCRA. Yet, Class Plaintiffs gloss over that part of their analysis and instead ask this Court to make a finding of "willful" non-compliance. In fact, Class Plaintiffs seek judgment of willfulness as a matter of law despite the fact that varying courts interpreting the pertinent FCRA provisions have not agreed on whether the types of compliance efforts being attacked in this case are compliant *vel non*.

Nonetheless, the evidentiary record establishes the opposite, i.e., that ClosetMaid complied with the FCRA as a matter of law. But, even if this Court disagrees, Class Plaintiffs fail to adduce sufficient evidence as a matter of law that any such purported violations of the FCRA by ClosetMaid were willful.

### A.   ClosetMaid's Disclosure and Authorization Forms Comply with 15 U.S.C. 1681b(b)(2)(a)(i) and (ii).

In their Motion, Class Plaintiffs contend that ClosetMaid willfully violated the disclosure and authorization provisions of FCRA because it included a "release" in one of its forms provided to prospective employees prior to procuring their consumer reports. See Memorandum of Law in Support of Class Plaintiffs' Motion for Partial Summary Judgment ("Pls' Brief"), p. 9. Even so, ClosetMaid nonetheless complied with 15 U.S.C. §1681b(b)(2)(a)(i) by clearly and conspicuously disclosing its intent to procure consumer reports for employment purposes, and

complied with 15 U.S.C. §1681b(b)(2)(a)(ii) by securing the applicants' written authorization to procure those consumer reports.[1]

It is noteworthy that Class Plaintiffs are not contending that ClosetMaid's forms are somehow deficient in complying with FCRA's requirements that it make a "clear and conspicuous disclosure" of its intent to procure consumer reports pursuant to 15 U.S.C. §1681b(b)(2)(a)(i), or that it secure applicants' "authorization" to do so pursuant to 15 U.S.C. §1681b(b)(2)(a)(ii). Indeed, it is uncontroverted that ClosetMaid satisfied the disclosure and authorization obligations intended by Congress when enacting these FCRA provisions.

Instead, Class Plaintiffs mistakenly argue that the plain meaning of 15 U.S.C §1681b(b)(2)(a)(i) and (ii) prohibits the inclusion of a so-called "Waiver of Rights" (apparently no matter how broad or narrow and regardless of its actual content) because Subsection 15 U.S.C. §1681b(b)(2)(a)(i) contains the phrase "consists solely of the disclosure[.]" Pls' Brief, pp. 9-10. In doing so, Class Plaintiffs focus solely on this disclosure provision and its use of the phrase "in a document that consists solely of the disclosure[,]" while ignoring the separate authorization provision, i.e., Subsection 15 U.S.C. §1681b(b)(2)(a)(ii), along with a fundamental canon of statutory construction: give effect, if possible, to every clause or word of a statute. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 60, (2007)(citing United States v. Menasche, 348 U.S. 528, 538–539 (1955))(quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)).

The uncontroverted evidentiary record shows that ClosetMaid used a set of two distinct documents between December 19, 2006 and July 2009 for disclosing to applicants its intent to procure consumer reports and for securing their authorization to do so:

---

[1] ClosetMaid's compliance efforts in this regard are addressed at length in its Memorandum of Law in Support of its Motion for Summary Judgment, pp. 4-7, 11-16.

1) The Fair Credit Reporting Act Authorization Form – Notice of Intent to Obtain a Consumer Credit Report ("Notice"); and

2) The Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes ("Authorization").

(the Notice and Authorization forms are collectively referred to herein as the "Forms"). See ClosetMaid's Statement of Undisputed Material Facts ("ClosetMaid's Facts"), ¶¶ 13-14. ClosetMaid's use of these two separate forms is wholly consistent with FCRA. In fact, Congress expressly permits employers such as ClosetMaid to secure authorizations to procure consumer reports either in the same document used for making the requisite disclosure or in a different document. See 15 U.S.C. §1681b(b)(2)(a)(ii) (stating ". . . which authorization may be made on the document referenced to in clause (i) . . .") (emphasis added).[2] Here, separate and apart from its Notice Form used to make the requisite disclosure required by 15 U.S.C. §1681b(b)(2)(a)(i), ClosetMaid utilized a different document, referenced herein as the Authorization Form, to secure the requisite authorization required by 15 U.S.C. §1681b(b)(2)(a)(ii). Moreover, unlike 15 U.S.C §1681b(b)(2)(a)(i), there is no statutory pronouncement in 15 U.S.C. §1681b(b)(2)(a)(ii) that would preclude ClosetMaid from limiting the documentary instrument(s) used for securing the authorization solely to one particular form, whether the disclosure form required by 15 U.S.C. §1681b(b)(2)(a)(i) or otherwise.

