IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. CATHY REARDON, on behalf of herself and all similarly situated individuals, | ) ) ) | |
| | ) | Civil Action No. 2:08-cv-1730 |
| Plaintiffs, | ) ) | |
| | ) | Judge Mark R. Hornak |
| vs. | ) ) | |
| | ) | *Filed Electronically* |
| CLOSETMAID CORPORATION, | ) ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF MOTION TO DECERTIFY
THE PRE ADVERSE ACTION SUB-CLASS**

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and pursuant to this Court's Order of January 11, 2013 and this Court's Order on Motion Practice, files this Reply in Support its Motion to Decertify the Pre Adverse Action Sub-Class ("Motion to De-Certify).

**ARGUMENT**

**A. CLOSETMAID'S MOTION TO DECERTIFY THE PRE-ADVERSE ACTION SUB-CLASS IS PROPERLY ASSERTED PURSUANT TO THIS COURT'S EXPRESS INVITATION**

Class Plaintiffs' allegation that ClosetMaid's Motion to Decertify does not establish the prerequisites for seeking decertification is wholly without merit, relies upon inapplicable legal authority, and is asserted in direct contravention of this Court's express invitation to ClosetMaid to seek decertification of the Pre-Adverse Action Sub-Class. In fact, Class Plaintiffs previously attempted to persuade the Court to change its mind and deny ClosetMaid the opportunity to file this motion and Class Plaintiffs were rebuffed. Now, Class Plaintiffs rehash those same unpersuasive arguments.

First, ClosetMaid files this Motion to Decertify pursuant to this Court's express invitation. Indeed, in its Memorandum and Order originally certifying the Disclosure Class and Pre-Adverse Action Sub-Class dated April 27, 2011, this Court qualified such certifications by stating as follows:

> . . . It is true that Ms. Beal testified that some hiring decisions were made by individual hiring managers.  If it becomes clear that most decisions were not made in a centralized fashion, ClosetMaid *should move for decertification* of, at a minimum, the subclass.
>
> ***
>
> While ClosetMaid's arguments are compelling, they seem more a defense to liability than an objection to class certification.  On this record, it appears that plaintiff has satisfied her burden of proof.  *If, at a later date, it appears that individual questions predominate over common questions, and that a class action is not superior to another type of action, plaintiff will have failed to satisfy Fed.R.Civ.P. 23(b), and decertification will be appropriate.*

April 27, 2011 Memorandum and Order (Doc. 51)(emphasis added).[1]  After this Order was issued, and in reliance thereon, the parties conducted additional discovery, particularly focused on the members of the Pre-Adverse Action Sub-Class.  See Order dated January 11, 2013 Authorizing Additional Discovery (Doc. 80).

In that same Order, the Court also expressly provided dates for ClosetMaid to file a motion to decertify the Pre-Adverse Action Sub-Class.  See Order dated January 11, 2013 (Doc. 80).  In response, on February 11, 2013, Class Plaintiffs then asked this Court to reverse its Order permitting a motion to decertify, filing a Motion to Deny Reconsideration of the Class Certification. (Doc. 81).  The Court denied that Motion the following day.  (Doc. 82).  As such, ClosetMaid's Motion is plainly proper and in keeping with this Court's prior Orders in this case.

---

[1]     A court's order granting certification, but then expressly inviting a potential decertification motion following discovery is not unusual.  See e.g., In re: Unisys Corporate Retiree Medical Benefits Litigation, No. 969, 2003 WL 252106, at *1 (E.D.Pa. Feb. 4, 2003)(reciting the court's pretrial order inviting the parties to file motions to decertify a previously certified class in a Rule 23 action).

