IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. CATHY REARDON, on behalf of herself and all similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:08-cv-1730 |
| vs. | ) ) ) | Judge Mark R. Hornak |
| CLOSETMAID CORPORATION, | ) ) | *Filed Electronically* |
| Defendant. | ) ) ) | |

## CLOSETMAID'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., pursuant to Federal Rule of Civil Procedure 56 and Western District of Pennsylvania Local Rule 56.1, and in accordance with this Court's Order on Motion Practice (Doc. 89), files this Reply in Support of Motion its for Summary Judgment.

## I.      INTRODUCTION

Class Plaintiffs' Response to ClosetMaid's Motion for Summary Judgment ("Plaintiffs' Response") fails to proffer evidence sufficient to establish that ClosetMaid's Notice and Authorization Forms are noncompliant with the FCRA.  To the contrary, ClosetMaid has presented undisputed record evidence that it wholly complied with 15 U.S.C. §1681b(b)(2)(a)(i) by clearly and conspicuously disclosing its intent to procure consumer reports for employment purposes, and complied with 15 U.S.C. §1681b(b)(2)(a)(ii) by securing the applicants' written authorization to procure those consumer reports.  In addition, Class Plaintiffs, through their failure to respond to ClosetMaid's arguments, concede that ClosetMaid is entitled to summary judgment as to all members of the Disclosure Class from July 1, 2009 to the present.

Further, Class Plaintiffs' Response also fails to proffer evidence sufficient to show that ClosetMaid took adverse employment action against the members of the Pre Adverse Action Sub-Class based in whole or in part on their consumer reports without first providing them with certain prescribed information (i.e., a copy of their consumer report and a summary of FCRA rights) pursuant to 15 U.S.C. § 1681b(b)(3), thus entitling ClosetMaid to the entry of summary judgment. But, even if this Court disagrees, Class Plaintiffs have not adduced evidence sufficient to prove that any such purported violations of the FCRA by ClosetMaid were willful.

In their Response, Class Plaintiffs oppose ClosetMaid's Motion for Summary Judgment by advancing arguments which are similar or nearly identical to those that Class Plaintiffs proffer in support of their Motion for Summary Judgment. See Memorandum of Law in Support of Class Plaintiffs' Motion for Partial Summary Judgment ("Pls. Brief"). In turn, and so as not to unduly burden this Honorable Court with repetitive arguments, ClosetMaid hereby incorporates by reference its Response to Class Plaintiffs' Motion for Summary Judgment wherein ClosetMaid demonstrates as a matter of law that Class Plaintiffs' allegations that ClosetMaid violated the FCRA are wholly without merit, and that Class Plaintiffs are not entitled to summary judgment as to any of their proffered claims.

## II.    ARGUMENT

### A.    CLOSETMAID IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS NOTICE AND AUTHORIZATION COMPLIED WITH 15 U.S.C. §1681b(b)(2)(A)(i) AND (ii).

The uncontroverted evidentiary record shows that ClosetMaid used a set of two distinct documents for a period of time between December 19, 2006 and July 2009 for disclosing to applicants its intent to procure consumer reports and for securing their authorization to do so:

1)    The Fair Credit Reporting Act Authorization Form – Notice of Intent to Obtain a Consumer Credit Report ("Notice"); and

2)   The Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes ("Authorization").

(the Notice and Authorization forms are collectively referred to herein as the "Forms." See ClosetMaid's Statement of Undisputed Material Facts ("ClosetMaid's Facts"), ¶¶ 13-14. ClosetMaid's use of these two separate forms is wholly consistent with FCRA. In fact, Congress expressly permits employers such as ClosetMaid to secure authorizations to procure consumer reports either in the same document used for making the requisite disclosure or in a different document. See 15 U.S.C. §1681b(b)(2)(a)(ii) (stating ". . . which authorization may be made on the document referenced to in clause (i) . . .") (emphasis added).[1] Here, separate and apart from its Notice Form used to make the requisite disclosure required by 15 U.S.C. §1681b(b)(2)(a)(i), ClosetMaid utilized a different document, referenced herein as the Authorization Form, to secure the requisite authorization required by 15 U.S.C. §1681b(b)(2)(a)(ii). See ClosetMaid Facts, ¶¶ 13-14. Moreover, unlike 15 U.S.C §1681b(b)(2)(a)(i), there is no statutory pronouncement in 15 U.S.C. §1681b(b)(2)(a)(ii) that would preclude ClosetMaid from limiting the documentary instrument(s) used for securing the authorization solely to one particular form, whether in the disclosure form required by 15 U.S.C. §1681b(b)(2)(a)(i) or otherwise.

