IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

R. CATHY REARDON, on behalf of herself )
and all similarly situated individuals, )
                                        )      Civil Action No. 2:08-cv-1730
          Plaintiffs,                   )
                                        )      Hon. Mark R. Hornak
     vs.                                )      United States District Judge
                                        )
CLOSETMAID CORPORATION,                 )      *Filed Electronically*
                                        )
          Defendant.                    )

**SECOND SUPPLEMENTAL APPENDIX OF RECORD MATERIALS IN SUPPORT OF
CLOSETMAID'S MOTION TO DECERTIFY THE PRE ADVERSE ACTION SUB-CLASS**

Dated: July 8, 2013                Respectfully submitted,

                                   **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**


                                   */s/ W. Scott Hardy*
                                   W. Scott Hardy, Esquire
                                   PA I.D. No. 79225
                                   scott.hardy@ogletreedeakins.com

                                   Philip K. Kontul, Esquire
                                   PA I.D. No. 94156
                                   philip.kontul@ogletreedeakins.com

                                   One PPG Place
                                   Suite 1900
                                   Pittsburgh, PA 15222
                                   Telephone: (412) 394-3333
                                   Facsimile: (412) 232-1799

                                   Attorneys for Defendant ClosetMaid Corporation

**Tab 4 - Excerpts of Jennifer Boring April 2, 2013 Deposition Transcript.**

1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

R. CATHY REARDON            )
On behalf of herself and    )
all similarly situated      )
individuals,                )
                            )
            Plaintiffs,      )   NO. 2:08cv1730GLL
                            )
vs.                         )   Hon. Chief Judge
                            )   Gary Lancaster
CLOSETMAID CORPORATION,      )
                            )   Class Action
            Defendant.       )
_____)


DEPOSITION OF:        JENNIFER BORING


DATE TAKEN:           Tuesday, April 2, 2013


TIME:                 12:50 p.m. - 3:28 p.m.


PLACE:                7 E. Silver Springs Boulevard

                      Suite 501

                      Ocala, FL 34470


TAKEN BY:             Plaintiffs


REPORTED BY:          Sandra K. Glick, RPR, RMR,

                      CSR(IA,IL), FPR and Notary Public


Maxene Weinberg Agency
(800) 640-1949

57

1  phone, and then if we're able we try to coordinate an

2  on-site interview so we can meet them face-to-face.

3       Q.   Okay.  And then "Offer Process."  Is that

4  then what occurs if the person makes it through the

5  process and there's a decision to offer him a position?

6  Is that what that is?

7       A.   All the processes have been completed, yes.

8       Q.   Okay.

9            MR. PIETZ:  This will be whatever the next

10      exhibit will be.

11           THE REPORTER:  10.

12           MR. PIETZ:  10?

13           THE REPORTER:  Yes.

14           (Boring Exhibit 10 was marked for

15  identification.)

16           MR. PIETZ:  I have a copy somewhere for you,

17      Phil.

18           MR. KONTUL:  Okay.

19           MR. PIETZ:  I think you know what it is.

20       Q.   Okay.  I'm showing you what has been marked

21  as your Deposition Exhibit 10.  Can you tell me what

22  this is?

23       A.   This was the declaration that I signed.

24       Q.   And why did you create this declaration?

25           MR. KONTUL:  Objection.

58

1        MR. PIETZ:  And your objection is?

2        MR. KONTUL:  To the extent it reveals

3     attorney-client communications or confidences, do

4     not disclose those.

5     Q.   Well, let me take it a different way.  I

6  don't want to know what you talked with your counsel

7  about.  I just -- I want to know what exactly -- let me

8  strike that.

9        What's the -- what are you trying to

10  demonstrate by reason of this declaration?

11        MR. KONTUL:  Objection.

12        MR. PIETZ:  And what's that?

13        MR. KONTUL:  Again, to the extent it reveals

14     attorney-client or privileged communications they

15     shouldn't be discussed.  Other than that, you can

16     answer.

17        MR. PIETZ:  All right.

18     A.   It was to identify these particular

19  candidates and the reason that they were not hired.

20     Q.   Did you write this declaration?

21        MR. KONTUL:  Again, to the extent that it

22     calls for revealing any attorney-client privileged

23     communications you should not answer.  Otherwise

24     you can answer the question.

