**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| R. CATHY REARDON<br>On behalf of herself and all<br>similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CLOSETMAID CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:08-cv-001730-MRK<br><br>Judge Mark R. Hornak<br><br>***Electronically Filed*** |

**DEFENDANT'S PRETRIAL STATEMENT**

Defendant, ClosetMaid Corporation ("ClosetMaid"), by and through its undersigned counsel, the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and pursuant to LCvR 16.1(C) and this Honorable Court's Final Pretrial Order, files the following Pretrial Statement:

**A. Brief Narrative Statement**

The Fair Credit Reporting Act ("FCRA") is a complex statutory scheme that primarily regulates the business practices of consumer reporting agencies to ensure that they exercise their "grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."[1] Embedded within this statutory scheme are certain provisions establishing conditions precedent that an employer must perform before it may procure consumer reports from consumer reporting agencies and then use those consumer reports for employment purposes. These specific provisions are found at 15 U.S.C. § 1681b(b)(2) (the "Disclosure and Authorization Provisions") and 15 U.S.C. § 1681b(b)(3) (the "Pre-Adverse Action Provision").

1 See 15 U.S.C. §§ 1681 – 1681x (citing an excerpt from the Congressional findings and statement of purpose at 15 U.S.C. § 1681(a)(4).

Plaintiff seizes upon these obscure and highly technical FCRA provisions to advance novel and unsupported claims even though ClosetMaid: (i) made a clear and conspicuous disclosure to each class member that a consumer report may be obtained for employment purposes; (ii) obtained an authorization from each class member to procure their consumer report; and (iii) whenever intending to take an "adverse employment action" (*i.e.*, a decision not to hire) based in whole or in part upon a subclass member's consumer report, it timely provided that subclass member with a copy of their consumer report and a summary of their consumer rights.

* * *

ClosetMaid is headquartered in Ocala, Florida, where it manufactures various storage products including closet shelving, pantry shelving, work products, shower caddies and other miscellaneous storage items. ClosetMaid has offices in Grantsville, Maryland and Chino, California, and it has distribution centers in Tacoma, Washington and Belle Vernon, Pennsylvania.

ClosetMaid maintains a Salaried Recruiting Procedure that describes how ClosetMaid's recruiters and human resource managers review applications and make hiring decisions based upon the relevant criteria of the position for which each applicant applies. These hiring standards vary for different positions, such as salespeople, truck drivers, etc., as compared to other positions. In certain instances, ClosetMaid procured and on a handful of occasions used consumer reports when making its hiring decisions. From December 19, 2006 to July 1, 2009, ClosetMaid contracted with various consumer reporting agencies to furnish these consumer reports, including: LexisNexis, Securint, American Background Information Services, Inc. and Accurate Background Check.

ClosetMaid's hiring process was not a "linear process" and as such, every position and every candidate is different and handled individually. Various human resources managers at its various locations were responsible for making these hiring decisions, and consumer reports were obtained, depending yet again upon the position for which an employee applies. Moreover, ClosetMaid did not always use the information contained in an applicant's consumer report when making its hiring decisions and such information, even if perceived as "derogatory" or "negative," would not necessarily disqualify an applicant from being hired. In fact, ClosetMaid rejected applicants based in whole or in part on the contents of their consumer reports in only a handful of instances.

ClosetMaid understood that certain applicable FCRA provisions required it to make a clear and conspicuous disclosure to its applicants and to obtain its applicants' written authorization prior to procuring their consumer reports. Particularly, ClosetMaid was aware that in order to procure and potentially use a consumer report for employment purposes, it needed to ensure:

> (i) A clear and conspicuous disclosure has been made in writing at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure…; and,
>
> (ii) The consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

*See* 15 U.S.C. § 1681b(b)(2)(A)(i)(ii).

