**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **R. CATHY REARDON** ) | | |
| **On behalf of herself and all** ) | | |
| **similarly situated individuals,** ) | | |
| ) | | |
| Plaintiffs, ) | | Civil Action No. 2:08-cv-1730MRK |
| v. ) | | |
| **CLOSETMAID CORPORATION,** ) | | Hon. Judge Mark R. Hornak |
| ) | | |
| Defendant. ) | | Class Action |

## ORDER

AND NOW, on this _____ day of _____ 2013, upon consideration of Plaintiff's Motion *In Limine* regarding Admitted or Uncontested Facts, and Defendant's response in opposition thereto, it is hereby ORDERED that the Motion is GRANTED.

The following facts are determined true for trial, and the jury will be so instructed. Defendant ClosetMaid Corporation ("*ClosetMaid*") is precluded from offering any evidence or argument at trial that asks the jury to reconsider these facts, specifically as follows:

1.  Plaintiff is a "consumer" under the FCRA. Docket No. 16, ¶7, Docket No. 19, ¶7.

2.  At all times relevant hereto, ClosetMaid was a "user" of the consumer report of Plaintiff, as governed by the FCRA., Docket No. 16, ¶8, Docket No. 19, ¶8.

3.  ClosetMaid is headquartered in Ocala, Florida and manufactures various storage products including closet shelving, pantry shelving, work products, shower caddies and other miscellaneous storage items. Docket No. 95, ¶1.

4. In addition to its Florida location, ClosetMaid maintains offices in Grantsville, Maryland and Chino, California and has distribution centers in Tacoma, Washington and Belle Vernon, Pennsylvania. Docket No. 95, ¶2.

5. During all times relevant to this action, ClosetMaid contracted with third-party consumer reporting companies to procure consumer reports. Docket No. 95, ¶5.

6. In doing so, ClosetMaid uses consumer reports as part of its employee screening process., Docket No. 95, ¶ 6, 2009 Beal Dep, p.29-30.

7. ClosetMaid's written human resources manual stating its FCRA policy is its *Salaried Recruiting Procedure*. Docket No. 95, ¶3, Plaintiff's Proposed Exhibit #15, Docket No. 138 and Defendant's Proposed Exhibit #D7, Docket No. 139.

8. ClosetMaid's *Salaried Recruiting Procedure* is Defendant's primary document that governs and addresses its FCRA compliance. Docket No. 95, 12, 2009 Beal Dep., Ex. 6, p. 168, Tab 2.

9. ClosetMaid understood that certain applicable FCRA provisions required it to make a clear and conspicuous disclosure to its applicants and to obtain its applicants' written authorization prior to procuring their consumer reports. Particularly, ClosetMaid was aware that in order to procure and potentially use a consumer report for employment purposes, it needed to ensure:

> (i)  A clear and conspicuous disclosure has been made in writing at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure ... ; and, (ii)  The consumer has authorized in writing (which authorization may be made on the document referred to in clause (i))  the procurement of the report by that person.

*See* 15 U.S.C. § 168lb(b)(2)(A)(i)(ii); Docket No. 139, at 3.

10. Section 1681b(b)(2)(A) (i) and (ii) of the FCRA was enacted by Congress

as amendments to the FCRA effective September 30,1996. S.J. App. 5, PUBLIC LAW 104–208. Sec. 2403—SEPT. 30, 1996. Docket No. 118, 18.

11. On June 12, 1998, an FCRA Staff Opinion letter was issued by the Federal Trade Commission known as Haynes-Hauxwell. Docket No. 93, Exhibit 6, Docket No. 118, 19.

12. The Haynes-Hauxwell Staff Opinion Letter was available to ClosetMaid prior to the start of the class period. *Id*.

13. The Haynes-Hauxwell Staff Opinion Letter states:

> The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result.
> Docket No. 93, Exhibit 6.  Docket No. 118, 20.

14. On October 21, 1997, a FCRA Staff Opinion letter was issued by the Federal Trade Commission known as Steer-Lamb. Docket No. 93, Exhibit 7., Docket No. 21.

15. The Steer-Lamb Staff Opinion Letter was available to ClosetMaid prior to the start of the class period. *Id*.

16. The Steer-Lamb Staff Opinion Letter states, in part:

> We believe that including an authorization in the same document with the disclosure, as you suggest, will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.

3

Docket No. 93, Exhibit 7, Docket No. 118, ¶22.

17. In March 1999, the Federal Trade Commission published a "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know". Docket No. 93, Ex. 13  Docket No. 118, ¶51.

18. The Federal Trade Commission publication "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know" was available to ClosetMaid prior to the start of the class period. *Id*.

19. The Federal Trade Commission publication "FTC FACTS for Business: Using Consumer Reports: What Employers Need To Know" provides:

> A job applicant gives you the okay to get a consumer report. Although the credit history is poor and that's a negative factor, the applicant's lack of relevant experience carries more weight in your decision not to hire. What's your responsibility?
> In any case where information in a consumer report is a factor in your decision — even if the report information is not a major consideration — you must follow the procedures mandated by the FCRA. In this case, you would be required to provide the applicant a pre-adverse action disclosure before you reject his or her application.
> When you formally reject the applicant, you would be required to provide an adverse action notice.
> Docket No. 118, ¶52.

20. On or about August 31, 2004, ClosetMaid signed a Securint Application and Service Agreement with Securint, a consumer reporting agency, in order to obtain consumer reports about prospective employees, for employment purposes. Docket No. 93, Exhibit 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Exhibit 8, pp.188-192; Docket No. 93, Exhibit 4, Boring Dep. 27:1-30:7 Boring Dep. Ex. 2, pp.188-192; Docket No. 93, Exhibit 8, Price Dep. pp. 35:9-38:19, Price Dep. Exhibit 2, 188-192. Docket No. 118, 23.

