**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **R. CATHY REARDON** | ) | |
| **On behalf of herself and all** | ) | |
| **similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2:08-cv-1730MRK** |
| **v.** | ) | |
| **CLOSETMAID CORPORATION,** | ) | **Hon. Judge Mark R. Hornak** |
| | ) | |
| **Defendant.** | ) | **Class Action** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION IN LIMINE REGARDING WILLFULNESS**

Class Representative Plaintiff, R. Cathy Reardon, by and through her undersigned counsel, on behalf of the Class, has moved the Court to find *in limine* to exclude the following evidence and argument regarding Plaintiff's proof that Defendant willfully violated the Fair Credit Reporting Act.   She states the following as her Memorandum in Support:

**ARGUMENT**

**A.     DEFENDANT SHOULD BE PROHIBITED FROM ASSERTING ANY EVIDENCE OR ARGUMENT THAT CLOSETMAID UNDERTOOK ANY ACTION TO DISCOVER WHETHER ITS POLICIES COMPLIED WITH THE FCRA, OR ANY SIMILAR DEFENSE TO WILLFULNESS**.

Defendant states its intention at trial to argue that, "ClosetMaid's human resources staff endeavored to ensure compliance with FCRA as with all laws applicable to the workplace."  (Docket No. 139, at 7).

**1.      Defendant has Not Disclosed or Produced Any Admissible Evidence that it made a meaningful attempt to Comply with the FCRA.**

The Plaintiff diligently sought discovery on the reasonableness of ClosetMaid's policies for obtaining and using consumer reports to make employment decisions by propounding interrogatories, requests for production of documents, taking several depositions including of Mary K. Price, ClosetMaid's Human Resources manager, and Catherine Beal, Vice President of Human Resources.  ClosetMaid did not produce any evidence of the actions that it took in developing or implementing policies so that it would comply with the FCRA – not in any of its mandatory disclosures (Ex. A), not in its responses to Plaintiff's written discovery (Ex. B) and not in its employee-witness testimony (Ex. C & D).

ClosetMaid has never disclosed a witness who can testify or any evidence that demonstrates it took any specific steps to develop or follow an FCRA-compliant policy as it is required to do under Fed. R. Civ. P. 26(a)(1) & (e).  If ClosetMaid had evidence or witnesses that could demonstrate it did anything to comply with the FCRA that it intended to use at trial, it was required to disclose it.

Further, in its responses to Plaintiff's written interrogatories (numbers 1-4) requesting all information and witnesses regarding the development and implementation of their policies, ClosetMaid responded that in attempting to comply with the FCRA, it did not discover any relevant judicial or agency guidance, but nonetheless developed material compliant policies regarding the use of consumer reports and that it is not a consumer reporting agency. ClosetMaid also responded that in developing its policies, it consulted various resources such as the Society of Human Resource Management, the

Bureau of Labor Reporting, AER Legislative, government and legal websites, human resource discussion groups, and by reviewing documents of similarly situated companies. (Ex. B).   On August 27, 2009, Closetmaid's Rule 30(b)(6) designee Catherine Beal testified that in order to determine whether ClosetMaid was in compliance with the law, they used "services" and "go to seminars."   (Dep. Catherine Beal Aug. 9, 2007, Tr. 31:10-34:25)(Ex. C).   However, when asked about how ClosetMaid ensured it was complying with the FCRA in creating its policies, Beal testified that she did not remember what sources she consulted in creating them, who she consulted with other than "the management team" at the time the policies were created, and that she didn't consult in-house counsel because there was no in-house counsel at the time:

> A.      We researched various forms on the websites, the legal websites.
> Q.      The forms that you – that were – that were used, that you describe, these documents, can you tell me where they came from?
> A.      No. It was too long ago.

(Beal Dep. Tr. 31:25-32:11).

