IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. CATHY REARDON, *on behalf of herself and all similarly situated individuals*, | ) ) ) ) No. 2:08-cv-01730 |
| Plaintiff, | ) ) Judge Mark R. Hornak |
| v. | ) ) ***Electronically Filed*** |
| CLOSETMAID CORPORATION, | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO AMEND ORDER TO CERTIFY FOR IMMEDIATE APPEAL**

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its undersigned attorneys, files this Memorandum of Law in Support of its Motion to Amend the Court's Orders of December 2, 2013 and December 6, 2013, to Certify for Immediate Appeal.

I. **INTRODUCTION**

ClosetMaid respectfully requests that this Honorable Court amend its December 2, 2013 Order (Doc. 158)[1] granting summary judgment as to liability and willfulness in favor of those members of the Disclosure Class who received only the Authorization Form as part of their employment applications to include the necessary language certifying that order for interlocutory appeal under 28 U.S.C. §1292(b).[2]

---

[1] The Court amended its December 2, 2013 Order on December 6, 2013 (Doc. 161) to conform with the Court's Opinion dated December 2, 2013 (Doc. 157, hereinafter, the "Opinion"). The December 2, 2013 and December 6, 2013 Orders are collectively referenced herein as the "Order"). The reasons for the Court's decisions in the Order are set forth in detail in its Opinion.

[2] ClosetMaid also intends to file a petition for permission to appeal with the Court of Appeals pursuant to Federal Rule of Civil Procedure 23(f) on or before December 16, 2013, and will file a motion with this Court requesting a stay of all proceedings pending the outcome of this Motion and ClosetMaid's forthcoming petition on or before that date.

## II.     ARGUMENT

ClosetMaid seeks certification, per 28 U.S.C. §1292(b), of the Court's entry of summary judgment as to liability and willfulness under the Fair Credit Reporting Act ("FCRA")[3] in favor of members of the Disclosure Class who received only the Authorization Form as part of their employment applications. Specifically, ClosetMaid seeks certification to appeal whether its inclusion of release language contained in its Authorization Form is willful noncompliance of 15 U.S.C. § 1681b(b)(2)(A)(i) as a matter of law.

Pursuant to 28 U.S.C. §1292(b) and applicable Federal Rules of Civil Procedure and Federal Rules of Appellant Procedure, the Court may certify this non-final Order for interlocutory appeal by amending it to include a statement that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[4]  Indeed, a non-final order may be certified for interlocutory appeal if the Court determines that it: (i) involves a controlling question of law; (ii) for which there is substantial ground for difference of opinion; and (iii) which may materially advance the ultimate termination of the litigation if appealed immediately." *Glover v. Udren*, 2013 WL 3072377 at *1

---

[3]     *See* 15 U.S.C. §§ 1681 – 1681x;  *see specifically* 15 U.S.C. §§ 1681b(b)(2)(A)(Disclosure to Consumer) and 1681n (civil liability for willful noncompliance).

[4]  This section provides:
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. §1292(b).

(W.D. Pa. June 18, 2013); *Aluminum Bahrain B.S.C. v. Dahdaleh*, 2012 WL 5305169, at *1 (W.D.Pa. Oct. 25, 2012) (Ambrose, J.); *Alexander v. Washington Mut., Inc.*, 2008 WL 3285845 at * 3 (E.D. Pa. Aug. 4, 2008)(O'Neil, J.); *see also Katz v. Carte Blanche Corporation*, 496 F.2d 747, 754 (3d Cir. 1974). Rule 5(a)(3) of the Federal Rules of Appellate Procedure authorizes district courts to amend prior orders to include this certification, either on the district court's own initiative or in response to a party's motion.[5]

ClosetMaid respectfully suggests that this Court exercise its discretion to certify its Order for interlocutory appeal so the Court of Appeals may consider directly, for the first time, whether inclusion of a release in an authorization required by 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii), when combined in one document with a disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i), constitutes willful noncompliance with 15 U.S.C. § 1681b(b)(2)(A)(i) as a matter of law. There is substantial ground for difference of opinion on this legal issue which is an important matter of first impression in the Third Circuit and resolution by the Court of Appeals now would materially advance the ultimate termination of the litigation.

