IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. CATHY REARDON, *on behalf of herself and all similarly situated individuals*, | ) ) ) ) |
| | No. 2:08-cv-01730 |
| Plaintiff, | ) ) |
| | Judge Mark R. Hornak |
| v. | ) ) |
| | ***Electronically Filed*** |
| CLOSETMAID CORPORATION, | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM AS TO
MECHANISM OF PROOF FOR PRE-ADVERSE ACTION CLAIM**

Defendant ClosetMaid Corporation ("ClosetMaid"), by and through its undersigned attorneys, and in accordance with the Court's December 6, 2013 Order, files this Memorandum As To Mechanism of Proof For Pre-Adverse Action Claim.

INTRODUCTION

Despite being dismissed from her own Disclosure Class, Ms. Reardon seeks to pursue an additional claim on behalf of herself and certain other subclass members[1] who ClosetMaid declined to hire. On December 2, 2013, the Court denied the parties' cross motions for summary judgment as to these remaining subclass members and directed their claims to be submitted to a jury. Class Representative Reardon, solely for herself, will seek to prove that she was not provided a copy of specified pre-adverse action disclosures[2] within a "reasonable" time before ClosetMaid notified her that it was not hiring her. Separately, the remaining subclass members, for whom Ms. Reardon is certified to represent, will endeavor to prove that ClosetMaid should

---

[1] The pre-adverse action claims of others were dismissed by Opinion and Order dated December 2, 2013. Of the remaining subclass members, several of them, including Ms. Reardon, are no longer members of the Disclosure Class of which the subclass putatively remains a subset. *See also* Amended Order, December 6, 2013.

[2] A copy of their consumer report and a summary of FCRA rights. *See* 15 U.S.C. §1681b(b)(3).

have provided these disclosures to each of them because, in their view, ClosetMaid purportedly took adverse actions against each of them, *i.e.*, declined to hire them, based in whole or in part on their consumer reports.

The Court identifies the essential question for the jury as to these remaining subclass members, except Class Representative Reardon, to be whether ClosetMaid declined to hire them "*based in whole or in part*" on their respective consumer reports. The Court has directed the Parties to submit memoranda proposing a mechanism for proof of liability *vel non*.

As set forth below and based upon the statutory text of the Fair Credit Reporting Act ("FCRA") and other controlling legal authorities, ClosetMaid proposes that these sub-class members must prove, by a preponderance of the evidence, that their consumer reports were the "but-for" cause in each of ClosetMaid's decisions not to hire them; or, stated differently, that these Plaintiffs must prove: (i) that their consumer reports actually played a role in ClosetMaid's decisionmaking process, and (ii) that their consumer reports had a determinative influence on the outcome of each decision.

If the Court rejects this straightforward evidentiary standard and deems it helpful to apply an evidentiary framework typically used in circumstantial employment discrimination cases, then ClosetMaid suggests, with reservation, the application of the *McDonnell Douglas* framework in which, in the first instance, these Plaintiffs merely create an inference in their favor if they can prove that their consumer reports "actually played a role" in ClosetMaid's decision-making process; then, the mere burden of *production* would shift to ClosetMaid to articulate a reason or reasons why, in each instance, it chose not to hire such person; and, finally, these Plaintiffs would need to prove that these articulated reasons were a pretext and that their consumer reports had a "determinative influence on the outcome" of each decision. At all times, however, the burden of proof would remain with Plaintiffs.

**PLAINTIFFS MUST PROVE THAT THEIR CONSUMER REPORTS WERE THE "BUT-FOR" CAUSE OF NOT BEING HIRED IN ORDER TO BE ENTITLED TO PRE-ADVERSE ACTION DISCLOSURES.**

It is axiomatic that the burden of persuasion, *i.e.,* proof, falls upon the party seeking relief unless Congress intends otherwise. *See Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, __, 128 S.Ct. 2395, 2400-2401, 171 L.Ed.2d 283 (2008). Even so, where the statutory text is silent on the allocation of the burden of proof, courts are to apply the default rule that plaintiffs bear the risk of failing to prove their claims. *Schaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 163, L.Ed.2d 387 (2005), *cited by Gross*, 557 U.S. 167, 177. Here, Congress put nothing in FCRA that would relieve Plaintiffs from their burden of proof.

The pertinent provision of the Fair Credit Reporting Act ("FCRA") states as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, *before taking any adverse action based in whole or in part on the report*, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i)   A copy of the report; and
>
> (ii)  A description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

15 U.S.C. §1681b(b)(3) (emphasis added).

The U.S. Supreme Court has already determined that the language Congress used here, "*based in whole or in part*," requires a plaintiff to clear the "hurdle" of showing a "but-for causal relationship and thus a necessary logical condition." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 63 (2007) (emphasis added)[3]

---

[3]   The language at issue here, 15 U.S.C. §1681b(b)(3), contains the identical "based in whole or in part on" language that the Supreme Court interpreted in *Safeco*, *i.e.*, 15 U.S.C. §1681m(a).

