IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. CATHY REARDON, *on behalf of herself and all similarly situated individuals*, | )<br>)  Civil Action No. 2:08-cv-01730<br>)<br>)  Judge Mark R. Hornak |
| Plaintiffs, | )<br>)  ***Electronically Filed*** |
| v. | )<br>) |
| CLOSETMAID CORPORATION, | )<br>) |
| Defendant. | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SEVER CLAIMS

### I.     Introduction

This case involves the claims of one Rule 23 class (the "Disclosure Class"), one Rule 23 sub-class (the "Pre-Adverse Action Sub-Class"), and one individual, R. Cathy Reardon. While the claims have been brought under the same federal law, the claims asserted in this case bear no material resemblance to one another. Given the substantial prejudice that would result from trying these claims in one trial to one jury, the Court should grant ClosetMaid's Motion and sever the claims.

First, as to the Disclosure Class, the jury will be instructed to award statutory damages to members of the Rule 23 Disclosure Class – a class that encompasses more than 1,000 class members, all of whom are past job applicants to ClosetMaid and who the Court has determined were provided a legally insufficient disclosure under the Fair Credit Reporting Act ("FCRA"). In conjunction with this Disclosure Class claim, a jury will ostensibly be instructed and advised that the Court *has already determined that ClosetMaid willfully violated the FCRA*, and that damages *must be awarded* in an amount between $100 and $1000 per class member. This jury may also be instructed on the issue of punitive damages for these claims.

By contrast, the jury will be asked to decide completely different issues for the Pre-Adverse Action Sub-Class. This sub-class consists of a distinct set of approximately 50 individuals who applied for jobs at ClosetMaid, but who were ultimately not hired. The Sub-Class contends that ClosetMaid's decisions not to employ them were due to information contained in their consumer reports; thus, these Sub-Class members contend that they should have received a copy of their Consumer Reports and a description of their rights. Because they did not, they claim statutory and punitive damages under the FCRA. Unlike the Disclosure Class, no determination on liability has been made for this sub-class, and a jury will first be instructed on liability and defenses under the FCRA and will only award damages if liability is found.

Finally, the jury will be asked to evaluate Reardon's claims in this case.[1] Unlike the Disclosure Class and Pre-Adverse Action Sub-Class, Ms. Reardon's claim against ClosetMaid involve solely whether ClosetMaid provided her a copy of her Consumer Report and descript of Rights in a timely manner.

Despite the indisputable differences in these varied claims, Plaintiffs seek to have them tried together in one jury trial. Their reason for doing so appears obvious – to leverage the instructions and the Court's finding of willful non-compliance as to the large Disclosure Class to prejudicially affect the jury's deliberations for Ms. Reardon's and the Pre-Adverse Action Sub-Class members' claims. Indeed, ClosetMaid anticipates that Plaintiffs will argue and leverage the Court's finding as to the Disclosure Class to attempt to inflame the jury against ClosetMaid

---

[1] ClosetMaid notes that the Court has ordered that Reardon remain as the class representative for the Pre-Adverse Action Sub-Class, but also ordered she cannot be the class representative for the Disclosure Class. *See* Doc. 157. The Court has directed class counsel to identify a new class representative for the Disclosure Class but that individual is currently unknown to ClosetMaid. ClosetMaid disputes that Ms. Reardon is an adequate class representative for the Pre-Adverse Action Sub-Class and will preserve the issue as part of a petition for interlocutory appeal pursuant to Rule 23(f) to be filed on December 16, 2013.

regarding potential liability and damages findings for Ms. Reardon and/or for the Pre-Adverse Action Sub-Class.  It is equally probable that the jury will become confused or assume that because willful liability exists for one claim, such findings would also exist for all of the other claims asserted.

This situation presents the very definition of unfair prejudice, and is precisely the reason for which Rule 42(b) was drafted.  In the employment context, courts have severed the claims of multiple plaintiffs where, as here, "[t]here is tremendous danger that one … plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims."  *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 518 (N.D.Ill. 2000).   The Court should sever the claims here and have the three separate and distinct claims tried by three different juries.

## II.     Legal Standards

Fed. R. Civ. P. 42(b) provides that, "to avoid prejudice … the court may order a separate trial of one or more separate issues [or] claims."  Fed. R. Civ. P. 42(b).  Whether or not to sever claims under Rule 42(b) is within the sound discretion of the court.  *Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 115 (3d Cir. 1992).  In doing so, the court must "divide issues between separate trials [or juries] in such a way that the same issue is not reexamined by different juries."  *In re Paoli Railroad Yard PCB Litigation*, 113 F.3d 444, 452 (3d Cir. 1997) (citations omitted).  The reason for this rule is so two juries do not reach inconsistent results.  *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 198, 305 (5th Cir. 1993).

