UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| R. CATHY REARDON, | ) | |
| BRIGETTE BECKINGER | ) | |
| and WILLY RAINS | ) | |
|     On behalf of all | ) | |
|     similarly situated individuals | ) | |
| | ) | C.A. NO.: 2:08-cv-01730MRH |
|     **Plaintiffs** | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| CLOSETMAID CORPORATION | ) | |
| | ) | Class Action |
| | ) | |
| | ) | |
| | ) | |
|     **Defendants.** | ) | Electronically Filed |

MEMORANDUM IN SUPPORT OF THE
MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND
AWARD TO REPRESENTATIVE PLAINTIFFS

| | |
|---|---|
| James M. Pietz | Leonard A. Bennett, Esq. |
| Pa I.D. No. 55406 | Consumer Litigation Associates |
| Pietz Law Office LLC | 763 J. Clyde Morris Boulevard. |
| 429 Forbes Ave., Suite 1710 | Suite 1-A |
| Pittsburgh, Pa. 15219 | Newport News, VA  23606 |
| 412-288-4333 | (757) 930-3660 |
| jpietz@jpietzlaw.com | lenbennett@clalegal.com |

*Counsel for the Representative And Class Plaintiffs*

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. HISTORY OF THE LITIGATION AND THE SETTLEMENT BENEFITS ................. 2

III. THE LEGAL STANDARDS APPLICABLE TO FINAL APPROVAL ........................... 2

IV. THE PROPOSED SETTLEMENT SATISFIES THE LEGAL STANDARD FOR FINAL APPROVAL

    A.  The Notice Satisfies Dictates of Rule 23(c)( 2) And The Requirements of Due Process ................................................................................................................ 4

    B.  The *Girsh* Factors Are Satisfied ........................................................................ 5

        1.  The complexity, expense and likely duration of the litigation ................. 5

        2.  The Reaction Of The Class To The Settlement ........................................ 5

        3.  The Stage of the Proceedings and the Amount of Discovery ................... 6

        4.  The Risks of Establishing Liability ............................................................. 7

        5.  The Risks of Establishing Damages ............................................................ 7

        6.  The risks of maintaining the class action through trial ........................... 8

        7.  The Ability of the Defendant to Withstand a Greater Judgment ............. 9

        8.  The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery ........................................................................................ 9

        9.  The Additional Prudential Factors ........................................................... 11

    C.  The Representative Plaintiffs Are Entitled To An Incentive Payments For Their Participation In This Action ................................................................... 11

IV. CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) .................................................... 10

*Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) .......................... 10

*Bonett v. Educ. Debt Servs., Inc.,* No. 01–6528, 2003 WL 21658267 (E.D.Pa. May 9, 2003) .................................................................................................................................. 6

*Bredbenner v. Liberty Travel, Inc.,* No. 09–905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ....... 12

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011) .................................... 12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ......................................................... 9

*Collier v. Montgomery County Housing Authority,* 192 F.R.D. 176 (E.D. Pa. 2000) .................... 11

*Dewey v. Volkswagen of Am.,* 728 F.Supp.2d 546 (D.N.J.2010) .................................................. 12

*Ehrheart v. Verizon Wireless,* 609 F.3d 590 (3d Cir.2010) .............................................................. 3

*Fleisher v. Fiber Composites, LLC*, CIV.A. 12-1326, 2014 WL 866441 (E.D. Pa. Mar. 5, 2014) ............................................................................................................................. 12

*Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012) ............................................................ 8

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975) ............................................................................. 3, 5

*In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2008 WL 63269, 2008 U.S. Dist. LEXIS 569 (E.D.Pa. Jan. 3, 2008) ................................................................................. 12

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .................................................... 5, 6, 7, 9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ................................................................................................................ 1, 3, 5, 6

*In re Linerboard Antitrust Litig.,* MDL No. 1261, 2004 WL 1221350 (E.D.Pa. June 2, 2004) ............................................................................................................................... 12

*In re Prudential,* 148 F.3d 283 (3d Cir. 1998) ...................................................................... passim

*In re Residential Doors Antitrust Litig.,* MDL No. 1039, Civ. A. Nos. 94–3744, 96–2125, 1998 WL 151804 (E.D.Pa. Apr.2, 1998) ............................................................................. 12