Class Plaintiffs do not challenge ClosetMaid's Notice Form; rather, they merely challenge the Authorization Form. However, the putatively offending release language contained in the Authorization Form is quite different from the so-called "Waiver of Rights" speciously referenced in Class Plaintiffs' Brief. There is no basis in the evidentiary record for this reference to a "Waiver of Rights" and the accompanying implication that ClosetMaid had

---

[2] For a discussion of statutory construction and the consideration of the meaning of the use of the word "may," see Lopez v. Davis, 531 U.S. 230, 241 (2001).

somehow sought the forbearance of their right to assert a broad array of legal claims.  To the contrary, the actual evidentiary record reveals that ClosetMaid's Authorization Form contained much narrower release language, which states, in pertinent part:

> I hereby authorize [ClosetMaid] . . . to conduct a comprehensive review of my background causing a consumer report and/or investigative consumer report to be generated for employment purposes.
>                     *      *      *
> I hereby release [ClosetMaid] from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family or associates **because of compliance with this authorization** and request to release.

ClosetMaid's Facts, ¶¶ 13, 14, & 18 (emphasis added).

   ClosetMaid's Authorization Form complies with 15 U.S.C §1681b(b)(2)(a)(ii).  Upon execution by job applicants, the Authorization Form unquestionably "endorses" or "empowers" or "justifies" or "permits" ClosetMaid to procure a consumer report.[3]  Any job applicant who refuses or otherwise declines to authorize a prospective employer from procuring a consumer report could assert a claim against the prospective employer pursuant to FCRA if the prospective employer procured a consumer report without the applicant's written authorization.  See 15 U.S.C. §1681b(b)(2)(A)(ii); §1681o.  However, once a job applicant provides such authorization, he or she concedes the right to avoid being the subject of a consumer report for employment purposes by that prospective employer and is no longer able to assert a claim against it for procuring their consumer report.  Here, by authorizing ClosetMaid to procure consumer reports, applicants who signed ClosetMaid's Authorization Form empowered ClosetMaid to procure their

---

[3]   Congress is silent in terms of what language actually effectuates the authorization.  Even so, Class Plaintiffs refer to the Merriam-Webster Dictionary and to a judicial decision from the Eastern District of Louisiana for definitional instruction.  See e.g., Russel v. ChoicePoint Servs., Inc., 300 F.Supp. 2d 450, 456 (E.D. La. 2004)(defining "authorize" to mean "to endorse, empower, justify, or permit by or as if by some recognized or proper authority" or "[t]o give permission for . . [or to] sanction").

consumer reports without being exposed to liability for doing so as a matter of law and regardless of whether the authorization form they signed contained a release. See 15 U.S.C §1681b(b)(2)(A)(i-ii); §1681n; §1681o. By including this narrow release language, ClosetMaid's Authorization Form merely informs its applicants of the consequences of their authorization and does nothing to add to or detract from their rights under FCRA or otherwise.

Moreover, in addition to ignoring the plain meaning of the statutory subsection most germane to their claim, i.e., 15 U.S.C §1681b(b)(2)(a)(ii), Class Plaintiffs misplace their reliance on one inapposite judicial decision from the District of Maryland. See Singleton v. Domino's Pizza, LLC, Civil Action No. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012). First, Singleton was issued in response to a motion to dismiss – that is, it evaluated only the sufficiency of the plaintiff's pleadings. See Singleton, 2012 WL 245965, at *1. Second, and importantly, Singleton involved Domino's Pizza's use of a single form, known as a Background Investigation Information and Consent ("BIIC") form, that Domino's Pizza intended to use for both the disclosure requirement of 15 U.S.C §1681b(b)(2)(a)(i) and the authorization requirement of 15 U.S.C §1681b(b)(2)(a)(ii). As such, the Singleton court did not have occasion to analyze a form intended only to be an authorization form compliant with 15 U.S.C §1681b(b)(2)(a)(ii). Third, Class Plaintiffs' reliance on Singleton disregards the contradictory holding in Smith v. Waverly Partners, LLC 3:10-CV-00028-RLV, 2012 WL 3645324, at *1, 6 (W.D.N.C. Aug. 23, 2012). Indeed, in Waverly Partners, LLC, a court in the Western District Court of North Carolina granted the employer-defendant's motion for summary judgment and held that the disclosure and authorization forms at issue in that case were FCRA-compliant, notwithstanding the inclusion of release language, because the release was "kept markedly distinct from the disclosure language"