To support their desperate attempt to prevent the Court from considering the contours of the Pre-Adverse Action Sub-Class, Class Plaintiffs rely on a variety of inapposite cases. For example, Class Plaintiffs rely on <u>Kramer v. Scientific Control Corp.</u>,67 F.R.D. 98 (E.D. Pa. 1975), despite the fact that <u>Kramer</u> involved a party seeking reconsideration of a class order *without court permission*, not a situation where the court invited a motion for decertification. <u>See</u> <u>also</u> <u>In re Mercedes-Benz Tele Aid Contract Litig.</u>, 267 F.R.D. 113, 134 (D.N.J. 2010) <u>opinion modified on reconsideration,</u> CIV. 07-2720 DRD, 2010 WL 2976496 (D.N.J. July 22, 2010)(involving a motion to decertify a class without court permission to do so).

Apparently unable to muster any authority in situations in which a court invites a motion for decertification, Class Plaintiffs then cite a variety of inapposite authority. Indeed, Class Plaintiffs rely on a variety of cases addressing motions filed pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. But such cases are plainly irrelevant to this inquiry as ClosetMaid seeks neither a new trial nor relief from a court judgment or order, but files its Motion at the express instruction of the Court.

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, district courts are charged with reassessing their certification rulings as the case develops and monitoring their class decisions in light of evidentiary developments. <u>See</u> <u>Barnes v. The Am. Tobacco Co.</u>, 161 F.3d 127, 140 (3d Cir. 1998). In this case, the Court plainly permitted additional discovery and specifically contemplated ClosetMaid's Motion. As such, it is appropriately before the Court.

**B. CLOSETMAID'S MOTION TO DECERTIFY THE PRE-ADVERSE ACTION SUB-CLASS SHOULD BE GRANTED BECAUSE INDIVIDUAL ISSUES PREDOMINATE OVER COMMON ISSUES**

ClosetMaid's Motion to Decertify should be granted because, among other things, the unconverted evidence of record reveals that individual issues predominate over common issues among the Pre-Adverse Action-Sub-Class.[2]

Contrary to Class Plaintiffs' claims, the United States Court of Appeals for the Third Circuit has instructed district courts to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied" by taking a "peek" into the merits of the claims asserted. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 (3d Cir. 2008); see also Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 189 (3d Cir. 2001). In so doing, the Court may conduct a "preliminary inquiry into the merits" as well as "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." Hydrogen Peroxide, 552 F.3d at 317.

In this case, Class Plaintiffs' allegations at Counts III and IV are founded upon two points: (1) their evidence consists solely of a declaration made by Class Counsel in which he claims to have reviewed certain applicant files and independently determined based on his judgment, not ClosetMaid's, that certain information in those files was "negative or derogatory;" and (2) their legal theory rests on a summary of five putative elements of a claim for a violation of 15 U.S.C. §1681b(b)(3) as set forth on page 17 of Class Plaintiffs' Brief in Opposition to this Motion. Class Plaintiffs then use those two points to argue that the seventy-seven (77) individuals that Class Counsel identify are all subject to the same practice because ClosetMaid, in procuring consumer reports as to each of those individuals, automatically assumed a duty to issue a pre-adverse action

---

[2] ClosetMaid's arguments regarding the Pre-Adverse Action Sub-Class' lack of numerosity, commonality and typicality are set forth in ClosetMaid's Memorandum of Law in Support of Motion to Decertify the Pre-Adverse Action Sub-Class, pp. 6-15.

notice and summary of FCRA rights, regardless of whether ClosetMaid actually used the contents of the consumer reports.  Class Plaintiffs then use this novel theory as both a shield and a sword, using circular reasoning to argue that such a claim exists, and that ClosetMaid cannot seek decertification because such a claim exists.

However, it is plain that Class Plaintiffs' theory is without merit.  The statutory text of 15 U.S.C. §1681b(b)(3)(A) imposes an obligation on employers to provide to applicants who they intend to take adverse action based on their consumer reports certain specified material before taking such action and nothing more.  See 15 U.S.C. §1681b(b)(3).  Such a determination necessarily indicates that the individual issues predominate over common ones because a consideration of the specifics of each employment decision as to all seventy-seven (77) individuals is necessary.