Class Plaintiffs mistakenly argue that the plain meaning of 15 U.S.C §1681b(b)(2)(a)(i) and (ii) prohibits the inclusion of a so-called "Waiver of Rights" (apparently no matter how broad or narrow and regardless of its actual content)[2] because of 15 U.S.C. §1681b(b)(2)(a)(i). Pls. Response, pp. 8-10. In doing so, Class Plaintiffs focus solely on this disclosure provision and its use of the phrase "in a document that consists solely of the disclosure[,]" while ignoring the

---

[1]   For a discussion of statutory construction and the consideration of the meaning of the use of the word "may," see Lopez v. Davis, 531 U.S. 230, 241 (2001).

[2]   Class Plaintiffs take broad liberties in characterizing the form at issue, yet the language contained therein merely states, "I hereby release [ClosetMaid] from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family or associates *because of compliance with this authorization and request to release*." ClosetMaid's Facts, ¶¶ 13, 14, & 18 (emphasis added).

separate authorization provision, i.e., 15 U.S.C. §1681b(b)(2)(a)(ii), along with a fundamental

canon of statutory construction: give effect, if possible, to every clause or word of a statute.

Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 60, (2007)(citing United States v. Menasche, 348

U.S. 528, 538–539 (1955))(quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)).

      Yet upon recognizing this distinction, which is clearly fatal to their Counts I and II, Class

Plaintiffs now misapprehend the requirements of subsections (i) and (ii) by incorrectly conflating

the disclosure and authorization requirements when they are, in fact, separate and distinct

requirements that can be accomplished in one or more documents.  Pls. Response, pp. 11-12; see

also 15 U.S.C. §1681b(b)(a)(i-ii).   This misrepresentation is simply without merit and

ClosetMaid's separate Notice and Authorization comply with 15 U.S.C. §1681b(b)(a)(i) and (ii) as

a matter of law.  In two short paragraphs, the express and indisputable language of the Notice sets

forth the following:

> I understand that, as a condition of my consideration for employment
> with ClosetMaid or as a condition of my continued employment with
> ClosetMaid may obtain a consumer report that includes, but is not
> limited to, my credit history or similar characteristics employment
> and education verifications, social security verification, criminal and
> civil history, Department of Motor Vehicle records, any other public
> records, and any other information bearing on my credit standing or
> credit history.
>
> I understand that, pursuant to the federal Fair Credit Reporting Act,
> if any adverse action is to be taken based upon this consumer report,
> a copy of the report and a summary of the consumer's rights will be
> provided to me if requested.

See ClosetMaid Facts, ¶¶13-14.  The Notice concludes by requesting applicants to acknowledge

the above notice information by signing and printing their names in the spaces provided.  See

ClosetMaid Facts, ¶¶ 13-14.

Quite separate and apart from the Notice, the Authorization requires applicants, in no uncertain terms, to expressly *authorize* ClosetMaid to procure their consumer reports – the very same authorization required by 15 U.S.C. §1681b(b)(2)(a)(ii).  See ClosetMaid Facts, ¶¶ 13-14. Class Representative Reardon's own Authorization, which she executed in conjunction with her Notice, states the following:

> I, <u>Regina C. Reardon</u>, **authorize** the complete release of these records or data pertaining to me which an individual, company, firm, corporation or public agency may have.  I understand that I must provide my date of birth to adequately complete said screening, and acknowledge that my date of birth will not affect any hiring decision. I hereby **authorize** and request any present or former employer, school, police department, financial institution or personal knowledge about me, to furnish bearer with any and all information in their possession regarding me in connection with an application for employment.  I am **authorizing** that a photocopy of this **authorization** be accepted with the same authority as the original.