25     A.   I'm not an attorney; so no.

1      Q.    You didn't write it?

2      A.    This is my -- I didn't physically type it,

3  but I reviewed it and signed it.

4      Q.    Okay.  Let's just talk about the process you

5  went through to, I guess, arrive at this Exhibit A.

6  Can you tell me, who are these people that are listed,

7  the names?  How did you identify these certain people?

8           MR. KONTUL:  Again, to the extent that it

9      requires you to reveal attorney-client confidences

10      you shouldn't reveal them.  Other than that, you

11      can answer.

12      A.    It was my understanding that there were

13  individuals that were identified that there was a

14  question as to why they were not hired.

15      Q.    Are these people who would be in the

16  so-called subclass in this litigation called preadverse

17  action persons?  Are you aware of that?

18           MR. KONTUL:  Again, objection as to

19      attorney-client communications.  Otherwise you can

20      answer.

21           What I'm saying is, to the extent you're

22      aware of it other than through attorney-client

23      communication.

24      A.    I believe so.

25      Q.    Okay.

1      A.    There was some individuals -- there were some

2   people identified and there was a question as to why

3   they were not hired.

4      Q.    Okay.  What I'm trying to understand, did you

5   create Exhibit A?

6           MR. KONTUL:  Same objection.  You can answer.

7      A.    Not this piece of paper, but this list came

8   from me.

9      Q.    This list came from you?

10     A.    Yes.

11     Q.    And how did you, you know, determine these

12  particular individuals to include on this exhibit?

13  What did you do?

14     A.    Where I came up with the names?

15     Q.    Yes.

16     A.    I was provided a list.

17     Q.    By your attorney?

18     A.    By legal counsel, correct.

19     Q.    All right.  Is it your understanding that

20  these are people who fit within that definition of the

21  subclass?

22     A.    I'm not familiar with the definition of the

23  subclass.

24     Q.    All right.  So your attorney gave you this

25  list, and then what did you do with the list?

1      A.   I physically went and pulled the documents

2  for these individuals and reviewed their applications.

3      Q.   And when did you do this?

4      A.   Several weeks ago.

5      Q.   And how did you make the determination as to

6  the reason they weren't hired?

7      A.   I reviewed the documents.

8      Q.   Is there somewhere in the document that gives

9  a final -- makes a final determination?

10     A.   Not necessarily.

11     Q.   No?  So how were you able to make that

12 determination in retrospect?

13     A.   Reviewing the documents.

14     Q.   Okay.  But this is -- were you the one in

15 particular who was responsible for making this

16 determination back when it occurred?

17     A.   Not in every case, no.

18     Q.   Which one of these did you make?

19     A.   I do not know.

20     Q.   Okay.  So as I understand it then, you just

21 reviewed the file and you made a call as to why they

22 weren't hired a few weeks ago?

23          MR. KONTUL:  Objection.

24     Q.   Is that basically what happened?

25     A.   I made an educated, based on my experience

1    and knowledge of ClosetMaid, review of the documents.

2         Q.   I see.  So this is your opinion?

3              MR. KONTUL:  Objection.

4         A.   No, sir.

5         Q.   Well, I don't understand.  You weren't the

6    one -- you just told me that this is based upon your

7    educated guess as to what happened when the

8    determination was made.

9              MR. KONTUL:  Objection.  She didn't say that.

10        A.   I don't believe -- I didn't say "guess."

11        Q.   Okay.  Let me understand.  You reviewed their

12   files a few weeks ago; is that right?

13        A.   That is correct.

14        Q.   And in looking at that file, you were able to

15   make a determination as to why they're not hired; is

16   that right?

17        A.   I was.

18        Q.   Based on what?

19        A.   The documents in the file.

20        Q.   Is there a particular area of the file where

21   it gives the file final determination?

22        A.   There's a code.

23        Q.   There's a code.  And that -- you looked at

24   the code?