From December 13, 2006 until July 1, 2009, ClosetMaid procured consumer reports for approximately 1,800 applicants, including Class Representative Cathy Reardon. Of these applicants, some of them, including Class Representative Reardon, signed both ClosetMaid's "Fair Credit Reporting Act Authorization Form - Notice of Intent to Obtain a Consumer Credit

Report" ("Notice") and its "Authorization to Obtain a Consumer Credit Report and Release of Information for Employment Purposes" ("Authorization").

The Notice, signed by Ms. Reardon and certain other members of the Disclosure Class, clearly and conspicuously disclosed that ClosetMaid may obtain their consumer report for employment purposes. Indeed, this Notice states:

> I understand that, as a condition of my consideration for employment with ClosetMaid, or as a condition of my continued employment with [sic] ClosetMaid may obtain a consumer report that includes, but is not limited to, my credit history or similar characteristics, employment and education verifications, social security verification, criminal and civil history, Department of Motor Vehicle records, any other public records, and any other information bearing on my credit standing or credit capacity.
>
> I understand that, pursuant to the federal Fair Credit Reporting Act, if any adverse action is to be taken based upon this consumer report, a copy of the report and a summary of the consumer's rights will be provided to me if requested.
>
> /s/ Regina C. Reardon         12/13/06

The Authorization, signed by Ms. Reardon and certain other members of the Disclosure Class, authorized ClosetMaid to procure their consumer reports. Indeed, this Authorization states:

> Pursuant to the Fair Credit Reporting Act, I hereby authorize ClosetMaid and its designated agents and representatives to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated form employment, promotion, reassignment or retention as an employee. I understand the scope of the consumer report/investigative consumer report and may include, but is not limited to the following areas:
>
> Verification of Social Security Number, current and previous residence, employment history including all personnel files, education, character references, credit history and reports, criminal history records from any criminal justice agency in any or all federal, state, or county jurisdiction, birth records, motor vehicle records to include traffic citations and registration and any other public records.

> I, _Regina C. Reardon_, authorize the complete release of these records or data pertaining to me which an individual, company, firm, corporation, or public agency may have. I understand that I must provide my date of birth to adequately complete said screening and acknowledge that my date of birth will not affect any hiring decisions. I hereby authorize and request any present or former employer, school, police department, financial institution or other personal knowledge about me, to furnish bearer with any and all information in their possession regarding me in connection with an application or employment. I am authorizing that a photocopy of this authorization be accepted with the same authority as the original.
>
> I hereby release ClosetMaid, and its agents, officials, representative, or assigned agencies, including officers, employees, or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family, or associates because of compliance with this authorization and request to release. You may contact me as indicated below. I understand that a copy of this authorization may be given at any time provided I do so in writing.
>
> I understand that, in pursuant to the fair Credit Reporting Act, if any adverse action is to be taken based upon the consumer report, a copy of the report and a summary of the consumer's rights will be provided to me if requested.
>
> *** *** ***
>
> /s/ Regina C. Reardon Date: 12/13/06

Class Representative Reardon readily admits that by signing the Notice and Authorization Forms, she knew, understood, and authorized ClosetMaid to procure and potentially use her consumer report for employment purposes.

ClosetMaid ultimately hired more than a majority of the applicants who comprise the Disclosure Class. Of the remainder, Class Representative Reardon identifies approximately seventy-seven (77) applicants who comprise the Pre-Adverse Action Sub-Class who she contends are the subject of a consumer report that contains "derogatory" information and who

also experienced an "adverse employment action." However, at least twenty-two (22) applicants had not actually experienced an adverse employment action because they declined an offer of employment, failed to appear for a job interview, or indicated that they were no longer interested in a job. An additional fifty (50) of these applicants were not hired for reasons completely unrelated to the information contained in their consumer reports, such as failing a drug test, falsifying information on their application, applying at a time when there were no open positions, etc.