21. Appendix A to the Securint contract provided as follows:

> Permissible Purpose-Employment
> Consumer hereby expressly acknowledges and agrees that, in addition to the terms and conditions of the Securint Application And Service Agreement, use of Securint Services for employment purposes is also subject to the following provisions:
> 1) prior to procuring a consumer report, a clear and conspicuous disclosure, consisting solely of the disclosure, that a consumer report might be obtained for employment purposes must be made to the applicant, and
> 2) the applicant shall authorize in writing the right to procure the consumer report; and
> 3) prior to taking any adverse action, based whole or in part upon the consumer report, Customer must provide the applicant a copy of the consumer report and a summary of the consumer's rights as prescribed by the Federal Trade Commission, and . . .

Docket No. 93, Exhibit 3, Dep. of ClosetMaid page 84:5-89:3, ClosetMaid Dep. Exhibit 8, p. 5 of 14 of contract; Docket No.93, Exhibit 4, Boring Dep. 27:1-30:7, Boring Dep. Ex. 2, p. 5 of 14 of contract; Docket No. 93, Exhibit 8, Price Dep. pp. 35:9-38-19, Price Dep. Exhibit 2, p. 5 of 14 of contract, Docket No. 118, ¶24.

22. ClosetMaid did not consult with any lawyers or legal counsel from Emerson Electric in creating the FCRA Information/Consent Forms. Docket No. 93, Exhibit 3 Dep. ClosetMaid, pp. 35:13-22, Docket No. 118, 31.

23. ClosetMaid does not recall the name or names of any attorneys with whom it claims to have consulted regarding FCRA compliance.

24. ClosetMaid does not possess any documents that it sent to or received from any attorneys with whom it claims to have consulted regarding FCRA compliance.

25, ClosetMaid does not recall the title or titles of any written materials that it claims to have consulted regarding FCRA compliance.

26. On or about December 13, 2006, the Representative Plaintiff, Cathy

Reardon applied for a job with Defendant ClosetMaid Corporation. Docket No.93, Exhibit 1, Docket No.16, First Amended Complaint ("FAC") ¶ 24; Docket No.16-1; Docket No. 93, Exhibit 2; Docket No. 19, ¶¶ 24 and 25., Docket No. 118, 1.

27.     As part of the application packet of documents, ClosetMaid provided to Reardon a document entitled, "CLOSETMAID AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT AND INFORMATION FOR EMPLOYMENT PURPOSES". Docket No. 93 Ex. 1,  Docket No. 16, ¶ 27, Docket No. 16-1, page 5 of 9; Docket No. 93, Exhibit 2, Docket No. 19, ¶¶24 and 25.  Docket No.. 118, 2.

28.     Thereafter, ClosetMaid obtained a consumer report on Reardon.  Docket No. 93, Exhibit 1, Docket No.16, ¶ 33; Docket No.93, Exhibit 2, Docket No. 19, ¶ 33.  Docket No. 118, 5.

29.     Plaintiff's consumer report contained credit history information that ClosetMaid stated disqualified her from employment as a Territory Supervisor/Manager at ClosetMaid.  Docket No. 95, 21.

30.     ClosetMaid sent a letter to Reardon dated December 18, 2006, by regular mail, which contained a copy of the consumer report about Reardon. Docket No. 93, Ex.3 Dep. of ClosetMaid, p 127:22-128:3, ClosetMaid Dep. Ex. 15, Bates Number 216, Docket No. 93 Ex. 4, Boring Dep. p. 72:7-14, Boring Dep. Ex. 15, page 216.  Docket No. 118, 33.

31.     The basis for ClosetMaid decision not to hire Reardon was the information contained in the consumer report obtained about her. Docket No. 93, Exhibit 3, Dep. Of ClosetMaid 128:23-129:8, ClosetMaid Dep. Exhibit 8, Bates Number 217; Docket No. 93, Exhibit 4,Boring Dep. page 72:25-74:14, Docket No. 118, ¶36.

6

32.     From December 1, 2006 until June 30, 2009, ClosetMaid obtained consumer reports on 1,829 job applicants, 1494 of whom were hired, and 299 who were not hired. ECF 93, Exhibit 3, Dep. Of ClosetMaid, page 96:10 -107:23, ClosetMaid Exhibit 9, Columns designated "#EE's hired" and "FCRA forms completed and background check run (not hired)" and "# Credit Checks".  Docket No. 118, ¶45.

33.     The First Amended Complaint in this action was filed on April 16, 2009. Docket No. 16, Docket No. 93 Ex. 1, Docket No. 118, 14.

34.     The First Amended Complaint alleged that ClosetMaid violated 15 U.S.C. § 1681b(b)(2)(A) (i) and (ii) which provides:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that  person.
> Docket No. 93, Exhibit 1, Docket No. 16,  ¶¶ 18-31; 51-60.  Docket No. 118, 15.

35.     ClosetMaid admits that it revised its Notice and Authorization as of July 1, 2009.  Docket No. 118, 17.

36.     In that revision, ClosetMaid removed any language in which the consumer applicant would waive or release any rights, damage or claims.  Docket No. 93, Exhibit 3, Dep. Of ClosetMaid 57:2-58:9; Docket No. 93 Ex. 4, Dep. of J. Boring, 31:14 -32:9, Ex. 3, p. 440.  Doc. 118, ¶17.

7

37. Defendant's Net Worth is greater than $30 million.

_____
**Hon. Judge Mark R. Hornak**