Mary Price was also identified by ClosetMaid as a person who collaborated in with Ms. Beal in order to create the FCRA-compliant policies.  (Ex. B, Def.'s Answers to Interrogatories at 5).  In her deposition on April 3, 2013, Ms. Price testified that she had no concern ClosetMaid's policies did not comply with the FCRA or its contract with the CRA because "we complied":

> Q Did you have any concern when you signed off on this that the company's policies with respect to procuring consumer reports didn't comply with this number one, number one on appendix A?
> A You're asking me if I had concern?
> Q Yes.
> A That our policies didn't comply?
> Q Yes.
> A No, I didn't.
> Q This didn't alert you to make sure that the policies complied with this

contract?
A Our policies complied with the contract.
Q How do you know that?
A Because we complied.
Q Did you consult with a lawyer?
A We did the same thing that I told you before. We sought legal advice
from many different streams.
Q Who did you seek legal advice from?
A The ones that I listed, Ford Harrison attorneys, the SHRM attorney,
Employers Association of Florida, business and legal reports. All of the
above.

(Dep. Mary Price April 3, 2013, Tr: 40:19-41:14)(Ex. D).  However, ClosetMaid would

not – maybe could not – provide any more specific or sufficiently detailed evidence

beyond that testimony.  It did not disclose a specific attorney or even law firm.  It did not

identify any document – communications, opinion letters, billings.   ClosetMaid did not

disclose, respond or testify about any specific information that it relied upon in

developing its policies, but only referred to the most general source of information

without any reference to the FCRA at all.  Because ClosetMaid has not identified any

best practices, training manual, webpage, document, person, lecture, treatise, legal

opinion or guidance, actual documents of "similarly situated companies" or how it came

to the decision that the information from any of these sources was reliable, current and

related to its responsibilities for obtaining and using consumer reports in relation to an

employment decision.

The Plaintiff has pursued through all the available means of discovery this line of

inquiry:  what did ClosetMaid specifically do to comply with the FCRA, but more

importantly, to protect the rights of the individuals about whom it was seeking a

background check.  When a defendant refuses to provide specific information regarding

one of its defenses, it should be precluded not from relying on that defense at trial, but

also from suggesting or introducing any argument that intimates it attempted to comply with its FCRA obligations based on legal guidance, websites, guidelines, training, or any association-produced guidance that the Defendant has failed to specifically identify.

### 2.       Defendant Is Bound by its Rule 30(b)(6) Testimony.

Defendant's Rule 30(b)(6) witness and discovery responses failed to describe or establish any procedure or process for determining whether of not Defendant's procedures complied with the FCRA.  In fact, as detailed above, Beal as ClosetMaid's Rule 30(b)(6) witness testified that she (ClosetMaid, by designation) did not know when or by whom the FCRA documents and process were created.

### 3.       Plaintiff Is Entitled To A Missing Witness And Missing Document Inference.

While Defendant suggests in its Pre-Trial statement its intention to argue that, "ClosetMaid's human resources staff endeavored to ensure compliance with FCRA as with all laws applicable to the workplace" (Docket No. 139, at 7), it has not produced, disclosed or identified any actual or specific bulletin, attorney advice or even third party website that supports its policy and FCRA interpretations.   It has not identified or disclosed even a specific employee or other person who made such a FCRA compliance effort.   Plaintiff asks for a missing witness and missing document inference.

*United States v. Hines,* 470 F.2d 225, 230 (3d Cir.1972) ("The applicability of a 'missing witness' inference is based on the simple proposition that if a party who has evidence which bears on the issue fails to present it, it must be presumed that such evidence would be detrimental to his cause."); *Mattocks v. Daylin, Inc.*, 78 F.R.D. 663, 668 (W.D. Pa. 1978) *rev'd on other grounds,* 611 F.2d 30 (3d Cir. 1979) (The Court