### A. There Are Controlling Questions of Law At Issue.

A controlling question of law for interlocutory appeal is an "order which, if erroneous, would be reversible error on final appeal." *Glover*, 2013 WL 3072377 at *2, *citing Katz*, 496 F.2d at 754. Indeed, "the Third Circuit Court of Appeals has held that [a] 'controlling question of law' is one which either: (1) if decided erroneously, would lead to reversal on appeal; or (2) is 'serious to the conduct of the litigation either practically or legally.'" *Aluminum Bahrain B.S.C.*,

---

[5] Rule 5(a)(3) of the Federal Rules of Appellate Procedure provides:
> (3) if a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from entry of the amended order.

F.R.A.P. 5(a)(3).

2012 WL 5305169, at *1 (finding that an appellate decision rejecting the "absent co-conspirator" doctrine would require reversal), *citing Knipe v. SmithKline Beecham*, 583 F.Supp.2d 553, 598-99)(*quoting Katz*, 496 F.2d at 755); *Alexander*, 2008 WL 3285845 at * 3 (holding that a determination of standing to bring a statutory claim under the Real Estate Settlement Procedures Act is a controlling question of law satisfying this element of 28 U.S.C. § 1292(b) because judgment would be reversible on final appeal if this determination is deemed to be erroneous and a different resolution of the issue would eliminate the need for trial).

The Court's affirmative entry of summary judgment as to both liability and statutory willfulness against ClosetMaid and in favor of members of the Disclosure Class who received only the Authorization Form as part of their employment applications, if deemed erroneous by the Court of Appeals, would result in a reversal of such judgment on final appeal[6]. Indeed, a different resolution of this issue, and regardless of whether as to liability, willfulness, or both, would eliminate the need for trial regarding the Disclosure Class' claims because all that presently remains for the jury is a determination of damages[7]. Accordingly, the issue *sub judice* presents a controlling question of law within the meaning of 28 U.S.C. § 1292(b).

    **B.    An Interlocutory Appeal Presents Substantial Ground for Difference of Opinion**

The Section 1292(b) "substantial ground for difference of opinion standard" is met when there is "genuine doubt or conflicting precedent as to the correct legal standard applied in the orders at issue." *Glover*, 2013 WL 3072377, at 3; *Aluminum Bahrain B.S.C.*, 2012 WL 5305169,

---

[6] *See United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir. 1994)(In reviewing the district court's grant of summary judgment, Court of Appeals exercises plenary review and employs the same standard applicable in the district court and must consider all of the facts and inferences in the light most favorable to the nonmoving party).

[7] Even if the Court of Appeals were only to reverse the Court's willful noncompliance determination while leaving the underlying liability determination intact, there would still be no need for a trial on this critically important issue involving the Disclosure Class because the class has limited itself to statutory damages which are only available when noncompliance is proven to be willful.

- 5 -

at \*2.. The difference of opinion must involve "one or more difficult and pivotal questions of law not settled by controlling authority[,] . . . and the party has the burden of showing the "different courts have issued conflicting and contradictory opinions when interpreting a particular question of law." *Id.* (internal citations omitted), *citing Knipe*, 583 F.Supp.2d at 599 and *Miron v. Seidman*, 2006 WL 3742772, at \*3 (E.D. Pa. Dec. 13, 2006); *Alexander*, 2008 WL 3285845, at \*3(finding "substantial grounds for difference of opinion" because it was based on more than a mere disagreement with the court's statutory interpretation of the Real Estate Settlement Procedures Act even though the court found the party's reasoning less persuasive than its own where there is no controlling decision from the Court of Appeals).

  This case presents a textbook example that satisfies the requirement of a substantial ground for difference of opinion. First, the issue *sub judice* is an important matter of first impression in the Third Circuit and none of the other Courts of Appeals have addressed it either. The only existing legal authority comes from two separate conflicting and contradictory district court opinions, one from North Carolina and the other from Maryland. *Compare Smith v. Waverly Partners, LLC*, 2012 WL 3645324 (W.D.N.C. Aug. 23, 2012)(granting motion for summary judgment in defendant's favor and finding that it did not violate the FCRA by including a release in its forms because the release was "not so great a distraction" as to discount the effectiveness" of the forms) with *Singleton v. Domino's Pizza,* 2012 WL 245965 (D. Md. Jan. 25, 2012)(denying defendant's motion to dismiss and finding "both the FCRA's statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document").