The Supreme Court subsequently relied upon *Safeco* when determining that equivalent language in the Age Discrimination in Employment Act ("ADEA")[4] also imposes upon plaintiffs the burden of proving that age was the "but-for" cause of a challenged employment decision. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175-178 (2009), *citing Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)(explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process and had *a determinative influence on the outcome*")(emphasis added by *Gross*); *see also* Univ. of Tex. Sw. Med. Ctr. V. Nassar, __ U.S. __, ___, 133 S.Ct. 2517 (2013)(applying *Safeco* and *Gross* to hold that "but-for" causation also applies to Title VII retaliation claims in contrast to the lower "motivating factor" standard applied to Title VII status-based claims).

The Court has already rejected Plaintiffs' proposed proof standard that attempts to insert new words such as "possibly" and "might" into the statute even though those words do not exist in the statute itself.  To adopt Plaintiffs' interpretation of 15 U.S.C. §1681b(b)(3) would make surplusage of the statutory phrase "*taking any adverse action based in whole or in part on the report*," and would absurdly compel employers to issue a copy of consumer reports and a written description of FCRA rights in all instances when a prospective employer procures a consumer report for an applicant and regardless of whether it intended to take an adverse action based on their report. Nothing in the actual text of 15 U.S.C. §1681b(b)(3) imposes such an obligation on a prospective employer when intending to reject an applicant for a reason or reasons not based in whole or in part on their consumer report even if the employer "possibly" or "might have not hired a person" based upon their consumer report. There is simply no statutory basis for this

---

[4] *See* 29 U.S.C. § 623(a)(1).

contention. Indeed, the Court has rejected Plaintiffs' speculative "possibly" or "might" standard as being contrary to FCRA, *citing Safeco*, 551 U.S. 47, 63. *See* Opinion, pp. 24-25[5].

Consequently, Plaintiffs bear the burden of proving that their consumer reports were the "but-for" cause in each of ClosetMaid's decisions not to hire them. Stated another way, Plaintiffs must prove that their consumer reports were a "necessary condition" of ClosetMaid's no-hire decisions. Stated yet a third way, Plaintiffs must prove that: (i) their consumer reports actually played a role in ClosetMaid's decisionmaking process, and (ii) had a determinative influence on the outcome as to each decision.

Based upon footnotes 20 and 24 of the Court's Opinion, ClosetMaid anticipates that Plaintiffs will propose a proof mechanism akin to that used in so-called "pattern and practice" cases under Title VII of the Civil Rights Act as expressed in *Teamsters v. United States*, 431 U.S. 324 (1977) and its progeny. However, imposing such a proof standard would improvidently relieve Plaintiffs from their burden of proof and instead foist that burden on ClosetMaid contrary to the express language of FCRA and controlling authorities. There is simply no legal authority or other proper basis to do so.

First, the burden of proof falls upon the party seeking relief unless Congress intends otherwise. *See Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, __, 128 S.Ct. 2395, 2400-2401, 171 L.Ed.2d 283 (2008). Even so, where the statutory text is silent on the allocation of the burden of proof, courts are to apply the default rule that plaintiffs bear the risk of failing to prove their claims. *Schaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 163, L.Ed.2d 387 (2005), *cited by Gross*, 557 U.S. 167, 177. As set forth above, Congress put nothing in the FCRA that would relieve Plaintiffs from their burden of persuading the trier of fact that ClosetMaid intended

---

[5] The statutory text of 15 U.S.C. §1681b(b)(3) and controlling Supreme Court authorities cited herein interpreting its most pertinent language compel the rejection of the Court's suggested "some role" standard expressed at footnote 20 of the Court's Opinion, on p. 28.

not to hire them based in whole or in part on their consumer reports and thus entitling them to specified notices before ClosetMaid actually took such adverse actions.  The Court's suggestion that ClosetMaid might be required to prove that a consumer report "played no role at all" as to each applicant would turn *Safeco* on its head. Rather, it is Plaintiffs who must prove that their consumer reports were the "but-for" cause in each of ClosetMaid's decisions not to hire them. *Safeco*, 551 U.S. 47, 63.

Second, *Teamsters* imposes a standard specifically applicable to cases asserted by the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to 42 U.S.C. § 2000e-6 alleging "pattern or practice" violations of 42 U.S.C. § 2000e-2(a), which has since been amended by the Civil Rights Act of 1991, adding, *inter alia*, 42 U.S.C. §§ 2000e-2(m). Yet, as a threshold matter and as set forth above, *Nassar* rejects the lower "motivating factor" standard applicable to such status-based Title VII claims when the statutory text at issue is equivalent to that used in the FCRA at 15 U.S.C. §1681b(b)(3).  *See Safeco*, 551 U.S. 47, 63.  Rather, in the case *sub judice*, Plaintiffs' pre-adverse action claims require that they prove, pursuant to 15 U.S.C. §1681b(b)(3), that their consumer reports were the "but-for" cause of ClosetMaid's decisions not to hire each of them. Indeed, the U.S. Court of Appeals for the Third Circuit rejected the application of *Teamsters* to "pattern or  practice" American's with Disabilities Act ("ADA") claims, stating:

> We disagree with this line of reasoning. As noted, the ADA, and not the *Teamsters* method of proof, dictates what substantive elements are necessary to reach a determination that UPS has engaged in a pattern or practice of unlawful discrimination, and to what extent these elements may overlap with those necessary to an individual claim of discrimination. That the adjudication of a Title VII class action under the *Teamsters* framework may not require a showing of each class member's qualification to reach a finding of unlawful discrimination, does not mean that the same conclusion applies in the ADA context. Rather, "we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.' " *Gross,* 129 S.Ct. 2343,

> 2345 (quoting *Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1153, 170 L.Ed.2d 10 (2008)); *see also id.,* 129 S.Ct. 2343, 2349 n. 2 (concluding, in light of such examination, that "the textual differences between Title VII and the ADEA ... prevent us from applying [the Title VII mixed-motives framework discussed in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003),] to federal age discrimination claims"). The ADA and Title VII, by their plain language, do not treat the qualification inquiry equivalently in their respective statutory schemes, a substantive distinction the District Court failed to incorporate into its certification analysis.

*Hohider v. United Parcel Service, Inc., et al*, 574 F.3d 169, 190 (3d Cir. 2009)[6].

Consequently, applying *Teamsters*[7] here would shift the burden of persuasion impermissibly from Plaintiffs to ClosetMaid without any statutory basis and contrary to *Safeco*, *Gross*, *Nassar*, and *Hohider*.

Alternatively, the Court suggests possibly applying the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See* Opinion, pp. 28, 35 and n. 20 and n. 24. Again, there is no controlling legal authority upon which to apply this evidentiary framework to Plaintiffs FCRA claims and this Court seemingly would be the first to do so.

The Third Circuit has applied the *McDonnell Douglas* framework to ADEA claims post-*Gross* in *Smith v. City of Allentown*, 589 F.3d 684, 689-692 (3d Cir. 2009)(applying this framework based upon existing authority found in *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d

---

[6] The Court references two non-controlling opinions to suggest that pattern and practice "phraseology" in the context of private plaintiffs is simply a variation on the *McDonnell-Douglass* theme, Opinion, p. 28 n. 20 (*citing Celestine v. Petroleos de Vanezuella SA*, 266 F.3d 343(5th Cir. 2001) and *Parisi v. Goldman, Sachs*, 710 F.3d 483 (2d Cir. 2013). Yet, both of these cases are inapposite for the same reasons expressed above for why *Teamsters* is not applicable.

[7] The Court suggests that the application of *Teamsters* may reduce or possibly obviate the risk of decertifying the subclass, see Opinion, p. 35 n. 24, yet the Third Circuit has already held that a district court abuses its discretion when using the *Teamsters* "method of proof to reach a certification decision incompatible with the substantive requirements [of the statute at issue.]" *Hohider*, 574 F.3d at 185 (holding that ADA claims "cannot be adjudicated within the parameters of Rule 23 such that a determination of classwide liability and relief can be reached" and use of the "*Teamsters* framework cannot, by its own force, cure this flaw in the class.").

1101, 1108 (3d Cir. 1997)). The Third Circuit permits application of the *McDonnell Douglas* framework to ADEA claims because doing so merely shifts the burden of production at the middle step of the analysis and never shifts the burden of proof. In making this determination, the Third Circuit states that "[t]hroughout this burden-shifting exercise, the burden of persuasion, 'including the burden of proving 'but for' causation or causation in fact, remains on the employee.'" *Smith*, 589 F.3d at 691.

## CONCLUSION

Accordingly, for the foregoing points, authorities, and reasons, ClosetMaid respectfully proposes imposing upon Plaintiffs the burden of proving that their consumer reports was the "but-for" cause of each of their employment decisions. *See Safeco*, 551 U.S. at 6; *Gross,* 557 U.S. at 175-178.

          Respectfully submitted,

          **OGLETREE, DEAKINS, NASH,**
           **SMOAK & STEWART, P.C.**

          /s/ W. Scott Hardy
          W. Scott Hardy, Esq.
          PA I.D. No. 79225
          scott.hardy@ogletreedeakins.com

          Philip K. Kontul, Esq.
          PA I.D. No. 94156
          philip.kontul@ogletreedeakins.com

          One PPG Place, Suite 1900
          Pittsburgh, PA  15222-1237
          Telephone: (412) 394-3333
          Facsimile: (412) 232-1799

          Counsel for ClosetMaid Corporation

Dated:  December 13, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM AS TO MECHANISM OF PROOF FOR PRE-ADVERSE ACTION CLAIM was filed electronically on December 13, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ W. Scott Hardy
Counsel for Defendant