## III.     Argument

In the employment context, courts routinely sever claims where there is a danger that the unique facts presented in one plaintiff's claim will affect the jury's consideration of other

plaintiffs' claims. For example, in severing claims in *Bailey*, the court (while quoting a Pennsylvania federal district court case) reasoned:

> A single trial would require the jury to keep separate each plaintiff's individualized claim and work history, presenting the jury with the "hopeless task of trying to discern who did and said what to whom and for what reason." The jury may simply resolve the confusion by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case. **There is tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims**. The need to focus the jury's attention on the merits of each individual plaintiff's case counsels against proceeding with these cases in one consolidated trial. Thus, the court concludes that it would be extremely prejudicial to the defendant if the claims of the plaintiffs are tried jointly.

196 F.R.D. at 518 (quoting *Moorehouse v. Boeing Co.*, 501 F. Supp. 390, 392 (E.D. Pa. 1980))(emphasis added). *See, e.g., Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) ("Clearly, trying the claims in one action would be extraordinarily confusing for the jury, requiring the jury to keep separate more than twenty claims of five plaintiffs."); *Moorehouse*, 501 F. Supp. At 393 n.4 ("In the Court's view, even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contending defendant had laid him off because of his age"); *Bernardi v. City of Scanton*, 101 F.R.D. 411, 413-14 (D.C. Pa. 1983) (quotation omitted) (ordering separate trials because "the likelihood of confusion in the minds of jurors outweighs the benefit of any possible convenience or economy to be obtained from consolidation.").

The same logic and reasoning applies here. Absent severance, unfair prejudice will necessarily result in this case. The relevant facts have been extensively briefed on summary judgment and decertification. Highly summarized, the Disclosure Class' claims are legally and

factually distinct from the claim of the Pre-Adverse Action Sub-Class, and those class claims are legally and factually distinct from Ms. Reardon's surviving individual claim.

First, the Pre-Adverse Action Sub-Class claims differ from the Disclosure Class claims. The former involves allegations that the Sub-Class never received certain pre-adverse action disclosures, but should have because, in their view, their individual non-hire decisions were based in whole or in part on their Consumer Report.  In contrast, the latter alleged they received a certain disclosure notice that illegally included a release.

In addition, both classes are factually and legally distinct from Ms. Reardon and her individual claim.  Ms. Reardon contends she received her Consumer Report and a description of her rights, but that she was not timely provided these such documents.  Moreover, Ms. Reardon is currently the only individual remaining in the Pre-Adverse Action Sub-Class who did receive pre-adverse action notices from ClosetMaid.

Stated simply, there is a tremendous danger that the Disclosure Class' unique circumstances (*i.e.*, the Court's finding of willful liability, thereby leaving the jury solely to award damages) will prejudice the jury's consideration of Ms. Reardon's and the Sub-Class' claims – claims that have different fact patterns, state different alleged violations of the FCRA, involve different FCRA notices and forms, and will, therefore, involve different evidence. Plaintiffs will no doubt use facts and the Court's determination of willful liability for the Disclosure Class to inflame the jury as a whole against ClosetMaid.  The jury likely will, in turn, become confused as to the key issues in each set of claims and may erroneously assume that if liability exists for one set of claims, it necessarily exists for all – all of which is the textbook definition of prejudice that Rule 42(b) authorizes the Court to prevent through severance.

Indeed, joinder of these three distinct sets of claims makes little sense.  While all claims are brought under the FCRA, the similarities (legally and factually) end there.   All three sets of claims involve different key questions under the FCRA.  If the claims are severed, the same issues will not be reexamined by different juries.  There is no danger of separate juries reaching inconsistent results because they would each be asked to answer very different questions as they evaluate different alleged violations of the FCRA.

Given the substantial prejudice that would undoubtedly result from trying these three sets of claims together, severing is warranted and should be granted in this case.

### IV. Conclusion

WHEREFORE, ClosetMaid respectfully requests that this Court grant its Motion to Sever Claims, thus severing the Disclosure Class from the Pre-Adverse Action Sub-Class, and then both classes from Ms. Reardon's individual claim such that they will be tried separately and by different juries.

>
> Respectfully submitted,
>
> **OGLETREE, DEAKINS, NASH,
> SMOAK & STEWART, P.C.**
>
> /s/ W. Scott Hardy
> W. Scott Hardy, Esq.
> PA I.D. No. 79225
> scott.hardy@ogletreedeakins.com
>
> Philip K. Kontul, Esq.
> PA I.D. No. 94156
> philip.kontul@ogletreedeakins.com
>
> One PPG Place, Suite 1900
> Pittsburgh, PA  15222-1237
> Telephone: (412) 394-3333
> Facsimile: (412) 232-1799
>
> Counsel for ClosetMaid Corporation

Dated:  December 13, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER CLAIMS was filed electronically on December 13, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ W. Scott Hardy
Counsel for Defendant