*In re Warner Communications Sec. Litig.,* 618 F. Supp. 735 (S.D.N.Y. 1985) a*ff'd* 798 F.2d 35 (2d Cir. 1986) .................................................................................................................. 7

*McCoy v. Health Net, Inc.,* 569 F.Supp.2d 448 (D.N.J.2008) ........................................................... 6

*Mehling v. N.Y. Life Ins. Co.,* 248 F.R.D. 455 (E.D.Pa.2008) ........................................................ 12

*Parks v. Portnoff Law Associates, Ltd.,* 243 F.Supp.2d 244 (E.D. Pa. 2003) .................................. 10

*Reardon v. ClosetMaid Corp.*, 2:08-CV-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) ........................................................................................................................................ 8

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ......................................................................... 8

*Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115 (3d Cir. 1990) .............................................................. 5

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ...................................................... 12

*Tenuto v. Transworld System,* 2002 WL 188569 (E.D. Pa. 2002) .................................................. 12

*Trans World Airlines. Inc. v. Hughes,* 312 F. Supp. 478 (S.D.N.Y. 1970), *modified.* 449 F.2d 51 (2d Cir. 1971), *rev d* 409 U.S. 363 (1973) ....................................................................... 10

*Walsh v. Great Atlantic and Pacific Tea Co.,* 726 F.2d 956 (3d Cir. 1983) ..................................... 3

*Weiss v. Mercedes–Benz of N. Am., Inc.,* 899 F.Supp. 1297 (D.N.J.1995) ..................................... 3

**Statutes**
Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ............................................................. passim

**Other Authorities**
4 Newberg on Class Actions (4th ed. 2002) ................................................................................... 2

Manual for Complex Litigation, Third (1995) ............................................................................... 2

**Rules**
Fed.R.Civ.P. 23 .................................................................................................................... 1, 2, 4, 9

I.  **INTRODUCTION**

The proposed class action resolution presented to the court easily meets the requirements of a "fair, reasonable and adequate" settlement mandated by Fed.R.Civ.P. 23(e)(2).  *First,* the proposed settlement presented to the court for final approval is unprecedented because it provides, automatically, most, if not all, of the relief that could have been obtained at trial.  *Second,* the settlement avoids the time, risks and costs occasioned by a trial and eventual appeal of "cutting edge" issues presented in this case. The Parties have engaged in hard fought litigation including, discovery, class certification, decertification, summary judgment and pretrial motion practice.  Through all of this, the Settlement Classes stand to gain what they could recover at trial, yet they avoid the attendant costs risks of continued litigation.  But for the delay required by the litigation, this settlement presents the best of outcomes for the Classes. *Third,* this complex action has been pending on the Court's docket for 5 ½ years.  Any eventual trial and subsequent appeal will entail another 2 or 3 years of litigation.  The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  *Fourth,* the proposed settlement is the product of hard fought litigation and arms-length negotiation.  Given the extensive course of proceedings, the Parties have a clear view of the strengths and weaknesses of their claims and defenses.  *Finally,* the proposed settlement operates to enforce key provisions of the Fair Credit Reporting Act and, therefore, fosters important federal public policy.

It is therefore respectfully requested that the Court enter an order granting final approval to the settlement. A proposed Final Order and Judgment is attached to the Motion For Final Approval.

**II.     HISTORY OF THE LITIGATION AND THE SETTLEMENT BENEFITS**

A history and description of the litigation and the settlement benefits is provided in the Declaration of Plaintiffs' Counsel submitted with this brief. Pl.C. Decl. ¶¶ 13-44. This History and description is incorporated.

**III.    THE LEGAL STANDARDS APPLICABLE TO FINAL APPROVAL**

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. 4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) at §l 1.24-41. Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step requires final approval pursuant to Fed.R.Civ.P. 23(e) after a hearing on the issue. *See* MANUAL FOR COMPLEX LITIGATION, THIRD, §30.41 (1995).[1] The first two steps have been completed.