and was "not so great a distraction as to discount the effectiveness of the disclosure and authorization statements." Waverly Partners, LLC, 2012 WL 3645324, at *6.[4]

As such, Class Plaintiffs' Motion should be denied because they cannot prove that ClosetMaid's Forms are noncompliant with FCRA, as a matter of law, merely because its Authorization Form includes narrow release language.

### B. ClosetMaid's Inclusion of a Narrow Release in its Authorization Form Is Not Proof of "Willful" Noncompliance with FCRA.

Even assuming *arguendo* that the narrow release language contained in ClosetMaid's Authorization Form made it noncompliant with FCRA, a contention ClosetMaid disputes, the uncontroverted record evidence demonstrates that such putative noncompliance was not knowing or reckless so as to be deemed "willful" as a matter of law. See 15 U.S.C. §1681n (imposing actual or statutory damages, punitive damages, costs and reasonable attorneys' fees for "willful" noncompliance).

A company subject to FCRA "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco Insurance Co. of America v. Burr. 551 U.S. 47, 69 (2007). Stated differently, a company's mistaken interpretation of FCRA does not constitute a reckless - and therefore willful - violation of the FCRA unless the company's reading is "objectively unreasonable." Id. A reckless action is an action entailing "an unjustifiably high risk of harm

---

[4] Additionally, Singleton relies, in part, upon questionable reasoning set forth in opinion Letters penned by staff members at the Federal Trade Commission ("FTC"). These opinion letters are not binding on this Court nor are they entitled to deference. See e.g., Goode v. LexisNexis Risk & Info. Analytics Group, Inc., 848 F. Supp. 2d, 532, 541 (E.D. Pa. 2012) (holding that "agency interpretations, like this FTC Staff Report that do not carry the 'force of law' are 'entitled to respect'…but only to the extent that they are persuasive"). Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines all of which lack the force of law—do not warrant Chevron—style deference. Goode, 848 F. Supp. 2d at 542 (citing Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000)); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, (1984).

that is either known or so obvious that it should be known." Safeco Insurance Co., 551 U.S. at 68; see also Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 248 (3d Cir. 2012).

As set forth above, Class Plaintiffs do not argue that ClosetMaid failed to provide the Disclosure Class with a "clear and conspicuous disclosure" of its intent to procure their consumer reports pursuant to 15 U.S.C. §1681b(b)(2)(a)(i), nor do they argue that ClosetMaid failed to secure their authorization to do so pursuant to 15 U.S.C. §1681b(b)(2)(a)(ii).  In fact, ClosetMaid's Forms accomplish the purposes underlying the statutory disclosure and authorization requirements.  Moreover, Class Representative Reardon's testimony shows that she fully understood that she was, in fact, authorizing the procurement of her consumer report for consideration by ClosetMaid in its hiring process.  See ClosetMaid's Facts, ¶ 17.  As such, ClosetMaid not only complied with the "plain meaning" of 15 U.S.C. 1681b(b)(2)(A)(i) and (ii), but that its disclosure and authorization efforts were effective and the narrow release contained in its Authorization Form did not impede, interfere with, or otherwise distract Ms. Reardon from authorizing ClosetMaid to procure her consumer report.  See Waverly Partners, LLC, 2012 WL 3645324, at *6.