As Judge Lancaster plainly recognized:

> It is true that Ms. Beal testified that some hiring decisions were made by individual hiring managers.  *If it becomes clear that most decisions were not made in a centralized fashion, ClosetMaid should move for decertification of, at a minimum, the subclass.*

April 27, 2011 Memorandum and Order (emphasis added).  Now, it is indisputably clear that ClosetMaid's decisions were not made in a centralized fashion.  As already recognized, Catherine Beal, ClosetMaid's Vice President of Human Resources, testified without contradiction that individual recruiters would review applicants and make decisions based upon the position for which the applicant was applying.  2009 Beal Dep., pp. 62-66, **Tab 1**.  Beal testified that the standards ClosetMaid applied to applicants when reviewing their consumer reports would be different for salespeople, truck drivers, etc., as compared to other open positions, and that its various human resources managers at its various locations would be responsible for making these

decisions, and that credit checks were obtained, depending yet again upon the positions for which each applied.  2009 Beal Dep., pp. 62-66, **Tab 1.**

Beal's testimony is bolstered by the testimony of Jennifer Boring, ClosetMaid's Human Resource Director, who also testified that ClosetMaid's hiring processes, which includes the use of consumer reports, is not a "linear process."  Boring Dep., pp. 47, **Tab 4**.  She specifically noted that the processes are *position dependant* and that the hiring mechanisms for "*every position and every candidate is different*."  Boring Dep., pp. 47-57, **Tab 4** (emphasis added.)  Importantly, Beal also testified that the reasons for rejecting the applications of sub-class members were diverse and seldom based upon information contained in the applicants' consumer reports.  See 2009 Beal Dep., pp. 106-108, **Tab 1**; 2009 Beal Dep. Ex. 9, **Tab 16**.

In fact, nowhere is this predominance of individual factual issues over common issues more evident than in the uncontroverted Declarations of Boring, Patricia Dameron, and Merlyn Hernandez-Opio. Apart from demonstrating that seventy-two (72) of the seventy-seven (77) current members of the Pre Adverse Action Sub-Class were either not subjected to an adverse employment action or experienced no action based in whole or in part on their consumer reports, these Declarations also show the numerous and individualized reasons as to why these applicants were not ultimately hired by ClosetMaid.  Dameron Decl., **Tab 13**; Hernandez-Opio Decl., **Tab 14**; Boring Decl., **Tab 15**.

Class Plaintiffs argue that the court must look past these striking factual dissimilarities and instead focus on the whether the purported claims themselves are the same.  Pls. Response, pp. 23-25.  Yet, as even Class Plaintiffs note, the Court's obligation is to determine if there is generalized evidence which proves or disproves an element on a simultaneous, class-wise basis, since such proof obviates the need to examine each class members' individual position.  See Amchen

Products, Inc. v. Windsor, 521 U.S. 591, 625 (1977).   The uncontroverted evidentiary record shows that there is no so generalized proof.   Moreover, for seventy-two (72) of the seventy-seven (77) purport sub-class members, there is not even a valid claim.   Each purported Pre-Adverse Class member was evaluated individually, by different hiring managers, subject to varying, position-specific criteria, and whose ultimate hiring decision, in the majority of circumstances, had nothing to do with his or her consumer report.

Accordingly, the Pre Adverse Action Sub-Class does not satisfy the predominance requirement of Fed.R.Civ.P. 23(b)(3) and should be decertified.

## CONCLUSION

WHEREFORE, Defendant, ClosetMaid Corporation, respectfully requests that this Honorable Court grant its Motion to Decertify the Pre Adverse Action Sub-Class.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.

/s/  *W. Scott Hardy*

W. Scott Hardy, Esq.
PA I.D. No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esq.
PA I.D. No. 94156
philip.kontul@ogletreedeakins.com

One PPG Place
Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 394-3333
Facsimile: (412) 232-1799

Attorneys for Defendant
ClosetMaid Corporation

Date: July 8, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **ClosetMaid's Reply In Support of Motion to Decertify the Pre-Adverse Action Sub-Class** was filed electronically on July 8, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/  *W. Scott Hardy*

Counsel for Defendant ClosetMaid Corporation

15388323.2