See ClosetMaid Facts, ¶ 15 (emphasis added)**.**

Clearly, the Notice and Authorization are two distinct forms, both of which are fully compliant with 15 U.S.C §1681b(b)(2)(a)(i) and (ii), respectively.  As for Class Plaintiffs' attempt to discredit the Notice because it does not use the term "investigative consumer report," such a distinction is immaterial and Class Plaintiffs provide no statutory or other legal authority in support of their argument. Here, there is no evidence in the record to suggest that ClosetMaid procured or used "investigative consumer reports."  Instead, Class Plaintiffs' claims are limited solely to the procurement and use or "consumer reports" and have nothing to do with "investigative consumer reports." 15 U.S.C. 1681b(b)(2)(A) (stating, "a person may not procure a *consumer report*, or cause a *consumer report* to be procured, for employment purposes with respect to any consumer, unless…)(emphasis added).

Class Plaintiffs' attempt to save their claims through the argument that the Notice and Authorization requirements are the same, i.e., that they are both governed by 15 U.S.C. §1681b(b)(2)(a)(i), ignores the plain text of the statute and the distinct provision at 15 U.S.C. §1681b(b)(2)(a)(ii), and is wholly without merit.

Even in instances where ClosetMaid only utilized the Authorization as the only form for certain Class Plaintiffs, the Authorization is still fully compliant with FCRA and Class Plaintiffs do not adduce sufficient evidence to the contrary.[3]   As a preliminary matter, Class Plaintiffs concede that the Authorization, standing alone, satisfies 15 U.S.C. § 1681b(b)(2)(a)(i), which requires that applicants be provided with notice of an employer's intent to procure a consumer report.  See Amended Complaint and Pls. Response, generally.

Rather, the crux of Class Plaintiffs' opposition is that the Authorization contains a purported "Waiver of Rights" in contravention of the plain meaning of 15 U.S.C §1681b(b)(2)(a)(ii).  See Pl's Response, pp. 10-12.  But there is no basis in the evidentiary record for this reference to a "Waiver of Rights" and the accompanying implication that ClosetMaid had somehow sought the forbearance of their right to assert a broad array of legal claims.  To the

---

[3]      Class Counsel is mistaken in their zeal to accuse ClosetMaid of misrepresenting the forms at issue. ClosetMaid's Motion for Summary Judgment and supporting Memoranda focus on these two forms because the evidentiary record indisputably shows that Class Representative Reardon executed both a Notice and Authorization. See ClosetMaid Facts, ¶¶ 13-15. Even so, ClosetMaid readily acknowledges that certain members of the Disclosure Class signed neither the Notice nor the Authorization and instead signed a totally different form, beginning on and after July 2009, that Class Counsel concedes without argument to be FCRA-compliant; thus, ClosetMaid separately moves for summary judgment for this subset of the Disclosure Class.  Similarly, ClosetMaid acknowledges that there are instances other instances, prior to July 2009, when certain other members of the Disclosure Class may have signed yet a different form.  As set forth throughout ClosetMaid's briefing, these forms are also FCRA-compliant.  As Class Counsel now attempts to avoid summary judgment by arguing that there were instances when certain members of the Disclosure Class had not signed the same forms or combination of forms as Class Representative Reardon, they impliedly concede that Reardon lacks commonality with certain other members of the Disclosure Class (who, themselves lack typicality) and is thus not representative of them, necessitating decertification absent entry of summary judgment dismissing those claims.  See Barnes v. America Tobacco Co., 161 F.3d 127 (3rd. 1998) (holding under Rule 23(c)(1) District Courts are required to reassess their class rulings as the case develops in light of the evidentiary development of the case.

contrary, the actual evidentiary record reveals that ClosetMaid's Authorization Form contained much narrower release language, which states, in pertinent part:

> I hereby authorize [ClosetMaid] . . . to conduct a comprehensive review of my background causing a consumer report and/or investigative consumer report to be generated for employment purposes.
> *     *     *
> I hereby release [ClosetMaid] from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family or associates **because of compliance with this authorization** and request to release.

ClosetMaid's Facts, ¶¶ 13, 14, & 18 (emphasis added).