25        A.   Not initially.

63

1      Q.   I don't understand.  Not initially, what's
2  that mean?
3      A.   I would look through the file.  I would
4  indicate reason for no hire.  The code itself is very
5  broad.
6      Q.   Okay.  And what are the codes?  How many
7  codes are there?
8      A.   I don't know them all.
9      Q.   How many are there, do you know?
10     A.   I don't.
11     Q.   Is there a document that sets forth the
12  codes?
13     A.   There is.
14     Q.   And what's that document called?
15     A.   I don't know the name of it.
16     Q.   And where in the file is the code put?
17     A.   Normally on the front page.
18     Q.   Okay.  Now, in looking at Exhibit A, these
19  are all persons from Ocala or CMNA; is that right?
20     A.   That's correct.
21     Q.   And meaning this is where they applied to
22  that geographic location?
23     A.   Correct.
24     Q.   Okay.  And do you know why this is just
25  Ocala, Florida, on this particular exhibit?

64

1     A.   It was my area of responsibility.

2     Q.   I see.  Okay.  And why is there not a column

3 here that lists the results of the background check/

4 consumer report?

5     A.   I don't know.

6     Q.   Is it your testimony you didn't create this

7 exhibit?

8     A.   I created this information.

9     Q.   I understand.  But who created the columns?

10     A.   I did.

11     Q.   So why didn't you create a column that listed

12 the results of the background check?

13     A.   It wasn't relevant.

14     Q.   And based on whose determination?

15     A.   Based on the documents in the file.

16     Q.   I see.  In each one of these cases that

17 you've listed here, was a consumer report/background

18 check pulled?

19     A.   I believe so.

20     Q.   And was it looked at by a human resource

21 representative?

22     A.   I can't speak to that.

23     Q.   But when you were going through this

24 retrospective process, was it in the file?  Was the

25 consumer report/background check in the file?

65

1      A.   I believe so.

2      Q.   Did you look at it?

3      A.   I don't think so.

4      Q.   Okay.  So the reason for "no hire" column,

5  that's the final determination that was made; is that

6  right?

7           MR. KONTUL:  Objection.

8           MR. PIETZ:  What's your objection?

9           MR. KONTUL:  I don't know what that means.

10     Q.   Do you understand what I mean?

11     A.   No.

12     Q.   This is the final reason that is given for

13  the no hire; right?

14           MR. KONTUL:  Same objection.

15     A.   By whom?

16     Q.   This is the -- by whoever put the code in

17  there.

18     A.   The code is very broad.

19     Q.   But this is the ultimate determination as to

20  why they were not hired; right?

21     A.   This is my information based on the document

22  review.

23     Q.   Right.  And this is the result of the process

24  that we were just talking about; right?  This is the

25  process where you get employment information, where you

1    verify references, where you pull a background report.

2    This is the final result of that process; correct?

3        A.   Yes.

4        Q.   Okay.  Now --

5            MR. PIETZ:  I guess I need to get this

6    copied.  Let's see here, maybe I had -- I guess I

7    don't.  I need to get this copied.

8            THE REPORTER:  Okay.

9            MR. CARIUS:  This may be a good time to move

10   my car break period.

11           MR. PIETZ:  Okay.

12           (A recess was taken.)

13           MR. PIETZ:  Mark that as the next exhibit,

14   whatever that is.

15           THE REPORTER:  This will be 11.

16           (Boring Exhibit 11 was marked for

17   identification.)

18       Q.   Okay.  Showing you what's been marked as

19   Deposition Exhibit 11.  Can you identify that document?

20       A.   It states that it's the response to requests

21   for production.

22       Q.   And you signed a verification in connection

23   with these?

24       A.   I did.

25       Q.   And that's your signature on the last page,

1    that verification?

2         A.   Yes, that's my signature.

3         Q.   Okay.  And this document includes -- I

4    believe it includes your declaration that we were just

5    talking about.

6         A.   Yes.

7         Q.   And it includes some other declarations;

8    isn't that right?

9         A.   That is correct.

10        Q.   And let's look at those.  The first

11   declaration is Document 5093 at the end there.  Do you

12   see that?

13        A.   Yes.

14        Q.   That's a declaration of Merlyn

15   Hernandez-Opio.  And who is that, do you know?

16        A.   Merlyn is a human resources representative at

17   ClosetMaid.

18        Q.   And what location?

19        A.   Ocala.

20        Q.   She's in Ocala, okay.  And were you at all

21   involved in her declaration?