ClosetMaid merely rejected a handful of applicants based in whole or in part on the contents of their respective consumer reports; however, ClosetMaid supplied each of these applicants with a copy of their consumer report and a summary of consumer rights before taking such adverse action as required by FCRA. By way of example, ClosetMaid intended to reject Class Representative Reardon's application because her consumer report contained information about her creditworthiness that, in ClosetMaid's prudential judgment, rendered her unqualified or otherwise undesirable for the Territory Supervisor/Manager position for which she applied. Accordingly, ClosetMaid timely issued to Ms. Reardon the so-called "Pre-Adverse Action Notice" in conjunction with a copy of her consumer report and a summary of consumer rights. In fact, ClosetMaid did so in every instance that it intended to reject a job application based in whole or in part on the applicant's consumer report.

Finally, even if ClosetMaid did not comply with one or more technical FCRA requirements, a contention it disputes, such purported non-compliance is, at most, negligent and certainly not willful. ClosetMaid's reading of FCRA was objectively reasonable and its procurement and use of consumer reports was not done in reckless disregard of the applicable FCRA provisions.

While FCRA requires an employer to make a clear and conspicuous disclosure to an applicant that it will be procuring their consumer report, and while FCRA also requires an employer to obtain the applicant's written authorization to do so, nothing in FCRA expressly prohibits the inclusion of a release from liability, particularly where the "release" at issue is limited to damages flowing from the employer's compliance with the applicant's authorization -- the very thing applicants authorize when signing a compliant FCRA authorization form. A federal judge has even determined that the inclusion of a release does not render those forms noncompliant. Importantly, ClosetMaid has never attempted to enforce the release contained in its forms against any of its job applicants.

Moreover, ClosetMaid's human resources staff endeavored to ensure compliance with FCRA as with all laws applicable to the workplace. Such compliance efforts involved researching human resource sources including the Society for Human Resource Management ("SHRM"), the Bureau of Labor Reporting, and AER Employer Legislative; consulting government and legal websites; attending seminars; reviewing, revising and updating forms; and participating in human resource discussion groups. These compliance efforts yielded various the disclosure and authorization forms adopted and used by ClosetMaid, along with ClosetMaid's formulation and adoption of policy language directing its human resources representatives to notify candidates in accordance with FCRA through its practice of supplying a copy of the consumer report and a summary of consumer rights to applicants it intended to reject based in whole or in part on their consumer report.

ClosetMaid never procured a consumer report pertaining to an applicant without first presenting that applicant with a disclosure and obtaining their written authorization. ClosetMaid further ensured that, in all cases, it kept separate its disclosure and authorization documents from

any other application documents. ClosetMaid also believed that by fulfilling its contractual obligations with its Consumer Reporting Agency vendors, and by receiving consumer reports from them, it must have been complying with FCRA because those consumer reporting agencies, whose business is primarily regulated by FCRA was not permitted to furnish consumer reports to ClosetMaid without ensuring compliance with these disclosure and authorization provisions. One such vendor, American Background, actually supplied ClosetMaid with an authorization form that contained a release.

By presenting its applicants with documents that informed them that it would be seeking to procure and potentially use their consumer reports for hiring purposes, and by soliciting applicants' written authorization to do so, ClosetMaid strived in good faith to fulfil the disclosure and authorization requirements of 15 U.S.C. § 1681b(b)(2) and (3).  To the extent its forms did not fully and completely satisfy these technical requirements, then ClosetMaid's non-compliance in this regard was merely negligent and not willful.  Indeed, ClosetMaid's forms complied with the express text and intent of FCRA by making the requisite disclosures and by obtaining the applicants' authorization.

Moreover, in all but a few isolated instances, ClosetMaid never based its hiring decisions in whole or in part on the content of its applicants' consumer reports. In fact, ClosetMaid ultimately offered jobs to many applicants who signed its allegedly non-compliant forms.  In those very few instances where ClosetMaid did intend to take an adverse employment action based in whole or in part on a consumer report, it complied with all aspects of FCRA by timely providing them with a so-called "Pre-Adverse Action Notice" along with a copy of their consumer report and a summary of consumer rights.  Again, if ClosetMaid somehow failed to comply with all aspects of FCRA when attempting to inform applicants that it intended to make

adverse employment decisions based in whole or in part on information contained in their consumer reports, then such non-compliance was merely negligent and certainly not willful. Had ClosetMaid's purported non-compliance been willful, it would not have issued any Pre-Adverse Action Notices, and nor would it have supplied applicants it intended to reject with copies of their consumer reports or a summary of their legal rights.