charged: "The only inference that may be drawn is when it has been brought out in the evidence that there is some person who has some information that may be relevant here and that person is in control of or under the supervision of any party here. Then, the failure to produce that witness may result in an inference drawn by the jury that that witness' testimony would be unfavorable to the party who could have called him.")  This omission and lack of any meaningful compliance effort, together with the availability of clear regulatory advice requires a finding that ClosetMaid's FCRA process was willful. *Gillespie v. Equifax Info. Servs., LLC*, 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008) ("Equifax has elected not to offer evidence regarding why it makes disclosures in the particular format at issue[.]  Based on the record as it now stands, a reasonable inference can be drawn that Equifax was willfully blind to the FCRA's disclosure requirements and ran a more-than-careless risk that its adherence to its earlier reporting format was non-compliant.")  Contrast *Murray v. Indymac Bank, F.S.B.*, 04 C 7669, 2007 WL 2741650 (N.D. Ill. Sept. 13, 2007) ("Indymac also points to the resources of its compliance process to support its contention that the Compliance Department gave meaningful consideration to the issue of compliance with the FCRA before mailing out the Letter. …  the Compliance Department "in or about September 2004, included over 35 Compliance officers and had an annual budget of approximately two million ($2,000,000.00) dollars." Murray also acknowledges that Indymac's compliance program is "extensive" and "well-funded.")

**B.      DEFENDANT SHOULD BE PROHIBITED FROM (1.) ARGUING THAT IT DID NOT WILLFULLY VIOLATE THE FCRA BECAUSE THIRD PARTY REPORTING AGENCIES WOULD NOT HAVE SOLD IT REPORTS,**

**OR (2.) ARGUING THAT IT HAD SUBJECTIVE GOOD FAITH AND INTENT TO COMPLY WITH THE LAW.**

Defendant claims in its Pre-Trial Statement:

ClosetMaid also believed that by fulfilling its contractual obligations with its Consumer Reporting Agency vendors, and by receiving consumer reports from them, it must have been complying with FCRA because those consumer reporting agencies, whose business is primarily regulated by FCRA was not permitted to furnish consumer reports to ClosetMaid without ensuring compliance with these disclosure and authorization provisions.

Docket No. 139, at 8.  Further, throughout its Pre-Trial Statement, Defendant asserts its good faith and intention to comply with the FCRA.  However, there is no evidence to support what is apparently just an argument Defendant intends from its counsel.   As above, there is no actual witness or document to evidence such belief.  Instead, it is a litigation creation.

Regardless, the subjective belief of a FCRA defendant is irrelevant as to the determination of FCRA willfulness.  *See Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 251 (3d Cir. 2012) ("*Safeco* does not require that the defendant actually have made such an interpretation at any particular point in time."); *Dreher v. Experian Info. Solutions, Inc.*, 2013 WL 2389878 (E.D. Va. May 30, 2013)("Arguments about a defendant's subjective bad faith have no place in the willfulness analysis."(*citing Safeco*, at 70, n. 20)).

**C.    DEFENDANT SHOULD BE PROHIBITED FROM CONTESTING WILLFULNESS BY ARGUING THAT THIRD PARTY *AMERICAN BACKGROUND* PROVIDED IT THE DOCUMENT DISCLOSED AS DEFENDANT'S TRIAL EXHIBIT D10(b).**

Defendant has disclosed a trial exhibit, D10(b), that it asserts to be a form provided to it by third party American Background.   Further, it claims in its Pre-Trial

Statement that, "One such vendor, American Background, actually supplied ClosetMaid with an authorization form that contained a release." (Docket No. 139, at 8).

Both the document and the argument based upon it should be barred.   First, the exhibit was not itself timely disclosed or produced in discovery and thus may not be used at trial.  Fed. R. Civ. P. 37(c)(1).   Second, the document is unauthenticated and hearsay. Fed. R. Evid. 802.   Further, even if Defendant's claim were somehow proven, it is irrelevant that a random third party reporting agency may also have a form that violates the FCRA.  Fed. R. Evid. 402.