The Court acknowledges that neither *Smith* nor *Singleton* is binding, but then expresses agreement with the analysis in *Singleton*. *See* Opinion, p. 15. However, there are substantial grounds to differ from *Singleton*.

First, *Singleton* ignores relevant statutory text contained in 15 U.S.C. § 1681b(b)(2)(A)(ii) when interpreting the term "solely" in 15 U.S.C. § 1681b(b)(2)(A)(i). Moreover, any such statutory interpretation here must be done in accord with the Third Circuit's precedents for statutory construction and there is no indication that the court in *Singleton* did so. *Singleton* focuses on subsection (i), *i.e.*, the disclosure provision, and its use of the phrase "in a document that consists solely of the disclosure[,]" while effectively eviscerating the separate authorization provision contained in subsection (ii). However, by enacting 15 U.S.C. § 1681b(b)(2)(A)(i) *and* (ii), Congress expressly permits employers such as ClosetMaid to secure authorizations to procure consumer reports either in the same document used for making the requisite disclosure or in a different document. *See* 15 U.S.C. §1681b(b)(2)(a)(ii) (stating ". . . which authorization *may* be made on the document referred to in clause (i) . . .") (emphasis added).[8] These conjunctive subsections must be read and interpreted with a fundamental canon of statutory construction: give effect, if possible, to every clause or word of a statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 60, (2007)(*citing United States v. Menasche*, 348 U.S. 528, 538–539 (1955))(*quoting Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).

Moreover, unlike 15 U.S.C §1681b(b)(2)(a)(i), there is no statutory pronouncement in 15 U.S.C. §1681b(b)(2)(a)(ii) that would limit the documentary instrument(s) used for securing the authorization, whether in the disclosure form required by 15 U.S.C. §1681b(b)(2)(a)(i) or otherwise. Nor is there any statutory pronouncement in this provision or elsewhere that limits or

---

[8]  For a discussion of statutory construction and the consideration of the meaning of the use of the word "may," *see Lopez v. Davis*, 531 U.S. 230, 241 (2001).

otherwise interprets the language required to effectuate the authorization mandated by Congress. Yet, *Singleton* states that "when mandating that an employer use a document that 'consists solely of the disclosure,' Congress expressly permitted employers to include language authorizing the employer to procure the consumer report . . . Had Congress intended for employers to include additional information in these documents, it would easily have included language to that effect in the statute.  It did not do so, however, and its 'silence is controlling.'" *Singleton*, 2012 WL 245965, at *8.  *Singleton* appears to miss the mark, however, by saying that the statute is silent on whether employers could "include additional information in these documents" and that such "silence is controlling." To the contrary, 15 U.S.C. §1681b(b)(2)(a)(ii) is not silent; indeed, this provision expressly speaks to this issue by permitting the inclusion of the written authorization in the disclosure.  Indeed, the statute requires the existence of an *authorization* and the statute requires the authorization to be in writing. Yet, neither *Singleton* nor this Court define what an authorization is to contain.

   ClosetMaid sought to accomplish its obligation to obtain the written authorization via a written instrument, *i.e.*, the Authorization Form, and in doing so, included the following language: "I hereby release [ClosetMaid] form any and all liability for damages of whatever kind, which may at any time, result to me, my heirs, family or associates *because of compliance with this authorization and request to release*."  See ClosetMaid's Facts, 13, 14, 18 (emphasis added). The putatively offending "release" language merely expresses the legal truism that, upon an applicant's signature, ClosetMaid would be permitted or empowered or justified to procure their consumer report for employment purposes without being held liable for doing so. *See e.g.*, *Russel v. ChoicePoint Serv., Inc.*, 300 F.Supp.2d 450, 456 (E.D. La. 2004)(defining "authorize" to mean "to endorse, empower, justify, or permit by or as if by some recognized or proper

authority" or "[t]o give permission for . . . [or to] sanction"). Indeed, once a job applicant provides such written authorization, he or she permits the procurement of their consumer report for employment purposes by that prospective employer and is no longer able, by virtue of FCRA, to assert a claim against it for procuring their consumer report. *See* 15 U.S.C §1681b(b)(2)(A)(i-ii); §1681n; §1681o. By contrast, any person who procures a consumer report without a permissible purpose, *e.g.*, an employment purpose, or without obtaining their permission, *i.e.*, their authorization, may be held liable for doing so. By including this release language, ClosetMaid's Authorization Form merely informs its applicants of the consequences of their authorization and does nothing to add to or detract from their rights under FCRA or otherwise. To the contrary, including the release actually is more transparent and thus more protective of consumers' rights because they are better informed about the implications of supplying their authorization.