Rule 23(e) requires court approval of any class action settlement and sets forth procedures to be followed for deciding whether approval should be granted. Fed.R.Civ.P. 23(e). The procedures "strengthen the process of reviewing proposed class-action settlements" and "assure adequate representation of class members who have not participated in shaping the settlement." Fed.R.Civ.P. 23(e) advisory committee's note (2003

---

[1]     Fed.R.Civ.P. 23(e) provides:

**(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
  **(1)** The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
  **(2)** If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
  **(3)** The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
  **(4)** If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
  **(5)** Any class member may object to the proposal if it requires court approval under this

2

Amendments). Rule 23(e) requires the Court to follow these procedures and "make findings that support the conclusion that the settlement is fair, reasonable, and adequate. The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard." *Id.*

As the Third Circuit has recognized, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors,* 55 F.3d at 784; *see also Ehrheart v. Verizon Wireless,* 609 F.3d 590, 594–95 (3d Cir.2010) (recognizing that settlements conserve judicial resources and enable the parties to avoid the costs and risks of a complex trial). This policy is further supported by the advantages to the parties of a settlement as "they have far greater control of their destiny than when a matter is submitted to a jury," and reflects the consideration that "the time and expense that precedes the taking of such a risk can be staggering." *Weiss v. Mercedes–Benz of N. Am., Inc.,* 899 F.Supp. 1297, 1300 (D.N.J.1995).

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation ...;(2) the reaction of the class to the settlement ...: (3) the stage of the proceedings and the amount of discover)' completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...: (6) the risks of maintaining the class action through trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recover)' in light of all the attendant risks of litigation...

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975); *see also Walsh v. Great Atlantic and Pacific Tea Co.,* 726 F.2d 956 (3d Cir. 1983). Subsequent to *Girsh,* the Third Circuit has also suggested additional factors to consider including whether (a) the pleadings, discovery, and negotiations

---

subdivision (e); the objection may be withdrawn only with the court's approval.

have developed the underlying substantive issues such that all parties may assess the merits of the claim: (b) members of the Class have had a sufficient opportunity to opt out of the settlement; (c) the awards to the Representative Plaintiffs, are fair, adequate and reasonable; and (d) the procedures for processing the individual claim forms under the settlement are fair and reasonable. *See In re Prudential,* 148 F.3d 283, 323 (3d Cir. 1998).

An evaluation of the relevant factors demonstrates that the settlement readily satisfies the requirement that it be fair, reasonable and adequate. Attached to the Motion In Support of Final Approval that is filed with this memorandum, Plaintiffs have attached a proposed final order that contains the requisite findings of fact and conclusions of law that demonstrate that the settlement is fair, reasonable and adequate.

### IV. THE PROPOSED SETTLEMENT SATISFIES THE LEGAL STANDARD FOR FINAL APPROVAL

#### A. The Notice Satisfies Dictates of Rule 23(c)( 2) And The Requirements of Due Process

Federal Rule 23(c)(2)(B) provides specific notice requirements where, as here, a class is certified under Rule 23(b)(3). The Class Notice satisfied these requirements. The Notice preliminarily approved by this Court in the February 7th Order of Preliminary Approval adequately described the definition of the Settlement Classes, the proposed settlement's terms, the nature of the claims filed on behalf of the Class, the issues and defenses, the binding effect of a class judgment, instructions regarding a Class member's right to object to or opt out of the settlement, to enter an appearance through counsel and the member's opportunity to be heard at the final fairness hearing.

On March 7, 2014 individual notice approved by this Court was mailed to persons who were identified by Defendants' records as being members of the identified class. Paragraph 8 of Affidavit of Risa Neiman of McGladrey LLP filed separately. To date, no identified class member has objected to the settlement or claimed attorneys' fees and

costs. See Affidavit of Neiman at Para. 16. Nine (9) persons have filed an opt-out requests. Neiman Aff. at Para. 12. The Notice was the most efficient and effective means for reaching individual members of the Class. The Notice issued to the Class met the requirements of Fed.R.Civ.P 23(c)(2) and 23(e)(1)..

### B. The *Girsh* Factors Are Satisfied

The application of the *Girsh* factors and the additional *Prudential* factors are satisfied as explained below.