Instead, Class Plaintiffs erroneously conflate the "consists solely of" language that limits the contents of FCRA-compliant disclosure forms contained in 15 U.S.C. §1681b(b)(2)(a)(i) with the unqualified language for FCRA-compliant authorization forms contained in 15 U.S.C §1681b(b)(2)(a)(ii) to support their contention that ClosetMaid's inclusion of release language in its Authorization Form was done in reckless disregard of the requirements set forth in both 15 U.S.C. §1681b(b)(2)(a)(i) and (ii). In making this specious contention, Class Plaintiffs do not identify any statutory language in FCRA beyond the "consists solely of the disclosure" language in 15 U.S.C §1681b(b)(2)(a)(i) that seemingly prohibits the inclusion of release language in a

disclosure form. Nor have Class Plaintiffs identified any statutory language to suggest that <u>an authorization form that was not incorporated into the disclosure form</u> provided to applicants pursuant to 15 U.S.C §1681b(b)(2)(a)(i), such as ClosetMaid's Authorization Form, is somehow noncompliant with 15 U.S.C §1681b(b)(2)(a)(ii) merely because the authorization contained language releasing it to procure the consumer report without liability in accord with FCRA. Class Plaintiffs do not point to any controlling judicial authority to support their position in this regard.

ClosetMaid's Notice and Authorization Forms undoubtedly derive their content from the pertinent statutory text. Even so, the divergent interpretations of 15 U.S.C §1681b(b)(2)(a)(i) and (ii) advocated by the parties in this action demonstrate that these statutory subsections, when read together, suggest the text is "less than pellucid" within the meaning of the <u>Safeco</u> willfulness standard. Furthermore, Class Plaintiffs contend that "[a]ny reasonable person would readily discern from the plain language of [§1681b(b)(2)[(i) and (ii)]" that it prohibits the inclusion of a release. <u>See</u> Pls' Brief, p. 9. However, in making this presumptuous statement, Class Plaintiffs ignore the well-reasoned opinion of Judge Voorhees from the Western District of North Carolina who recently opined that a release markedly distinct from the disclosure language was not so great a distraction as to discount the effectiveness of the requisite disclosure and authorization statements. <u>See</u> <u>Waverly Partners, LLC</u>, 2012 WL 3645324, at *6 (granting summary judgment for employer-defendant). At best, Class Plaintiffs can merely point to two federal district court opinions (one in Maryland and one in North Carolina) to conclude that reasonable judicial minds differ. <u>See</u> <u>Singleton</u>, 2012 WL 245965, at *4-7. Hardly the stuff of willful noncompliance.

Based upon the uncontroverted record evidence, points of law, and arguments articulated above and in ClosetMaid's Memorandum of Law In Support of its Motion for Summary Judgment, ClosetMaid strongly believes that its Notice and Authorization Forms, inclusive of the narrow release language contained in its Authorization Form, complies with the distinctly separate prerequisites for procuring a consumer report that are set forth in 15 U.S.C § 1681b(b)(2)(a)(i) and (ii). Even so, to the extent the Court finds that the release language contained in ClosetMaid's Authorization Form renders ClosetMaid noncompliant with the disclosure and/or authorization provisions of 15 U.S.C §1681b(b)(2)(a)(i) and/or (ii), such purported noncompliance merely demonstrates ClosetMaid's putative negligent noncompliance and certainly not reckless, i.e., willful, noncompliance.

As such, Class Plaintiffs' Motion should also be denied because they cannot prove that ClosetMaid's inclusion of narrow release language in its Authorization Form constitutes willful noncompliance with 15 U.S.C §1681b(b)(2)(a)(i) and/or (ii).

C.  **Class Plaintiffs Are Not Entitled to Summary Judgment at Counts III and IV.**

Class Plaintiffs are not entitled to summary judgment as to Counts III and IV of the First Amended Complaint because they fail to proffer evidence sufficient to prove that ClosetMaid took adverse employment actions against the members of the Pre Adverse Action Subclass based in whole or in part on their consumer reports without first providing them with certain prescribed information (i.e., a copy of their consumer report and a summary of FCRA rights) pursuant to 15 U.S.C. §1681b(b)(3).

The pertinent statutory provision states as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for

> employment purposes, *before taking any adverse action based in whole or in part on the report*, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i) A copy of the report; and
>
> (ii) A description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

15 U.S.C. §1681b(b)(3) (emphasis added). In other words, if an employer intends to take an adverse employment decision based in whole or in part on that consumer report, then the employer must so inform the applicant in writing and provide the applicant with a copy of their consumer report and a summary of FCRA rights before actually taking any such adverse action.[5] See 15 U.S.C. §1681b(b)(3). ClosetMaid fulfilled its pre-adverse action requirements by providing each applicant with a copy of their consumer report and a summary of their FCRA rights in each of the five (5) instances in which it intended to take an adverse action based in whole or in part on the applicants' consumer report. See ClosetMaid's Facts, ¶ 20, 27-30. So, in an effort to stretch their application of 15 U.S.C. §1681b(b)(3) to the remaining seventy-two (72) members of the Pre-Adverse Action Subclass, Class Plaintiffs torture the plain and "pellucid" statutory text to suggest it means something that it does not.