Until recently, Class Plaintiffs advocated that the "consists solely of" phrasing in 15 U.S.C. §1681b(b)(2)(a)(i) was a complete prohibition against any additional language in a FCRA authorization. See Pls. Brief, pp. 10-12. Now, Class Plaintiffs backtrack in face of ClosetMaid's example that such an unrealistic reading of the statute would even prohibit "letterhead," "signature" and "date blocks" and state that "such items [referring to letter, signature blocks and date blocks] are not at odds with legislative intent and are allowed by § 1681b(b)(2)(A)ii)." See Pl's Response, p. 10. Yet, Plaintiffs' new argument, i.e., some surplusage is permitted as long as it complies with congressional intent, is nothing short of Class Plaintiffs' proverbial desire to have their cake and eat it too. In actuality, Class Plaintiffs are implicitly conceding that their interpretation is simply unworkable and acquiesce to congress' actual intent of ensuring clear and conspicuous notice of an employer's intent to procure an applicant's consumer report and the applicant's authorization to do so. See 15 U.S.C. § 1681b(b)(2)(A)(ii). In fact, this is the very same intent espoused by ClosetMaid's Authorization and which Class Representative Reardon herself acknowledged was fulfilled when she undisputedly testified that she understood ClosetMaid intended to procure her consumer report and authorized ClosetMaid to do so. ClosetMaid Facts, ¶17. As demonstrated by the evidentiary record, ClosetMaid's Notice and

Authorization complied with both the letter and intent of 15 U.S.C. § 1681b(b)(2)(A) and summary judgment should be entered in its favor as a matter of law.

In their Response, Class Plaintiffs argue that ClosetMaid erroneously relies upon and actually "misrepresents" Smith v. Waverly Partners LLC for its holding that the inclusion of certain release language in a FCRA authorization was FCRA-complaint. Yet, Class Plaintiffs' argument inexplicably ignores the incontrovertible and express language of the Waverly Partners opinion and instead convolutes its holding by focusing on irrelevant factual and procedural aspects in an apparent attempt to divert attention from that fact that the court held, as a matter of law, and notwithstanding the inclusion of release language, that defendant-employer's disclosure and authorization forms at issue were FCRA-compliant because the release was "kept markedly distinct from the disclosure language" and was not "not so great a distraction as to discount the effectiveness of the disclosure and authorization statements." Waverly Partners, LLC, 3:10-CV-00028-RLV, 2012 WL 3645324 at *1, 6 (W.D.N.C. Aug. 23, 2012).

In reaching its conclusion, the Western District for North Carolina recognized and considered 15 U.S.C. §1681b(b)(b)(2)(A)'s requirement that a FRCA authorization is to "consist [ ] solely of the disclosure…". Waverly Partners, LLC, 2012 WL 3643524, at *6. Moreover, the court considered plaintiff-employee's proffer of the very same Federal Trade Commission opinions advocated by Class Plaintiffs here. Waverly Partners, LLC, 2012 WL 3643524, at *6; See Pl's Brief, pp. 13-14. Yet, despite its consideration of these purported arguments, Waverly Partners concluded that defendant-employer's inclusion of release language in its FCRA authorization was FCRA compliant as matter of law.

**B.      CLOSETMAID'S INCLUSION OF A NARROW RELEASE IN ITS AUTHORIZATION FORM IS NOT PROOF OF "WILLFUL" NONCOMPLIANCE WITH FCRA.**

Even if the Court disagrees and holds that the narrow release language contained in ClosetMaid's Authorization Form made it noncompliant with FCRA, a contention ClosetMaid disputes, the uncontroverted record evidence demonstrates that such putative noncompliance was not knowing or reckless so as to be deemed "willful" as a matter of law. See 15 U.S.C. §1681n.[4]

Class Plaintiffs insist that ClosetMaid "steadfastly avoids" the Third Circuit's "3-prong analysis" for determining objective reasonableness set forth in Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 248 (3d Cir. 2012); yet, such an assertion completely disregards ClosetMaid's substantive arguments in support of its Motion for Summary Judgment.  In their purported application of Fuges, Class Plaintiffs allege that ClosetMaid's inclusion of the narrow release language in its Authorization was not objectively reasonable because of the (i) the plain meaning of FCRA; (ii) ClosetMaid's application of FCRA in light of its statutory text; and (iii) the existence, or lack thereof, of judicial or agency guidance that could support ClosetMaid's interpretation of FCRA. See Pls. Response, pp. 16-20.