22        A.   I'm not sure I understand the question.

23        Q.   Were you involved at all in any facet of

24   creating or preparing this declaration and the

25   information that's attached as Exhibit A?

1      A.   I'm responsible for the information on

2   Exhibit A.

3      Q.   In what sense?

4      A.   During the process of reviewing the documents

5   I created it for all locations.

6      Q.   Okay.  You put -- did you create Exhibit A on

7   her declaration?

8      A.   I did.

9      Q.   And you filled in the information?

10     A.   I did.

11     Q.   And you examined the files?

12     A.   I did.

13     Q.   And then why did she sign off on the

14  declaration?

15     A.   Merlyn would have been the first line

16  recruiter for these positions.

17     Q.   Was she the human resource representative

18  that was involved in making the determinations in each

19  one of these files?

20     A.   I believe so.

21     Q.   And you went through the same process that

22  you described earlier for your declaration?

23     A.   Yes.

24     Q.   And again how was it that you selected these

25  individuals to be on Exhibit A?

1      A.    I reviewed each of the documents.

2      Q.    I understand that, but where did you get --

3  how did you select the files that were on here?

4      A.    They were part of the list of the individuals

5  that were in question.

6      Q.    All right.  So you received a list of persons

7  in question; is that right?

8      A.    Yes.

9      Q.    And then you went and pulled the files for

10 each one of those persons?

11     A.    I did.

12     Q.    And not only for your declaration but for her

13 declaration; is that right?

14     A.    That's correct.

15     Q.    Okay.  Now, there are some other declarations

16 here as well; isn't that right?

17     A.    Yes.

18     Q.    There's a declaration of Patricia Dameron?

19     A.    Yes.

20     Q.    At 5096.  And who is she?

21     A.    Pat was the previous director of human

22 resources for ClosetMaid.

23     Q.    And why was she selected to create a

24 declaration?

25     A.    She was identified because she was part of

1    the management responsibility for these locations.

2        Q.   And looking on Exhibit A, that's Grantsville,

3    Fife, and CMNA?

4        A.   Grantsville and Fife are accurate.  CMNA

5    doesn't seem accurate.

6        Q.   Okay.  And again with respect to her

7    declaration, you created Exhibit A; isn't that right?

8        A.   I did.

9        Q.   And you made these determinations that you

10   filled in; is that right?

11       A.   I reviewed the files on all of them, yes.

12       Q.   Okay.  And -- did I get all of them?

13            There are three declarations that were

14   provided?

15       A.   Yes.

16       Q.   And on each one of those you are the one who

17   created Exhibit A?

18       A.   Correct.

19       Q.   And you're the one that reviewed the files

20   for that?

21       A.   Initially, yes.

22       Q.   Okay.  Initially, and then what?  What

23   happened after that?  Did someone else make an

24   examination?

25       A.   Both Patricia and Merlyn would have reviewed

1    them before signing their declaration as well.

2        Q.   Okay.  And what about Chino, was there any

3    work done in connection with the Chino location?

4        A.   There were no individuals from Chino on the

5    list I was provided.

6        Q.   Okay.  And each of the persons on Exhibit A

7    for all of these declarations, a background check and

8    consumer report had been pulled or ordered for all of

9    these individuals; isn't that right?

10       A.   I believe so.

11       Q.   And they would have been in the file;

12   correct?

13       A.   Yes.

14       Q.   And they would have been considered by the

15   human resource representative in the process of making

16   the determination whether or not to hire this

17   individual, this particular individual; correct?

18       A.   Not necessarily.

19       Q.   Why else would they be ordered?

20       A.   Because that process was all happening at the

21   same time.

22       Q.   I understand, but you told me earlier that

23   all the information was considered.

24            MR. KONTUL:  Objection.

25       A.   I believe I stated that everything on the

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing SECOND SUPPLEMENTAL APPENDIX OF RECORD MATERIALS IN SUPPORT OF CLOSETMAID'S MOTION TO DECERTIFY THE PRE ADVERSE ACTION SUB-CLASS was filed electronically on July 8, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ W. Scott Hardy
W. Scott Hardy, Esquire
Attorney for Defendant ClosetMaid Corporation

15419977.1