Indeed, a company willfully not complying would surely have not provided any notice and would not have informed them of their legal rights, including their right to assert a lawsuit against it. Yet, this is exactly what ClosetMaid did.

**B. Statement of Damages**

Class Representative Reardon and Class Counsel have elected to forego any recovery of purported actual damages and instead seek statutory damages of between $100 and $1,000 per class member per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A). Accordingly, Class Representative Reardon has chosen not to seek actual damages for herself or other class members so they cannot obtain an award for any damages unless she establishes that ClosetMaid willfully failed to comply with FCRA.

Class Representative Reardon and Class Counsel cannot obtain punitive damages unless they prove that ClosetMaid willfully violated the FCRA. See 15 U.S.C. § 1681o; see also 15 U.S.C. § 1681n. Even if Class Representative Reardon can establish evidence of willfulness, a contention ClosetMaid disputes, punitive damages are nonetheless not awardable here because Class Representative Reardon cannot prove that willful concealments, misrepresentations, or any other proof that would justify the award of punitive damages.

**C. Witnesses**

Witnesses Defendant Will Call:

1. Class Representative R. Cathy Reardon

Defendant will call Class Representative Reardon to testify regarding: her application for employment with ClosetMaid; her execution of ClosetMaid's Disclosure and Authorization Forms; her understanding that ClosetMaid intended to procure her consumer report and that she authorized ClosetMaid to do so; the contents of her consumer report; and her exchange of communications with ClosetMaid, including her receipt of written communications from ClosetMaid supplying her with a copy of her consumer report and a summary of her consumer rights, and further informing her that she may not be offered employment based in whole or in part on the information contained in her consumer report.

Liability/Damages

2. Cathy Beal
ClosetMaid's Vice President of Human Resources
c/o Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One PPG Place – Suite 1900
Pittsburgh, PA 15222

Defendant will call Cathy Beal to testify regarding: ClosetMaid's business and workforce, her role as Vice President of Human Resources, and the role of ClosetMaid's Human Resources Department, including efforts to comply with applicable laws and regulations; ClosetMaid's policies, procedures, and hiring standards and practices, including ClosetMaid's Salaried Recruiting Procedure and the varied manner in which it was implemented by different human resources managers and other personnel; ClosetMaid's contractual relationships with consumer reporting agencies and ClosetMaid's procurement and use of consumer reports; ClosetMaid's use of job applications and other forms during the hiring process; ClosetMaid's job

applicant disposition codes, job applicants and their applications, and the disposition of job applications for any and all job applicants from December 13, 2006 to present.

    Liability/Damages

        3.      Jennifer Boring
             Human Resource Director at ClosetMaid
             c/o Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
             One PPG Place – Suite 1900
             Pittsburgh, PA  15222

Defendant will call Jennifer Boring to testify regarding: ClosetMaid's business and workforce, her role as Director of Human Resources, and the role of ClosetMaid's Human Resources Department, including efforts to comply with applicable laws and regulations; ClosetMaid's policies, procedures, and hiring standards and practices, including ClosetMaid's Salaried Recruiting Procedure and the varied manner in which it was implemented by different human resources managers and other personnel; ClosetMaid's contractual relationships with consumer reporting agencies and ClosetMaid's procurement and use of consumer reports; ClosetMaid's use of job applications and other forms during the hiring process; ClosetMaid's job applicant disposition codes, job applicants and their applications, and the disposition of job applications for any and all job applicants from December 13, 2006 to present.