### D.      DEFENDANT SHOULD BE PROHIBITED FROM ASSERTING THAT THE FCRA IS "COMPLEX" OR "HIGHLY TECHNICAL."

Defendant's Pre-Trial Statement contends that, "The Fair Credit Reporting Act ("FCRA") is a complex statutory scheme."  Docket No. 139, at 1.  Similarly, it argues that the relevant FCRA provisions are "obscure and highly technical." *Id*. at 2.  These characterizations are untrue.  There is also no indication or evidence that ClosetMaid had any difficulty understanding the meaning and import of the FCRA text.  Or the various authoritative explanations from the Federal Trade Commission or other third parties. There is no evidence from any of Defendant's witnesses or documents that ClosetMaid was confused or otherwise had any view of the FCRA – complex or not.

Any argument or purported evidence of how complex the FCRA may be would have little or no probative value, and would certainly have a far greater likelihood of confusing the issues and misleading the jury.  Fed. R. Evid. 403.

### E.      DEFENDANT SHOULD BE PROHIBITED FROM ARGUING THAT IT NEGLIGENTLY VIOLATED THE FCRA.

Closetmaid has telegraphed its intent to suggest to the jury a middle ground alternative – analogous to suggesting a manslaughter instruction in a murder trial.  In its Pre-Trial Statement, Defendant contends,

> To the extent its forms did not fully and completely satisfy these technical requirements, then ClosetMaid's non-compliance in this regard was merely negligent and not willful. Indeed, ClosetMaid's forms complied with the express text and intent of FCRA by making the requisite disclosures and by obtaining the applicants' authorization.

Docket No. 139, at 8.

Plaintiff has not alleged that Defendant's violation was negligent and has not sought remedy.  The question at trial is whether or not ClosetMaid willfully violated the FCRA.  15 U.S.C. § 1681n.  Further, there is no evidence offered by Defendant or disclosed in the case to suggest any alternative other than willfulness. Permitting such argument will unduly and improperly confuse the issues and mislead the jury.  Fed. R. Evid. 403.

## CONCLUSION

Because ClosetMaid has failed to come forward with any reliable evidence or testimony of the steps that it undertook to create policies that assured compliance with the FCRA in connection to obtaining employment-related background checks, the Court must preclude any argument, evidence or defense about ClosetMaid's attempt at compliance.

Respectfully submitted,

By:     *s/ James M. Pietz*
        James M. Pietz
        Pa I.D. No. 55406
        Pietz Law Office LLC
        429 Forbes Ave., Suite 1710
        Pittsburgh, PA 15219
        412-288-4333
        E-mail:  jpietz@jpietzlaw.com

        Leonard A. Bennett, Esq.
        Consumer Litigation Associates
        763 J. Clyde Morris Boulevard
        Suite 1-A
        Newport News, VA 23601
        (757) 930-3660
        E-mail:  lenbennett@clalegal.com

        Christopher North. Esq.
        751-A Thimble Shoals Blvd.
        Newport News, VA  23606
        (757) 873-1010
        E-mail:  cnorthlaw@aol.com

        *Counsel for the Representative And*
        *Class Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 27th day of November, 2013, I caused a true and correct copy of Plaintiff's Memorandum in Support of Plaintiff's Motion in Limine Regarding Willfulness to be served by way of ECF Notification upon the following counsel of record for the Defendant:


W. Scott Hardy
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One PPG Place, Suite 1900
Pittsburgh, PA 15222
E-mail:  scott.hardy@ogletreedeakins.com

Philip K. Kontul
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One PPG Place, Suite 1900
Pittsburgh, PA 15222
E-mail:  Philip.kontul@ODNSS.com


                    */s/ James M. Pietz*
                    James M. Pietz
                    Pa I.D. No. 55406
                    Pietz Law Office LLC
                    429 Forbes Ave., Suite 1710
                    Pittsburgh, PA 15219
                    412-288-4333
                    E-mail:  jpietz@jpietzlaw.com