Second, by ignoring the modification to the term "solely" that Congress made by permitting the inclusion of an authorization per 15 U.S.C. § 1681b(b)(2)(A)(ii), and by otherwise interpreting "solely" in a rigidly narrow way, *Singleton* violates another canon of statutory construction recognized by the Third Circuit. That is, "…when the literal application of statutory language would produce an outcome demonstrably at odds with the statute's purpose or would result in an absurd outcome, a court must look beyond the plain meaning of the statutory language." *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 338 (3d Cir. 2006); *see also Long v. Tommy Hilfiger U.S.A. Inc.*, 671 F.3d 371, 375 (3d Cir. 2012) ("We also consider the 'overall object and policy of the statute, and avoid constructions that produce odd or absurd results or that are inconsistent with common sense.").

In fact, such a literal and unworkable interpretation is exactly the result that is avoided by *Smith*. By concluding that an employer's inclusion of a release is not even a negligent violation of FCRA's "solely" requirement so long as it is "not so great a distraction as to discount the effectiveness of the disclosure and authorization statements," *Smith* safeguards FCRA's intent of ensuring a "clear and conspicuous" disclosure while avoiding an outcome demonstrably at odds with FCRA's purpose or that would result in an absurd outcome – that is, the preclusion of any other language except for the disclosure and authorization themselves. *See Smith*, 2012 WL 3645324, at *6; *see also In re Kaiser Aluminum Corp.*, 456 F.3d at 338. Taking both the Court's Opinion and *Singleton* to their logical conclusion, a literal reading of Section 1681b(b)(2)(A)(i) would seemingly require that any disclosure be completely devoid of all other content such as company letterhead, signature and date blocks, document titles, etc. This interpretation is impractical and "inconsistent with common sense" in that it overlooks FCRA's clear intent to alert applicants that their consumer reports would be procured upon their authorization.

Next, *Singleton* improvidently relies upon interpretive opinions proffered by individual staff members of the Federal Trade Commission ("FTC") to support an interpretation of 15 U.S.C. § 1681b(b)(2)(A)(i) as precluding the inclusion of a release in a disclosure notwithstanding 15 U.S.C. § 1681b(b)(2)(A)(ii). *See Singleton,* 2012 WL 245965 at *8-9. Yet, such reliance is misplaced because these opinions are neither binding on this Court nor are they entitled to deference. *See e.g., Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d, 532, 541 (E.D. Pa. 2012) (holding that "agency interpretations, like this FTC Staff Report that do not carry the 'force of law' are 'entitled to respect' . . . but only to the extent that they are persuasive"). Interpretations such as those in these opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines all of which lack

the force of law—do not warrant *Chevron*-style deference. *Goode*, 848 F. Supp. 2d at 542 (*citing Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, (1984). Indeed, the U.S. Supreme Court specifically rejected reliance on these types of FTC staff opinions. *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 70 and n. 19 (2007); *see also Johnson v. Federal Express Corp.*, 147 F. Supp. 2d 1268, 1272 (M.D. Ala. 2001)("The letters are not binding and not persuasive.").

Although the Court correctly recognizes that these individual FTC staff members' opinions are not entitled to *Chevron*-deference, the Court adopts the incorrect conclusion reached in *Singleton* that these opinions are persuasive nonetheless. *See* Opinion, p. 13 and note 5. These FTC Staff Opinions are non-authoritative interpretations penned by individual FTC staff members and then directed to specific businesses who had presented their specific factual circumstances soliciting such opinion, and not all of these underlying factual circumstances are known or otherwise apparent. By way of example, in the July 12, 1998 FTC Staff Opinion expressed by Mr. Hanes to the CEO of Accufax, it is apparent that the opinion-seeker was a consumer reporting agency, and not an employer like ClosetMaid. It is also expressly apparent that the CEO of this consumer reporting agency requested an opinion because the "language of the law is confusing." *See* 1998 WL 34323756 (F.T.C.). Importantly, however, while Mr. Haynes expresses *his* opinion (and not that of the FTC) that Accufax's inclusion of a waiver in a disclosure form would violate the FCRA, Mr. Haynes' letter does not quote or otherwise divulge the waiver language he is scrutinizing. We have no way of discerning if or whether the waiver Accufax presented to Mr. Haynes was similar to or different from the language used in ClosetMaid's Authorization Form.