#### 1. The complexity, expense and likely duration of the litigation

This factor captures "the probable costs, in both time and money, of continued litigation. *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). Absent the settlement, future proceedings would be time consuming, costly and risky. Future proceedings would include a trial on the merits, possibly additional objections to class certification and, given the legal issues presented, an appeal to the Third Circuit Court of Appeals would be likely. Both parties would be required to extensively brief and argue the issues. Given Defendant's vigorous advocacy of the contention that they did not violate the FCRA, it would be unrealistic not to expect appeals from any result reached on the question of liability or of damages. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re General Motors Pick-Up Trust Fuel Tank Products. Litig.,* 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

#### 2. The Reaction Of The Class To The Settlement

This factor attempts to gauge whether members of the class support the settlement. *In re Prudential Ins.*, 148 F.3d at 318. The fact that there are few opt-outs and no objections is evidence of the proposed settlement's fairness and adequacy. *See Stoetzner v. U.S. Steel Corp.,*

897 F.2d 115, 118-119 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *see generally In re Prudential,* 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected). These factors weigh in favor of the proposed settlement.

As set forth in Plaintiffs' Counsel's Declaration, individual notice was mailed to members of the Class advising members of the terms of the settlement and their right to exclude themselves from the Class. There have been no objections and only 9 persons have elected to exclude themselves.

### 3. The Stage of the Proceedings and the Amount of Discovery

This factor "captures the degree of case development that class counsel have accomplished prior to settlement. *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 citing *GM Trucks,* 55 F.3d at 813. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." A settlement should not be approved if the parties do not have an "adequate appreciation" of the merits of the case. *In re Prudential,* 148 F.3d at 319, *quoting In re General Motors,* 55 F.3d at 813.

As the Declaration of Plaintiffs' Counsel recounts, this case was fully and exhaustively developed through 7 different stages over 5 ½ years up until the eve of trial. The case was the subject of 3 different mediations, class certification and decertification proceedings, summary judgment proceedings and pretrial jury instruction and motion practice. The Parties certainly had a clear understanding of the factual basis for the claims and defenses at the point that the settlement agreement was negotiated. The settlement here comes only after the parties had sufficient time to understand and evaluate their respective positions.

Thus, as a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases. " *McCoy v.*

*Health Net, Inc.,* 569 F.Supp.2d 448, 461 (D.N.J.2008) (quoting *Bonett v. Educ. Debt Servs., Inc.,* No. 01–6528, 2003 WL 21658267, at *6 (E.D.Pa. May 9, 2003)) and *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 745 (S.D.N.Y. 1985) a*ff'd* 798 F.2d 35 (2d Cir. 1986).

### 4. The Risks of Establishing Liability

A court considers this factor in order to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant Corp. Litig.*, 264 F.3d at 237. Thus, this factor surveys the possible risks of litigation in order to balance the likelihood of success and potential damages against benefit of settlement. *In re Prudential,* 148 F.3d at 319.

Here, the the Class Plaintiffs faced two paramount risks: 1) that a jury might award them less than the settlement amounts offered; and 2) that on appeal any jury verdict or this Court's legal rulings might be overturned. Thus, Plaintiffs faced a risk that continued litigation could result in a lower recovery, no recovery or that their claims might be dismissed in total. The Class Plaintiffs also face risk that the class certification could be overturned on appeal. These considerations weigh in favor of settlement.

### 5. The Risks of Establishing Damages

Like the fourth factor, "this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d at 238.

This case presented the question as to how statutory damages authorized by 15 U.S.C. § 1681n(1)(A) entitled "Civil Liability For Willful Noncompliance" are to be determined. This FCRA civil liability provision provides:

> (a) In general. "Any person who *willfully fails to comply with any requirement imposed under this title with respect to any consumer* is liable to that consumer in an amount equal to the sum of

> (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . .

Here, Plaintiffs argued that ClosetMaid's conduct was "willful" as a matter of law as to the Disclosure Claim, and, that therefore, it was only left for the jury to determine the proper amount of statutory damages to be awarded at a range between $100 and $ 1000. In making this argument Plaintiffs relied upon *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) and *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012). This Court ultimately found that willfulness could be determined as a matter of law on a motion for summary judgment. *Reardon v. ClosetMaid Corp.*, 2:08-CV-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013). Nonetheless, Plaintiffs appreciate that this ruling could be reversed after a lengthy appeal, requiring a jury to determine the issue of willfulness or, worse yet, a finding on appeal the conduct not to amount to willfulness as was the case in *Fuges*.

Additionally, Plaintiffs faced a difficult task in establishing damages as to the claims of the Pre-Adverse Action Sub-Class. As this Court held with respect to these claims:

> It is for the factfinder to decide whether ClosetMaid violated section 1681b(b)(3) with respect to these 50 members of the Pre–Adverse Action Sub–Class and, if so, whether such a violation was willful. Accordingly, summary judgment as to liability (at the behest of either party) is not warranted as to these Plaintiffs.