Class Plaintiffs supplied definitions for the statutory terms "adverse action" and "before" and "taking" and "whole or in part," yet they conspicuously avoid defining the plain meaning of the most pertinent term in the entire subsection – "based" – as in "before taking any adverse action *based* in whole or in part on the report . . .." 15 U.S.C. §1681b(b)(3)(emphasis added).

---

[5] Once an employer provides the requisite pre-adverse action notice, along with copies of the consumer report and a summary of FCRA rights, it may take its intended adverse action; but it must provide another notice when doing so. See 15 U.S.C. § 1681m(a).

Instead, Plaintiff and Class Counsel insert new words in the statute, such as "possibly" and "might," even though they do not exist in the statute itself. <u>See</u> Pls' Brief, p. 20. To adopt Class Counsel's interpretation of 15 U.S.C. §1681b(b)(3) would make surplusage of the terms "taking" and "based," and would absurdly compel employers to issue a copy of a consumer reports and FCRA summaries in all instances when a prospective employer procures a consumer report for an applicant and regardless of whether it intended to take an adverse action <u>based</u> on their report. Nothing in the actual text of 15 U.S.C. §1681b(b)(3) imposes such an obligation on a prospective employer when intending to reject an applicant for a reason or reasons not based on their consumer report even if the employer "possibly" or "might have not hired a person" based upon their consumer report. There is simply no statutory basis for this contention. Class Plaintiffs seek to swap the actual statutory text and its evidentiary burden at this summary judgment stage of litigation for mere speculation and conjecture.

A glaring example of this conjecture is Class Counsel's proffered "opinion" that the seventy-seven individuals comprising the Pre Adverse Action Sub-Class have "derogatory" information in their consumer reports that Class Counsel deems to disqualify them from employment with ClosetMaid. <u>See</u> ClosetMaid's Facts, ¶ 27. Yet, there is not a shred of evidence in the record to support a finding that ClosetMaid actually took an adverse action in any but five (5) of these instances *based* on information in their respective consumer reports. To obtain summary judgment (or, to avoid it, as the case may be), Class Plaintiffs must adduce evidence sufficient to establish that all members of the Pre-Adverse Action Sub-Class experienced an adverse action *based* on their consumer report. Class Plaintiffs have failed to do so.

The actual statutory text of 15 U.S.C. §1681b(b)(3)(A) simply imposes an obligation on prospective employers such as ClosetMaid to provide to applicants who they *intend* to take adverse action *based* on their consumer reports certain specified material before taking such action. Indeed, the statutory terms "taking" and "intending" and "based" connote ClosetMaid's motive or intention for rejecting an applicant. When, for instance, ClosetMaid rejects an applicant, i.e., takes an adverse action, based upon the fact that the applicant failed a mandatory drug test or falsified their employment application, such action is not *based* on the applicant's consumer report and ClosetMaid is not duty-bound to provide the applicant with a copy of their consumer report or a summary of their FCRA rights pursuant to 15 U.S.C. §1681b(b)(3)(A).

Based solely on Class Counsel's review of the consumer reports and their personal opinion that those consumer reports contain "negative" or "derogatory" information, Class Counsel identifies seventy-seven (77) individuals comprising the Pre Adverse Action Sub-Class. However, and as explained in ClosetMaid's Motion for Summary Judgment, twenty-two (22) of those individuals did not experience an adverse employment action and were not entitled to receive pre-adverse disclosures as a matter of law. See ClosetMaid's Facts, ¶ 29. Of the remaining fifty-five (55) sub-class members, fifty (50) of them were not hired for a variety of reasons not based on their consumer reports. See ClosetMaid's Facts, ¶ 27-30. Therefore, ClosetMaid was not required to provide a copy of their consumer reports or a summary of FCRA rights to any of these seventy-two (72) individuals. See 15 U.S.C. §1681b(b)(3), §1681m(a).