As in their Motion for Summary Judgment, Class Plaintiffs do not argue that ClosetMaid failed to provide the Disclosure Class with a "clear and conspicuous disclosure" of its intent to procure their consumer reports as required by statute pursuant to 15 U.S.C. §1681b(b)(2)(a)(i), nor do they argue that ClosetMaid failed to secure their authorization to do so pursuant to 15 U.S.C. §1681b(b)(2)(a)(ii).  In fact, ClosetMaid's Forms accomplish the purposes underlying the statutory disclosure and authorization requirements.  Moreover, Class Representative Reardon's testimony

---

[4]      For more discussion of the record evidence supporting ClosetMaid's legal compliance with FCRA, see ClosetMaid's Memorandum of Law in Support of Motion for Judgment, pp. 11-15 and ClosetMaid's Memorandum of Law in Opposition to Class Plaintiff's Motion for Summary Judgment, pp. 8-11.

shows that she fully understood that she was, in fact, authorizing the procurement of her consumer report for consideration by ClosetMaid in its hiring process.  See ClosetMaid's Facts, ¶ 17.  As such, ClosetMaid not only complied with the "plain meaning" of 15 U.S.C. 1681b(b)(2)(A)(i) and (ii), but it has indisputably demonstrated that its disclosure and authorization efforts were effective and the narrow release contained in its Authorization Form did not impede, interfere with, or otherwise distract Ms. Reardon from authorizing ClosetMaid to procure her consumer report.  See Waverly Partners, LLC, 2012 WL 3645324, at *6.

Instead, Class Plaintiffs erroneously conflate the "consists solely of" language that limits the contents of FCRA-compliant disclosure forms contained in 15 U.S.C. §1681b(b)(2)(a)(i) with the unqualified language for FCRA-compliant authorization forms contained in 15 U.S.C §1681b(b)(2)(a)(ii) to support their contention that ClosetMaid's inclusion of release language in its Authorization Form was done in reckless disregard of the requirements set forth in both 15 U.S.C. §1681b(b)(2)(a)(i) and (ii).  Class Plaintiffs do not identify any statutory language in FCRA beyond the "consists solely of the disclosure" language in 15 U.S.C §1681b(b)(2)(a)(i) that seemingly prohibits the inclusion of release language in a disclosure form.  Nor have Class Plaintiffs identified any statutory language to suggest that <u>an authorization form that was not incorporated into the disclosure form</u> provided to applicants pursuant to 15 U.S.C §1681b(b)(2)(a)(i), such as ClosetMaid's Authorization Form, is somehow noncompliant with 15 U.S.C §1681b(b)(2)(a)(ii) merely because the authorization contained language releasing it to procure the consumer report without liability in accord with FCRA.  It necessarily follows that because ClosetMaid complied with the express statutory language of 15 U.S.C §1681b(b)(2)(a)(i) and (ii), ClosetMaid's interpretation of these section was directly on point and wholly compliant was a matter of law.

ClosetMaid's Notice and Authorization Forms undoubtedly derive their content from the pertinent statutory text. Even so, the divergent interpretations of 15 U.S.C §1681b(b)(2)(a)(i) and (ii) advocated by the parties in this action demonstrate that these statutory subsections, when read together, suggest the text is "less than pellucid" within the meaning of the <u>Safeco</u> willfulness standard. Furthermore, Class Plaintiffs contend that "[a]ny reasonable person would readily discern from the plain language of [§1681b(b)(2)[(i) and (ii)]" that it prohibits the inclusion of a release. <u>See</u> Pls. Response, p. 18. However, Class Plaintiffs try to explain away and thereby ignore the well-reasoned and applicable <u>Waverly Partners</u> opinion which held that a release markedly distinct from the disclosure language was not so great a distraction as to discount the effectiveness of the requisite disclosure and authorization statements. <u>See</u> 2012 WL 3645324, at *6 (granting summary judgment for defendant). At best, Class Plaintiffs can merely point to two federal district court opinions (one in Maryland and one in North Carolina) to conclude that reasonable judicial minds differ. <u>See</u> <u>Singleton</u>, 2012 WL 245965, at *4-7. Hardly the stuff of willful noncompliance.