    Liability/Damages

        4.      Mary K. Price
             Formerly Human Resources Manager at ClosetMaid
             c/o Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
             One PPG Place – Suite 1900
             Pittsburgh, PA  15222

Defendant will call Mary K. Price to testify regarding: ClosetMaid's business and workforce, her role as Human Resources Manager, and the role of ClosetMaid's Human Resources Department, including efforts to comply with applicable laws and regulations;

ClosetMaid's policies, procedures, and hiring standards and practices, including ClosetMaid's Salaried Recruiting Procedure and the varied manner in which it was implemented by different human resources managers and other personnel; ClosetMaid's contractual relationships with consumer reporting agencies and ClosetMaid's procurement and use of consumer reports; ClosetMaid's use of job applications and other forms during the hiring process; ClosetMaid's job applicant disposition codes, job applicants and their applications, and the disposition of job applications for any and all job applicants from December 13, 2006 to present.

Liability/Damages

        5.      Merlyn Hernandez Opio
Human Resource Representative
c/o Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One PPG Place – Suite 1900
Pittsburgh, PA 15222

Defendant will call Merlyn Hernandez Opio to testify regarding: her role as Human Resources Manager and the role of ClosetMaid's Human Resources Department, including efforts to comply with applicable laws and regulations, and her review of applications and the hiring of employees; ClosetMaid's job applicant disposition codes, job applicants and their applications, and the disposition of job applications for job applicants from December 13, 2006 to present.

Liability/Damages

6. Patricia Dameron
Formerly Human Resource Director at ClosetMaid
c/o Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One PPG Place – Suite 1900
Pittsburgh, PA 15222

Defendant will call Patricia Dameron to testify regarding: her role as Human Resource Director and the role of ClosetMaid's Human Resources Department, including efforts to comply with applicable laws and regulations and her review of applications and the hiring of employees; ClosetMaid's job applicant disposition codes, job applicants and their applications, and the disposition of job applications for job applicants from December 13, 2006 to present.

Liability/Damages

Witnesses Defendant May Call:

7. Jeffrey R. Carius
Vice President and Chief Employment Counsel
c/o Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One PPG Place – Suite 1900
Pittsburgh, PA 15222

Defendant may call Jeffrey R. Carius to testify regarding: his role as Vice President and Chief Employment Counsel for Emerson Electric, Co.; the limited relationship between Emerson and ClosetMaid.

Liability/Damages

Defendant reserves the right to call any witness not listed herein for impeachment, rebuttal or sur-rebuttal purposes.

Defendant's designations of witnesses whose testimony is expected to be presented by means of a deposition and the designated portions thereof will be provided on December 6, 2013 in accordance with the Court's Final Pretrial Order.

**D. Exhibits**

Exhibits Defendant expects to offer at trial:

D1. ClosetMaid's President's Office Organizational Chart (May 2009)

D2. ClosetMaid's Human Resources Organizational Chart (May 2009)

D3 ClosetMaid's Human Resources Ocala/CMNA Organizational Chart (May 2009)

D4 ClosetMaid's Human Resources Chino Organizational Chart (May 2009)

D5 ClosetMaid's Human Resources Cambridge Organizational Chart (May 2009)

D6 ClosetMaid's Human Resources Grantsville Organizational Chart (May 2009)

D7 ClosetMaid's Salaried Recruiting Procedure

D8 Securint Application and Service Agreement and Addendum

D9 LexisNexis Application and Agreement

D10 (a) American Background, Background Package Pricing

(b) American Background Authorization for Release of Information Form, Bates No. CMC035959-CMC035961

D11 Accurate Background Check Letter dated January 21, 2002

D12 ClosetMaid Disposition Codes

D13 Class Representative Reardon's Employment Application and accompanying submissions.