Even so, the very FTC staff opinions which both the Court and *Singleton* rely gave due consideration to whether a consumer is "distracted" by the inclusion of additional language in a disclosure – that is, the very same analysis undertaken by *Smith* but rejected by the Court. *See* Letter from William Hanes, Attorney , Div. of Credit Practices, Fed Trad Comm'n, to Harold Hawke, Employer Assoc. of N.J. (Dec. 18, 1997), 1997 WL 3391224 (F.T.C.)("[n]othing else may appear on the document that *detracts* from the disclosure required by [section 1681b(b)(2)(A)]"); Letter from Cynthia Lamb, Investigator, Div. Of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Hones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C) ("The reason for specifying a standalone disclosure was so that consumer will not be *distracted*…believe that including an authorization in the same document with the disclosure…will not *distract*…")(emphasis added).

Indeed, the very non-authoritative and non-binding FTC staff opinions that *Singleton* and the Court mistakenly find persuasive actually reflect, in part, the analysis contained in *Smith* that this Court rejects. *See Smith*, 2012 WL 3645324, at *6 (" . . . the waiver – a single sentence within the authorization, which was kept markedly distinct from the disclosure language – was not so great a distraction as to discount the effectiveness of the disclosure and authorization statements"); *cf*., Opinion, p. 12-15 ("to hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not so great a distraction" safe harbor for impermissible language, which, of course, it may not do").

Finally, and perhaps most importantly, all of the forgoing substantial grounds for difference of opinion undergird the Court's determination, mistakenly in ClosetMaid's view, not simply that it failed to comply with FCRA, but that its putative noncompliance was willful.

The first step in establishing willful noncompliance is to establish whether ClosetMaid's interpretation of 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii) was "objectively unreasonable" *vel non*. *See Safeco*, 551 U.S. 47, 68-70; *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012). The many substantive grounds set forth above, however, demonstrate that ClosetMaid's interpretation of the statutory text at issue, even if ultimately proven to be erroneous, is not "objectively unreasonable." To say so would mistakenly posit that the interpretation expressed by the district court in North Carolina in *Smith*[9] is also "objectively unreasonable." *See Safeco*, 551 U.S. at 79-70 ("[h]ere, there is no need to pinpoint the negligence/recklessness line, for Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable . . . While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text . . . and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor").

Furthermore, the Court predicates its application of *Safeco* and *Fuges* on an erroneous reading of a material point in *Safeco*. The Court's Opinion states: "According to the [U.S. Supreme] Court, the defendant's reading of the statute had 'a foundation in the statutory text,' *there were prior appellate-level interpretations of the statutory provisions*, and there was a "dearth of [regulatory] guidance" regarding the "less-than-pellucid statutory text." (*See* Opinion at p. 16, attempting to quote *Safeco*, 551 U.S. at 70) (emphasis added). Yet, to the contrary, *Safeco* actually states the opposite – that "no court of appeals had spoken on the issue[.]"

---

[9] Furthermore, the Court seeks to diminish *Smith's* import further by pointing out that it was decided several years after the events at issue in this case. *See* Opinion, p. 18 n.8. The timing of *Smith* or ClosetMaid's actual knowledge of the *Smith* decision is inapposite, however, because the applicable standard is "objective reasonableness" and not "subjective bad faith." Fuges, 707 F.3d at 249. The Court makes a similar point concerning the existence of FTC Staff Opinion Letters that were available at the time ClosetMaid was using its Authorization Form. *See* Opinion, p. 18(stating, " . . . this agency guidance . . .was available at the time" and " . . . ClosetMaid's only support for its position is having its own position"). However, the Third Circuit made clear that a defendant does not "lose the potential protection of the "reasonable interpretation" defense, even if it never actually interpreted FCRA prior to the commencement of [the] lawsuit." *Fuges*, 707 F.3d at 251. *See also Safeco*, 551 U.S. at 70, n. 20.