2013 WL 6231606 at *16. Thus, Plaintiffs faced a risk that Pre-Adverse Action class members would get nothing. The settlement provides a vehicle assuring such persons of a procedure to obtain a recovery and to enforce the FCRA.

Notwithstanding Plaintiffs' confidence in their ability to win damages for themselves and the Class at trial, the settlement obviates the litigation risk to the Class and secures substantial and valuable relief.

This factor weighs in favor of settlement.

**6. The risks of maintaining the class action through trial**

This factor must be examined from the perspective of both the Disclosure Class and the Pre-Adverse Action Sub-Class. The risks of maintaining the Disclosure Class through trial would not be significant. By contrast, the risk of maintaining the Pre-Adverse Action Subclass does entail substantial risk as outlined by this Court in the December 2, 2013 ruling. This factor weighs in favor of approving the settlement.

### 7. The Ability of the Defendant to Withstand a Greater Judgment

This factor is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement. *In re Cendant Corp. Litig.*, 264 F.3d at 240. Here, there is no record evidence of ClosetMaid's financial viability. This factor is neutral as to approval of the settlement.

### 8. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery

An assessment of the reasonableness of a proposed settlement seeking monetary relief requires analysis of the present value of the damages a plaintiff would likely recover if successful, appropriately discounted for the risk of not prevailing. *In re Prudential,* 148 F.3d at 322.

The maximum amount of statutory damages a class member could recover would be $1000. The total amount of actual damages a Pre-Adverse Action class member could recover is unknown. Importantly, this settlement does not bar any Pre-Adverse Action Class Member from seeking these damages should any of them elect to seek such damages. Nonetheless, it allows such class members to elect to recovery the statutory damages authorized by 15 U.S.C. § 1681n(1)(A). It is possible that Settlement Class Members might recover punitive damages at trial. However, this possibility is typically not factored into the Rule 23(e) analysis. Courts recognize that the possibility that a jury might award punitive damages is not properly considered in determining whether a class action settlement is fair,

9

adequate and reasonable. The seminal case on this point is *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) wherein the Second Circuit explained:

> First, the vast majority of courts which have approved settlements in this type of case, even though they may not have explicitly addressed the issue, have given their approval to settlements which are traditionally based on an estimate of single damages only. . . . Second, to argue that treble damages ought to be considered in a calculation of a base recovery range is to distort the entire theoretical foundation which underlies the settlement process. It requires defendants to admit their guilt for the purpose of settlement negotiations. One of the underlying premises on which such negotiations are based, however, is that defendants never have to concede their guilt.

The settlement therefore provides relief well within the range of relief that could be obtained at trial.

In light of the questions of law and fact present in this litigation as discussed above, the value of the proposed settlement outweighs the mere possibility of future relief. The parties estimate that a trial of this litigation would have lasted several days, with the possibility that it could run longer. The expense of such a trial and the use of judicial resources and the resources of the parties would have been substantial. Moreover, in light of the highly contested nature of liability, it is likely that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery. *Parks v. Portnoff Law Associates, Ltd.,* 243 F.Supp.2d 244, 253 (E.D. Pa. 2003). Thus, a settlement is advantageous to all concerned. An appeal of a damage award could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *See Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial): *Trans World Airlines. Inc. v. Hughes,* 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified.* 449 F.2d 51 (2d Cir. 1971), *rev d* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiffs may be confident of their ability to prevail at trial, no final adjudication has been made as to the validity of their claim. Plaintiffs also recognizes that Defendant has continued to deny all liability and allegations of wrongdoing and that some or all of Plaintiffs' claims could rejected at trial or on appeal if the settlement were not approved.

The proposed settlement represents a substantial benefit for the Class.