Yet, Class Plaintiffs ignore the plain and pellucid language of 15 U.S.C. §1681b(b)(3) by arguing that ClosetMaid was required to provide a copy of the consumer report and a summary of FCRA rights in every instance where ClosetMaid "might" have taken an adverse action simply because Class Counsel harbors a personal opinion about the supposedly "derogatory"

contents of those reports. See Pls. Brief, p. 21. Accordingly, under Class Counsel's rationale, every time an employer procures a consumer report, the very act of procurement creates the "possibility" that the employer "might" take action based on the information contained in the report. FCRA requires no such thing. As stated in Obabueki v. Int'l Bus. Machines Corp.:

> That an employee may suffer an adverse action as a result of an internal decision by the employer is akin to finding that a party's summary judgment motion is denied before the Opinion is composed and issued, following discussions between the judge and his law clerk. The absurdity of such result is evident. Moreover, the statute expressly allows for the formation of an intent to take adverse action before complying with Section 1681b(b)(3), as it states that "the person intending to take" adverse action must provide the report and description of rights. 15 U.S.C. §1681b(b)(3). After all, how can an employer send an intent letter without having first formed the requisite intent?).

Obabueki, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001) aff'd, 319 F.3d 87 (2d Cir. 2003).

As to the remaining five (5) sub-class members (six (6) in total including Class Representative Reardon) who were not hired based in whole or in part on the contents of their consumer reports, the evidentiary record establishes that all were provided a copy of their consumer report and summary of FCRA rights pursuant to 15 U.S.C. §1681b(b)(3). See ClosetMaid's Facts, ¶¶ 20, 27-30. Moreover, ClosetMaid supplied the report to each of these six (6) individuals a "minimum" of five (5) days[6] before taking adverse action. See ClosetMaid's Facts, ¶ 26. Even Class Representative Reardon does not dispute the fact that she received a copy of her consumer report and a summary of her FCRA rights. See ClosetMaid's Facts, ¶ 23.

Despite ClosetMaid's clear compliance with the pre-adverse action requirements of 15 U.S.C. §1681b(b)(3), Class Plaintiffs argue that ClosetMaid nonetheless willfully failed to comply because it lacked a "procedure" to identify job applicants entitled to pre-adverse action disclosures and to put their final employment decisions on hold. See Pls' Brief, pp. 23-24.

---

[6] Five (5) days has been deemed reasonable by an FTC staff member in at least one instance. See Weisberg (FTC June 27, 1997).

Even though such a per se "procedure" is not statutorily required, the evidence of record establishes that ClosetMaid did in fact engage in individualized, position-specific assessments of applicants to determine what effect, if any, the results of an applicant's consumer report may have on the applicant's employment eligibility. See ClosetMaid's Facts, ¶¶ 7-10. Moreover, ClosetMaid's Salaried Recruiting Policy specifically addresses FCRA compliance and directs its HR Representatives to personally notify candidates whose applications are rejected because of a consumer report. See ClosetMaid's Facts, ¶ 12.

As such, Plaintiff's claim that ClosetMaid "willfully" violated Section 1681b(b)(3) is wholly without merit. Far from evidencing a "willful" violation of the statute, the unconverted evidence of record undoubtedly reveals no violation of the FCRA whatsoever and Class Plaintiffs proffer no evidence to the contrary. As such, Plaintiff's request for partial summary judgment as to Counts III and IV should be denied and ClosetMaid's Motion for Summary Judgment should be granted in its entirety.

## IV.     CONCLUSION

WHEREFORE, Defendant, CloseMaid Corporation, respectfully requests that this Honorable Court deny Class Plaintiffs' Motion for Partial Summary Judgment.

>Respectfully submitted,
>
>**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
>
>   /s/ W. Scott Hardy
>_____
>W. Scott Hardy, Esq.
>PA I.D. No. 79225
>scott.hardy@ogletreedeakins.com
>
>Philip K. Kontul, Esq.
>PA I.D. No. 94156
>philip.kontul@ogletreedeakins.com
>
>One PPG Place
>Suite 1900
>Pittsburgh, PA 15222
>Telephone: (412) 394-3333
>Facsimile: (412) 232-1799
>
>Attorneys for Defendant
>CloseMaid Corporation

Date: June 24, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing DEFENDANT'S RESPONSE IN OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT was filed electronically on June 24, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ W. Scott Hardy
_____
Attorney for Defendant ClosetMaid Corporation