Based upon the uncontroverted record evidence, points of law, and arguments articulated above and in ClosetMaid's Memorandum of Law In Support of its Motion for Summary Judgment, ClosetMaid believes that its Notice and Authorization Forms, inclusive of the narrow release language contained in its Authorization Form, complies with the distinctly separate prerequisites for procuring a consumer report that are set forth in 15 U.S.C § 1681b(b)(2)(a)(i) and (ii). Even so, to the extent the Court finds that the release language contained in ClosetMaid's Authorization Form renders ClosetMaid noncompliant with the disclosure and/or authorization provisions of 15 U.S.C §1681b(b)(2)(a)(i), such purported noncompliance merely demonstrates ClosetMaid's putative negligent noncompliance and certainly not reckless, <u>i.e.</u>, willful, noncompliance.

### C.   CLOSETMAID IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO COUNTS III AND IV.

Summary Judgment should be entered in favor of ClosetMaid as to Counts III and IV of the First Amended Complaint because the uncontroverted evidentiary record demonstrates that ClosetMaid did not take adverse employment actions against members of the Pre Adverse Action Sub-Class based in whole or in part on their consumer reports without first providing them with certain prescribed information (i.e., a copy of their consumer report and a summary of FCRA rights) pursuant to 15 U.S.C. §1681b(b)(3).

In an attempt to avoid summary judgment, Class Plaintiffs ignore the plain language of 15 U.S.C. §1681b(b)(3) and instead fabricate a new FCRA standard – that is, that ClosetMaid was required to provide a copy of the consumer report and a summary of FCRA rights in every instance where ClosetMaid "might" have taken an adverse action simply because Class Counsel harbors a personal opinion about the supposedly "derogatory" contents of those reports. See Pls. Response, p. 22. Accordingly, every time an employer procures a consumer report, the very act of procurement creates the "possibility" that the employer "might" take action based on the information contained in the report. Indeed, Class Plaintiffs attempt to argue to this Court that the reason for ClosetMaid's decision not to hire an applicant is "of no moment," even though the FCRA provides that an employer is obligated to provide a copy of the consumer report and a notice of FCRA rights only when the employer makes an adverse employment decision based in whole or in part on the consumer report. This outrageous suggestion is not supported by the express statutory requirements of 15 U.S.C. §1681b(b)(3).

To adopt Class Counsel's interpretation of 15 U.S.C. §1681b(b)(3) would compel employers to issue a copy of a consumer reports and FCRA summaries in all instances when a prospective employer procures a consumer report for an applicant, regardless of whether it

intended to take an adverse action <u>based</u> on their report, and even in circumstances, such as in this case, when the applicant turns down an offer of employment or does not meet other hiring criteria wholly unrelated to the contents of their consumer report. <u>See</u> ClosetMaid Facts, ¶¶ 28-30.

Nothing in the actual text of 15 U.S.C. §1681b(b)(3) imposes such an obligation on a prospective employer when intending to reject an applicant for a reason or reasons not based on their consumer report even if the employer "possibly" or "might have not hired a person" based upon their consumer report. <u>See</u> <u>e.g.</u>, <u>Obabueki v. Int'l Bus. Machines Corp.</u>, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001) <u>aff'd</u>, 319 F.3d 87 (2d Cir. 2003). Class Plaintiffs seek to swap the actual statutory text and its evidentiary burden at this summary judgment stage of litigation for mere speculation and conjecture.

Relying on their flawed interpretation of 15 U.S.C. 1681b(b)(3)(A), the remainder of Class Plaintiffs' Response purports to discredit the Declarations of Jennifer Boring, Patricia Dameron and Merlyn Hernandez-Opio as irrelevant, immaterial, and offering no probative value in deciding ClosetMaid's Motion for Summary Judgment. However, based upon the statutory text of 15 U.S.C. 1681b(b)(3)(A)'s, these Declarations reveal ClosetMaid's strict FCRA compliance.