D14 Letter to Class Representative Reardon dated December 18, 2006

D15 "A Summary of Your Rights Under the Fair Credit Reporting Act"

D16 Class Representative Reardon's Credit Report dated December 15, 2006

D17 Class Representative Reardon's National Criminal Report dated December 15, 2006

D18 Letter to Class Representative Reardon dated December 22, 2006

D19 Fed.R.Civ.P. 1006 Summary of Disclosure Class Files

D20 Fed.R.Civ.P. 1006 Summary of Pre-Adverse Action Sub-Class Files

D21 Exhibit A to Boring Affidavit dated March 25, 2013

D22 Exhibit A to Hernandez-Opio Affidavit dated March 25, 2013

D23 Exhibit A to Dameron Affidavit dated March 25, 2013

Exhibits Defendant may offer at trial if the need arises:

D24 Applicant Files of Disclosure Class Members

D25 Applicant files of Pre-Adverse Action Sub-Class Members

D26 ClosetMaid Handbook

D27 Exemplar application and forms from Belle Vernon location

D28 Exemplar application and forms from Grantsville location

D29 Exemplar application and forms from Ocala location

D30 Exemplar application and forms from Chino location

D31 "Combined Disclosure Notice and Authorization to Obtain a Consumer Report" of July 2009

D32 ClosetMaid Sub-Class Chart, Bates No. 279

D33 FTC Staff Opinion: Haynes (December 18, 1997)

D34 FTC Staff Opinion: Brinckerhoff (June 27, 1997)

D35 FTC Staff Opinion: Haynes (June 11, 1998)

D36 Plaintiffs' Answers and Objections to Defendant's Second Set of Interrogatories

D37 Plaintiffs' Objections and Responses to Defendant's Second Request for Production of Documents

D38 Plaintiffs' Objections and Reponses to Defendant's First Request for Production of Documents

D39 Plaintiffs' Answers and Objections to Defendant's First Interrogatories

D40  ClosetMaid's Answers to Plaintiff's First Set of Interrogatories Pursuant to the Court's January 11, 2013 Order

D41  ClosetMaid's Answers to Plaintiff's First Set of Requests for Production Pursuant to the Court's January 11, 2013 Order

D42  ClosetMaid's Supplemental Answers and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents

D43  ClosetMaid's Answers and Responses to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents

D44  Emerson Electric's Answers and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents

D45  ClosetMaid's Answers and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents

D46  Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

Defendant reserves the right to use at trial any exhibits identified in Class Representative Reardon's Pretrial Narrative Statement.

Defendant reserves the right to submit any exhibit not listed herein for impeachment, rebuttal or sur-rebuttal purposes.

Defendant may offer or read into evidence any pleadings filed or discovery requests or responses served in this action.

Defendant may offer into evidence, use or display at trial demonstrative exhibits prepared for trial based on admissible evidence.

Defendant reserves the right to supplement or amend this list of exhibits based upon the Court's impending ruling on motions for summary judgment, motion to decertify, and motion to strike.

**E. Legal Issues To Be Addressed At Pretrial Conference**

1. Whether, or to what extent, special jury interrogatories will be used.

2. Whether Class Representative Reardon can adequately represent class members who did not signed the same Disclosure and Authorization forms as she signed.

3. Whether Class Representative Reardon can adequately represent sub-class members who did not experience an adverse employment action or who did not experience an adverse employment action based in whole or in part on the contents of their consumer report.

4. Whether the issues of "negligent noncompliance" and "willful noncompliance" will be submitted to the jury.

5. Whether Class Representative Reardon should be precluded from introducing evidence of net worth or other evidence concerning Emerson Electric Co. and its affiliated entities (other than ClosetMaid) since it had been dismissed from the action in October 2009 and since there is no basis for doing so.

**F. Expert Reports**

Not Applicable.

Dated: November 22, 2013

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ W. Scott Hardy*

W. Scott Hardy, Esquire
PA I.D. No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esquire
PA I.D. No. 94156
philip.kontul@ogletreedeakins.com

One PPG Place
Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 394-3333
Facsimile: (412) 232-1799

Attorneys for Defendant ClosetMaid Corporation