*Safeco*, 551 U.S. at 70. Similarly, and as in *Safeco*, no court of appeals has spoken on the issue *sub judice*, namely, whether it is permissible to include a release in FCRA disclosure or authorization forms. In fact, the only district court that has made a substantive determination based upon an evidentiary record[10] is *Smith*, wherein summary judgment was granted in favor of the defendant-employer.

Finally, the Court relies, again, on a few individual FTC staff members who express their individual opinions that it is impermissible to include waiver or release language in disclosure and authorization forms, to then conclude that ClosetMaid's interpretation of FCRA is "legally insupportable" and thus its conduct was willfully noncompliant. (*See* Opinion at p. 18) As discussed above, the statutory interpretations expressed in these opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines – all lack the force of law and do not warrant *Chevron*-style deference nor should they be afforded any persuasive worth. *Goode*, 848 F. Supp. 2d at 542 (*citing Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, (1984). Importantly, the U.S. Supreme Court in *Safeco* made clear that these types of FTC staff opinions, and seemingly regardless of their purported persuasiveness, are not a permissible basis to support a finding of willful noncompliance. *Safeco*, 551 U.S. at 70 and n. 19.

Accordingly, both *Singleton's* and this Court's reliance on these FTC Staff Opinion letters as relevant "agency guidance" in furtherance of the *Fuges* analysis is in direct conflict with other controlling authorities and poses yet another substantial ground for difference of opinion here.

---

10     *Singleton*, to the contrary, disposed of a motion to dismiss pursuant to Fed.R.Civ.P. 12. *See Singleton*, 2012 WL 245965, at *2.

Based upon the foregoing, there clearly are several substantial differences of opinion worthy of appellate review.

### C. An Interlocutory Appeal Could Materially Advance the Ultimate Termination of the Litigation.

An interlocutory appeal materially advances the ultimate termination of the litigation if it would (1) obviate the need for a trial; (2) eliminate complex issues thereby greatly simplifying the trial; or (3) eliminate issues thus making discovery much easier and less costly." Here, an interlocutory appeal could materially advance the ultimate termination of the litigation. *See Alexander*, 2008 WL 3285845 at * 4.

A successful appeal could potentially terminate the entire case involving the remaining members of the Disclosure Class, and surely would eliminate complex issues, as the issues presently remaining for trial are a determination of damages for the Disclosure Class and a residual claim pursued by a small subclass. *See Alexander*, 2008 WL 3285845 at * 4 (holding that certification would materially advance the ultimate termination of the litigation because the "Court of Appeals may direct dismissal of plaintiffs' complaint if it disagrees with my determination of the standing question"); *Aluminum Bahrain B.S.C.*, 2012 WL 5305169, at 3 ("it is clear that an interlocutory appeal could materially advance the ultimate termination of the litigation" even though it "could further delay, rather than expedite, the ultimate disposition of this case").

Finally, ClosetMaid intends to file, on December 16, 2013, a petition for appeal to the Court of Appeals, seeking its review of this Court's Opinion and Order as relating to the Pre-Adverse Action Sub-Class, and whether the Sub-Class, as now newly re-constituted, is appropriate for class treatment pursuant to Federal Rule of Civil Procedure 23.

### III. CONCLUSION

For the foregoing reasons, Defendant ClosetMaid Corporation respectfully requests that the Court amend its December 6, 2013 Order to allow ClosetMaid to seek immediate interlocutory appeal.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.**


*/s/ W. Scott Hardy*
W. Scott Hardy, Esq.
PA ID No. 79225
scott.hardy@ogletreedeakins.com

Philip K. Kontul, Esq.
PA ID No. 94156
philip.kontul@ogletreedeakins.com

One PPG Place, Suite 1900
Pittsburgh, PA 15222
Ph. (412) 394-3367
Fax: (412) 232-1799

Attorneys for Defendant
ClosetMaid Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND ORDER TO CERTIFY FOR IMMEDIATE APPEAL was filed electronically on December 12, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

 

                                          */s/ W. Scott Hardy*
                                          W. Scott Hardy
                                          Attorney for Defendant