### 9. The Additional Prudential Factors

The settlement satisfies each of the *Prudential* factors. *First,* as demonstrated above, the pleadings, discovery, and negotiations have developed the underlying substantive issues such that all parties may assess the merits of the claim. Given that this case was extensively prosecuted up to the eve of trial and involved multiple mediations, this factor is readily satisfied. *Second,* members of the Class have had a sufficient opportunity to opt out of the settlement. Indeed, as the Affidavit of Neiman indicates 9 persons had elected to opt out. *Third,* the awards to the Representative Plaintiffs, are fair, adequate and reasonable and in line with other awards within the Third Circuit as further discussed below. *Fourth,* the procedures for processing the individual Pre-Adverse Action claim forms under the settlement was fair and reasonable. That over 30% of the identified Pre-Adverse Action class members filed claims is demonstrative of this fairness. Further, there is no evidence of any conflicts between financial incentives of counsel and the interests of the Class. *See Collier v. Montgomery County Housing Authority,* 192 F.R.D. 176 (E.D. Pa. 2000) (settlement must be "result of good faith, arms length negotiations").

In conclusion, most if not all of the factors discussed above weigh in favor of the settlement of this class action.

### C. The Representative Plaintiffs Are Entitled To An Incentive Payments For Their Participation In This Action

Courts routinely approve incentive awards to compensate named plaintiffs. "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation," and to "reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 (3d Cir. 2011) *citing Bredbenner v. Liberty Travel, Inc.,* No. 09–905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011).

Here, the SA provides for service awards of $ 10,000 to Ms. Reardon, $1000 to Willy Raines and $1000 to Bridgette Beckinger. SA at 8.2. These proposed service awards are similar to the awards approved in comparable class actions in this judicial district. *See In re Linerboard,* 2004 WL 1221350, at *19 (approving incentive awards of $25,000 to each of five named plaintiffs); *Tenuto v. Transworld System,* 2002 WL 188569, at *5 (E.D. Pa. 2002)(approving $2,000 incentive award to named plaintiff); *In re Residential Doors Antitrust Litig.,* MDL No. 1039, Civ. A. Nos. 94–3744, 96–2125, 1998 WL 151804, at *11 (E.D.Pa. Apr.2, 1998) (approving $10,000 incentive awards to each of four named plaintiffs). *Bredbenner,* 2011 WL 1344745, at *24, 2011 U.S. Dist. LEXIS 38663, at *68 ($10,000); *Dewey v. Volkswagen of Am.,* 728 F.Supp.2d 546, 616 (D.N.J.2010) ($10,000); *Mehling v. N.Y. Life Ins. Co.,* 248 F.R.D. 455, 467 (E.D.Pa.2008) ($7,500 and $15,000); *In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2008 WL 63269, at *7–8, 2008 U.S. Dist. LEXIS 569, at *23 (E.D.Pa. Jan. 3, 2008) ($30,000); *In re Linerboard Antitrust Litig.,* MDL No. 1261, 2004 WL 1221350, at *18–19, 20 (E.D.Pa. June 2, 2004) ($25,000). *Fleisher v. Fiber Composites, LLC*, CIV.A. 12-1326, 2014 WL 866441 (E.D. Pa. Mar. 5, 2014).

Here, as in *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220-21 (E.D. Pa. 2011) another FCRA class action, Plaintiffs merit incentive awards. First, they have played a role in the enforcement of the FCRA, obtaining a substantial settlement against

12

ClosetMaid for its alleged violations of the statute. These Plaintiffs have brought about substantial benefits to a large group of people, both in monetary relief as well as a cessation of ClosetMaid's (and Emerson's) complained-of practices. Plaintiffs have also participated substantially and crucially in the litigation. Ms. Reardon appeared for two mediations and for her depositions and had numerous meetings with Plaintiffs' Counsel. Willy Rains and Bridgette Beckinger stepped forward to bolster the representation of the class and were prepared to appear for trial.  It is respectfully requested that the Court approve these service awards.

## IV.     CONCLUSION

Wherefore, it is respectfully requested that this Court grant final approval to the class action settlement and to authorize the payment of the proposed incentive award to the Representative Plaintiffs. A Proposed Order and Final Judgment are attached to the Motion For Final Approval as Exhibit A.

Dated: June 2, 2014                                              Respectfully Submitted:

By:     s/ James M. Pietz _____

Pa I.D. No. 55406
Pietz Law Office LLC
429 Forbes Ave., Suite 1710
Pittsburgh, Pa. 15219
412-288-4333
jpietz@jpietzlaw.com

Leonard A. Bennett
VSB 40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
lenbennett@clalegal.com

Counsel for the Plaintiff Classes

13