Boring, Dameron, and Hernandez-Opio all worked for ClosetMaid in a human resource capacity and were involved in ClosetMaid's hiring process. <u>See</u> ClosetMaid Facts, ¶ 33; <u>see also</u> ClosetMaid Facts, ¶ 28. In preparing their Declarations, each declarant personally reviewed the files belonging to members of the Pre Adverse Action Sub-Class in which they participated in the hiring process. <u>See</u> ClosetMaid Facts, ¶ 33; <u>see also</u> ClosetMaid Facts, ¶ 28. Based on these reviews, each Declarant affirmed the individualized reasons identified in their respective Declarations (as listed on their respective Exhibit A) why the applicants were ultimately not hired by ClosetMaid, including some circumstances where the applicants declined an offer of

employment.  See ClosetMaid Facts, ¶ 28.  Ultimately, of the 77 purported Pre Adverse Action Sub-Class members identified by Class Counsel, Boring, Dameron and Hernandez-Opio testify that 72 of them suffered no adverse action based in whole or in part on their respective consumer reports.  See ClosetMaid Facts, ¶¶ 27-29.

As to the remaining five (5) sub-class members (six (6) in total including Class Representative Reardon) who were not hired based in whole or in part on the contents of their consumer reports, it is undisputed that all were provided a copy of their consumer report and summary of FCRA rights pursuant to 15 U.S.C. §1681b(b)(3).  See ClosetMaid's Facts, ¶¶ 20, 27-30.  Moreover, ClosetMaid supplied the report to each of these six (6) individuals a "minimum" of five (5) days[5] before taking adverse action.  See ClosetMaid's Facts, ¶ 26.  Even Class Representative Reardon does not dispute the fact that she received a copy of her consumer report and a summary of her FCRA rights.  See ClosetMaid's Facts, ¶ 23.  Class Plaintiffs have failed to offer any evidence to dispute these facts.  Indeed, they have not adduced evidence that any of the seventy-two (72) individuals were not hired based in whole or in part on the contents of their consumer reports.  They similarly have not offered this Court any evidence that the six (6) individuals not hired based in whole or in part on the basis of their consumer reports did not receive a copy of their consumer report and summary of FCRA rights pursuant to 15 U.S.C. §1681b(b)(3).

Instead, Class Plaintiffs attempt to change the FCRA's legal requirements by asserting that ClosetMaid nonetheless failed to comply with 15 U.S.C. §1681b(b)(3) because it lacked a "procedure" to identify job applicants entitled to pre-adverse action disclosures and to put their final employment decisions on hold.  See Pls. Response, pp. 23-24.

---

[5]     Five (5) days has been deemed reasonable by an FTC staff member in at least one instance.  See Weisberg (FTC June 27, 1997).

Such a procedure is not mentioned or contemplated by the FCRA and Class Plaintiffs cite no authority for their claims.  Even so, the evidence of record establishes that ClosetMaid did in fact engage in individualized, position-specific assessments of applicants to determine what effect, if any, the results of an applicant's consumer report may have on the applicant's employment eligibility.  See ClosetMaid's Facts, ¶¶ 7-10.  Moreover, ClosetMaid's Salaried Recruiting Policy specifically addresses FCRA compliance and directs its HR Representatives to personally notify candidates whose applications are rejected because of a consumer report.  ClosetMaid's Facts, ¶ 12.

As Class Plaintiffs' have clearly failed to proffer sufficient evidence of even a negligent violation of 15 U.S.C. §1681b(b)(3), it necessarily follows that their argument that ClosetMaid acted willfully is entirely without merit as to Counts III and IV.

### III.   CONCLUSION

WHEREFORE, Defendant, ClosetMaid Corporation, respectfully requests this Court grant ClosetMaid's Motion for Summary Judgment.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.**

/s/  *W. Scott Hardy*

W. Scott Hardy, Esquire
PA I.D. No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esquire
PA I.D. No. 94156
philip.kontul@ogletreedeakins.com

One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 394-3333
Facsimile: (412) 232-1799

Dated:  July 8, 2013                              Attorneys for Defendant, ClosetMaid Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **ClosetMaid's Reply in Support of Motion for Summary Judgment** was filed electronically on July 8, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/  *W. Scott Hardy*
Counsel for Defendant
ClosetMaid Corporation

15388470.2